# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) SUSAN PARISI, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-23-115-R |
| | ) | |
| (1) C CASHION WINDOWS, LLC d/b/a | ) | |
| RENEWAL BY ANDERSON OF | ) | |
| OKLAHOMA, and (2) BMO HARRIS | ) | |
| BANK, NA d/b/a GREENSKY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT GREENSKY, LLC'S, INCORRECTLY IDENTIFIED AS BMO HARRIS BANK, NA D/B/A GREENSKY, LLC, MOTION TO COMPEL ARBITRATION AS TO ALL CLAIMS ASSERTED BY PLAINTIFF AND TO <u>DISMISS OR STAY CLAIMS OF PLAINTIFF PENDING ARBITRATION</u>**

Respectfully submitted,

Dated: April 28th, 2023          */s/ Sean W. Fleming*

Sean W. Fleming
*Admitted Pro Hac Vice*
Texas State Bar No. 24027250
MACDONALD DEVIN MADDEN
KENEFICK & HARRIS, P.C.
12770 Coit Road, Suite 1100
Dallas, Texas 75251
T: (214) 744-3300
F: (214) 747-0942
SFleming@MacdonaldDevin.com

i

Derrick T. DeWitt, OBA #18044
Kyle R. Prince, OBA #33040
DeWITT PARUOLO & MEEK
P.O. Box 138800
Oklahoma City, OK 73113
T: (405) 705-3600
F: (405) 705-2573
ddewitt@46legal.com
kprince@46legal.com

***Attorneys for Defendant GreenSky, LLC, incorrectly identified as BMO Harris Bank, NA d/b/a GreenSky, LLC***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................v

I.      INTRODUCTION ...................................................................................1

II.     UNDISPUTED FACTS............................................................................2

III.    PLAINTIFF'S LOAN AGREEMENT ....................................................3

        A. ARBITRATION PROVISION............................................................4

        B. AGREEMENT TO PURSUE CLAIMS INDIVIDUALLY..............................6

IV.     APPLICATION AND APPROVAL OF PLAINTIFF'S LOAN.......................6

        A. APPLICATION AND APPROVAL PROCESS.................................6

        B. GREENSKY'S MAILING TO PLAINTIFF WITH
           THE LOAN AGREEMENT ..................................................................7

        C. GREENSKY'S EMAIL TO PLAINTIFF WITH
           THE LOAN AGREEMENT ..................................................................8

V.      PLAINTIFF'S USE OF HER SHOPPING PASS AND LOAN
        AGREEMENT CONTAINING THE ARBITRATION
        PROVISION ..........................................................................................9

VI.     ARGUMENT AND AUTHORITIES ....................................................10

        A. THE ARBITRATION CLAUSE IS VALID AND
           ENFORCEABLE UNDER THE FEDERAL ARBITRATION ACT .............11

        B. THE ARBITRATION PROVISION AGREED TO BY PLAINTIFF IS
           EXPRESSLY GOVERNED BY THE FEDERAL ARBITRATION ACT
           AND THE COURT MUST COMPEL ARBITRATION PURSUANT TO
           FEDERAL ARBITRATION LAW ...............................................13

        C. THE ARBITRATION CLAUSE AND CLASS ACTION WAIVER ARE
           ALSO VALID AND ENFORCEABLE UNDER OKLAHOMA LAW.........16

**VII.   CONCLUSION**..................................................................................................**19**

**CERTIFICATE OF SERVICE** ...................................................................................**20**

## TABLE OF AUTHORITIES

**Cases**

*Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ..............**16**

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)...................................**11**

*AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643,
650 (1986)......................................................................................................**14**

*Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d
1191, 1199 (10th Cir. 2009) ........................................................................**15**

*Choice Hotels Int'l v. BSR Tropicana Resort, Inc.*, 252 F.3d 707,
709-10 (4th Cir. 2001) ................................................................................**16**

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). .....................................**11**

*City of Muskogee v. Martin*, 796 P.2d 337, 340 (Okla. 1990) ....................................**17**

*Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1262
(10th Cir. 2005) ..........................................................................................**14**

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ..............................**11, 16**

