\*1054347121\*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

DEC 22 2022

RICK WARREN
COURT CLERK
108_____

| | |
|---|---|
| SUSAN PARISI<br>Plaintiff,<br>v.<br>C CASHION WINDOWS, LLC<br>d/b/a RENEWAL BY ANDERSON OF<br>OKLAHOMA, and BMO HARRIS<br>BANK, NA d/b/a GREENSKY, LLC,<br>Defendants. | ) <br>) <br>) <br>) <br>) CASE NO.: CJ-22-5727<br>) <br>) <br>) <br>) *The Honorable Judge Aletia Haynes Timmons* |

## AMENDED PETITION AND MOTION TO CERTIFY A CLASS ACTION

COMES NOW the Plaintiff, Susan Parisi ("Ms. Parisi") by and through her counsel of

record, M. Kathi Rawls and Minal Gahlot of Rawls Gahlot, PLLC, and for her Petition and Class

Action claims states as follows:

### PARTIES

1. Plaintiff, Ms. Parisi is currently a resident of Oklahoma County, State of Oklahoma, and has

been for more than six (6) months prior to the filing of this litigation.

2. The class members are Oklahoma consumers who were not provided adequate consumer

credit disclosures prior to consummation or liability for the loans originated by Anderson and

later sold to Harris/GreenSky.

3. Defendant, BMO Harris Bank, NA is a national lender issuing loans in reliance upon home

solicitation sales of consumer goods as that term is defined by 14A O.S. § 2-501, issuing

loans in Oklahoma under the name of GreenSky LLC, it may be served through its agents in

Georgia, (hereafter "Harris/GreenSky").

4. Defendant C Cashion Windows, LLC d/b/a Renewal by Anderson of Oklahoma (Anderson)

is a domestic entity which utilizes home solicitors in its sale and financing of consumer credit

sales of goods as defined by 14A O.S. § 2-501.

**EXHIBIT**

**1**

## JURISDICTION AND VENUE
(Plaintiff hereby incorporates ¶¶ 1-4 above)

5. This matter is filed against the Defendants in Oklahoma County as it is the residence county of Ms. Parisi and the location of the home solicitation for the sale of replacement windows.

6. Each Defendant may be served through its registered service agent or head teller and regularly conducts business in the State of Oklahoma.

7. GreenSky is a BMO Harris Bank N.A. is the actual lender identified in the loan sold by Anderson to Harris/GreenSky.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
(Plaintiff hereby incorporates ¶¶ 1-7 above)

8. This class action seeks injunctive and monetary relief to redress an unlawful and deceptive pattern of wrongdoing followed by Defendant, C Cashion Windows, LLC d/b/a Renewal by Andersen of Oklahoma (Anderson), in concert with its co-defendant, Harris/GreenSky (jointly Defendants), in its credit extension sale of consumer goods and services in the State of Oklahoma.

9. Defendants are regularly engaged in the business of making/issuing "consumer loans" in which:

    (a) the debtor is a person other than an organization;

    (b) the debt is incurred primarily for a personal, family or household purpose;

    (c) either the debt is payable in installments or a loan finance charge is made; and

    (d) either the principal does not exceed Fifty Thousand Dollars ($50,000.00).

10. In violation of 14A O.S. § 5-203, Defendants regularly issue consumer loans for products and services which fail to comply with Oklahoma Consumer Credit Code (OCCC) accurate disclosure requirements, specifically:

    a) Defendants failed to deliver all material disclosures, prior to consummation, in a form the Class Representative or its members may keep in violation of 14A O.S. § 3-306;

    b) Defendants failed to give the Class Representative or its members the identity of the lender's assignee in violation of 14A O.S. § 3-306 2(a);

2

c) Defendants failed to accurately disclose to the Class Representative or its members "the amount financed" or to disclose the amount of credit to which the debtor has use, or to segregate those amounts from other amounts in violation of 14A O.S. § 3-306.2(b) (i);

d) Defendants failed to disclose the Class Representative or its members a statement of the debtor's right to obtain, upon a written request, a written itemization of the amount financed, and included spaces for a "yes" and "no" indication to be initialed by the debtor to indicate whether the debtor wants a written itemization of the amount financed.

e) Defendants failed to provide or respond to Disclosure Requirement (d) above or provide a written itemization of the amount financed in violation of 14A O.S. § 3-306 2(cc) (ii);

    i.    the amount that is or will be paid directly to the debtor;

    ii.    the amount that is or will be credited to the debtor's account to discharge obligations owed to the lender;

    iii.    each amount that is or will be paid to third persons by the lender on the debtor's behalf, together with an identification of or reference to the third person; and

    iv.    the total amount of any charges described in the division (cc) of subparagraph (i) of this paragraph.

    v.    The sum of the amount financed and the finance charge, which shall be termed the "total of payments".

    vi.    (f) The number, amount, and due dates or period of payments scheduled to repay the total of payments.

