## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) SUSAN PARISI,                )
                                 )
                                 )
        Plaintiff,               )
                                 )
v.                               )        Case No. CIV-23-115-R
                                 )
(1) C CASHION WINDOWS, LLC d/b/a)
RENEWAL BY ANDERSON OF           )
OKLAHOMA, and (2) BMO HARRIS     )
BANK, NA d/b/a GREENSKY, LLC,    )
                                 )
        Defendants.              )

**DEFENDANT GREENSKY, LLC'S, INCORRECTLY IDENTIFIED AS BMO
HARRIS BANK, NA D/B/A GREENSKY, LLC, REPLY BRIEF IN SUPPORT OF
MOTION TO COMPEL ARBITRATION AS TO ALL CLAIMS ASSERTED BY
PLAINTIFF AND TO DISMISS OR STAY CLAIMS OF PLAINTIFF PENDING
ARBITRATION**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant GreenSky, LLC, incorrectly identified as BMO Harris Bank, NA d/b/a

GreenSky, LLC (hereinafter "GreenSky"), files this reply brief in support of its Motion to

Compel Arbitration (the "Arbitration Motion") as to all claims asserted by Plaintiff Susan

Parisi (hereinafter "Plaintiff") and to dismiss or stay claims of Plaintiff pending arbitration.

In further support of its Arbitration Motion, GreenSky respectfully shows as follows:

### I.
### PLAINTIFF CANNOT PROPERLY CONTEST THE ARBITRATION
### AGREEMENT AFTER ACTIVATING THE LOAN AGREEMENT

In the Loan Agreement, there is a reference to the arbitration agreement in capital

and bolded letters that states: "**THIS LOAN AGREEEMENT CONTAINS AN**

1

**ARBITRATION PROVISION THAT, UNLESS YOU REJECT IT, MAY LIMIT YOUR RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM."**  The Loan Agreement is not signed, but it states as follows:

> **ACCEPTANCE OF THIS LOAN AGREEMENT BY ELECTRONIC SIGNATURE:**  The first use of the Shopping Pass or the associated loan to make a purchase will constitute acceptance by (all) Borrower(s) of the Terms of this Loan Agreement.  The dated physical or electronic record of such use will evidence the signature of (all) Borrower(s) on this Loan Agreement and have the same legal effect as a physical signature.

Arbitration Motion, Doc. 18-3, p. 12.  The Loan Agreement need not be physically or even electronically signed to be legally binding and enforceable, as assent can be manifested in other ways.  *See Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 767 (10th Cir. 2019); *International Union, United Mine Workers of Am. v. Big Horn Coal Co.*, 916 F.2d 1499, 1502 (10th Cir. 1990).

There is no basis for Plaintiff's apparent argument that she is somehow only bound to certain terms in the Loan Agreement that she specifically reviewed and approved.[1]  As a party to a contract, Plaintiff is presumed to have read and understood the terms of the contract, including any arbitration provision.  *Johnson v. Lynn Hickey Dodge Inc.*, 166 F.3d 347, 1998 WL 826829, at *2 (10th Cir. 1998) (table); *Schooley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 867 F. Supp. 989, *aff'd*, 107 F.3d 21 (10th Cir. 1997) (table).  It is disingenuous for her to assert after the fact that she is not bound to contractual provisions

---

[1]  In her Response, Plaintiff makes numerous references to a Consent Order GreenSky agreed to in a separate proceeding.  The Consent order is not relevant to Plaintiff's claims or any issues involving the arbitration agreement in this case.

she claims she did not review.  If that were the standard, it would be impossible to ever enforce any arbitration provision, as the party seeking to avoid arbitration could defeat any motion to arbitrate simply by denying that he or she reviewed and approved the specific arbitration provision.  *See Jones v. Sallie Mae, Inc.*, 2013 WL 6283483, *5 (M.D. Fla. Dec. 4, 2013) ("Plaintiff's signature on the Loan Application [acknowledging receipt of Promissory Note containing arbitration provision] is evidence that he received the Promissory Note and read it. His failure to recall receipt, without more, is not sufficient to create a jury issue [on arbitration].").

Significantly, there have been other cases in which parties in Plaintiff's position have attempted to avoid arbitration provisions in loan agreements involving GreenSky by stating they did not specifically agree to such provisions.  The courts in those cases have had no problem in holding that the arbitration agreements in those loan agreements were nevertheless valid and enforceable.  *See, e.g., Terlizzi v. Altitude Marketing, Inc.*, 2018 WL 2196090, *7 (D. Colo. May 14, 2018) (granting GreenSky's motion to compel arbitration where "*before* drawing on the loan, the Terlizzis received the full text of the contract with GreenSky") (emphasis in original); *Alfortish v. GreenSky, LLC*, 2017 WL 699830 (E.D. La. Feb. 22, 2017) (enforcing arbitration agreement in loan documents even though plaintiffs claim they did not sign the documents, did not agree to arbitration and did not have access to the loan documents containing the arbitration provisions).[2]

---

[2]     Even though the arbitration agreement in this case was not signed, the FAA does not require a signature. *See Seawright v. American General Financial Services, Inc.* 507 F.3d 967, 978 (6th Cir. 2007).

