## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUSAN PARISI<br>    Plaintiff,<br>v.<br>OKLAHOMA WINDOWS<br>AND DOORS, LLC<br>d/b/a RENEWAL BY ANDERSON OF<br>OKLAHOMA, and BMO HARRIS<br>BANK, NA d/b/a GREENSKY, LLC,<br>    Defendants. | )<br>)<br>) Civil Action No.:  CIV-23-115-R<br>)<br>)<br>)<br>) (Removed from the District Court<br>) of Oklahoma County, State of<br>) Oklahoma, Case No.: CJ-21-1681) |

## AMENDED PETITION
## AND MOTION TO CERTIFY A CLASS ACTION

**COMES NOW** the Plaintiff, Susan Parisi ("Ms. Parisi") by and through her counsel of record, M. Kathi Rawls and Minal Gahlot of Rawls Gahlot, PLLC, and for her Petition and Class Action claims states as follows:

## PARTIES

1. Plaintiff, Ms. Parisi is currently a resident of Oklahoma County, State of Oklahoma, and has been for more than six (6) months prior to the filing of this litigation.

2. The class members are Oklahoma consumers who were not provided adequate consumer credit disclosures prior to consummation or liability for the loans originated by Renewal by Anderson of Oklahoma (Andersen) and later sold to Harris/GreenSky.

3. Defendant, BMO Harris Bank, NA is a national lender issuing loans in reliance upon home solicitation sales of consumer goods as that term is defined by 14A O.S. § 2-501, issuing loans in Oklahoma under the name of GreenSky LLC, it may be served through its agents in Georgia.( hereafter "Harris/GreenSky").

1

Exhibit 2

4. Defendant Andersen is a foreign limited liability company and has principal place of business in Oklahoma.  Andersen utilizes home solicitors in its sale and financing of consumer credit sales of goods as defined by 14A O.S. § 2-501.

## JURISDICTION AND VENUE
(Plaintiff hereby incorporates ¶¶ 1-4 above)

5. This matter is filed against the Defendants in Oklahoma County as it is the residence county of Ms. Parisi and the location of the home solicitation for the sale of replacement windows.

6. Each Defendant may be served through its registered service agent or head teller and regularly conducts business in the State of Oklahoma.

7. GreenSky is a BMO Harris Bank N.A. is the actual lender identified in the loan sold by Andersen to Harris/GreenSky.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
(Plaintiff hereby incorporates ¶¶ 1-7 above)

8. This class action seeks injunctive and monetary relief to redress an unlawful and deceptive pattern of wrongdoing followed by Defendant, Andersen, in concert with its co-defendant, Harris/GreenSky (jointly Defendants), in its credit extension sale of consumer goods and services in the State of Oklahoma.

9. Defendants are regularly engaged in the business of making/issuing "consumer loans" in which:
     (a) the debtor is a person other than an organization;
     (b) the debt is incurred primarily for a personal, family or household purpose;
     (c) either the debt is payable in installments or a loan finance charge is made; and
     (d) either the principal does not exceed Fifty Thousand Dollars ($50,000.00).

Case 5:23-cv-00115-R   Document 36   Filed 08/21/23   Page 3 of 20

10. In violation of 14A O.S. § 5-203, Defendants regularly issue consumer loans for products and services which fail to comply with Oklahoma Consumer Credit Code (OCCC) accurate disclosure requirements, specifically:

    a) Defendants failed to deliver all material disclosures, prior to consummation, in a form the Class Representative or its members may keep in violation of 14A O.S. § 3-306;

    b) Defendants failed to give the Class Representative or its members the identity of the lender's assignee in violation of 14A O.S. § 3-306 2(a);

    c) Defendants failed to accurately disclose to the Class Representative or its members "the amount financed" or to disclose the amount of credit to which the debtor has use, or to segregate those amounts from other amounts in violation of 14A O.S. § 3-306 2(b) (i);

    d) Defendants failed to disclose the Class Representative or its members a statement of the debtor's right to obtain, upon a written request, a written itemization of the amount financed, and included spaces for a "yes" and "no" indication to be initialed by the debtor to indicate whether the debtor wants a written itemization of the amount financed.

