## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SUSAN PARISI, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-23-115-R |
| | ) | |
| C CASHION WINDOWS, LLC d/b/a | ) | |
| RENEWAL BY ANDERSON OF | ) | |
| OKLAHOMA, and BMO HARRIS | ) | |
| BANK, NA d/b/a GREENSKY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF TIMOTHY D. KALIBAN

I, Timothy D. Kaliban, hereby make this Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746, and declare as follows:

### I.    BACKGROUND

1.    I have personal knowledge of the following facts and would testify to them if called as a witness in a court of law. This Declaration is based upon my personal knowledge.

2.    I am the Chief Strategy Officer for GreenSky, LLC ("GreenSky").

3.    I am familiar with the lawsuit filed against GreenSky, LLC, incorrectly identified as BMO Harris Bank, NA d/b/a GreenSky, LLC by Susan Parisi, and I have read the Amended Petition and Motion to Certify a Class Action filed on Ms. Parisi's behalf against GreenSky, LLC, incorrectly identified as BMO Harris Bank, NA d/b/a GreenSky, LLC.

Exhibit 5

4.      I make this Declaration in support of the Motion to Compel Arbitration as to all claims asserted by Plaintiff and to Dismiss or Stay Claims of Plaintiff Pending Arbitration to be filed on behalf of GreenSky, LLC, incorrectly identified as BMO Harris Bank, NA d/b/a GreenSky, LLC.

5.      GreenSky, LLC is a Georgia limited liability company with its principal place of business at 5565 Glenridge Connector, Suite 700, Atlanta, Georgia 30342.

6.      I have been asked to explain the process by which Ms. Parisi applied for and obtained a loan that was serviced by GreenSky, and how GreenSky sent documents associated with the loan, including the Installment Loan Agreement ("Loan Agreement"), to Ms. Parisi.

## II.      MS. PARISI'S LOAN AGREEMENT

### A. The GreenSky® Program

7.      BMO Harris Bank, NA is a bank that participates in the GreenSky® Program.

8.      GreenSky serviced Ms. Parisi's loan as an agent on behalf of BMO Harris Bank, NA. As such, BMO Harris Bank, NA considers GreenSky to be its agent for purposes of servicing and generally managing consumer loan transactions made under the GreenSky® Program.

9.      Paragraph 25 of Ms. Parisi's Loan Agreement contains a mandatory arbitration agreement for the resolution of any disputes "between you and us." Paragraph 25 states: "As used in this Arbitration Provision, "you" and "us" also includes any corporate parent, wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns and purchasers of any accounts, all agents, employees,

2

directors and representatives of any of the foregoing and any third party providing any product, service or benefit in connection with the Agreement."

10. Because BMO Harris Bank, NA considers GreenSky to be its agent for purposes of servicing and generally managing consumer loan transactions made under the GreenSky® Program, GreenSky is covered by the definition of "us" for purposes of the Loan Agreement's mandatory arbitration provision.

11. Additionally, GreenSky would be "any third party providing any product, service or benefit in connection with the Agreement."

**B. Application and Approval Process**

12. On November 23, 2021, Ms. Parisi applied for and was approved for a loan from BMO Harris Bank, NA, through the GreenSky® Program for a home improvement project with Renewal by Andersen of Oklahoma, the company reflected on Plaintiff's Loan Agreement. Ms. Parisi's application was submitted through an online application process for her project with Renewal by Andersen of Oklahoma.

13. As part of the application process, applicants provide certain information necessary for GreenSky, as agent for the banks participating in the GreenSky® Program, to reach a decision on the application and to communicate with the borrower regarding the transaction.

14. Thus, Ms. Parisi, as part of her application, supplied, among other information, her social security number, date of birth, telephone number, mailing address, income, and email address. (*See* Exhibit 1.)

3

15.   Once the information was entered in the application, in order to submit the application to GreenSky, Ms. Parisi was required to acknowledge reading and accepting: (1) the Loan Application disclosures; (2) the consent to electronic records and communication; and (3) an authorization for GreenSky to pull her credit report on behalf of the participating financial institution.

16.   The credit report and credit score are provided to the GreenSky® Program's decisioning software, which applies the various credit policies of the participating financial institutions and renders a credit decision on the application based on these preset credit policies.

17.   A representative of GreenSky contacted Ms. Parisi by telephone on November 23, 2021 at the phone number listed on the consumer statement on her credit report and verified that she was aware of, and authorized, the application.  Ms. Parisi was approved for a loan from BMO Harris Bank, NA with a credit limit in the amount of $19,000.00. (*See* Exhibit 2.)

**C.  GreenSky's Mailing of the Loan Agreement to Ms. Parisi**

18.   A printed copy of the Loan Agreement was mailed by the United States Postal Service to Ms. Parisi on or about November 23, 2021, to the physical address Ms. Poza provided as part of the loan application process. (*See* Exhibit 3.)

19.   GreenSky's vendor, SourceLink, mailed the package on behalf of GreenSky containing the Loan Agreement directly to the physical address the borrower provided as part of her application.

20.     GreenSky's mailing of the printed copy of the Loan Agreement to Ms. Parisi was, and is, consistent with GreenSky's customary business practices for borrowers whose loans GreenSky services.

21.     Specifically, the Loan Agreement mailing was properly addressed to Ms. Parisi and had sufficient postage, and it was deposited in the U.S. Mail.  This process is consistent with GreenSky's procedures for preparing and having mailed loan agreements to its customers.

22.     This mailing was not returned to GreenSky as undeliverable and GreenSky did not receive any returned notifications that the Loan Agreement or any other mailings associated with Ms. Parisi's loan account were undeliverable.

**D. GreenSky's Email to Ms. Parisi with the Loan Agreement**

23.     The Loan Agreement was emailed to Ms. Parisi in a link in which she could access it on November 23, 2021. The link containing the Loan Agreement was emailed to sparisi21@yahoo.com, which is the email address that Ms. Parisi provided on her loan application with GreenSky as part of the loan application process. (*See* Exhibit 1.) (A true and correct copy of the Loan Agreement emailed to Ms. Parisi is attached as Exhibit 3.)

24.     GreenSky's action in emailing a copy of the Loan Agreement to Ms. Parisi was, and is, consistent with GreenSky's customary business practices for borrowers whose loans GreenSky services.

5

25.    Specifically, the Loan Agreement was emailed to the proper email address that Ms. Parisi provided the same day she filled out the GreenSky loan application and was approved for the loan (November 23, 2021).

26.    The email sent to Ms. Parisi identified GreenSky as the sender, stated that the email was regarding the Installment Loan Agreement, and the email was not returned to GreenSky as undeliverable.

27.    Moreover, Ms. Parisi used the sparisi21@yahoo.com email address as evidenced by Exhibits 2 and 3 of Plaintiff's Amended Petition and Motion to Certify a Class Action where Ms. Parisi communicated with GreenSky through that same email address.

**E.  MS. PARISI'S USE OF THE SHOPPING PASS**

28.    On November 29, 2021, Ms. Parisi used the Shopping Pass included with, and part of, her Loan Agreement, and authorized Renewal by Andersen of Oklahoma to charge her account in the amount of $8,871.50. (*See* Exhibit 4.)