*Dolese Bros. v. Tollett*, 19 P.2d 570, 571 (Okla. 1933) ..............................................**10**

*Freeman v. Prudential Sec., Inc.*, 856 P.2d 592, 594 (Okla. Civ. App. 1993)..............**17**

*Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ...................................**16**

*Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011) ....................**16**

*Hancock v. American Tel. and Tel. Co., Inc.*, 2011 WL 3626785, *10 ........................**18**

*Harber v. McKeown*, 157 P.2d 753, 754 (Okla. 1945...................................................**10**

*Long v. DeGeer*, 753 P.2d 1327, 1328 (Okla. 1987) ....................................................**17**

*Mid-Continent Pipe Line Co. v. Wilkerson*, 193 P.2d 586, 588 (Okla. 1948) ..............**10**

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) .................................................................................................................**12**

*Morris v. Airbnb, Inc.*, 2020 WL 5823542, \*4 (W.D. Okla. 2020)...............................**18**

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 2 (1983)  ......**12, 14**

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967)  ..............**15**

*Rogers v. Dell Comp. Corp.*, 138 P.3d 826, 830 (Okla. 2005) ....................................**17**

*Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 637-38 (9th Cir. 1988)...............**16**

*Thompson v. Bar-S Foods Co.*, 174 P.3d 567, 572 (Okla. 2007) .................................**17**

*Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co.*, 947 P.2d 594, 599 (Okla. Civ. App. 1997) ................................................................................................**17**

*Voss v. City of Okla. City*, 618 P.2d 925, 928 (Okla. 1980)..........................................**17**

*Wolverine Exploration Co. v. Natural Gas Pipeline Co. of Amer. Inc.*, 842 P.2d 352, 353 (Okla. Civ. App. 1991) ........................................................................**16**

## Statutes

9 U.S.C. § 2 *et seq.* ....................................................................................................**4**

9 U.S.C. § 3 ...............................................................................................................**12**

9 U.S.C. § 4 ...............................................................................................................**11**

9 U.S.C. §§ 1-16 *et seq.*...............................................................................................**4**

12 O.S. § 1857(A) ......................................................................................................**17**

Defendant, GreenSky, LLC, incorrectly identified as BMO Harris Bank, NA d/b/a GreenSky, LLC (hereinafter "GreenSky"), files this brief in support of its Motion to Compel Arbitration as to all claims asserted by Plaintiff Susan Parisi (hereinafter "Plaintiff") and to dismiss or stay claims of Plaintiff pending arbitration. Plaintiff's loan agreement contains a mandatory arbitration provision directing the parties to resolve and dismiss or stay Plaintiff's claims in this case pending the outcome of arbitration. In support of this Motion, GreenSky respectfully shows as follows:

**I.**
**INTRODUCTION**

Plaintiff has filed a putative class action against GreenSky and purports to assert claims against GreenSky under the Oklahoma Consumer Credit Code. Plaintiff's claims against GreenSky, which arise from a loan document captioned "Installment Loan Agreement" (hereinafter "Loan Agreement"), should be sent to arbitration. The Loan Agreement contains, among other provisions: (1) an arbitration agreement; (2) an agreement to arbitrate "any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your Loan Agreement . . . , including the validity, enforceability or scope of this Arbitration Provision or the Agreement"; and (3) an agreement to arbitrate all "Claims" individually.

As discussed below, there is an agreement to arbitrate between Plaintiff and GreenSky, and all other issues should be resolved by the arbitrator pursuant to the Loan Agreement. Therefore, GreenSky respectfully requests that the Court enter an order

compelling arbitration of Plaintiff's individual claims against GreenSky and dismissing or staying all further proceedings against GreenSky.

## II.
## UNDISPUTED FACTS

1.  On November 23, 2021, Plaintiff claims that she met with a representative of Defendant C Cashion Windows, LLC d/b/a Renewal by Andersen of Oklahoma to discuss the purchase and installation of replacement windows for her home. (*See* Exhibit 1, Plaintiff's Amended Petition and Motion to Certify a Class Action, ¶ 60.)[1]

2.  Plaintiff claims that the above representative explained a financing option, serviced through GreenSky, for Plaintiff to purchase the replacement windows. (*See id.*, ¶ 61.)