    vii.    (g) Descriptive explanations of the terms "amount financed", "finance charge", "annual percentage rate" and "total of payments", as specified by the Administrator.

    viii.    Any dollar charge or percentage amount which may be imposed by a lender solely on account of a late payment, other than a deferral or extension charge.

    ix.    (j) A statement indicating whether or not the debtor is entitled to a rebate of any finance charge upon refinancing or prepayment in full pursuant to acceleration or otherwise, if the obligation involves a precomputed finance charge. A statement indicating whether or not a penalty will be imposed in those same circumstances if the obligation involves a finance charge computed from time to time by application of a rate to the unpaid principal balance.

    x.    (k) A statement that the debtor should refer to the appropriate contract document for any information such document provides about nonpayment,

default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties;

xi.   The preceding list of disclosure violations by Defendants, as it relates to the loans issued to the Class Representative or its members, are prohibited under 14A O.S. § 3-306 2(aa) through (k).

## CLASS REPRESENTATION ALLEGATIONS
### *Statement of Maintainable Class Claims*

(Plaintiff hereby incorporates ¶¶ 1-11 above)

11. Pursuant to 12 O.S. § 2023, this is a case maintainable on a class-wide basis pursuant to 12 O.S. §§ 2023B.2 and 3, and the Class Representative brings this action on behalf of herself and of a class of all other persons similarly situated, to remedy the ongoing unfair, unlawful, and/or deceptive business practices alleged herein, and seeks redress on behalf of all those persons who have been harmed thereby, more specifically as set out below:

12. Anderson is a "Merchant", approved, trained and contractually engaged in the assignment of loans to Harris/GreenSky as more fully described below.

13. Anderson uses deceptive practices to sell its products, door-to-door, to home owners in Oklahoma pursuant to an extension of credit; the terms of which are not timely and accurately disclosed to homeowners prior to consummation or prior to incurring liability thereon.

14. Anderson then immediately assigns its non-compliant, unauthorized credit extensions to BMO Harris Bank N.A. via its GreenSky Loan Program, who ratifies Anderson's actions by reporting negatively to consumer reporting agencies, conducting collection calls, and demanding payments in writing from consumers despite the fraudulent nature of the loan(s) issuance and the objections stated by said consumers.

15. GreenSky LLC is a loan servicing subsidiary of BMO Harris Bank N. A. with its principal place of business at 5565 Glenridge Connector, Suite 700, Atlanta, Georgia 30342.

4

16. BMO Harris conducts business throughout the United States through GreenSky LLC, its subsidiary administering the GreenSky Program, and engages in accepting assignment of loan from Assignors, origination and servicing activities related to the GreenSky Program.

17. Harris/GreenSky therefore engages in offering or providing a "financial product or service" within the meaning of 12 U.S.C. § 5481(15)(A)(i) and the Oklahoma Consumer Credit Code 14A O.S. § 3-306 and 2-104.

18. Harris/GreenSky engages in origination activities and services loans offered or provided for use by consumers primarily for personal, family, or household purposes within the meaning of 12 U.S.C. § 5481(5)(A) and 14A O.S. § 2-104.

19. Harris/GreenSky are "covered persons" under 12 U.S.C. § 5481(6) and the Oklahoma Consumer Credit Code.

### Identification of Common Questions of Law or Fact

(Plaintiff hereby incorporates ¶¶ 1-19 above)

20. Pursuant to 12 O.S. § 2023A.2, there are questions of law and fact common to the Class, which common issues predominate over any issues involving owing individual class members.

21. The factual questions common to the Class Representative and to each class member is that each class member's loan for Anderson windows in Oklahoma were presented, sold and loan originated as described below.

22. Pursuant to 12 O.S. § 2023A.2, the principal legal question common to the Class Representative and to each class member is whether adequate consumer credit disclosures were provided to class members prior to consummation or liability for the loans originated by Anderson and later sold to Harris/GreenSky.

### Allegations of Typicality

5

(Plaintiff hereby incorporates ¶¶ 1-22 above)

23. Pursuant to 12 O.S. § 2023A.3, the Class Representatives claims are typical of those of the

classes it seeks to represent in that the Class Representative was solicited to purchase

replacement windows without providing mandatory disclosures of the consumer credit

extension loan and as such, the claim of the Class Representative is identical to that of the

class members.