On November 29, 2021 – after GreenSky had both mailed and emailed the Loan Agreement to her – GreenSky's records show that Plaintiff used the Shopping Pass included with, and made a part of, her Loan Agreement, and authorized Renewal by Andersen of Oklahoma ("Andersen of Oklahoma") to charge her account in the amount of $8,871.50.  Arbitration Motion, Kaliban Declaration, ¶ 28 (Doc. 18-3, p. 6).  As set forth in the quoted passage above, Plaintiff's use of the Shopping Pass after GreenSky had sent her the Loan Agreement was a manifestation of her assent to the terms of the Loan Agreement, which included the arbitration agreement.[3]  *See, e.g., Vernon v. Qwest Communications Int'l, Inc.*, 857 F. Supp.2d 1135, 1150-51 (D. Colo. 2012) (holding subscribers to internet service manifested their assent to providers terms and conditions, including arbitration agreement, by becoming subscribers); *Bischoff v. DirecTV, Inc.*, 180 F. Supp.2d 1097, 1105 (C.D. Cal. 2002) (holding that arbitration agreement was enforceable even though customer received contract after purchasing necessary equipment and after satellite programming had been activated).

The same standards apply in this case.  Plaintiff cannot ignore contract provisions in the Loan Agreement, activate the Loan Agreement by using the Shopping Pass, and then assert that she is not bound to terms such as the arbitration agreement because she allegedly did not "assent" to it.  Because she activated the Shopping Pass, she manifested her assent to the arbitration agreement, and she is legally bound to the arbitration agreement as much as any other terms in the Loan Agreement.  *See Wilmore v. Charter Communications LLC,*

---

[3]  Curiously, Plaintiff states in her Response that she received a letter from GreenSky "on or about November 26, 2021" stating that "it had sent a payment for $8,871.50, directly to Oklahoma Windows."  Response, p. 7.  That would not have been possible, as Plaintiff did not use the Shopping Pass until November 29, 2021.

No. 3:21-cv-01271 (JAM), 2023 WL 2503306, at *5 (D. Conn. Mar. 14, 2023) (holding plaintiff's statement that she did not review arbitration provision did not preclude enforcement of arbitration provision) (applying Alabama law); *Hulwick v. CBOCS East, Inc.,* No. 1:17-CV-468-TLS, 2018 WL 2933684, at *4 (N.D. Ind. Jun. 11, 2018) (holding plaintiff failed to raise fact issue regarding formation of arbitration agreement where she provided no evidence other than her own statement that she did not review arbitration agreement).

## II.
## PLAINTIFF'S EFFORT TO NULLIFY THE LOAN AGREEMENT AS A WHOLE IS UNAVAILING

Perhaps recognizing that she cannot be successful in challenging the arbitration agreement in particular, Plaintiff's second "plan of attack" to attempt to avoid arbitration is to assert that the Loan Agreement as a whole is somehow invalid and unenforceable. There is no basis for Plaintiff's assertion.  Moreover, this assertion, if accepted, effectively destroys Plaintiff's claim that she should be recognized as representative of a "class" she seeks to certify.

**A.   THE LOAN AGREEMENT WAS PROVIDED TO PLAINTIFF, AND PLAINTIFF ASSENTED TO ITS TERMS BY USING THE SHOPPING PASS**

It is undisputed that Plaintiff applied for a loan under GreenSky's program on or about November 23, 2021, so she cannot assert that she did not seek to enter into a loan agreement in the first place.  The basis of Plaintiff's current attack on the Loan Agreement as a whole is that she allegedly never assented to the payment terms of the final Loan Agreement.  According to Plaintiff, she thought she was taking out a loan under one set of

payment terms while the final Loan Agreement stated a different set of payment terms.  As set forth above, Plaintiff also claims she never saw the Loan Agreement at all until after she was allegedly bound to its terms.