    e) Defendants failed to provide or respond to Disclosure Requirement (d) above or provide a written itemization of the amount financed in violation of 14A O.S. § 3-306 2(cc) (ii);

        i. the amount that is or will be paid directly to the debtor;

        ii. the amount that is or will be credited to the debtor's account to discharge obligations owed to the lender;

        iii. each amount that is or will be paid to third persons by the lender on the debtor's behalf, together with an identification of or reference to the third person; and

        iv. the total amount of any charges described in the division (cc) of subparagraph (i) of this paragraph.

        v. The sum of the amount financed and the finance charge, which shall be termed the "total of payments".

        vi. (f) The number, amount, and due dates or period of payments scheduled to repay the total of payments.

        vii. (g) Descriptive explanations of the terms "amount financed", "finance charge", "annual percentage rate" and "total of payments", as specified by the Administrator.

viii.   Any dollar charge or percentage amount which may be imposed by a lender solely on account of a late payment, other than a deferral or extension charge.

ix.   (j) A statement indicating whether or not the debtor is entitled to a rebate of any finance charge upon refinancing or prepayment in full pursuant to acceleration or otherwise, if the obligation involves a precomputed finance charge. A statement indicating whether or not a penalty will be imposed in those same circumstances if the obligation involves a finance charge computed from time to time by application of a rate to the unpaid principal balance.

x.   (k) A statement that the debtor should refer to the appropriate contract document for any information such document provides about nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties;

xi.   The preceding list of disclosure violations by Defendants, as it relates to the loans issued to the Class Representative or its members, are prohibited under 14A O.S. § 3-306 2(aa) through (k).

## CLASS REPRESENTATION ALLEGATIONS
### *Statement of Maintainable Class Claims*

(Plaintiff hereby incorporates ¶¶ 1-11 above)

11. Pursuant to 12 O.S. § 2023, this is a case maintainable on a class-wide basis pursuant to 12 O.S. §§ 2023B.2 and 3, and the Class Representative brings this action on behalf of herself and of a class of all other persons similarly situated, to remedy the ongoing unfair, unlawful, and/or deceptive business practices alleged herein, and seeks redress on behalf of all those persons who have been harmed thereby, more specifically as set out below:

12. Andersen is a "Merchant", approved, trained and contractually engaged in the assignment of loans to Harris/GreenSky as more fully described below.

13. Andersen uses deceptive practices to sell its products, door-to-door, to home owners in Oklahoma pursuant to an extension of credit; the terms of which are not timely and

4

Case 5:23-cv-00115-R    Document 36    Filed 08/21/23    Page 5 of 20

accurately disclosed to homeowners prior to consummation or prior to incurring liability thereon.

14. Andersen then immediately assigns its non-compliant, unauthorized credit extensions to BMO Harris Bank N.A. via its GreenSky Loan Program, who ratifies Andersen's actions by reporting negatively to consumer reporting agencies, conducting collection calls, and demanding payments in writing from consumers despite the fraudulent nature of the loan(s) issuance and the objections stated by said consumers.

15. GreenSky LLC is a loan servicing subsidiary of BMO Harris Bank N. A. with its principal place of business at 5565 Glenridge Connector, Suite 700, Atlanta, Georgia 30342.

16. BMO Harris conducts business throughout the United States through GreenSky LLC, its subsidiary administering the GreenSky Program, and engages in accepting assignment of loan from Assignors, origination and servicing activities related to the GreenSky Program.

17. Harris/GreenSky therefore engages in offering or providing a "financial product or service" within the meaning of 12 U.S.C. § 5481(15)(A)(i) and the Oklahoma Consumer Credit Code 14A O.S. § 3-306 and 2-104.

18. Harris/GreenSky engages in origination activities and services loans offered or provided for use by consumers primarily for personal, family, or household purposes within the meaning of 12 U.S.C. § 5481(5)(A) and 14A O.S. § 2-104.