29.    Ms. Parisi's use of the Shopping Pass and the loan proceeds to make the charge with Renewal by Andersen of Oklahoma constituted an affirmance and acceptance of the terms of the Loan Agreement; as set forth in the Shopping Pass included with the Loan Agreement, "[u]se of this Shopping Pass or the associated Loan by (any) Borrower (or any authorized user) to make a purchase constitutes acceptance by (all) Borrower(s) of the terms of the accompanying Loan Agreement. The physical or electronic record of any such purchase will constitute the signature of (all) Borrower(s) on such Loan Agreement." (*See* Exhibit 3.)

30.     Attached as Exhibit 4 is a true and correct copy of the transaction history for Ms. Parisi's loan account. This document shows the charges to Ms. Parisi's account number ending in 2561. The funds ($8,871.50) were settled and disbursed directly to Renewal by Andersen of Oklahoma's designated bank account in order to pay for the services Ms. Parisi requested from Renewal by Andersen of Oklahoma.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
TIMOTHY D. KALIBAN

April 27, 2023
_____
Date

_____          _____

## Application Details                                          ✕

| | | | |
|---|---|---|---|
| Application ID: | 2111233004 | Channel: | UCA-iOS |
| Reference Number: | Russell Kelley | | |
| Promotion Code: | 81002512-3541 | | |
| Application Type: | Individual | | |
| Credit Product: | Installment | | |
| Credit Limit Requested: | $17,743.00 | | |
| Who Are You: | Sales Consultant | | |
| Entered by: | russellkelley | | |
| Conversion Indicator: | No | | |

### Authorized Signatory/Applicant                    ### Co-Applicant

| | | | | |
|---|---|---|---|---|
| First Name: | Susan | | Owner Interest in Property: | No |
| Last Name: | Parisi | | | |
| Date of Birth: | | | | |
| SSN: | | | | |
| Cell: | | | | |
| Physical Street Address: | | | | |
| | 7 | | | |
| Email Address: | | | | |
| Total Monthly Income: | | | | |

### Company Information

| | |
|---|---|
| Company Full Legal Name: | Susan K Parisi |
| Address: | |
| Company City: | Oklahoma City |
| State: | OK |
| Zip Code: | 73127 |
| Bad Address: | No |
| Program: | GreenSky Consumer Projects |
| Merchant ID: | 81002512 |
| Merchant Name: | Renewal by Andersen of Oklahoma |
| Contract Language: | en |

[ OK ]

┌─────────────────┐
│     EXHIBIT      │
│                  │
│        1         │
└─────────────────┘

Applicant Information

| | | | | | | |
|---|---|---|---|---|---|---|
| Name: | Susan K Parisi | Cell Phone Number: | | Activation Status: | | Telephone Consumer Protection OPT-IN Act: |
| Physical Address: | | Work Phone Number: | | Application Status: | Approved | |
| | | SSN: | | Application Status Date: | 11/23/2021 | |
| Mailing Address: | | Date of Birth: | | Text Fraud/Collections Messages: | OPT-OUT | |
| Email Address: | | ECOA Type: | 1 - Individual | | | |
| Phone Number: | | Intellicheck Status: | Not Completed | Email Notifications: | OPT-IN | |

Loan Information    Transactions    Payments    Documents    **Decision**    Collections    Communications    Other Details

**Other Links:**    Credit Report    Response    Credit Line Policies

### Decision Information

| | | | |
|---|---|---|---|
| Authorized Signatory/Applicant | Parisi Susan | Primary Verified Annual Income: | |
| Application Type: | Individual | Primary Income Verification Source: | |
| Credit Product: | Installment | | |
| Credit Limit Requested: | $17,743.00 | Co-Applicant Verified Annual Income: | |
| Credit Limit Recommended: | $19,000.00 | | |
| Credit Limit Approved: | $19,000.00 | Co-Applicant Income Verification Source: | |
| Credit Limit Maximum: | $32,530.00 | | |
| Credit Line Policy: | Platinum SLAP | Verified DTI: | |
| Strategy ID: | 1061 | Verified Decision Income: | |
| Program: | GreenSky Consumer Projects | Bankruptcy Score: | 228 |
| Product: | 7541 | Co-applicant Bankruptcy Score: | |
| Term: | PLAN-7541-24.99-LP | Decision Bureau: | EXPERIAN |
| FICO Score: | 717 | Decisioned On: | 100 |
| Co-Applicant FICO Score: | | Autopay: | No |
| DTI: | 20.023529 | Merchant: | Renewal by Andersen of Oklahoma |
| | | Portfolio ID: | BMO |
| | | Decision recommendation: | Approved |

### Installment Information

| | | | |
|---|---|---|---|
| Maximum Monthly Payment amount: | | Promotional monthly payment: | $449.02 |
| Loan Amount: | $17,744.00 | Total Finance Charges: | $19,973.08 |
| Number of Payments: | 60 | Total Payments: | $37,717.08 |
| Monthly Payment: | $449.01 | | |

**EXHIBIT**

**2**

# GreenSky®
## Shopping Pass

7100 0004 8026 2561                    Exp 11/25

Susan K Parisi                         CVV

Shopping Pass

For Barcode Scanners

7100 0004 8026 2561
Exp 11/25

---

# Congratulations, Susan!
# You have been approved for up to $17,744.00!*
The purpose of this Shopping Pass is to provide important information about your loan and to make purchases using your GreenSky® loan.†

## About Your Account:

1. When you are ready to make your purchase, give your account number and expiration date to your Merchant along with your photo ID. By providing your account number to your Merchant you are authorizing your Lender to send Loan proceeds to your Merchant in payment for the goods or services that you have purchased. Provide your account number to your Merchant only when you are prepared to pay. Only those named on this Shopping Pass are authorized to make purchases. Do not give this Shopping Pass to any person not named on this Shopping Pass. If you do so, you may be held liable for their purchases. If this Shopping Pass is lost or stolen, notify us immediately at (866) 936-0602 to limit your liability. **Please be aware that if you authorize your Lender to make an initial advance under your GreenSky® Installment Loan to pay any initial payment required by the Merchant, payments may become due under your GreenSky® Installment Loan prior to the completion of services by the Merchant.**

2. You have a purchasing window of 6 months to use your credit limit of up to $17,744.00. All purchases must be made by 05/26/2022 (the "Purchase Window Expiration Date"). We may close your purchase window earlier if we determine that your job is substantially complete. See the terms and conditions of your Loan Agreement for details.

3. After your first purchase, you will receive monthly statements to track your transactions. **You have zero liability for transactions that you do not authorize‡.** Please monitor your statements carefully and contact us at (866) 936-0602 to notify us immediately of any unauthorized activity.

4. You will have no Loan unless you authorize a transaction, which is your electronic signature of the Loan Agreement and will have the same legal effect as a physical signature.