3.  Plaintiff alleges that said representative told her that she could purchase the replacement windows with zero money down and zero interest on the loan for two years, and that payments would not be due until two years after the installation. (*See id.*)

4.  Further, Plaintiff alleges that she discussed with said representative that she wanted to replace nine windows. (*See id.*, ¶ 63-64.)

---

[1] For the purpose of this Brief, relevant portions of Plaintiff's Amended Petition and Motion to Certify a Class Action will be attached as Exhibit 1. For a complete copy of Plaintiff's Amended Petition and Motion to Certify a Class Action, *see* ECF No. 1, Exhibit 1.

5. A split plan installation was also discussed whereby five out of the nine windows would be installed first, with the remaining four windows installed later. (*See id.*, ¶ 64.)

6. Plaintiff claims that she was shown on an iPad that she was approved for the loan terms mentioned above. (*See id.*, ¶ 65.)

7. Plaintiff claims that based on her conversation with the representative described above, she agreed to purchase the replacement windows. (*See id.*, ¶ 67.)

8. Further, Plaintiff claims that she was never shown the disclosures or informed of the interest that she would have to pay on the loan. (*See id.*, ¶ 68.)

9. Because Plaintiff agreed to purchase the replacement windows and was approved for a loan with BMO Harris Bank, NA, serviced by GreenSky, a Loan Agreement was created that established Plaintiff's contractual agreement with GreenSky, as the servicing agent of Plaintiff's loan with BMO Harris Bank, NA. (*See* Exhibit 2, Loan Agreement, ¶ 25.) [2]

### III.
### PLAINTIFF'S LOAN AGREEMENT

Plaintiff's loan was serviced by GreenSky and funded by BMO Harris Bank, NA through the GreenSky® Program. (*See* Exhibit 3, Declaration of Timothy D. Kaliban ("Kaliban Declaration"), ¶¶ 7-8.) [3] That loan was documented by the Loan Agreement

---

[2] A true and correct copy of the Loan Agreement is attached as Exhibit 2, and is fully incorporated by reference herein.

[3] The Kaliban Declaration is attached as Exhibit 3, and is fully incorporated by reference herein.

GreenSky emailed to Plaintiff, which set forth the relevant terms and conditions of Plaintiff's loan. (Exhibit 3, Kaliban Declaration, ¶ 23.)

### A. ARBITRATION PROVISION

For purposes of this brief in support of GreenSky's motion, the most relevant provision of the Loan Agreement is in Paragraph 25, which is prominently titled: "**ARBITRATION PROVISION. Agreement to Arbitrate**." (*See* Exhibit 2, ¶ 25.) This provision requires that all "Claims" between the parties be resolved, "upon the election" by any party, through arbitration. (*Id.*) The arbitration agreement reflects that it "is made pursuant to a transaction involving interstate commerce, and will be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, as it may be amended . . . , and the applicable Code." [4] (*Id.*)

The arbitration agreement mandates that all "Claims" between Plaintiff and GreenSky "will be resolved through binding arbitration." (*Id.*) The term "Claim" is broadly defined to mean:

> any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your Loan Agreement as well as the relationship resulting from such Agreement . . . including the validity, enforceability or scope of this Arbitration Provision or the Agreement.

---

[4] Aside from the contractual provision designating the applicability of the Federal Arbitration Act, there is no dispute that the arbitration agreement is "a transaction involving interstate commerce," as GreenSky is based in Georgia while Plaintiff lives in Oklahoma. (*See* Exhibit 1, ¶ 1; *see also* Kaliban Declaration, ¶ 5.) The Federal Arbitration Act applies here. 9 U.S.C. § 2 (explaining that the Federal Arbitration Act applies to "[a] written provision in . . . a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . .").

(*Id.*) Likewise, the terms "you" and "us" are broadly defined to "include[] any corporate parent, wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns and purchasers of any accounts, all agents, employees, directors and representatives of any of the foregoing and any third party providing any product, service or benefit in connection with the Agreement." (*Id.*)

There was also a clause in the arbitration provision that gave Plaintiff an opportunity to opt out of the arbitration provision.