### *Definition of Class*

(Plaintiff hereby incorporates ¶¶ 1-23 above)

24. Pursuant to 12 O.S. § 2023C.3, the class is composed of all Oklahoma consumers who, since

one year prior to the filing of this litigation,

a) Defendants failed to deliver all material disclosures, prior to consummation, in a form the Class Representative or its members may keep in violation of 14A O.S. § 3-306;

b) Defendants failed to give the Class Representative or its members the identity of the lender's assignee in violation of 14A O.S. § 3-306 2(a);

c) Defendants failed to accurately disclose to the Class Representative or its members "the amount financed" or to disclose the amount of credit to which the debtor has use, or to segregate those amounts from other amounts in violation of 14A O.S. § 3-306 2(b) (i);

d) Defendants failed to disclose the Class Representative or its members a statement of the debtor's right to obtain, upon a written request, a written itemization of the amount financed, and included spaces for a "yes" and "no" indication to be initialed by the debtor to indicate whether the debtor wants a written itemization of the amount financed.

e) Upon receiving an affirmative indication, the lender shall provide, at the time other disclosures are required to be furnished, a written itemization of the amount financed in violation of 14A O.S. § 3-306 2(cc) (ii);

xii. the amount that is or will be paid directly to the debtor;

xiii. the amount that is or will be credited to the debtor's account to discharge obligations owed to the lender;

xiv.    each amount that is or will be paid to third persons by the lender on the debtor's behalf, together with an identification of or reference to the third person; and

xv.    the total amount of any charges described in the division (cc) of subparagraph (i) of this paragraph.

xvi.    The sum of the amount financed and the finance charge, which shall be termed the "total of payments".

xvii.    (f) The number, amount, and due dates or period of payments scheduled to repay the total of payments.

xviii.    (g) Descriptive explanations of the terms "amount financed", "finance charge", "annual percentage rate" and "total of payments", as specified by the Administrator.

xix.    Any dollar charge or percentage amount which may be imposed by a lender solely on account of a late payment, other than a deferral or extension charge.

xx.    (j) A statement indicating whether or not the debtor is entitled to a rebate of any finance charge upon refinancing or prepayment in full pursuant to acceleration or otherwise, if the obligation involves a precomputed finance charge. A statement indicating whether or not a penalty will be imposed in those same circumstances if the obligation involves a finance charge computed from time to time by application of a rate to the unpaid principal balance.

xxi.    (k) A statement that the debtor should refer to the appropriate contract document for any information such document provides about nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties;

xxii.    The preceding list of disclosure violations by Defendants, as it relates to the loans issued to the Class Representative or its members, are prohibited under 14A O.S. § 3-306 2(aa) through (k).

### *Adequacy of Class Representative*

(Plaintiff hereby incorporates ¶¶ 1-24 above)

25. Pursuant to 12 O.S. § 2023A.4, the Class Representative will fairly and adequately protect and represent the interest of each class member.

26. The Class Representative has retained counsel with substantial experience in handling class actions in federal and state court. See, e.g., Martinez v. FMS Inc., 2008 WL 4010101 (M.D. Fla. 2008); Brown v. SCI Funeral Services, 212 F.R.D. 602 (S.D.Fla.2003); Baez v. Wagner

7

& Hunt, P.A., 442 F.Supp. 2d 1273 (S.D. Fla. 2006); Jansen v. West Palm Nissan, Inc., 2006 WL 1582068 (S.D. Fla. 2006); Tyrell v. Robert Kaye & Associates, P.A., 223 F.R.D. 686 (S.D. Fla. 2004). Further, counsel for the Class Representatives has substantial experience in litigating individual and class actions under the Uniform Commercial Code.  See, e.g., Jackson v. Southern Auto Finance Co., 988 So.2d 721 (Fla. 4th DCA 2008); Muro v. Hermano's Auto Wholesalers, Inc., 514 F.Supp. 2d 1343 (S.D. Fla. 2007); Westlake Financial Services v. Ray, 923 So.2d 555 (Fla. 4th DCA 2006).

27. The Class Representative has no conflicts of interest which would interfere with their ability to represent the interests of the class members.

### Appropriateness of Hybrid Class Treatment Under §§ 2023 B.2 and 3
(Plaintiff hereby incorporates ¶¶ 1-27 above)

28. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek redress individually. The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to the individual class members against Harris/GreenSky.

29. The Class Representative is represented by counsel competent and experienced in both consumer protection and class action litigation.

30. Members of the proposed class who have an interest in individually controlling the prosecution of separate claims against Anderson and Harris/GreenSky will not be prejudiced by this action.

8

31. Each member of the proposed class will be identified through discovery from Harris/GreenSky and will be notified and given an opportunity to opt out of their respective class(es).

32. The Class Representative does not presently know the nature and extent of any pending litigation to which a member of the proposed class is a party and in which any question of law or fact controverted in the present action is to be adjudicated. The Class Representative will identify any such pending litigation by

33. This Court is an appropriate forum for the present action in that the Class Representative is, and at all times herein mentioned has been, a resident of this county; the Class Representatives vehicle was purchased and repossessed in this county; and Harris/GreenSky does business in this county, including without limitation providing to residents of this county financing of motor vehicles that are consumer goods.

34. Certification of a class under 12 O.S. § 2023B.2 is appropriate as Harris/GreenSky has acted on grounds generally applicable to the Class with respect to the collection and credit reporting activity by Harris/GreenSky described above, thereby making appropriate equitable relief with respect to the Class as a whole.