Consistent with its business practices in consummating agreements such as the Loan Agreement in this case, GreenSky mailed a hard copy of the Loan Agreement to Plaintiff, at her stated address, on November 23, 2021.  Arbitration Motion, Kaliban Declaration, ¶¶ 18-21 (Doc. 18-3, pp. 4-5).  This mailing was not returned to GreenSky as undeliverable and GreenSky did not receive any return notifications that the Loan Agreement or any other mailings associated with Plaintiff's loan account were undeliverable. *Id*., ¶ 22 (Doc. 18-3, p. 5).   Plaintiff has not disputed the fact that the Loan Agreement was mailed to her at her proper address.

In addition to the fact that GreenSky immediately sent the Loan Agreement to Plaintiff by U.S. mail, GreenSky also emailed the Loan Agreement to Plaintiff on November 23, 2021 at the email address Plaintiff provided in her loan application.  *Id*., ¶¶ 23-24 (Doc. 18-3, p. 5).  This email was not returned as undeliverable, and Plaintiff has not disputed that GreenSky emailed the Loan Agreement to her at her proper email address. *Id*., ¶¶ 25-27 (Doc. 18-3, p. 6).  Significantly, Plaintiff admits in her Response that she did, in fact, receive an electronic copy of the Loan Agreement, although she claims it ended up in her spam folder.  *See* Response, pp. 6-7.

At the time the copies of the Loan Agreement were sent by U.S. mail and by electronic delivery to Plaintiff, she was not yet bound to the Loan Agreement.  As stated above, Plaintiff was required to engage in the affirmative act of using the Shopping Pass

before the Loan Agreement would be binding on her. Plaintiff manifested her assent to the payment terms of the Loan Agreement—and became bound to the terms of the Loan Agreement—by using the Shopping Pass on November 29, 2021. *Id.*, ¶¶ 29-30 (Doc. 18-3, pp. 6-7). At that point, GreenSky then relied on Plaintiff's assent to the Loan Agreement to provide funding for the purchase of windows. The fact that the merchant, Andersen of Oklahoma, allegedly did not properly install windows at Plaintiff's house after receiving loan proceeds through GreenSky does not affect Plaintiff's previous assent to the Loan Agreement. GreenSky ultimately arranged for the funding to be provided in reliance on Plaintiff's use of the Shopping Pass. Plaintiff cannot properly withdraw that assent after the funding has already been provided based on her post-funding dissatisfaction with Andersen of Oklahoma.[4]

**B.     PLAINTIFF'S EFFORT TO NULLIFY THE LOAN AGREEMENT SHOULD ALSO PRECLUDE HER FROM ASSERTING CLASS ACTION CLAIMS**

In her efforts to avoid the arbitration agreement, Plaintiff makes assertions and provides declaration testimony that are inconsistent with her pleading allegations, and that would effectively prevent her from having standing to assert the class action claims that appear to be the focus of this case.[5] Plaintiff's declaration is filled with allegations that she

---

[4]     Moreover, Plaintiff admits in the Petition and in her Response that she was in agreement with financing her purchase of windows through the GreenSky program, and that her complaint with the terms of the final Loan Agreement relates to the *financing terms*. Regardless of the financing terms, any loan agreement through the GreenSky program would have the same arbitration agreement contained in the final Loan Agreement, as all GreenSky loan agreements contain the same arbitration agreement. Thus, the alleged change in the financing terms to which Plaintiff allegedly agreed would not have affected the existence or terms of the arbitration agreement.

[5]     This is consistent with Plaintiff's previous approach to amending her Petition to substitute Andersen of Oklahoma for Cashion Windows as a defendant. Plaintiff's Petition says nothing about trying to set aside the Loan Agreement as a whole, or even the arbitration agreement. Now, however, since GreenSky has moved to enforce the arbitration agreement, Plaintiff seeks to throw out not only the arbitration agreement, but also the Loan Agreement as a whole.

never assented to the terms of the Loan Agreement, and that there was never any agreement because there was allegedly no meeting of the minds between the parties with respect to the terms of the Loan Agreement. In her Response, Plaintiff seeks a jury trial on the issue of whether she actually entered into the Loan Agreement. In other words, Plaintiff claims there is no valid arbitration agreement because there was never any Loan Agreement in the first place. These allegations are inconsistent with Plaintiff's class action pleading allegations.

In Plaintiff's Amended Petition and Motion to Certify a Class Action (the "Petition"), Plaintiff asserts "the principal legal question common to [Plaintiff] and to each class member is whether adequate consumer credit disclosures were provided to class members *prior to consummation or liability for the loans originated by Andersen and later sold to [GreenSky].*" Petition, ¶ 22 (emphasis added). If there is no Loan Agreement, as Plaintiff is asserting in her Response, it necessarily follows that there would have been *no* "consummation or liability" on any loan with respect to Plaintiff. This destroys the commonality of Plaintiff's alleged circumstances with the other members of the proposed class, who would have consummated loans and incurred legal liability as set forth in loan agreements. *See Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216 (1974) ("To have standing to sue as a class representative it is essential that a plaintiff ... be a part of that class, that is, he [or she] must possess the same interest and suffer the same injury shared by all members of the class he [or she] represents."); *see also Rector v. City of Denver,* 348 F.3d 935, 949 (10th Cir. 2003).