19. Harris/GreenSky are "covered persons" under 12 U.S.C. § 5481(6) and the Oklahoma Consumer Credit Code.

Case 5:23-cv-00115-R   Document 36   Filed 08/21/23   Page 6 of 20

## Identification of Common Questions of Law or Fact

(Plaintiff hereby incorporates ¶¶ 1-19 above)

20. Pursuant to 12 O.S. § 2023A.2, there are questions of law and fact common to the Class, which common issues predominate over any issues involving owing individual class members.

21. The factual questions common to the Class Representative and to each class member is that each class member's loan for Andersen windows in Oklahoma were presented, sold and loan originated as described below.

22. Pursuant to 12 O.S. § 2023A.2, the principal legal question common to the Class Representative and to each class member is whether adequate consumer credit disclosures were provided to class members prior to consummation or liability for the loans originated by Andersen and later sold to Harris/GreenSky.

### *Allegations of Typicality*

(Plaintiff hereby incorporates ¶¶ 1-22 above)

23. Pursuant to 12 O.S. § 2023A.3, the Class Representatives claims are typical of those of the classes it seeks to represent in that the Class Representative was solicited to purchase replacement windows without providing mandatory disclosures of the consumer credit extension loan and as such, the claim of the Class Representative is identical to that of the class members.

### *Definition of Class*

(Plaintiff hereby incorporates ¶¶ 1-23 above)

24. Pursuant to 12 O.S. § 2023C.3, the class is composed of all Oklahoma consumers who, since one year prior to the filing of this litigation,

Case 5:23-cv-00115-R   Document 36   Filed 08/21/23   Page 7 of 20

a) Defendants failed to deliver all material disclosures, prior to consummation, in a form the Class Representative or its members may keep in violation of 14A O.S. § 3-306;

b) Defendants failed to give the Class Representative or its members the identity of the lender's assignee in violation of 14A O.S. § 3-306 2(a);

c) Defendants failed to accurately disclose to the Class Representative or its members "the amount financed" or to disclose the amount of credit to which the debtor has use, or to segregate those amounts from other amounts in violation of 14A O.S. § 3-306 2(b) (i);

d) Defendants failed to disclose the Class Representative or its members a statement of the debtor's right to obtain, upon a written request, a written itemization of the amount financed, and included spaces for a "yes" and "no" indication to be initialed by the debtor to indicate whether the debtor wants a written itemization of the amount financed.

e) Upon receiving an affirmative indication, the lender shall provide, at the time other disclosures are required to be furnished, a written itemization of the amount financed in violation of 14A O.S. § 3-306 2(cc) (ii);

    xii.    the amount that is or will be paid directly to the debtor;

    xiii.    the amount that is or will be credited to the debtor's account to discharge obligations owed to the lender;

    xiv.    each amount that is or will be paid to third persons by the lender on the debtor's behalf, together with an identification of or reference to the third person; and

    xv.    the total amount of any charges described in the division (cc) of subparagraph (i) of this paragraph.

    xvi.    The sum of the amount financed and the finance charge, which shall be termed the "total of payments".

    xvii.    (f) The number, amount, and due dates or period of payments scheduled to repay the total of payments.

    xviii.    (g) Descriptive explanations of the terms "amount financed", "finance charge", "annual percentage rate" and "total of payments", as specified by the Administrator.

    xix.    Any dollar charge or percentage amount which may be imposed by a lender solely on account of a late payment, other than a deferral or extension charge.

xx.     (j) A statement indicating whether or not the debtor is entitled to a rebate of any finance charge upon refinancing or prepayment in full pursuant to acceleration or otherwise, if the obligation involves a precomputed finance charge. A statement indicating whether or not a penalty will be imposed in those same circumstances if the obligation involves a finance charge computed from time to time by application of a rate to the unpaid principal balance.

xxi.     (k) A statement that the debtor should refer to the appropriate contract document for any information such document provides about nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties;

xxii.     The preceding list of disclosure violations by Defendants, as it relates to the loans issued to the Class Representative or its members, are prohibited under 14A O.S. § 3-306 2(aa) through (k).

### *Adequacy of Class Representative*

(Plaintiff hereby incorporates ¶¶ 1-24 above)

25. Pursuant to 12 O.S. § 2023A.4, the Class Representative will fairly and adequately protect and represent the interest of each class member.