Plan 7541. THIS IS A DIFFERENT PLAN THAN REQUESTED. 84 payments. Up to 6 month purchase window. At the earlier of purchase window expiration date or job completion, a 24 month promotional (promo) period begins with minimum monthly payments required followed by 60 amortized payments based on the balance at the end of promo. Your fixed interest rate is based on creditworthiness and is disclosed in your loan agreement. Interest is billed during the promo period but all interest is waived if the purchase amount is paid in full before the end of the promo period. Making initial minimum monthly payments will not pay off your loan before the end of the promo period.

**(866) 936-0602**                                                                    **www.greensky.com**

**Thank you for choosing GreenSky® Program!**
service@greensky.com

---

Use of this Shopping Pass or the associated Loan by (any) Borrower (or any authorized user) to make a purchase constitutes acceptance by (all) Borrower(s) of the terms of the accompanying Loan Agreement.

**The physical or electronic record of any such purchase will constitute the signature of (all) Borrower(s) on such Loan Agreement.**

Provide your account number and expiration date to authorize a transaction only after you are satisfied that you have received the goods and/or services that you are purchasing. Your Lender does not monitor the workmanship, quality, or completeness of the goods and/or services that you purchase. Contact your Merchant immediately if not completely satisfied. You will receive monthly statements to help track your transactions and payments.

**FOR PROTECTION AGAINST UNAUTHORIZED PURCHASES, IDENTIFICATION WILL BE REQUIRED FOR ALL PURCHASES.**

Spanish language loan agreements are available upon request. Contact us for a Spanish version of this agreement.

Los acuerdos de préstamo en idioma español están disponibles bajo petición. Contáctenos para obtener una versión en español de este acuerdo.

\* Eligible only for purchases with your Merchant. **Your Lender is specified on your Loan Agreement.**

† GreenSky® is the brand name for certain consumer credit plans extended by participating lenders to borrowers for the purchase of goods or services from participating Merchants. Participating lenders are federally insured, federal and state chartered financial institutions providing credit without regard to age, race, color, religion, national origin, sex, or familial status. GreenSky® is a registered trademark of GreenSky, LLC and is used by your Lender under license. GreenSky Servicing, LLC ("Servicer") will service this Loan on behalf of your Lender.

‡ Applicable payment card network rules apply. Any unauthorized transactions must be reported to us within 60 days.

Application ID: 2111233004

The monthly payments in the payment schedule of your Truth in Lending Disclosure is estimated and based on the Amount Financed for which you have been approved. Examples of required minimum monthly payments for different total purchase amounts appear below:

| Total Amount of Purchases | Monthly Payment Amount |
|---------------------------|------------------------|
| $4,000.00 | $101.22 |
| $5,000.00 | $126.52 |
| $10,000.00 | $253.05 |
| $15,000.00 | $379.58 |
| $17,744.00 | $449.01 |
| $19,000.00 | $480.80 |

EXHIBIT

**3**



# UNDERSTANDING YOUR DEFERRED INTEREST LOAN

## What does it mean to have "No Interest if Paid in Full within the Promotional Period?"

We are committed to helping you understand how your GreenSky® Program loan works. While the details of your loan are described throughout this package, the information and frequently asked questions below are designed to provide you with helpful information regarding your loan.

Your loan is a "**deferred interest**" (also referred to as "No Interest if Paid in Full") loan. This means that:

- **INTEREST WILL BE BILLED DURING THE PROMOTIONAL PERIOD.**
- But, if you pay off your entire purchase balance before the end of the promotional period, all billed interest will be waived.
- **If you do not repay your entire purchase balance before the end of the promotional period**, you will be responsible for paying all interest that was billed during the promotional period and any interest that accrues after the expiration of the promotional period.

---

## FREQUENTLY ASKED QUESTIONS

**Q.** How long is the "promotional period" for my loan?

**A.** The promotional period for your loan is identified on the Shopping Pass and in the loan agreement.

**Q.** Do I have to make payments during the "promotional period"?

**A.** Your plan description and Truth in Lending disclosures will tell you whether you have payments due during the promotional period. Even if you don't have to make payments during the promotional period, it is a good idea to make regular payments to minimize any deferred interest you might owe if the purchase balance is not paid in full before the end of the promotional period. If you have payments due during the promotional period, making these payments will NOT pay off your entire purchase balance before the end of the promotional period.

**Q.** How will I know how much to pay and by when in order to satisfy the promotional offer?

**A.** You will receive a statement every month. During the promotional period, your statement will include a section that details your promotional financing offer. This section will identify your entire purchase balance, the purchase balance left to pay before the end of the promotional period, and the date on which your promotional period expires.

**Q.** My merchant is offering refinancing at the end of the "promotional period". How should I evaluate that offer?

**A.** Merchants are not allowed to make refinancing offers (either verbally or in writing) in connection with a Program loan. If your merchant has made any refinancing offers please report to us immediately. A customer's credit situation can change and relying on obtaining refinancing to pay-off the deferred interest loan before the end of the promotional period is not advisable.

**Q.** What if I still have questions?

**A.** You have no obligation on your loan until you authorize a transaction. If you have any questions about your deferred interest loan and your responsibility to repay, please contact us before authorizing a transaction.

**By authorizing a transaction and accepting your loan, you are acknowledging that you understand you are responsible for repaying this loan and agree that your merchant has not promised to issue or arranged to issue a loan with another lender to repay this loan.**

Case 5:23-cv-00115-R    Document 18-3    Filed 04/28/23    Page 12 of 23

## Installment Loan Agreement | NON-NEGOTIABLE CONSUMER NOTE

| | |
|---|---|
| **LENDER:** BMO HARRIS BANK N.A. | **Application ID:** 2111233004    **Date:** 11/23/2021 |
| **Lender Correspondence Address:** GreenSky® Program | **Merchant:** Renewal by Andersen of Oklahoma |
| Attn: Correspondence P.O. Box 29429, Atlanta, GA 30359 | **Borrower:** |
| **Borrower:**    Susan K Parisi | **Phone Number:** |
| **Phone Number:** | **Address:** |
| **Address:** | **City/State/Zip:** , |
| **City/State/Zip:** | |

The Truth in Lending Act (TILA) disclosures below assume that your first purchase will be made on the last day of your Purchase Window, approximately 6 months from your approval date, in an amount equal to the Amount Financed shown below. The Finance Charge below includes $8,868.00 of interest, which will be waived if you pay off your purchase balance within 24 months of the date your Purchase Window closes. Minimum monthly payments are required during the promotional period but will not pay off your loan before the end of your promotional period. Your actual Annual Percentage Rate, Finance Charges, Amount Financed and scheduled payments may vary from the amounts shown below depending on, among other things, the timing and amount of your purchases and payments. You will not accrue interest or be required to make any payments until your Purchase Window closes. Your Purchase Window closes at the earlier of job completion or approximately 6 months from approval date.