> You may choose to opt out of and not be subject to this arbitration provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing within forty-five (45) calendar days of the date of the Agreement at the following address: P.O. Box 29429, Atlanta, GA 30359, Attention: Legal.

(*Id.*) Additionally, Plaintiff was notified in the arbitration agreement, in all capital letters, of the consequences of not opting out of arbitration:

> UNLESS YOU OPT OUT OF THIS ARBITRATION PROVISION AS PROVIDED BELOW OR EXCEPT AS APPLICABLE LAW PROHIBITS US FROM IMPOSING ARBITRATION ON YOU, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE OR MAY BE LIMITED IN ARBITRATION, INCLUDING YOUR RIGHT TO APPEAL AND YOUR ABILITY TO PARTICIPATE IN A CLASS ACTION.

(*Id.*) Nevertheless, even if she did not opt out of arbitration, Plaintiff remained able to file and pursue an "individual Claim in a small claims court in [her] state or municipality, so long as that claim is pending only in that court." (*Id.*)

Claims will be referred either to JAMS or to the American Arbitration Association (hereinafter "AAA"). (*Id.*) The arbitration will take place in the federal judicial district

5

where Plaintiff resides. (*Id.*) Plaintiff will not be required to pay more in arbitration frees than she paid in initiating litigation:

> Regardless of who wins in arbitration, you will only be responsible for paying your share, if any, of the arbitration fees required by the applicable Code, which amount will not exceed the filing fees that you would have in court if the Claim had been brought in the appropriate state or federal court closest to were you live. We will pay the remainder of any arbitration fees.

(*Id.*)

### B. AGREEMENT TO PURSUE CLAIMS INDIVIDUALLY

The Loan Agreement's arbitration provision also contains an agreement that arbitration will be conducted on an individual basis only, and that Plaintiff will not have the right to assert class action claims. The provision states, in relevant part: "Class Action Waiver and Other Restrictions: Arbitration will proceed solely on an individual basis without the right for any Claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of others." (*Id.*) Furthermore, the parties agreed that "[t]he arbitrator's authority to resolve and make written awards is limited to Claims between you and us alone. Claims may not be joined or consolidated unless agreed to in writing by all parties." (*Id.*)

### IV.
### APPLICATION AND APPROVAL OF PLAINTIFF'S LOAN

### A. APPLICATION AND APPROVAL PROCESS

On November 23, 2021, Plaintiff applied and was approved for a loan from BMO Harris Bank, NA through the GreenSky® Program for a home improvement project with Renewal by Andersen of Oklahoma, the company reflected on Plaintiff's Loan Agreement. (Exhibit 3, Kaliban Declaration, ¶ 12.; *see* Exhibit 2, p. 3.)

6

As part of the application process, applicants provide certain information necessary for GreenSky, as agent for the banks participating in the GreenSky® Program, to reach a decision on the application and to communicate with the borrower regarding the transaction. (Exhibit 3, Kaliban Declaration, ¶ 13.) Therefore, Plaintiff, as part of her loan application, supplied, among other information, her social security number, date of birth, telephone number, mailing address, and email address. (*Id.* ¶ 14.)

Once Plaintiff's information was entered in the application, in order to submit the application to GreenSky, Plaintiff was required to acknowledge reading and accepting: (1) the Loan Application disclosures; (2) the consent to electronic records and communication; and (3) an authorization for GreenSky to pull her credit report on behalf of the participating financial institution. (*Id.* ¶ 15.)

The credit report and credit score are provided to the GreenSky® Program's decisioning software, which applies the various credit policies of the participating financial institutions and renders a credit decision on the application based on these preset credit policies. (*Id.* ¶ 16.) Plaintiff was approved for a loan from BMO Harris Bank, NA with a credit limit in the amount of $17,744.00 (*Id.* ¶ 17.)

**B. GREENSKY'S MAILING TO PLAINTIFF WITH THE LOAN AGREEMENT**

GreenSky mailed a printed copy of the Loan Agreement through the United States Postal Service to Ms. Parisi on or about November 23, 2021, to the physical address Ms. Parisi provided as part of the loan application process. (*Id.* ¶ 18.)