35. Unless restrained from such activities, Harris/GreenSky will continue to unlawfully harm the interests of the Class Representative and the class for which no adequate remedy at law exists.

36. Certification of a class under 12 Oklahoma Statutes Annotated § 2023B.3 is also appropriate in that:

37. The questions of law or fact common to the members of the class predominate over any questions affecting an individual class member; and

9

38. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

39. The Class Representative requests a certification of a "hybrid" class for monetary damages under 12 Oklahoma Statutes Annotated § 2023B.3 and for equitable relief under 12 Oklahoma Statutes Annotated § 2023B.2. See, Penson v. Terminal Transport Co., Inc., 634 F.2d 989, 994 (5th Cir.1981); Agan v. Katzman & Korr, P.A., 222 F.R.D. 692 (S.D.Fla.2004).

40. There are no difficulties likely to be encountered by the Court in the management of this proposed class action.

41. The Class Representatives counsel is entitled to a reasonable fee from the class members or from a common fund for the handling of this action.

## Harris/GreenSky's Business Model
(Plaintiff hereby incorporates ¶¶ 1-41 above)

42. Harris/GreenSky engages in origination and servicing activities on behalf of GreenSky Program banks.

43. Harris/GreenSky uses Merchants to market and intake loan applications from consumers at the point of sale. Most of these Merchants provide home improvement products and services, health care services, or retail products.

44. Anderson is one of those Merchants in the State of Oklahoma.

45. Merchants must apply to participate in the GreenSky Program and if accepted into the GreenSky Program, Harris/GreenSky generally train Merchants, including on how to market and promote the GreenSky Program loans, intake consumers' personal and financial information, submit loan applications to Harris/GreenSky on behalf of consumers or assist consumers in submitting loan applications directly to Harris/GreenSky.

10

46. Harris/GreenSky allows most Merchants to submit consumer loan applications online using Harris/GreenSky 's website or mobile applications, or over the phone if the Merchant indicates it has a signed application information form or a signed application from a consumer.

47. Once Harris/GreenSky receives an application, it makes an on-the-spot financing decision by comparing a consumer's application data with the lending criteria of the GreenSky Program banks, using proprietary technology and algorithms. These loans typically range from a few thousand dollars to tens of thousands of dollars.

48. When a consumer or Merchant submits a loan application through Harris/GreenSky 's website or mobile application, the approved loan terms are displayed on the computer or tablet at the conclusion of the application process.

49. Where a Merchant submits a loan application on a consumer's behalf, however, the consumer may view the approved loan terms on the computer or tablet only if the Merchant shares the screen with the consumer.

50. Until at least April 2019, if Harris/GreenSky determined that an applicant qualified for a loan, the loan application process was complete. Harris/GreenSky mailed or emailed loan documentation to consumers, but consumers were not required to sign and return that loan documentation to consummate the loan.

51. Harris/GreenSky also issues consumers a "shopping pass" number, which functions like a credit card (Shopping Pass). Harris/GreenSky treats use of the Shopping Pass, or associated funds, as acceptance of the loan.

52. Harris/GreenSky does not disburse the loan proceeds to the consumer. Rather, to pay for a product or service, a consumer provides the Shopping Pass number to her Merchant or

11

otherwise authorizes a transaction and the Merchant, in turn, uses the Shopping Pass number or other authorization to apply for payment from Harris/GreenSky.

53. Harris/GreenSky then disburses loan proceeds directly to the Merchant.

54. Most of Harris/GreenSky's revenue is earned from fees that Merchants pay to Harris/GreenSky every time they receive payment from the proceeds of a consumer's loan.

55. In some instances, Merchants have misused these Shopping Pass numbers.

56. Merchants sometimes applied for a loan without a consumer's knowledge and entered their own email addresses as the consumer's own on the loan application. Because of this, Harris/GreenSky emailed the consumer's loan documents or Shopping Pass number to the Merchant instead of the consumer.

57. In other instances, Merchants applied for a loan without a consumer's knowledge and entered the consumer's correct mailing address on the application, but because the consumer was unaware of the loan, the consumer ignored the loan documents Harris/GreenSky mailed, thinking they were promotional materials.

58. Consumers sometimes received mailed loan documents–which could take weeks to arrive after a loan application–only after the Merchant had already used the Shopping Pass number without the consumer's knowledge.

### The Specific Facts related to the Class Representative Ms. Parisi

59. Here, the proposed class representative, Ms. Parisi was interested in Anderson's advertised replacement windows for her home in Oklahoma City, OK.

60. Ms. Parisi met with Russell Kelley (Russell), of Defendant, C Cashion Windows, LLC d/b/a Renewal by Andersen of Oklahoma (Anderson) on or around 11/23/2021.

12

61. Russell indicated Ms. Parisi could purchase the windows with zero money down, zero interest on the loan for two years and zero payments for 24 months after the installation.