8

Further, the proposed "class" claims are based on GreenSky's alleged failures to provide certain disclosures set forth in OKLA. STAT. ANN. tit. 14A, § 3-306 (the "Consumer Disclosure Requirements"). In reviewing the Consumer Disclosure Requirements, it is apparent that the required disclosures are to be provided to the "debtor." *See id*. §3-306(2) (stating "[t]he lender shall give to the *debtor* the following information") (emphasis added). There does not appear to be a statutory definition of "debtor" that specifically applies to the Consumer Disclosure Requirements. However, the term "debtor" is generally defined as a person who owes an obligation or is subject to some form of liability. *See, e.g., Racher v. Lusk*, No. CIV-13-665-M, 2013 WL 6037122, at *9 (W.D. Okla. Nov. 14, 2013) ("'Debtor' means a person who is liable on a claim."); *State ex rel. State Ins. Fund v. Houston*, No. 97,553, 2003 WL 25284639, at *2 (Okla. Civ. App. Aug. 12, 2003) (stating the term "account debtor" means a person "obligated on an account") (citing 12A O.S.2001 § 1–9–102(a)(3)).

In her Response, Plaintiff alleges she has never had any obligation or liability for a loan because there was never any loan agreement. In that event, she would not be within the class of persons to whom any disclosures would have been due under the Consumer Disclosure Requirements, and she would not have standing to complain about any alleged violation of the Consumer Disclosure Requirements because she cannot qualify as a member of the "class" she purports to represent. *See Schlesinger,* 418 U.S. at 216; *Rector,* 348 F.3d at 949.

Moreover, Plaintiff's very request for a jury trial to determine whether she entered into the Loan Agreement should preclude her class claims in this case. Class membership

must be clearly ascertainable, and it must be administratively feasible to determine whether a particular person is a class member. *See DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970); *Davoll v. Webb,* 160 F.R.D. 142, 144 (D. Colo. 1995). "An identifiable class exists if its members can be ascertained by reference to objective criteria, but not if membership is contingent on a prospective member's state of mind." *Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 679–80 (S.D.Cal.1999)). Plaintiff has placed her individual intent at issue, and she has requested a jury trial on the issue of whether she intended to enter into the Loan Agreement. As such, she has made it impossible to administratively ascertain that she is a member of the alleged class she purports to represent, and her class claims should fail.

Because these claims would require testimony and evidence unique to each plaintiff's individual claim, there could be no commonality and typicality to support the certification of a class with respect to such claims. *See Daniel v. Navient Solutions, LLC*, No. 8:17-cv-2503-T-24JSS, 2019 WL 4671169, at *7-8 (M.D. Fla. Apr. 26, 2019); *Levell v. Monsanto Research Corp.*, No. 3:95cv312, 2005 WL 81619926, at *7 (S.D. Ohio Sept. 28, 2005).

### III.
### <u>CONCLUSION</u>

WHEREFORE, GreenSky respectfully requests that this Court compel arbitration as to all claims asserted by Plaintiff and to dismiss or stay claims of Plaintiff pending the outcome of arbitration.

Respectfully submitted,

Dated: September 7, 2023

*s/ Kyle R. Prince*

Derrick T. DeWitt, OBA #18044
Kyle R. Prince, OBA #33040
DeWITT PARUOLO & MEEK
P.O. Box 138800
Oklahoma City, OK 73113
T: (405) 705-3600
F: (405) 705-2573
ddewitt@46legal.com
kprince@46legal.com

-and-

Sean W. Fleming
*Admitted Pro Hac Vice*
Texas State Bar No. 24027250
MACDONALD DEVIN MADDEN
KENEFICK & HARRIS, P.C.
12770 Coit Road, Suite 1100
Dallas, Texas 75251
T: (214) 744-3300
F: (214) 747-0942
SFleming@MacdonaldDevin.com
***Attorneys for Defendant GreenSky, LLC, incorrectly identified as BMO Harris Bank, NA d/b/a GreenSky, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of September, 2023, I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

M. Kathi Rawls, OBA #18814
Minal Gahlot, OBA #22145
kathi@rawlsgahlot.com
minal@rawlsgahlot.com

Janet R. Varnell, FBN #0071072
jvarnell@vandwlaw.com

*Attorneys for Plaintiffs*

*s/ Kyle R. Prince*

12