26. The Class Representative has retained counsel with substantial experience in handling class actions in federal and state court. See, e.g., Martinez v. FMS Inc., 2008 WL 4010101 (M.D. Fla. 2008); Brown v. SCI Funeral Services, 212 F.R.D. 602 (S.D.Fla.2003); Baez v. Wagner & Hunt, P.A., 442 F.Supp. 2d 1273 (S.D. Fla. 2006); Jansen v. West Palm Nissan, Inc., 2006 WL 1582068 (S.D. Fla. 2006); Tyrell v. Robert Kaye & Associates, P.A., 223 F.R.D. 686 (S.D. Fla. 2004). Further, counsel for the Class Representatives has substantial experience in litigating individual and class actions under the Uniform Commercial Code. See, e.g., Jackson v. Southern Auto Finance Co., 988 So.2d 721 (Fla. 4th DCA 2008); Muro v. Hermano's Auto

Wholesalers, Inc., 514 F.Supp. 2d 1343 (S.D. Fla. 2007); Westlake Financial Services

v. Ray, 923 So.2d 555 (Fla. 4th DCA 2006).

27. The Class Representative has no conflicts of interest which would interfere with their

ability to represent the interests of the class members.

### *Appropriateness of Hybrid Class Treatment Under §§ 2023 B.2 and 3*
(Plaintiff hereby incorporates ¶¶ 1-27 above)

28. A class action is superior to other methods for the fair and efficient adjudication of

this controversy. Because the damages suffered by the individual class members may

be relatively small compared to the expense and burden of litigation, it would be

impractical and economically unfeasible for class members to seek redress

individually. The prosecution of separate actions by the individual class members,

even if possible, would create a risk of inconsistent or varying adjudications with

respect to the individual class members against Harris/GreenSky.

29. The Class Representative is represented by counsel competent and experienced in

both consumer protection and class action litigation.

30. Members of the proposed class who have an interest in individually controlling the

prosecution of separate claims against Andersen and Harris/GreenSky will not be

prejudiced by this action.

31. Each member of the proposed class will be identified through discovery from

Harris/GreenSky  and will be notified and given an opportunity to opt out of their

respective class(es).

9

32. The Class Representative does not presently know the nature and extent of any pending litigation to which a member of the proposed class is a party and in which any question of law or fact controverted in the present action is to be adjudicated. The Class Representative will identify any such pending litigation by

33. This Court is an appropriate forum for the present action in that the Class Representative is, and at all times herein mentioned has been, a resident of this county; the Class Representatives vehicle was purchased and repossessed in this county; and Harris/GreenSky does business in this county, including without limitation providing to residents of this county financing of motor vehicles that are consumer goods.

34. Certification of a class under 12 O.S. § 2023B.2 is appropriate as Harris/GreenSky has acted on grounds generally applicable to the Class with respect to the collection and credit reporting activity by Harris/GreenSky described above, thereby making appropriate equitable relief with respect to the Class as a whole.

35. Unless restrained from such activities, Harris/GreenSky will continue to unlawfully harm the interests of the Class Representative and the class for which no adequate remedy at law exists.

36. Certification of a class under 12 Oklahoma Statutes Annotated § 2023B.3 is also appropriate in that:

37. The questions of law or fact common to the members of the class predominate over any questions affecting an individual class member; and

10

Case 5:23-cv-00115-R    Document 36    Filed 08/21/23    Page 11 of 20

38. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

39. The Class Representative requests a certification of a "hybrid" class for monetary damages under 12 Oklahoma Statutes Annotated § 2023B.3 and for equitable relief under 12 Oklahoma Statutes Annotated § 2023B.2. See, Penson v. Terminal Transport Co., Inc., 634 F.2d 989, 994 (5th Cir.1981); Agan v. Katzman & Korr, P.A., 222 F.R.D. 692 (S.D.Fla.2004).

40. There are no difficulties likely to be encountered by the Court in the management of this proposed class action.

41. The Class Representatives counsel is entitled to a reasonable fee from the class members or from a common fund for the handling of this action.