## TRUTH IN LENDING DISCLOSURE

| ANNUAL PERCENTAGE RATE<br>The cost of credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid when you have made all payments as scheduled |
|---|---|---|---|
| 24.99% (e) | $19,973.08 (e) | $17,744.00 (e) | $37,717.08 (e) |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 24 | $449.02 (e) | Beginning approximately one month after the close of the Purchase Window and monthly thereafter for a total of 24 Months (NOTE: Purchase Window may be open as long as 6 months following your approval). |
| 59 | $449.01 (e) | Beginning monthly thereafter for a total of 59 months. |
| 1 | $449.01 (e) | Approximately 84 months after Purchase Window closes. |

**Prepayment:** If you pay off early, you will not be entitled to a refund of any interest that was billed to your account for the billing cycle in which you make your last payment. You will not be entitled to a refund of the Activation Fee, if any.
See the rest of this document for any additional information on nonpayment, default, and any required repayment in full before the scheduled date, and prepayment refunds and penalties.
**"(e)" means estimate.**

**Itemization of Amount Financed:** $17,744.00 (e)
Paid to Renewal by Andersen of Oklahoma

## FEES

| Penalty Fees | |
|---|---|
| • Late Payment | The greater of **$39** or **5%** of the amount past due, except **$0** for MA and ME residents and **$30** maximum for Iowa residents. |
| • Returned Payment | Up to **$20** |

**MILITARY LENDING ACT:** The Military Lending Act ("MLA") provides protections for certain members of the Armed Forces and their dependents ("Covered Borrowers"). The provisions of this section apply to Covered Borrowers under the MLA. If you would like more information about whether you are a Covered Borrower and whether this section applies to you, please contact us at 877-266-2945. **Statement of MAPR:** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an Annual Percentage Rate of 36%. This rate must include, as applicable to the credit transaction or account: (1) the costs associated with credit insurance premiums; (2) fees for ancillary products sold in connection with the credit transaction; (3) any application fee charged (other than certain application fees for specified credit transactions or accounts); and (4) any participation fee charged (other than certain participation fees for a credit card account). **Oral Disclosures:** In order to hear important MLA disclosures and payment information, please call 877-266-2945. **Covered Military Borrowers:** If you are a Covered Borrower, as defined under the MLA, 10 U.S.C. § 987, as amended from time to time, (i) the provisions of the ARBITRATION PROVISION, (ii) any waiver of your right to legal recourse under any state or federal law and (iii) any other provision in this Loan Agreement that is not enforceable against you under the MLA, does not apply to you.
NOTICE TO THE BUYER: 1. THIS IS A CONSUMER CREDIT TRANSACTION. 2. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 3. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS CREDIT AGREEMENT. **4. YOU MAY PREPAY THE UNPAID BALANCE UNDER THIS AGREEMENT AT ANY TIME SUBJECT TO THE "PREPAYMENT" DISCLOSURE ABOVE. 5. THIS LOAN AGREEMENT CONTAINS AN ARBITRATION PROVISION THAT, UNLESS YOU REJECT IT, MAY LIMIT YOUR RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM.**
**ACCEPTANCE OF THIS LOAN AGREEMENT BY ELECTRONIC SIGNATURE:** The first use of the Shopping Pass or the associated loan to make a purchase will constitute acceptance by (all) Borrower(s) of the terms of this Loan Agreement. The dated physical or electronic record of such use will evidence the signature of (all) Borrower(s) on this Loan Agreement and have the same legal effect as a physical signature.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT. NON-NEGOTIABLE CONSUMER NOTE.**

Borrower: _____ Date:_____
*Electronic record constitutes acceptance of this Agreement (see above)*

Co- Borrower: _____ Date: _____
*Electronic record constitutes acceptance of this Agreement (see above)*

**LENDER: /s/** BMO HARRIS BANK N.A._____ Date: 11/23/2021
**IN-HOME SALE CUSTOMERS:** ARIZONA, CONNECTICUT, NORTH DAKOTA AND RHODE ISLAND RESIDENTS: THIS INSTRUMENT IS BASED UPON A HOME/PERSONAL SOLICITATION SALE SUBJECT TO THE PROVISIONS OF TITLE 44, CHAPTER 15 OF THE ARIZONA REVISED STATUTES IN ARIZONA; THE HOME SOLICITATION SALES ACT IN CONNECTICUT, THE NORTH DAKOTA CENTURY CODE IN NORTH DAKOTA; AND TITLE 6, CHAPTER 28 OF THE RHODE ISLAND GENERAL LAWS. THIS INSTRUMENT IS NOT NEGOTIABLE.

**TERMS AND CONDITIONS CONTINUE ON NEXT PAGE**

Case 5:23-cv-00115-R   Document 18-3   Filed 04/28/23   Page 13 of 23

**1. Welcome.** Thank you for opening an installment loan through the GreenSky® Program. By accepting the Shopping Pass, the Truth in Lending Disclosure, the terms and conditions, and the Lender's Privacy Notice (collectively, the "Loan Agreement"), each Borrower ("you") acknowledges that (i) BMO HARRIS BANK N.A. ("Lender", "we", "our " or "us") has approved Borrower(s) for a GreenSky® Program Installment Loan up to the Amount Financed as set forth in the Truth in Lending Disclosure above (the "Loan"), (ii) each Borrower has received and retained a copy of Lender's Privacy Notice, (iii) each Borrower has read this Loan Agreement, including any Addenda, and agrees to be bound by its terms, (iv) if this Agreement resulted from a sale in your home ("In-Home Sale"), the sales person has explained each Borrower's right to cancel and has provided a filled-in written Notice of Right to Cancel. Any Notice of Right to Cancel and any additional notice of right to cancel provided in the sales contract for an In-Home Sale, as well as any accompanying addendum provided to Borrower, are incorporated herein by reference, and unless any Borrower exercises the right to cancel, Lender agrees to pay the Amount Financed to Merchant for an In-Home Sale upon receipt of a transaction authorization, (v) either Borrower may direct Lender to make payments to Merchant by using the Shopping Pass or account number, and (vi) neither Borrower is a co-signer. A Certificate of Completion is required unless Borrower directs Lender to make payments to Merchant by using the Shopping Pass or account number. This Loan Agreement, including any changes to it, contains the terms of your agreement with BMO HARRIS BANK N.A..

**2. Installment Loan Program.**

**a. Using your Loan:** You may make purchases of goods or services from Merchant, in total up to the "Amount Financed" set forth in the Truth in Lending Disclosure of this Loan Agreement, during the purchasing window time period specified on your Shopping Pass, which is incorporated here by reference. We may close the purchasing window time period on the earlier of the Purchase Window Expiration Date or when your job is substantially complete as determined by Lender (such as when your Merchant notifies us that your job is substantially complete). Once the purchasing window time period closes, you will no longer be able to make additional purchases. Each time you make a purchase of goods or services from Merchant, you authorize us to extend credit to you and to forward Loan proceeds to your Merchant on your behalf. We may decline any transaction if we experience an operational difficulty (such as a system outage), if you fail to make any payment required under this Agreement or you are in Default (as defined herein), or if we identify suspected fraudulent or unlawful activity involving your Loan.
**b. Credit Limit:** You agree not to make purchases in excess of the Amount Financed shown above, but if you do, you agree that we may, in our sole discretion, increase the Amount Financed to include such excess amount in a "Summary of Account at Conversion" that reflects such increased Amount Financed and resulting increased anticipated Finance Charge and Total of Payments. The dated electronic record of such excess purchase(s) will evidence your request for and acceptance of any such increased terms.
**c. Beginning of Amortization Period:** We will total the purchases you made during the purchasing window and provide you with a Summary of Account at Conversion that will show (based on actual total purchases) a final Amount Financed, Finance Charge, Total of Payments and remaining payment schedule for your Loan based on your total purchases.
**d. For your convenience, we may provide you with certain materials in both the Spanish and English languages. You agree that, to the greatest extent not prohibited by law, the English text will control.**
**Para su conveniencia, podemos proporcionarle ciertos materiales en los idiomas español e inglés. Usted acepta que, en la mayor medida no prohibida por la ley predominará el texto en Inglés.**