7

GreenSky's vendor, Source Link, mailed the package on behalf of GreenSky containing the Loan Agreement directly to the physical address Ms. Parisi provided as part of her application. (*Id.* ¶ 19.)

GreenSky's action in mailing the printed copy of the Loan Agreement to Plaintiff was, and is, consistent with GreenSky's customary business practices for borrowers whose loans GreenSky services. (*Id.* ¶ 20.)

Specifically, Loan Agreement mailing was properly addressed to Plaintiff, had sufficient postage, and it was deposited in the U.S. Mail. This process is consistent with GreenSky's procedures for preparing and having mailed loan agreements to its customers. (*Id.* ¶ 21.)

This mailing was not returned to GreenSky as undeliverable and GreenSky did not receive any returned notifications that the Loan Agreement or any other mailings associated with Plaintiff's loan account were undeliverable. (*Id.* ¶ 22.)

## C. GREENSKY'S EMAIL TO PLAINTIFF WITH THE LOAN AGREEMENT

GreenSky emailed Plaintiff the Loan Agreement on November 23, 2021—the same day Plaintiff filled out the loan application and was approved for same. (*Id.* ¶¶ 23, 25.) The Loan Agreement was emailed to sparisi21@yahoo.com, which is the email address she provided on her loan application with GreenSky as part of the loan application process. (*Id.* ¶ 23.)

GreenSky's action in emailing a copy of the Loan Agreement to Plaintiff was, and is, consistent with GreenSky's customary business practices for borrowers whose loans

GreenSky services. (*Id.* ¶ 24.) Specifically, the Loan Agreement was emailed to the proper email address that Plaintiff provided the same day she filled out the GreenSky loan application and was approved for the loan. (*Id.* ¶ 25.)

The email sent to Plaintiff identified GreenSky as the sender, stated that the email was regarding the Installment Loan Agreement, and the email was not returned to GreenSky as undeliverable. (*Id.* ¶ 26.) Additionally, as evidenced by Exhibits 2 and 3 in Plaintiff's Amended Petition and Motion to Certify a Class Action, the sparisi21@yahoo.com email address was used by Plaintiff. (*Id.* ¶ 27; *see* Exhibit 1, Plaintiff's Exhibits 2 and 3.)

## V.
## PLAINTIFF'S USE OF HER SHOPPING PASS AND LOAN AGREEMENT CONTAINING THE ARBITRATION PROVISION

On November 29, 2021, less than one week after receiving approval on her loan application and receiving the Loan Agreement, Plaintiff used the Shopping Pass included with, and part of, her Loan Agreement, and authorized Renewal by Andersen of Oklahoma to charge her account in the amount of $8,871.50. (Exhibit 3, Kaliban Declaration, ¶ 28.)

Plaintiff's use of the Shopping Pass and the loan proceeds to make the charge with Renewal by Andersen of Oklahoma constituted an affirmance and acceptance of the terms of the Loan Agreement; as set forth in the Shopping Pass included with the Loan Agreement, "[u]se of this Shopping Pass or the associated Loan by (any) Borrower (or any authorized user) to make a purchase constitutes acceptance by (all) Borrower(s) of the terms of the accompanying Loan Agreement. The physical or electronic record of any such

9

purchase will constitute the signature of (all) Borrower(s) on such Loan Agreement." (*Id.* ¶ 29; Exhibit 2, p. 1.)

Attached as Exhibit 4 to the Kaliban Declaration is a true and correct copy of the transaction history for Plaintiff's loan account. This document shows the charges to Plaintiff's account number ending in 2561. (Exhibit 3, Kaliban Declaration, ¶ 30.) The funds ($8,871.50) were settled and disbursed directly to Renewal by Andersen of Oklahoma's designated bank account in order to pay for the services Plaintiff requested from Renewal by Andersen of Oklahoma. (*Id.*)

## VI.
## ARGUMENT AND AUTHORITIES

The question of jurisdiction is primary and fundamental in every case. *Mid-Continent Pipe Line Co. v. Wilkerson*, 193 P.2d 586, 588 (Okla. 1948). Under Oklahoma law, it is the responsibility of the court to inquire and resolve such jurisdictional questions. *Harber v. McKeown*, 157 P.2d 753, 754 (Okla. 1945); *see Dolese Bros. v. Tollett*, 19 P.2d 570, 571 (Okla. 1933) (explaining that "[a] trial court is required to determine the legal question of whether or not it has jurisdiction of the subject-matter of an action presented to it for determination.").