62. Ms. Parisi informed Russell she had recently been diagnosed with multiple myeloma and would need the 24 month option due to her health issues and its costs and time related to treatment.

63. Russell and Ms. Parisi discussed the windows she wanted to replace and made choices regarding those windows.

64. Russell indicated that they would install the nine (9) windows on a "split plan"; planning to install five windows now and the rest at another time.

65. Russell showed Ms. Parisi an IPad to evidence that she had been approved for that type loan but the terms of the credit extension contract were not visible; Russell didn't release the IPad and Ms. Parisi was not provided the opportunity to read it.

66. Russell assured Ms. Parisi that she would be emailed a copy of the contract.

67. Based upon Russell's statements, Ms. Parisi agreed to the purchase but didn't execute any documents; only the IPad.

68. Russell never mailed her a copy of the contract and Ms. Parisi was not provided any accurate disclosures about the interest she would be paying on the credit extension.

69. On or about December 7, 2021, Ms. Parisi was notified by Defendant Harris/GreenSky that Anderson had received an advance payment of $8,871.50 for the sale of its windows to Ms. Parisi and that her payments would start 6 months after installation of the windows.

70. GreenSky' s letter also informed Ms. Parisi that if she didn't authorize the payment to contact Harris/GreenSky immediately, which Ms. Parisi did.(Exhibit 1, Harris/GreenSky Letter to Parisi)

13

71. Ms. Parisi immediately contacted Russell with Anderson, who falsely told Ms. Parisi this had never happened before and he would follow up to find out what happened.

72. Ms. Parisi never heard from Russel again.

73. Ms. Parisi then contacted Harris/GreenSky to inform them she had not authorized the payments, was unaware of their involvement, had not been informed of the interest rate, and had not agreed for payments to start six months after the installation of windows.

74. Ms. Parisi informed Harris/GreenSky she could not agree to such a loan because of the cancer treatment she was undergoing which would not be completed until the end of 2022.

75. Anderson never installed any windows at Ms. Parisi's home.

76. Ms. Parisi disputed that she owed Harris/GreenSky any money on the contract; a fact acknowledged by Harris/GreenSky in writing to Ms. Parisi shortly thereafter.

77. Harris/GreenSky did not notify the credit bureaus to whom it reported Ms. Parisi's loan, that she disputed the alleged debt.

78. Harris/GreenSky ignored Ms. Parisi's request to delete its tradeline, ignored the fact Anderson defrauded her, and ignored her request to provide her a copy of the alleged signed contract.

79. On December 10, 2021, Ms. Parisi again objected to the new loan being reported under her name and credit history.(Exhibit 2, 12/10/21 Parisi Email to Harris/GreenSky)

80. Harris/GreenSky failed to conduct any written investigation on Ms. Parisi's complaints but instead stated it would "get the plan changed" for her.(Exhibit 3, 12/14/21 email to Ms. Parisi)

81. On 12/17/21, Harris/GreenSky stated, "got the plan changed and to let Harris/GreenSky know when the account was created". (12/17/21 Harris/GreenSky email to Parisi)

14

82. Remarkably, Harris/GreenSky sent Ms. Parisi a letter stating that she had failed to "participate" in her own complaint and its resolution.(Exhibit 4, Harris/GreenSky letter to Parisi)

83. Harris/GreenSky continued its false reporting on the alleged loan it purchased from Anderson.

84. Ms. Parisi has endured continued stress from Harris/GreenSky's harassment and defamation throughout 2022.

85. Harris/GreenSky's actions herein are a violation of the 7/12/21 CFPB Consent Order entered into by Harris/GreenSky.(Exhibit 5, CFPB Consent Order)

86. On July 18, 2022, Ms. Parisi sent a formal letter to Harris/GreenSky again reiterating the details of Anderson's fraud and Harris/GreenSky's participation, but the communication failed to eliminate Harris/GreenSky's false reporting to others about her.

87. Harris/GreenSky was then notified that Ms. Parisi had retained undersigned counsel as a result of its actions and all future communications should cease with Ms. Parisi.

88. Harris/GreenSky continued to contact Ms. Parisi after receipt of undersigned counsel and continues to defame her in its credit reporting.

89. Harris/GreenSky has previously stipulated to an Agreed Order finding it violated the Consumer Financial Protection Bureaus' rules when accepting assignment of loans from entities such as Anderson.

90. Harris/GreenSky regularly accepts assignment of loans originated by Anderson even though it is aware that Anderson regularly fails to abide by Oklahoma's Consumer Protection Act or Consumer Protection Act.

91. Anderson regularly extends credit to consumers to facilitate the sale of its windows and is subject to the Oklahoma Consumer Credit Code (OCC) and the Oklahoma Consumer protection Act by failing to provide accurate and timely disclosures of loan terms prior to consummation.

92. Anderson violated the Oklahoma Consumer Credit Code disclosure requirements in its door-to-door sales of replacement windows pursuant to the consumer credit extension in the State of Oklahoma.