**Harris/GreenSky' s Business Model**
(Plaintiff hereby incorporates ¶¶ 1-41 above)

42. Harris/GreenSky engages in origination and servicing activities on behalf of GreenSky Program banks.

43. Harris/GreenSky uses Merchants to market and intake loan applications from consumers at the point of sale. Most of these Merchants provide home improvement products and services, health care services, or retail products.

44. Andersen is one of those Merchants in the State of Oklahoma.

45. Merchants must apply to participate in the GreenSky Program and if accepted into the GreenSky Program, Harris/GreenSky generally train Merchants, including on how to market and promote the GreenSky Program loans, intake consumers' personal and

financial information, submit loan applications to Harris/GreenSky on behalf of consumers or assist consumers in submitting loan applications directly to Harris/GreenSky.

46. Harris/GreenSky allows most Merchants to submit consumer loan applications online using Harris/GreenSky 's website or mobile applications, or over the phone if the Merchant indicates it has a signed application information form or a signed application from a consumer.

47. Once Harris/GreenSky receives an application, it makes an on-the-spot financing decision by comparing a consumer's application data with the lending criteria of the GreenSky Program banks, using proprietary technology and algorithms. These loans typically range from a few thousand dollars to tens of thousands of dollars.

48. When a consumer or Merchant submits a loan application through Harris/GreenSky 's website or mobile application, the approved loan terms are displayed on the computer or tablet at the conclusion of the application process.

49. Where a Merchant submits a loan application on a consumer's behalf, however, the consumer may view the approved loan terms on the computer or tablet only if the Merchant shares the screen with the consumer.

50. Until at least April 2019, if Harris/GreenSky determined that an applicant qualified for a loan, the loan application process was complete. Harris/GreenSky mailed or emailed loan documentation to consumers, but consumers were not required to sign and return that loan documentation to consummate the loan.

51. Harris/GreenSky also issues consumers a "shopping pass" number, which functions like a credit card (Shopping Pass). Harris/GreenSky treats use of the Shopping Pass, or associated funds, as acceptance of the loan.

52. Harris/GreenSky does not disburse the loan proceeds to the consumer. Rather, to pay for a product or service, a consumer provides the Shopping Pass number to her Merchant or otherwise authorizes a transaction and the Merchant, in turn, uses the Shopping Pass number or other authorization to apply for payment from Harris/GreenSky.

53. Harris/GreenSky then disburses loan proceeds directly to the Merchant.

54. Most of Harris/GreenSky's revenue is earned from fees that Merchants pay to Harris/GreenSky every time they receive payment from the proceeds of a consumer's loan.

55. In some instances, Merchants have misused these Shopping Pass numbers.

56. Merchants sometimes applied for a loan without a consumer's knowledge and entered their own email addresses as the consumer's own on the loan application. Because of this, Harris/GreenSky emailed the consumer's loan documents or Shopping Pass number to the Merchant instead of the consumer.

57. In other instances, Merchants applied for a loan without a consumer's knowledge and entered the consumer's correct mailing address on the application, but because the consumer was unaware of the loan, the consumer ignored the loan documents Harris/GreenSky mailed, thinking they were promotional materials.

Case 5:23-cv-00115-R   Document 36   Filed 08/21/23   Page 14 of 20

58. Consumers sometimes received mailed loan documents–which could take weeks to arrive after a loan application–only after the Merchant had already used the Shopping Pass number without the consumer's knowledge.

### The Specific Facts related to the Class Representative Ms. Parisi

59. Here, the proposed class representative, Ms. Parisi was interested in Andersen's advertised replacement windows for her home in Oklahoma City, OK.

60. Ms. Parisi met with Russell Kelley (Russell), of Defendant, Andersen, on or around 11/23/2021.

61. Russell indicated Ms. Parisi could purchase the windows with zero money down, zero interest on the loan for two years and zero payments for 24 months after the installation.

62. Ms. Parisi informed Russell she had recently been diagnosed with multiple myeloma and would need the 24 month option due to her health issues and its costs and time related to treatment.