**3. Promise to Pay.** For value received, you agree to pay us: (a) so much as you may actually borrow from time to time by initiating transactions under the Loan Agreement, plus (b) periodic interest at an annual rate of 24.99% on the unpaid Amount Financed outstanding until the loan is paid in full, (c) any applicable taxes or other charges due under this Loan Agreement. We calculate the interest charge on your account by applying a monthly periodic rate to your outstanding principal balance on the first day of your first billing cycle and thereafter to your outstanding principal balance on the first day of each billing cycle. The monthly periodic rate equals the applicable annual rate divided by twelve (12). Payments will be due as scheduled. Any principal balance, interest and other charges remaining unpaid are due in full on the date of the last scheduled payment. The actual amount of interest that you pay may exceed the Finance Charge disclosed in the Truth in Lending Disclosure or Summary of Account at Conversion if you do not make minimum payments due by their due dates as identified in your statements. If you do not make required payments, then, in addition to any other rights and remedies available under this Loan Agreement or applicable law, (i) your purchasing window may close early and (ii) no new purchases may be permitted.

**4. Timing and Application of Payments.** You agree to make payments in accordance with the estimated payment schedule contained in the Truth in Lending Disclosure on the preceding page (or any updated disclosure, including the Summary of Account at Conversion), provided that you will be obligated to make minimum monthly payments in the amounts and on the dates shown on your statements. Any payment made in excess of your minimum monthly payment will be applied to your Principal Balance and will not reduce the amount of your next regularly scheduled payment. You agree that, except for updated amounts, if any, shown on your updated Summary of Account at Conversion, including any adjustments in scheduled payments to reflect your final Amount Financed and Finance Charges due, all other terms and disclosures of this Loan Agreement will remain in full force and effect. Once the initial payment due date is set, the payment due date will be the same day each month. Subject to applicable law, we may apply payments to the amounts you owe under this Loan Agreement in any order we choose. You may not tell us how to apply payments. Any partial prepayment will be applied against the outstanding balance, but will not postpone the due date of any subsequent monthly installments or change the amount of any such installments, unless we otherwise agree in writing. We will apply any refund for a returned purchase when we or Servicer receives notice of the refund from your Merchant. We do not control when your Merchant may notify us or Servicer of a refund. If your Merchant's notice is received after we send your Summary of Account at Conversion, we will apply the refund as a prepayment on your loan to reduce your outstanding balance but this will not reduce your subsequent minimum monthly payments (subject to any necessary adjustments to the number of payments required or your final payment amount).

**5. Payment Method and Address.** Unless automatic payments are authorized in connection with this Loan, you agree to make payments by mailing a check or money order to **Dept# 3025, GreenSky, PO Box 2153, Birmingham AL 35287-3025**, by making a phone payment by dialing **1-855-809-1889** or by making an online payment at www.greenskyonline.com. You agree that payments may not be made in whole or in part by credit card. A payment to our Servicer in accordance with this Loan Agreement is a payment to us. You agree not to send us partial payments marked "paid in full," "without recourse," or similar language. If you send such a payment, we may accept it without losing any of our rights under this Loan Agreement. **All written communications concerning disputed amounts, including any check or other payment instrument that (i) is postdated and accompanied by adequate notice, (ii) indicates that the payment constitutes "payment in full" of the amount owed, (iii) is tendered with other conditions or limitations or (iv) is otherwise tendered as full satisfaction of a disputed amount, must be marked for special handling and mailed or delivered to us at P.O. Box 29429, Atlanta, GA 30359, Attention: Disputes.**

**6. Unpaid Balances.** (a) During your deferred interest promotional period, you will satisfy the terms of your promotion and all interest billed during the promotional period will be waived/credited if you pay the entire purchase balance before the end of the promotional period and you will still be responsible for any outstanding

| TERMS AND CONDITIONS CONTINUE ON NEXT PAGE |
| --- |

Lender: BMO HARRIS BANK N.A. 2111233004 PPLD20211011_77_2_W Rev. 10/21

fees. (b) Notwithstanding the language in Section 6(a) above, if your deferred interest promotional period has expired, your loan will not be regarded as "paid in full" if your loan has an unpaid balance of Amount Financed, interest, late charges, returned payment charges, or any other fees or charges at the end of the term.

**7. Access Device.** We will provide you with a Shopping Pass which you may use to make purchases of goods or services from Merchant during the purchasing window time period as described in this Loan Agreement. Use of your Shopping Pass or Loan to make a purchase constitutes your acceptance of the terms of this Loan Agreement. You agree to notify us immediately if your Shopping Pass is lost, stolen or otherwise compromised.

**8. Returned Payment Charge.** Subject to applicable law, we may charge you a "Returned Payment Charge" as provided herein. If your lender is located in Connecticut, Georgia, Illinois, Michigan, or Ohio, and your payment is dishonored or returned for any reason, you agree to pay us a Returned Payment Charge of $20. If your lender is located in Alabama or Mississippi and your payment is dishonored or returned for any reason, you agree to pay us a Returned Payment Charge of $15. If you are a Massachusetts Borrower and your payment is dishonored or returned for any reason, you agree to pay us a Returned Payment Charge of $10. In all cases, we may charge this fee the first time any payment is returned even if it is paid upon resubmission.

**9. Late Charge.** If a payment is more than 10 days late, you will be charged the GREATER of $39 or 5% of the amount past due, provided that the late payment fee will not exceed the amount past due ($30 maximum in Iowa). NOTICE: Massachusetts and Maine Borrowers are not charged late charges.

**10. Default.** Subject to applicable law, you will be in default ("Default") if any of the following events occur:

(a) You have made any false or misleading statement(s) in your application for the Loan subject to this Loan Agreement or any other account that you may have with us;
(b) You fail to make a payment within 60 days of when it was due under this Loan Agreement or any other account agreement that you may have with us;
(c) You fail to comply fully with any term or condition of this Loan Agreement or any other account agreement that you may have with us;
(d) You file or someone else files against you a petition in bankruptcy;
(e) You die;
(f) You commit fraud; or
(g) We believe you are unable or unwilling to pay your debts when due.

MASSACHUSETTS NOTICE: If you are a Massachusetts borrower and this Loan Agreement is secured by a non-possessory interest in consumer goods, this Default provision is enforceable only to the extent that the Default is material and consists of a failure to make one or more payments as required by the Loan Agreement or the occurrence of an event that substantially impairs the value of the collateral.