When it appears either from the pleadings or briefs that the subject matter is exclusively within the jurisdiction of another forum, such as arbitration, the Court should decline to proceed further and dismiss the action. *See, e.g.*, *Mid-Continent Pipe Line Co.*, 193 P.2d at 591.

In this case, the proper forum is arbitration based the valid and enforceable arbitration provision in Plaintiff's Loan Agreement. Therefore, this Court should enter an order compelling arbitration of Plaintiff's individual claims against GreenSky and dismissing, or in the alternative, staying all further proceedings against GreenSky.

## A. THE ARBITRATION CLAUSE IS VALID AND ENFORCEABLE UNDER THE FEDERAL ARBITRATION ACT

As quoted above, the arbitration provision in the Loan Agreement states that it is to be governed by the Federal Arbitration Act (hereinafter "FAA"). The FAA codifies a national policy in favor of arbitrating claims when parties contract to settle disputes by arbitration, and compels judicial enforcement of a wide range of written arbitration agreements. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). Section 4 of the FAA empowers a "party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration" to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The FAA mandates that district courts "shall" enforce arbitration agreements "in accordance with the terms of the agreement." *Id.*; *see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). This provision codifies the "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted).

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination

11

by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 2 (1983)). The "parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Id.* And, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *See id.*

Further, under the FAA, a district court should dismiss or stay a suit involving an arbitration clause under the following circumstances:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

In this case, there was clearly an agreement to arbitrate between GreenSky and Plaintiff, as reflected in the extensive language quoted above that details the terms and conditions of the arbitration provision in the Loan Agreement. Also, there is no question that Plaintiff understood and agreed to have GreenSky service a loan so she could receive services from Renewal by Andersen of Oklahoma. (*See* Exhibit 3, Kaliban Declaration, ¶¶ 12-17.) Moreover, BMO Harris Bank, NA offered to lend funds to Plaintiff, with GreenSky acting as the servicing agent, as reflected in the terms and conditions of the Loan

Agreement. (*See id.*; *see also* Exhibit 2, p. 1) (stating Plaintiff was "approved" for loan proceeds up to $19,000).

It is undisputed that Plaintiff had the opportunity to review the Loan Agreement, containing the arbitration provision and class action waiver, when the Loan Agreement was sent to a valid email address that Plaintiff herself provided on her loan application with GreenSky, and then later used that same email address to converse with GreenSky. (*See* Exhibit 3, Kaliban Declaration, ¶¶ 23-27.) Plaintiff authorized the loan proceeds to be disbursed to Renewal by Andersen of Oklahoma, under the terms of the Loan Agreement, which contained the arbitration and class action waiver provisions. (*See id*. ¶ 28).

As quoted above, there is an opt-out provision in the Loan Agreement's arbitration provision giving Plaintiff the opportunity to opt-out of the arbitration provision by providing GreenSky with written notice within 45 days after the date of the Loan Agreement. (*See* Exhibit 2, ¶ 25). Plaintiff did not opt out of the arbitration provision by providing written notice to GreenSky within 45 days after the date of the Loan Agreement, further reflecting her assent to the arbitration provision and class action waiver.

Based on the foregoing, the arbitration provision in the Loan Agreement is valid and enforceable against Plaintiff. Therefore, this Court should enter an order compelling arbitration of Plaintiff's individual claims against GreenSky and dismissing, or in the alternative, staying all further proceedings against GreenSky.

**B. THE ARBITRATION PROVISION AGREED TO BY PLAINTIFF IS EXPRESSLY GOVERNED BY THE FEDERAL ARBITRATION ACT AND THE COURT MUST COMPEL ARBITRATION PURSUANT TO FEDERAL ARBITRATION LAW**

13

Under the FAA, there is a presumption in favor of arbitrating a broad scope of claims, particularly where no type of claim has been specifically excluded in the language of the arbitration agreement. *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986). "The Arbitration Act establish that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25.