93. Anderson, in concert with Harris GreenSky, also committed fraud and forgery when its agent falsely indicated the terms of the window sale credit extension were other than previously advertised, as enumerated above.

94. Harris/GreenSky is liable for the actions taken by Anderson in that it accepted Assignment of the loan without ensuring compliance with multiple state laws.

95. Harris/GreenSky committed its own independent acts of fraud by stating that it would resolve the issue of Anderson's fraud and lack of disclosure of the cost of the credit extension to the Class Representative and its members by continuing to defame them by reporting falsely that credit extensions were valid, in default, or both.

96. Harris/GreenSky continued to harass and bill Ms. Parisi, falsely indicating that she was past due; causing Ms. Parisi unnecessary anguish and emotional distress while undergoing cancer treatment.(Exhibit 6, 10/2/22 Past Due Notice from Harris/GreenSky)

97. Harris/GreenSky ratified and benefited from its Assignor's violations of law when it refused to delete the false and defamatory information it published regarding the Class Representative and its members.

16

98. Harris/GreenSky failed to conduct a meaningful investigation of Ms. Parisi's dispute following receipt of Ms. Parisi's statements in its regard

99. Harris/GreenSky has purposefully and intentionally continued to falsely report that Ms. Parisi is in default even after undersigned counsel requested all communications cease.

100.        Defendants and its agents are prohibited from destroying, concealing or altering any document, testimony, recording or electronic storage of relevant evidence regarding the claims, defenses or allegations regarding this matter; Defendants are admonished to preserve and protect such evidence.

101.        The Class Representative and its members are entitled to their actual, consequential, statutory and exemplary damages as a result of the Defendants actions, along with their reasonable attorney fees and costs.

Sincerely,

M. Kathi Rawls, OBA #18814
Minal Gahlot, OBA#22145
Rawls Gahlot, PLLC
2404 S. Broadway
Moore, Ok 73160
Phone: 405-912-3225
Email: kathi@rawlsgahlot.com
Email: minal@rawlsgahlot.com
ATTORNEYS FOR PLAINTIFF

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

17

 

12/07/2021

Account Activity Update

Dear SUSAN K PARISI,

For your records, this is an account activity update.

Please note: **No payment is due and no interest will be charged until your project is complete.***

You can also go to www.greenskyonline.com to access your account online and review your loan documents.

Regards,

BMO HARRIS BANK N.A.
GreenSky® Program

If you did NOT authorize this account or these charges, please contact us at service@greensky.com or **866-936-0602** immediately!

\* This is what Complete means: The purchase window will close on 05/26/2022 or when your merchant submits a final transaction and confirms the job is complete, whichever comes first.

PLAINTIFF'S
EXHIBIT
1

**Your Billing Rights: What To Do If You Find a Mistake on Your Statement**
If you think there is an error on your statement, write to us at:
GreenSky® Program
Attention: Disputes
PO Box 29429
Atlanta, GA 30359
You may also contact us at service@greensky.com.

In your letter, give us the following information:
- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing. You may call us, but if you do, we are not required to investigate any potential errors and you may have to pay the amount in question.

**While we investigate whether or not there has been an error, the following are true:**
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your available loan funds (if any).

**Your Rights If You Are Dissatisfied With Your Payment Card Purchases**
If you are dissatisfied with the goods or services that you have purchased with your payment card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.
To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your payment card for the purchase.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing.

**When Will You Credit My Payment?**
As of the business day we receive it, as long as payments are made by 6 p.m. ET.

The Servicemembers Civil Relief Act (SCRA) provides important financial and legal protections to servicemembers, including caps on interest rates and stays of certain legal proceedings. Learn more online at www.militaryonesource.mil (search for "SCRA").

1/4/22, 11:40 AM                    Yahoo Mail - Re: GreenSky case 04386281 [ ref:_00Dd0dh5w._500301VuXKY:ref ]

**Re: GreenSky case 04386281 [ ref:_00Dd0dh5w._500301VuXKY:ref ]**

From: Customer Solutions (cst@greensky.com)

To:      sparisi21@yahoo.com

Date:   Friday, December 10, 2021, 01:43 PM CST

Hi Susan,

I am sorry and understand your frustration. I have reached out to the merchant about your concern. Our records shows you signed agreeing to the loan terms. Loan plan 7541, you will not be billed until the project is fully completed. Once completed, you will have 24 months with interest waived and required minimum payment due. Please call me if you have further questions.