63. Russell and Ms. Parisi discussed the windows she wanted to replace and made choices regarding those windows.

64. Russell indicated that they would install the nine (9) windows on a "split plan"; planning to install five windows now and the rest at another time.

65. Russell showed Ms. Parisi an IPad to evidence that she had been approved for that type loan but the terms of the credit extension contract were not visible, Russell didn't release the IPad and Ms. Parisi was not provided the opportunity to read it.

66. Russell assured Ms. Parisi that she would be emailed a copy of the contract.

Case 5:23-cv-00115-R   Document 36   Filed 08/21/23   Page 15 of 20

67. Based upon Russell's statements, Ms. Parisi agreed to the purchase but didn't execute any documents; only the IPad.

68.  Russell never mailed her a copy of the contract and Ms. Parisi was not provided any accurate disclosures about the interest she would be paying on the credit extension.

69. On or about December 7, 2021, Ms. Parisi was notified by Defendant Harris/GreenSky that Andersen had received an advance payment of $8,871.50 for the sale of its windows to Ms. Parisi and that her payments would start 6 months after installation of the windows.

70. GreenSky' s letter also informed Ms. Parisi that if she didn't authorize the payment to contact Harris/GreenSky immediately, which Ms. Parisi did.(Exhibit 1, Harris/GreenSky Letter to Parisi)

71. Ms. Parisi immediately contacted Russell with Andersen, who falsely told Ms. Parisi this  had never happened before and he would follow up to find out what happened.

72. Ms. Parisi never heard from Russel again.

73. Ms. Parisi then contacted Harris/GreenSky to inform them she had not authorized the payments, was unaware of their involvement, had not been informed of the interest rate, and had not agreed for payments to start six months after the installation of windows.

74. Ms. Parisi informed Harris/GreenSky she could not agree to such a loan because of the cancer treatment she was undergoing which would not be completed until the end of 2022.

75. Andersen never installed any windows at Ms. Parisi's home.

Case 5:23-cv-00115-R   Document 36   Filed 08/21/23   Page 16 of 20

76. Ms. Parisi disputed that she owed Harris/GreenSky any money on the contract; a fact acknowledged by Harris/GreenSky in writing to Ms. Parisi shortly thereafter.

77. Harris/GreenSky did not notify the credit bureaus to whom it reported Ms. Parisi's loan, that she disputed the alleged debt.

78. Harris/GreenSky ignored Ms. Parisi's request to delete its tradeline, ignored the fact Andersen defrauded her, and ignored her request to provide her a copy of the alleged signed contract.

79. On December 10, 2021, Ms. Parisi again objected to the new loan being reported under her name and credit history.(Exhibit 2, 12/10/21 Parisi  Email to Harris/GreenSky)

80. Harris/GreenSky failed to conduct any written investigation on Ms. Parisi's complaints but instead stated it would "get the plan changed" for her.(Exhibit 3, 12/14/21 email to Ms. Parisi)

81. On 12/17/21, Harris/GreenSky stated, "got the plan changed and to let Harris/GreenSky know when the account was created". (Exhibit 4, 12/17/21 Harris/GreenSky email to Parisi)

82. Remarkably, Harris/GreenSky sent Ms. Parisi a letter stating that she had failed to "participate" in her own complaint and its resolution.(Exhibit 5, Harris/GreenSky letter to Parisi)

83. Harris/GreenSky continued its false reporting on the alleged loan it purchased from Andersen.

84. Ms. Parisi has endured continued stress from Harris/GreenSky's harassment and defamation throughout 2022.

85. Harris/GreenSky's actions herein are a violation of the 7/12/21 CFPB Consent Order entered into by Harris/GreenSky.(CFPB Consent Order)

86. On July 18, 2022, Ms. Parisi sent a formal letter to Harris/GreenSky again reiterating the details of Andersen's fraud and Harris/GreenSky' s participation,  but the communication failed to eliminate Harris/GreenSky' s false reporting to others about her.

87. Harris/GreenSky was then notified that Ms. Parisi had retained undersigned counsel as a result of its actions and all future communications should cease with Ms. Parisi.

88. Harris/GreenSky continued to contact Ms. Parisi after receipt of undersigned counsel and continues to defame her in its credit reporting.