**11. Remedies on Default.** If you are in Default, we will have all of the rights and remedies available to us at law or in equity, in addition to the specific rights and remedies set forth in this Loan Agreement. We may exercise any, some or all of our rights and remedies, in our sole discretion. If you are in Default, we may, at our option, require you to pay immediately the entire amount you owe us under this Loan Agreement, in full. Subject to the requirements of applicable law, we may do this without giving you any advance notice of presentment, acceleration or our intent to accelerate. Unless prohibited by applicable law, you agree to pay our reasonable costs and attorneys' fees related to the collection of your Loan.

**12. Credit Inquiries and Loan Information.** You authorize us to obtain a credit report on you for any legal purpose in connection with this Loan, including any update, extension of credit, review or collection of this Loan. If you request, we will tell you whether any credit report was requested and, if so, the name and address of the credit bureau furnishing the report.

**13. Inaccurate Information.** If you believe that we have information about you that is inaccurate or that we have reported or may report inaccurate information about you to a credit bureau, please notify us of the specific information that you believe is inaccurate by writing to us at **P.O. Box 29429, Atlanta, GA 30359, Attention: Disputes.** In doing so, please identify the inaccurate information and tell us why you believe it is incorrect. If you have a copy of the credit report that includes the inaccurate information, please send a copy of that report to us as well. The "Your Billing Rights" section below contains special processes required for contacting us in the event of a Billing Error.

**14. Negative Information Reporting.** We may report information about your Loan to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**15. Severability.** If applicable law is finally interpreted so that charges collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then (i) any such charges will be reduced to the permitted amounts and (ii) any amounts already collected that exceed the permitted amounts will be credited to you by, at our option, applying the credit to any amounts due hereunder or making a direct payment to you. If any provision in this Loan Agreement is invalid under applicable law, the remainder of the provisions in this Loan Agreement will remain in effect and interpreted to give the greatest possible effect to the intent of the parties as originally written.

**16. Assignment; Transfer.** We may sell, assign, transfer or delegate all or any portion of our rights or obligations under this Loan Agreement to any other person without prior notice to you. You may not sell, assign, transfer or delegate any of your rights or obligations under this Loan Agreement.

**17. Governing Law. This Loan Agreement, including the rate of interest and fees, is governed by applicable federal law and, to the extent not preempted by federal law, the laws of IL where the Lender is located as shown in Section 1 (Welcome) of this Loan Agreement (without regard to the State's conflict of laws provisions). If Lender is located in Kansas, the Kansas Consumer Credit Code (Kan. Stat. Ann. §§ 16a-1-101 et seq.) governs this Agreement. If you are a Massachusetts borrower and the Amount Financed is $6,000 or less, this Loan Agreement is also subject to the Massachusetts Small Loan Law.**

**18. Joint and Several Liability.** Each Borrower will be liable individually and together for all obligations under this Loan Agreement, including payment to us of the entire amount owed under this Loan Agreement.

**19. No Waiver by Us.** We will not be deemed to have waived any of our rights by delaying the enforcement of any of our rights. If we waive any of our rights in writing on one occasion, that waiver does not constitute a waiver by us of our rights on any future occasion.

**20. Telephone Monitoring and Recording.** You agree that we may monitor or record phone calls to ensure that you receive quality service and for training purposes.

**21. Communicating With You; Consent to Contact by Electronic and Other Means.** You agree that, to the greatest extent not prohibited by applicable law, we may contact you for any lawful reason, including for the collection of amounts owed to us. No such contact will be deemed unsolicited. You agree that we (and any other owner or servicer of your account) may contact you for any and all purposes arising out of or relating to your Loan at any physical or electronic addresses or numbers (including wireless cellular telephone numbers, ported landline numbers, VOIP or other services) as you may provide to us from time to time. We may use any means of communication, including, but not limited to, postal mail, electronic mail, telephone, text messaging, or other technology, to reach you. You agree that we may use automatic dialing and announcing devices which may play recorded messages. You may contact us at any time to ask that we not contact you using any one or more methods or technologies. You represent that you are permitted to receive communications at each of the telephone numbers you have provided to us.

**22. Notices; Change of Address, Employment or Telephone Number.** We will send all written notices and statements to your address as it appears on our records. To avoid delays and missed payments that could affect your credit standing, you agree to advise us promptly if you change your mailing address, place of employment, telephone number or other contact information, including, but not limited to, porting a landline telephone number to a cellular phone, VoIP or other services. You represent and agree that for purposes of imposing fees and charges, you are deemed to reside at the current mailing address that we have on record for you. You can update your contact information with us by phone, mail, or online at www.greenskyonline.com.

**23. Entire Agreement.** This Loan Agreement constitutes the final written expression of the credit agreement between you and us relating to your Loan. We are not bound by any oral representations made or implied that are not directly reflected in this Loan Agreement. **A credit agreement must be in writing to be enforceable. Oral agreements or commitments to loan money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend or renew such debt, are not enforceable. To protect you and us from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**24. NOTICES: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Your Merchant pays transaction fees as a result of your use of the Loan. Your Merchant is prohibited from surcharging you to cover the cost of these transaction fees.

**Notice to California Residents:** (AVISO PARA LOS QUE RESIDEN EN CALIFORNIA): SI SU PRÉSTAMO FUÉ NEGOCIADO PRIMERAMENTE EN ESPAÑOL, ESTAMOS OBLIGADOS A PRESENTARLE UNA TRADUCCIÓN EN ESPAÑOL DE LAS DISPOSICIONES REQUERIDAS POR LA REGULACIÓN FEDERAL Z, 12 C.F.R. APARTADO 1026.

**Notice to Iowa Residents:** IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS LOAN AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. BORROWER MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

**Notice to New Hampshire Residents:** This Loan Agreement provides for reasonable attorneys' fees to be awarded to us in an action against you involving this Loan Agreement. Reasonable attorneys' fees will be awarded to you if you prevail in any action, suit or proceeding brought by us, or an action brought by you. If you successfully assert a partial defense or set-off, recoupment or counterclaim to an action brought by us, the court may withhold from us the entire amount or such portion of the attorneys' fees as the court considers equitable.

**Notice to New Jersey Residents:** Because certain provisions of this Loan Agreement are subject to applicable laws, they may be void, unenforceable or inapplicable in some jurisdictions. None of these provisions, however, is void, unenforceable or inapplicable in New Jersey.

**Notice to New York Residents:** NOTICE TO THE BUYER: 1. Do not sign this credit agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of this credit agreement.

**Notice to Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio civil rights commission administers compliance with this law.