The arbitration provision in this case broadly states: "NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM."   (Exhibit 2, ¶ 25). As mentioned above, the term "Claim" is defined as "***any*** claim, dispute or controversy *of every kind and nature*, whether based in law or equity, between you and us ***arising from or relating to*** your Loan Agreement as well as the relationship resulting from such Agreement . . . including the validity, enforceability or scope of this Arbitration Provision or the Agreement."  (*Id.*) (emphasis added).

In determining whether a plaintiff's claims fall within the scope of an arbitration agreement, courts determine whether the arbitration agreement is broad or narrow. "When an arbitration clause is narrowly drawn, the policy in favor of arbitration does not have the 'strong effect . . . that it would have if . . .[it] [were] a broad arbitration clause." *Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005). Generally, if an arbitration agreement contains the "language '[a]ny controversy or claim arising out

14

of or relating to this Agreement," then the arbitration agreement is considered broad. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967); *see id.* (explaining that a broad arbitration provision "refer[s] all disputes arising out of a contract to arbitration."). Moreover, courts have determined that "the ordinary meaning of the phrase 'relating to' is broad." *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1199 (10th Cir. 2009).

Clearly, the language of the arbitration provision in this case is broad as the arbitration provision defines "Claim" as "***any*** claim, dispute or controversy *of every kind and nature*, whether based in law or equity, between you and us ***arising from or relating to*** your Loan Agreement . . . ." (Exhibit 2, ¶ 25) (emphasis added). As such, the broad language in the arbitration provision covers the claims asserted against GreenSky by Plaintiff in her Petition.

Plaintiff's claims against GreenSky are based entirely on Plaintiff entering into a purchase and installation agreement with Renewal by Andersen of Oklahoma and then a subsequent Loan Agreement, with GreenSky as the servicing agent and BMO Harris Bank, NA as the lender, to finance that transaction. GreenSky's sole connection with this case is that GreenSky serviced a loan of approximately $8,871.50 to Renewal by Andersen of Oklahoma on behalf of Plaintiff for the replacement windows she agreed to purchase and have installed. The loan that GreenSky serviced is governed by the Loan Agreement, including the arbitration provision contained in said agreement.

15

Therefore, all of Plaintiff's claims and allegations in this case against GreenSky "arise from or relate to" the Loan Agreement. Consequently, the arbitration provision in the Loan Agreement covers this lawsuit in its entirety.

If all claims in a lawsuit are subject to arbitration, a court may dismiss such claims rather than staying the action. *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011); *Choice Hotels Int'l v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 637-38 (9th Cir. 1988). Because this case is subject to arbitration in its entirety, this Court should not only enter an order compelling arbitration of Plaintiff's individual claims against GreenSky, but should also dismiss this case, or in the alternative, stay all further proceedings against GreenSky.

## C. THE ARBITRATION CLAUSE AND CLASS ACTION WAIVER ARE ALSO VALID AND ENFORCEABLE UNDER OKLAHOMA LAW

The arbitration provision in the Loan Agreement expressly provides for arbitration of the claims alleged in Plaintiff's Amended Petition and Motion to Certify a Class Action. The arbitration provision is valid, enforceable, and irrevocable pursuant to Oklahoma law. As such, the contractual agreement between the parties to arbitrate eliminates this Court's jurisdiction over the subject matter of Plaintiff's claims and allegations against GreenSky. Therefore, the Court must compel arbitration of this matter.

Oklahoma law favors arbitration where the parties have agreed. *Wolverine Exploration Co. v. Natural Gas Pipeline Co. of Amer. Inc.*, 842 P.2d 352, 353 (Okla. Civ.