Thank you

———————— Original Message ————————
From: Susan Parisi [sparisi21@yahoo.com]
Sent: 12/10/2021 1:29 AM
To: cst@greensky.com
Subject: Re: GreenSky case 04386281 [ ref:_00Dd0dh5w._500301VuXKY:ref ]

You did NOT explain any loan process to me and I do NOT authorize any transaction which I have already stated. I do NOT do well with lies. I have many questions related to this situation. I was told I qualified for a 24 month, NO money down, No Interest, and NO payment situation to begin 24 months after installation, now I am being told I did NOT qualify for that and you have removed that original offer. Well this is to inform you again that I am NOT doing business with you or Renewal by Anderson and IF you sent them money without my consent that is ON you NOT me. I did NOT authorize anything. I will provide you the name of my attorney and they will deal with this. This is a very sketchy situation you have set up with Renewal by Anderson I suggest this gets straightened out quickly.   Susan Parisi

On Thursday, December 2, 2021, 07:57:40 AM CST, Customer Solutions <cst@greensky.com> wrote:

Good Morning Susan,

After explaining the loan process, do you authorize this transaction? If you have any questions, please give me a call.

———————— Original Message ————————
From: Customer Solutions [cst@greensky.com]
Sent: 12/1/2021 5:02 PM
To: sparisi21@yahoo.com
Subject: Re: GreenSky case 04386281 [ ref:_00Dd0dh5w._500301VuXKY:ref ]

The account will be charged because it is part of the loan process but based on your loan plan, we will not bill you until the job is completed or purchase window expiration date-05/26/22. So the account is being charged but you are not going to be billed just yet.

———————— Original Message ————————
From: Susan Parisi [sparisi21@yahoo.com]



1/2

1/4/22, 11:43 AM                                    Yahoo Mail - Re: GreenSky case 04386281 [ ref:_00Dd0dh5w._500301VuXKY:ref ]

ReF #

Re: GreenSky case 04386281 [ ref:_00Dd0dh5w._500301VuXKY:ref ]

From: Customer Solutions (cst@greensky.com)

To:    sparisi21@yahoo.com

Date:  Friday, December 17, 2021, 02:55 PM CST

Hi Susan,

I got the plan change approved. I will let you know once the account is created.

——————— Original Message ———————
From: Customer Solutions [cst@greensky.com]
Sent: 12/14/2021 4:21 PM
To: sparisi21@yahoo.com
Subject: Re: GreenSky case 04386281 [ ref:_00Dd0dh5w._500301VuXKY:ref ]

Hey Susan,

I am going to see if I can get the plan change approved. I will call you with an update.

——————— Original Message ———————
From: Customer Solutions [cst@greensky.com]
Sent: 12/10/2021 2:43 PM
To: sparisi21@yahoo.com
Subject: Re: GreenSky case 04386281 [ ref:_00Dd0dh5w._500301VuXKY:ref ]

Hi Susan,

I am sorry and understand your frustration. I have reached out to the merchant about your concern. Our records shows you signed agreeing to the loan terms. Loan plan 7541, you will not be billed until the project is fully completed. Once completed, you will have 24 months with interest waived and required minimum payment due. Please call me if you have further questions.

Thank you

——————— Original Message ———————
From: Susan Parisi [sparisi21@yahoo.com]
Sent: 12/10/2021 1:29 AM
To: cst@greensky.com
Subject: Re: GreenSky case 04386281 [ ref:_00Dd0dh5w._500301VuXKY:ref ]

You did NOT explain any loan process to me and I do NOT authorize any transaction which I have already stated. I do NOT do well with lies. I have many questions related to this situation. I was told I qualified for a 24 month, NO money down, No Interest, and NO payment situation to begin 24 months after installation, now I am being told I did NOT qualify for that and you have removed that original offer. Well this is to inform you again that I am NOT doing business with you or Renewal by Anderson and IF you sent them money without my consent that is ON you NOT me. I did NOT authorize anything. I will provide you the name of my attorney and they

PLAINTIFF'S
EXHIBIT
3

1/3



PO Box 29429
Atlanta, GA 30359

12/27/2021

SUSAN K PARISI
1613 N MARKWELL AVE
OKLAHOMA CITY , OK 73127

Dear SUSAN,

GreenSky® received your complaint. This matter is important to us, and GreenSky is committed to working with you to resolve your complaint.

In order to address your concerns, we need additional information from you. Our Customer Solutions Advocate has made several efforts to reach you for this additional information, but has been unsuccessful in those attempts.

Because we are unable to resolve your complaint without your participation, we have closed this matter at this time. Upon receipt of the needed information, we will happily reopen your case for further investigation. Please note that your loan and obligations under the loan agreement are still in effect. In order to protect your credit, please continue to make your required payments.

Our goal is to provide excellent customer service, and we are eager to address your concern. To provide the information requested, please contact your Customer Advocate at 855-849-0088 and reference this letter. If your concern has already been addressed and resolved, please let us know.