89. Harris/GreenSky has previously stipulated to an Agreed Order finding it violated the Consumer Financial Protection Bureaus' rules when accepting assignment of loans from entities such as Andersen.

90. Harris/GreenSky regularly accepts assignment of loans originated by Andersen even though it is aware that Andersen regularly fails to abide by Oklahoma's Consumer Protection Act or Consumer Protection Act.

91. Andersen regularly extends credit to consumers to facilitate the sale of its windows and is subject to the Oklahoma Consumer Credit Code (OCC) and the Oklahoma Consumer protection Act by failing to provide accurate and timely disclosures of loan terms prior to consummation.

92. Andersen violated the Oklahoma Consumer Credit Code disclosure requirements in its door-to-door sales of replacement windows pursuant to the consumer credit extension in the State of Oklahoma.

93. Andersen, in concert with Harris GreenSky, also committed fraud and forgery when its agent falsely indicated the terms of the window sale credit extension were other than previously advertised, as enumerated above.

94. Harris/GreenSky is liable for the actions taken by Andersen in that it accepted Assignment of the loan without ensuring compliance with multiple state laws.

95. Harris/GreenSky committed its own independent acts of fraud by stating that it would resolve the issue of Andersen's fraud and lack of disclosure of the cost of the credit extension to the Class Representative and its members by continuing to defame them by reporting falsely that credit extensions were valid, in default, or both.

96. Harris/GreenSky continued to harass and bill Ms. Parisi, falsely indicating that she was past due; causing Ms. Parisi unnecessary anguish and emotional distress while undergoing cancer treatment.(Exhibit 6, 10/2/22 Past Due Notice from Harris/GreenSky)

97. Harris/GreenSky ratified and benefited from its Assignor's violations of law when it refused to delete the false and defamatory information it published regarding the Class Representative and its members.

98. Harris/GreenSky failed to conduct a meaningful investigation of Ms. Parisi's dispute following receipt of Ms. Parisi's statements in its regard.

99. Harris/GreenSky has purposefully and intentionally continued to falsely report that Ms. Parisi is in default even after undersigned counsel requested all communications cease.

100.    Defendants and its agents are prohibited from destroying, concealing or altering any document, testimony, recording or electronic storage of relevant evidence regarding the claims, defenses or allegations regarding this matter; Defendants are admonished to preserve and protect such evidence.

WHEREFORE, premises stated, Plaintiff, individually and on behalf of all others similarly situated, prays this Court award their actual, consequential, statutory, treble, exemplary and punitive damages, their reasonable attorney fees and costs in this matter, and all other relief that the Court deems just and proper.

Sincerely,

/s/ M. Kathi Rawls
M. Kathi Rawls, OBA #18814
Minal Gahlot, OBA#22145
Rawls Gahlot, PLLC
2404 S. Broadway
Moore, Ok 73160
Phone: 405-912-3225
Email: kathi@rawlsgahlot.com
Email: minal@rawlsgahlot.com

AND

Janet R. Varnell, Admitted Pro Hac Vice
Varnell and Warwick, P.A.
400 N. Ashley Drive, Suite 1900
Tampa, FL 33602
ATTORNEYS FOR PLAINTIFF

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

19

This is to certify that on the August 21, 2023, a true and correct copy of the above and foregoing was submitted electronically through the ECF System to the following:

Derrick T. DeWitt, OBA #18044
Kyle R. Prince, OBA #33040
DEWITT PARUOLO & MEEK
P.O. Box 138800
Oklahoma City, OK  73113
Telephone: (405) 705-3600
Facsimile:  (405) 705-2573
dewitt@46legal.com
kprince@46legal.com

AND

Sean Fleming, Admitted Pro Hac Vice
MACDONALD DEVIN MADDEN KENEFICK & HARRIS, P.C.
12770 Coit Road, Suite 1100
Dallas, TX 75251
(214) 651-3383
sfleming@macdonalddevin.com
*Attorneys for Defendant BMO Harris Bank, d/b/a GreenSky, LLC*

/s/M. Kathi Rawls