**Notice to Vermont Residents:** Lender is engaged in loan production. **EACH BORROWER SHOULD RETAIN A COPY FOR THEIR RECORDS.**

**25. ARBITRATION PROVISION. Agreement to Arbitrate Disputes:** This Arbitration Provision sets forth the circumstances and procedures under which Claims (defined below) that arise between you and us will be resolved through binding arbitration; provided, however, that this provision does not apply if, on the date this Agreement is issued, you are covered by the federal Military Lending Act as a member of the Armed Forces or a dependent of such a member. UNLESS YOU OPT OUT OF THIS ARBITRATION PROVISION AS PROVIDED BELOW OR EXCEPT AS APPLICABLE LAW PROHIBITS US FROM IMPOSING BINDING ARBITRATION ON YOU, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE OR MAY BE LIMITED IN ARBITRATION, INCLUDING YOUR RIGHT TO APPEAL AND YOUR ABILITY TO PARTICIPATE IN A CLASS ACTION. Nothing in this provision precludes you from filing and pursuing your individual Claim in a small claims court in your state or municipality, so long as that claim is pending only in that court. Definitions: As used in this Arbitration Provision, the term "Claim" means and includes any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your Loan Agreement as well as the relationship resulting from such Agreement ("the Agreement"), including the validity, enforceability or scope of this Arbitration Provision or the Agreement. "Claim" also includes claims by or against any third party providing any product, service or benefit in connection with the Agreement (including, but not limited to, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a claim asserted by you or us against the other. As used in this Arbitration Provision, "you" and "us" also includes any corporate parent, wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns and purchasers of any accounts, all agents, employees, directors and representatives of any of the foregoing and any third party providing any product, service or benefit in connection with the Agreement. Initiation of Arbitration Proceeding / Selection of Administrator: Any Claim will be resolved, upon the election by you or us,

by arbitration pursuant to this Arbitration Provision, under the rules and procedures of the arbitration organization to which the Claim is referred in effect at the time the Claim is filed (the "Code"), except to the extent the Code conflicts with the Agreement. Claims must be referred to either JAMS or The American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. If a selection by us of either of these organizations is unacceptable to you, you will have the right within 30 days after you receive notice of our election to select the other organization listed to serve as arbitration administrator. For a copy of the procedures, to file a Claim or for other information about these organizations, contact (1) JAMS at 1920 Main Street, Suite 300, Irvine, CA 92614; www.jamsadr.com or (2) AAA at 335 Madison Avenue, New York, NY 10017, www.adr.org. In addition to the arbitration organizations listed above, Claims may be referred to any other arbitration organization that is mutually agreed upon in writing by you and us, or to an arbitration organization or arbitrator(s) appointed pursuant to Section 5 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16, provided that any such arbitration organization and arbitrator(s) will enforce the terms of the restrictions set forth below. Class Action Waiver and Other Restrictions: Arbitration will proceed solely on an individual basis without the right for any Claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of others. The arbitrator's authority to resolve and make written awards is limited to Claims between you and us alone. Claims may not be joined or consolidated unless agreed to in writing by all parties. No arbitration award or decision will have a preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. Notwithstanding any other provision in these terms and conditions and without waiving either party's right of appeal, if any portion of this "Class Action Waiver and Other Restrictions" provision is deemed invalid or unenforceable, then the entire Arbitration Provision (other than this sentence) will not apply. Arbitration Procedures: This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and will be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, as it may be amended ("FAA"), and the applicable Code. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations and will honor claims of privilege recognized by law. Federal or state rules of civil procedure or evidence will not apply. Written requests to expand the scope of discovery rest within the arbitrator's sole discretion and will be determined pursuant to the applicable Code. The arbitrator will take reasonable steps to preserve the privacy of individual, and of business matters. Judgment upon the written arbitral award may be entered in any court having jurisdiction. Subject to the right of appeal under the FAA, the arbitrator's written decision will be final and binding unless you or we take an appeal from the award by making a dated, written request to the arbitration organization within 30 days from the date of entry of the written arbitral award. A three-arbitrator panel administered by the same arbitration organization will consider anew any aspect of the award objected to by the appellant, conduct an arbitration pursuant to its Code and issue its decision within 120 days of the date of the appellant's written notice. The panel's majority vote decision will be final and binding. Location of Arbitration / Payment of Fees: The arbitration will take place in the federal judicial district where you live. Regardless of who wins in arbitration, you will only be responsible for paying your share, if any, of the arbitration fees required by the applicable Code, which amount will not exceed the filing fees that you would have incurred if the Claim had been brought in the appropriate state or federal court closest to where you live. We will pay the remainder of any arbitration fees. At your written request, we will consider in good faith making a temporary advance of all or part of your share of the arbitration fees. Waivers also may be available from the JAMS or AAA. Continuation: This Arbitration provision will survive termination of the Agreement, as well as voluntary payment in full of your account, any debt collection proceeding by or between you and us, and any bankruptcy by you or us. If any portion of this Arbitration Provision, except the "Class Action Waiver and Other Restrictions" provision above, is deemed invalid or unenforceable for any reason, it will not invalidate the remaining portions of this Arbitration Provision or the Agreement, each of which will be enforceable regardless of such invalidity. Opt-Out Process: You may choose to opt out of and not be subject to this Arbitration Provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing within forty-five (45) calendar days of the date of the Agreement at the following address: P.O. Box 29429, Atlanta, GA 30359, Attention: Legal. Your written notice must include your name, address, social security number, the date of the Agreement, and a statement that you wish to opt out of this Arbitration Provision. Your notice to opt out will only apply to this particular Agreement with us and not to subsequent or previous agreements.

## 26. Your Billing Rights: Keep this Document for Future Use

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

### What To Do If You Find a Mistake on Your Statement

If you think there is an error on your statement, write to us at:

GreenSky® Program
Attention: Disputes
PO Box 29429
Atlanta, GA 30359
You may also contact us at service@greensky.com.

In your letter, give us the following information:

- *Account information:* Your name and account number.
- *Dollar amount:* The dollar amount of the suspected error.
- *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

### What Will Happen After We Receive Your Letter

When we receive your letter, we must do two things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your available loan funds (if any).

After we finish our investigation, one of two things will happen:

- *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.
- *If we do not believe there was a mistake:*

You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights If You Are Dissatisfied With Your Payment Card Purchases**
If you are dissatisfied with the goods or services that you have purchased with your Loan, and you have tried in good faith to correct the problem with the Merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your payment card for the purchase.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at:

GreenSky® Program
Attention: Disputes
PO Box 29429
Atlanta, GA 30359
You may also contact us at service@greensky.com.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

TERMS AND CONDITIONS CONTINUE ON NEXT PAGE

| FACTS | WHAT DOES BMO HARRIS BANK N.A. DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include: <br>• Social Security number and  employment information <br>• account transactions  and transaction history <br>• credit history and investment experience |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons BMO Harris Bank N.A. chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does BMO Harris Bank N.A. share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** — such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes** — to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** — information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes** — information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | No | We don't share |

| To limit our sharing | Call toll-free:  1-866-936-0602 <br>**Please note:** <br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice. However, you can contact us at any time to limit our sharing. |
|---|---|

| Questions? | • Call toll-free:  1-888-654-0063 <br>• Talk to a banker at a BMO Harris branch <br>• Talk to your assigned account representative |
|---|---|