16

App. 1991); *Freeman v. Prudential Sec., Inc.*, 856 P.2d 592, 594 (Okla. Civ. App. 1993). Oklahoma law also reflects a strong public policy in favor of arbitration. *See Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co.*, 947 P.2d 594, 599 (Okla. Civ. App. 1997). Section 1857(A) of the Oklahoma Uniform Arbitration Act (OUAA) declares arbitration agreements "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." 12 O.S. § 1857(A). According to the Oklahoma Supreme Court, where parties enter a contractual agreement to arbitrate disputes, "it constitutes a substantive and mandatory right." *Voss v. City of Okla. City*, 618 P.2d 925, 928 (Okla. 1980). The OUAA reveals "a clear legislative intent that any disputes arising from the interpretation or application" of such agreements "shall have an immediate and speedy resolution by required arbitration." *Id.*

Courts generally view arbitration provisions as "a shortcut to substantial justice with a minimum of court interference." *Long v. DeGeer*, 753 P.2d 1327, 1328 (Okla. 1987). The Oklahoma Supreme Court has held courts should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Thompson v. Bar-S Foods Co.*, 174 P.3d 567, 572 (Okla. 2007) (internal citation omitted). Interpretation of an arbitration agreement is governed by general state-law contract principles, and courts should resolve in favor of covering any doubts concerning the arbitrability of a particular dispute. *Id.*; *City of Muskogee v. Martin*, 796 P.2d 337, 340 (Okla. 1990); *see also Rogers v. Dell Comp. Corp.*, 138 P.3d 826, 830 (Okla. 2005) (holding "ambiguity falls on the side of the existence of an agreement to arbitrate.").

17

The arbitration provision in the Loan Agreement covers all claims between Plaintiff and GreenSky "arising from or relating to [Plaintiff's] Loan Agreement as well as the relationship resulting from such Agreement . . . including the validity, enforceability or scope of th[e] Arbitration Provision or the Agreement." (Exhibit 2, ¶ 25).

Further, the arbitration provision states that Plaintiff agrees to waive any right, that she might otherwise have, to bring or participate in a class action lawsuit. Also, under the arbitration provision, Plaintiff agrees that any arbitration proceeding under the Loan Agreement will be limited to her individual claims rather than those of any class or group.

Courts in Oklahoma have determined that class action waivers are valid and enforceable. *See Morris v. Airbnb, Inc.*, 2020 WL 5823542, *4 (W.D. Okla. 2020) (ruling that Defendant's Motion to Compel Arbitration is granted where the arbitration clause contained a class action waiver); *see also Hancock v. American Tel. and Tel. Co., Inc.*, 2011 WL 3626785, *10 (enforcing arbitration clauses that contained class action waivers and granting a motion to compel arbitration with dismissal of certain claims). Given these Western District of Oklahoma cases holding that arbitration provisions with class actions waivers are enforceable, Plaintiff has waived any right to bring any class action claims against GreenSky, and the class action claims asserted in the Petition should be dismissed as a matter of law, or in the alternative, proceedings should be stayed in favor of arbitration.

## VII.
## CONCLUSION

WHEREFORE, Defendant respectfully requests that this Court compel arbitration as to all claims asserted by Plaintiff and to dismiss or stay claims of Plaintiff pending the outcome of arbitration.

Respectfully submitted,

Dated: April 28, 2023

/s/ Sean W. Fleming

Sean W. Fleming
*Admitted Pro Hac Vice*
Texas State Bar No. 24027250
MACDONALD DEVIN MADDEN
KENEFICK & HARRIS, P.C.
12770 Coit Road, Suite 1100
Dallas, Texas 75251
T: (214) 744-3300
F: (214) 747-0942
SFleming@MacdonaldDevin.com

Derrick T. DeWitt, OBA #18044
Kyle R. Prince, OBA #33040
DeWITT PARUOLO & MEEK
P.O. Box 138800
Oklahoma City, OK 73113
T: (405) 705-3600
F: (405) 705-2573
ddewitt@46legal.com
kprince@46legal.com

***Attorneys for Defendant GreenSky, LLC, incorrectly identified as BMO Harris Bank, NA d/b/a GreenSky, LLC***

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th of April, 2023, I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

M. Kathi Rawls, OBA #18814
Minal Gahlot, OBA #22145
kathi@rawlsgahlot.com
minal@rawlsgahlot.com

***Attorneys for Plaintiffs***

*/s/ Sean W. Fleming*

20