Sincerely,

GreenSky® Loan Services

2111233004



## UNITED STATES OF AMERICA
## CONSUMER FINANCIAL PROTECTION BUREAU

ADMINISTRATIVE PROCEEDING
File No. 2021-CFPB-0004

In the Matter of:

GREENSKY, LLC

**CONSENT ORDER**

The Consumer Financial Protection Bureau (Bureau) has reviewed certain origination and servicing activities of GreenSky, LLC (Respondent, as defined below) and has identified the following law violations: (1) Respondent engaged in unfair acts and practices with regard to loans to consumers who did not authorize them in violation of §§ 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B); and (2) Respondent engaged in unfair acts and practices by structuring its loan origination and servicing activities in a manner that enabled unauthorized loans in violation of §§ 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B). Under §§ 1053 and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5563, 5565, the Bureau issues this Consent Order (Consent Order).



PLAINTIFF'S EXHIBIT 5

representations, or warranties other than what is contained in this Consent Order and the accompanying Stipulation. This Consent Order and the accompanying Stipulation supersede any prior oral or written communications, discussions, or understandings.

135. Nothing in this Consent Order or the accompanying Stipulation may be construed as allowing Respondent, its Board, officers, or employees to violate any law, rule, or regulation.

**IT IS SO ORDERED**, this 12th day of July 2021.

_David K. Uejio_
David Uejio
Acting Director
Consumer Financial Protection Bureau

57





**GreenSky®**
A Goldman Sachs Company
PO Box 2730
Alpharetta, GA 30023

T9 P1 162562-4-3-1 - 4849
SUSAN PARISI
1613 N MARKWELL AVE
OKLAHOMA CITY, OK  73127-3042

Past Due Notice

10/02/2022

Account Number Ending In: 262561
Total Balance: $9,688.50
Past Due Amount: $224.50
Fees: $78.00
Amount Due by 10/20/2022: $449.00
Lender: BMO HARRIS BANK N.A.

Dear SUSAN,

Thank you for being a valued customer. We noticed that you missed your most recent payment on your GreenSky® Program Loan. As a result, your account is now past due. We ask that you pay the Past Due Amount of $224.50 now. The Amount Due by 10/20/2022 includes the Past Due Amount and the current month's payment.

You can make a payment online at www.greenskyonline.com/greensky/guest-portal, by calling 833-981-1372, or mailing your payment to:

Dept #3025, GreenSky® Program
PO Box 2153, Birmingham AL 35287-3025

Please include your payment slip or coupon with your mailed payment or note your account number on your check.

If you have any questions, or would like to notify us of a payment, please contact us toll-free at 833-981-1372 Monday through Thursday 8am-11pm, Friday 8am-10pm, and Saturday 8am-5pm - All Eastern Time.

Sincerely,

BMO HARRIS BANK N.A.
GreenSky® Program
833-981-1372

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

IF YOU HAVE BEEN DISCHARGED FROM LIABILITY ON THIS ACCOUNT BECAUSE OF BANKRUPTCY PROCEEDINGS, OR IF YOU ARE THE SUBJECT OF A PENDING BANKRUPTCY PROCEEDING, THIS LETTER IS MEANT FOR INFORMATION PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT FOR PAYMENT OR TO IMPOSE PERSONAL LIABILITY FOR ANY OBLIGATION.

See Reverse Side for City and State Notices.

PLAINTIFF'S
EXHIBIT
6

**Important Notice for Washington, D.C. Residents:**

You have the right to request any of the following concerning your debt:

1. Documentation of the name of the original creditor as well as the name of the current creditor or owner of your debt;
2. Your last account number with the original creditor;
3. A copy of the signed contract, signed application, or other documents providing evidence of your liability and its terms;
4. The date that your debt was incurred;
5. The date of your last payment, if applicable; and,
6. An itemized accounting of the amount claimed to be owed including the amount of the principal, the amount of any interest, fees, or charges, and whether the charges were imposed by the original creditor, a debt collector, or a subsequent owner of the debt.

You may request the above information by contacting us by phone at 833-981-1372, email at service@greensky.com, or mail at GreenSky® Program, P.O. Box 2730, Alpharetta, GA 30023.

**NY RESIDENTS: YOU MAY REQUEST US TO PROVIDE COLLECTION COMMUNICATIONS IN AN ALTERNATIVE, REASONABLY ACCOMODATABLE FORMAT SELECTED BY US BY CALLING 833-909-4064.**

©2008-2022 GreenSky, LLC | GreenSky® and GreenSky Patient Solutions® are loan program names for certain consumer credit plans extended by participating lenders to borrowers for the purchase of goods and/or services from participating merchants/providers. Participating lenders are federally insured, federal and state chartered financial institutions providing credit without regard to age, race, color, religion, national origin, gender or familial status. GreenSky® and GreenSky Patient Solutions® are registered trademarks of GreenSky, LLC. GreenSky Servicing, LLC services the loans on behalf of participating lenders. NMLS #1416362. GreenSky, LLC and GreenSky Servicing, LLC are subsidiaries of Goldman Sachs Bank USA. All rights reserved. Loans originated by Goldman Sachs are issued by Goldman Sachs Bank USA, Salt Lake City Branch.