BMO Harris Bank

Case 5:23-cv-00115-R    Document 18-3    Filed 04/28/23    Page 19 of 23    Rev. 02/2020

## Page 2

### Who we are

| | |
|---|---|
| **Who is providing this notice?** | This notice is provided by BMO Harris Bank N.A. for its consumer customers, including all cardholders of Diners Club and Carte Blanche Professional cards issued by us. |

### What we do

| | |
|---|---|
| **How does BMO Harris Bank N.A. protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does BMO Harris Bank N.A. collect my personal information?** | We collect your personal information, for example, when you: <br>• open an account or deposit money <br>• apply for a loan or use your credit or debit card <br>• seek advice about your investments <br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only <br>• sharing for affiliates' everyday business purposes—information about your creditworthiness <br>• affiliates from using your information to market to you <br>• sharing for nonaffiliates to market to you <br><br>State laws and individual companies may give you additional rights to limit sharing. See below for more information on your rights under state laws. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to you only, unless you tell us otherwise. |

### Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial or nonfinancial companies. <br>• Our affiliates include companies with a Bank of Montreal or BMO name; and financial companies such as BMO Harris Financial Advisors, Inc. |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies. <br>• BMO Harris Bank N.A. does not share with nonaffiliates so they can market to you. |
| **Joint Marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. <br>• Our joint marketing partners include credit card companies. |

### Other important information

**For California Residents:** We will not share information we collect about you with companies outside of the BMO family of companies except with your authorization or as permitted by California law, such as to service your account. To authorize the sharing of this information, please call us toll-free at 1-888-654-0063. In addition, we will limit the sharing of information about you within the BMO family of companies to the extent required by California law.

**For Vermont Residents:** We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures. Additional information concerning our privacy policies can be found at www.bmoharris.com/us/about/privacy or call 1-888-654-0063.

**For Nevada Residents:** Notice provided pursuant to state law. To be placed on our internal Do Not Call List, call 1-888-654-0063. For more on this Nevada law, contact Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101. Phone number: (702)486-3132; email: BCPINFO@ag.state.nv.us.

Case 5:23-cv-00115-R   Document 18-3   Filed 04/28/23   Page 20 of 23

**BMO HARRIS BANK N.A.**

**Your Credit Score and the Price You Pay for Credit**

| Your Credit Score | |
|---|---|
| **Your credit score:** | 717 |
| | Source: EXPERIAN          Date:  11/23/2021 |

| Understanding Your Credit Score | |
|---|---|
| **What you should know about credit scores** | Your credit score is a number that reflects the information in your credit report.<br><br>Your credit report is a record of your credit history.  It includes information about whether you pay your bills on time and how much you owe to creditors.<br><br>Your credit score can change, depending on how your credit history changes. |
| **How we use your credit score** | Your credit score can affect whether you can get a loan and how much you will have to pay for that loan. |
| **The range of scores** | Scores range from a low of 300 to a high of 850.<br><br>Generally, the higher your score, the more likely you are to be offered better credit terms. |
| **How your score compares to the scores of other consumers** | |

FICO                                                                    experian.

% of consumers with scores in particular range

| Range | % |
|---|---|
| 300–499 | 5% |
| 500–549 | 7% |
| 550–599 | 7% |
| 600–649 | 9% |
| 650–699 | 13% |
| 700–749 | 17% |
| 750–799 | 18% |
| 800–850 | 24% |

© 2019 FICO; © 2019 Experian; All rights reserved          FICO® Score 9          EXF6G-J

**Borrower:** Susan K Parisi

| **Checking Your Credit Report** | |
|---|---|
| **What if there are mistakes in your credit report?** | You have a right to dispute any inaccurate information in your credit report. If you find mistakes on your credit report, contact the consumer reporting agency. It is a good idea to check your credit report to make sure the information it contains is accurate. |
| **How can you obtain a copy of your credit report?** | Under federal law, you have the right to obtain a free copy of your credit report from each of the nationwide consumer reporting agencies once a year. To order your free annual credit report— *By telephone:* Call toll-free: 1-877-322-8228  *On the web:* Visit www.annualcreditreport.com  *By mail:* Mail your completed Annual Credit Report Request Form (which you can obtain from the Federal Trade Commission's website at www.ftc.gov/bcp/conline/include/requestformfinal.pdf) to:  Annual Credit Report Request Service P.O. Box 105281 Atlanta, GA 30348-5281 |
| **How can you get more information about credit reports?** | For more information about credit reports and your rights under Federal law, visit the Consumer Financial Protection Bureau's website at www.consumerfinance.gov/learnmore or visit the Federal Reserve Board's website at www.federalreserve.gov. |

Case 5:23-cv-00115-R   Document 18-3   Filed 04/28/23   Page 22 of 23

| Transaction Date | Post Date | Card # | | Transaction Type | Transaction Status | Invoice # | Confirmation # | Transaction Description | Transaction Amount |
|---|---|---|---|---|---|---|---|---|---|
| 10/25/2022 | 10/25/2022 | | I | Late Payment Fee | | | 20221025-003631 | late payment fee correction | 78.00 |
| 10/11/2022 | 10/11/2022 | ꞌ | I | Late Payment Fee Credit PCResolution | | | | Fees associated with the dispute amount | 78.00 |
| 10/11/2022 | 10/11/2022 | | I | Finance Charge Credit | | | | Finance Charge Credit | 739.00 |
| 10/11/2022 | 10/11/2022 | | I | Finance Charge Credit | | | 20221011-001825 | 1X Courtesy | 78.00 |
| 10/10/2022 | 10/10/2022 | | I | Credit | | PARISI, SUSAN 80_21_10903 GS REFUND - CXLD SALE | 20221010-003385 | Greensky Direct Transaction - Renewal by Andersen of Oklahoma | 8,871.50 |
| 10/01/2022 | 10/01/2022 | | I | Late Payment Fee | | | | Late Payment Fee | 39.00 |
| 09/25/2022 | 09/25/2022 | | I | Finance Charge | | | | FINANCE CHARGE | 184.75 |
| 08/25/2022 | 08/25/2022 | | I | Finance Charge | | | | FINANCE CHARGE | 184.75 |
| 07/31/2022 | 07/31/2022 | | I | Late Payment Fee | | | | Late Payment Fee | 39.00 |
| 07/25/2022 | 07/25/2022 | ꞌ | I | Finance Charge | | | | FINANCE CHARGE | 184.75 |
| 06/25/2022 | 06/25/2022 | | I | Finance Charge | | | | FINANCE CHARGE | 184.75 |
| 11/29/2021 | 11/29/2021 | **ꞌ | I | MTC Charge Request | | Parisi, Susan 80_21_10903 | 1649236 | | 8,871.50 |
| 11/29/2021 | 11/29/2021 | **ꞌ | I | Charge | | Parisi, Susan 80_21_10903 | 20211129-001115 | Greensky Direct Transaction - Renewal by | 8,871.50 |

EXHIBIT

4

| Transaction Date | Post Date | Card # | Transaction Type | Transaction Status | Invoice # | Confirmation # | Transaction Description | Transaction Amount |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Andersen of Oklahoma | |