## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) SUSAN PARISI, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-23-115-R |
| | ) | |
| (1) C CASHION WINDOWS, LLC d/b/a) | | |
| RENEWAL BY ANDERSON OF | ) | |
| OKLAHOMA, and (2) BMO HARRIS | ) | |
| BANK, NA d/b/a GREENSKY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT GREENSKY, LLC'S, INCORRECTLY IDENTIFIED AS BMO HARRIS BANK, NA D/B/A GREENSKY, LLC, REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT GREENSKY, LLC'S <u>OBJECTION TO USE OF CONSENT ORDER</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

Subject to and without waiving its motion to dismiss and motion to compel arbitration, Defendant GreenSky, LLC, incorrectly identified as BMO Harris Bank, NA d/b/a GreenSky, LLC (hereinafter "GreenSky"), files this Reply to Plaintiff's Response in Opposition to Defendant GreenSky, LLC's Objection to Use of Consent Order. The Consent Order was entered after negotiations between GreenSky and the United States Consumer Financial Protection Bureau (the "CFPB") in a previous administrative proceeding that did not involve Plaintiff or the claims she is asserting in this case. In reply to Plaintiff's Response in Opposition to Defendant GreenSky, LLC's Objection to Use of Consent Order (the "Response"), GreenSky would show the following:

1

# I.
# GREENSKY HAS NOT WAIVED ITS RIGHT TO OBJECT TO THE CONSENT ORDER

In filing the Objection, GreenSky did not seek specific relief from the Court in the form of a motion.  Instead, GreenSky's purpose was to ensure that the Court and Plaintiff are aware at this early point in the lawsuit of GreenSky's position that the Consent Order cannot properly be used to establish the factual bases of Plaintiff's claims and those of the purported class she seeks to represent in this case.  Nevertheless, Plaintiff has asserted in her Response that GreenSky has somehow already "waived" its right to object or complain about any use of the Consent Order for any purpose in this case.  There is, of course, no basis for this assertion.

Plaintiff claims GreenSky "waived" its right to object to the use of the Consent Order since it did not file the Objection until four months after Plaintiff attached the Consent Order as an Exhibit to Plaintiff's Reply in Support of Motion to Remand [Doc. 19].  In filing the Objection, GreenSky is not seeking to strike the Consent Order from the previous briefing related to Plaintiff's Motion to Remand, nor is GreenSky seeking reconsideration of the Court's earlier ruling on the Motion to Remand (which was favorable to GreenSky).  Instead, GreenSky's objection is prospective, providing notice that GreenSky objects to the use of the Consent Order with respect to further proceedings in this case, including trial and any future proceedings related to the merits of Plaintiff's claims.  The Court's determinations as to admissibility and relevance of documents and information such as the Consent Order will be properly considered in the context of trial or any specific future motion in which Plaintiff may attempt to use the Consent Order.

The fact that Plaintiff may have attached a copy of the Consent Order to an early pre-trial pleading does not mean that GreenSky cannot object when it is offered at trial or in the context of any future motion.[1]  To this point, the Court has not imposed any deadline for filing or otherwise asserting objections to evidence in this case.  Accordingly, GreenSky's filing of the Objection is not delinquent, and does not preclude GreenSky from objecting any time Plaintiff seeks to use the Consent Order in the future.  The cases cited by Plaintiff to support her "waiver" argument are clearly distinguishable from this case, as they involved waiver in the context of failing to object to evidence at trial or the specific proceeding that was the subject of the appeal.  *See Puckett v. United States*, 556 U.S. 129, 134 (2009) (waiver by failing to object at sentencing hearing); *Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019) (waiver by failing to make evidentiary objections at trial); *Sorensen v. City of Aurora,* 984 F.2d 349, 355 (10th Cir. 1993) (waiver of complaint about exclusion of evidence at trial by failing to make offer of proof); *Vallejos v. C.E. Glass Co.*, 583 F.2d 507, 511 (10th Cir. 1978) (waiver of complaint about stipulation by failing to object to stipulation at trial).

## II.
## THE CONSENT ORDER IS NOT RELEVANT TO PLAINTIFF'S CLASS ACTION CLAIMS

In her Response, Plaintiff tries to assert that consent orders are admissible in evidence.  While that may be true in some cases, there is a profound and fundamental

---

[1] For example, failing to object to a document offered as a summary judgment exhibit or an exhibit to any other pre-trial motion, does not "waive" the right of any party to object to the same document when it is later offered in evidence at trial.

disconnect between the issues addressed in the Consent Order and the class action issues in this case that makes the Consent Order irrelevant to Plaintiff's class action claims.

As set forth in the Objection, the Consent Order is an agreement between GreenSky and the CFPB in which GreenSky did not admit or deny any of the findings of fact or conclusions of law. *See* Consent Order, pp. 1-2. Plaintiff describes the Consent Order in her Response as "an order pursuant to federal law that requires certain conduct by GreenSky, *e.g*., that GreenSky obtain and retain evidence of a consumer's authorization of a loan, and if a consumer complains about a loan authorization, that GreenSky delete any credit inquiries unless it obtains evidence of the consumer's authorization." Response, p. 7. Plaintiff also states that the Consent Order "requires GreenSky to implement training and monitoring programs for its agents and merchants, specifically regarding policies and procedures related to preventing merchants from applying for loans without consumers' authorization or using Shipping Pass numbers without consumers' consent." *Id*., pp 7-8. In other words, Plaintiff acknowledges that the Consent Order relates to *federal* consumer laws, and requires GreenSky to develop and implement procedures to prevent merchants from applying for loans and/or drawing down lines of credit for goods and services to be provided to their customers without customer authorization.

In contrast, Plaintiff's putative class action claims are brought solely under Oklahoma statutes that require certain disclosures to be provided under Oklahoma consumer laws in connection with loans. Plaintiff's putative class action claims are based on GreenSky's alleged failures to provide certain specific enumerated disclosures set forth in OKLA. STAT. ANN. tit. 14A, § 3-306 (the "Consumer Disclosure Requirements"). The

4

Consumer Disclosure Requirements include such information as the identity of the lender required to make disclosure, the amount of credit of which the debtor has actual use, and the amount of any finance charges. *Id.* § 3-306(2)(a), (b)(1), (c).

The Consumer Disclosure Requirements that are the bases of Plaintiff's putative class claims in this case have nothing to do with the loan authorization issues that are the subject of the Consent Order. Instead, the class issues relate solely to the technical notice requirements set forth in the Consumer Disclosure Requirements. *See* Amended Petition and Motion to Certify a Class Action (the "Amended Complaint"), ¶¶ 10, 24. Because the Consent Order does not relate to the class action claims and issues raised in Plaintiff's Amended Complaint, the Consent Order has no relevance to this case. *See, e.g., Hoffman v. Transworld Sys. Inc.,* No. C18-1132 TSZ, 2022 WL 1800926, at *1 (W.D. Wash. May 20, 2022) (holding that testimony regarding investigation preceding consent order and defendant's actions in response to consent order would not be permitted, as it was not relevant to matters at issue); *Wozniak v. Coatesville Area Sch. Dist.*, No. CIV.A. 05-4552, 2006 WL 5116701, at *1 n.5 (E.D. Pa. June 19, 2006) (holding consent decree entered into by defendant in unrelated civil case was not admissible in evidence, as it was not relevant to case issues); *Block v. Abbott Laboratories, Inc.,* No. 01C1312, 2001 WL 1539159, at *2–3 (N.D. Ill. Dec. 3, 2001) (holding discovery related to consent decree involving different products and manufacturing processes of defendant than those at issue was not "reasonably calculated to lead to the discovery of admissible evidence").

The Amended Complaint includes some allegations with respect to Plaintiff's personal claims that she never agreed to a loan on the terms reflected in GreenSky's

records. Significantly, Plaintiff's claims and allegations regarding her personal dealings with the merchant and what she did and did not agree to in terms of any loan are clearly not proper class action claims, as such claims and allegations necessarily require adjudication of the specific facts and circumstances of Plaintiff's individual dealings with the merchant and GreenSky and Plaintiff's state of mind in connection with the transaction. *See Daniel v. Navient Solutions, LLC*, No. 8:17-cv-2503-T-24JSS, 2019 WL 4671169, at *7-8 (M.D. Fla. Apr. 26, 2019); *Levell v. Monsanto Research Corp.*, No. 3:95cv312, 2005 WL 81619926, at *7 (S.D. Ohio Sept. 28, 2005); *see also Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 679–80 (S.D.Cal.1999). Here, these non-class action claims cannot support admissibility of the Consent Order in connection with the class action claims.

Finally, Plaintiff speculates in her Response that the Consent Order could possibly be relevant to issues such as "knowledge of the need for training its agents and merchants to ensure authorization of the use of the Shopping Pass before proceeds are disbursed to merchants." Amended Complaint, p. 9. Plaintiff also suggests she "may want to use the Consent Order to rebut certain GreenSky defenses at trial." *Id.* Plaintiff additionally asserts the Consent Order may be used in connection with class certification, regardless of whether it is admissible in evidence. *Id.* None of these stated uses of the Consent Order are pertinent to the question of whether GreenSky satisfied the Consumer Disclosure Requirements in its dealings with the putative class Plaintiff seeks to represent.[2]

---

[2] Under the circumstances, it is clear that Plaintiff simply wants to use the Consent Order to argue that GreenSky is somehow a "bad company." Any proposed use of the Consent Order for that purpose would clearly be inadmissible under the Federal Rules of Evidence. *See* FED. R. EVID. 402-03; *Gribben v. United Parcel Serv., Inc.,* 528 F.3d 1166, 1172 (9th

### III.
### THE CONSENT ORDER IS INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 408

In her Response, Plaintiff attempts to assert the Consent Order somehow does not qualify as a settlement agreement, purportedly because "[t]he CFPB ... has no obligation to GreenSky under the terms of the Consent Order" and the Consent Order "is not a confidential settlement agreement." Response, p. 7. There is absolutely no merit to these assertions.

The first assertion - that the CFPB has no obligation under the Consent Order – improperly disregards the nature and purpose of Federal Rule of Evidence 408. First, settlement negotiations and agreements are generally not admissible in evidence because they are usually an attempt to purchase peace rather than an actual admission of liability. *See* FED. R. EVID. 408 advisory committee's note para. 1; *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 698 F.3d 284, 294 (5th Cir. 2010). Second, "the rule's exclusion of settlement evidence furthers public policy by promoting the voluntary settlement of disputes, which would be discouraged if evidence of compromise were later used in court." *Lyondell Chem. Co.*, 698 F.3d at 294-95; *see also* FED. R. EVID. 408 advisory committee's note para. 1. Each of these purposes underlying Rule 408 strongly favors exclusion of evidence related to the Consent Order in this case.[3]

---

Cir. 2008) (upholding exclusion of "no fault" consent decree based on finding it was "irrelevant and would have been unduly prejudicial, confusing, and misleading").

[3] There are cases in which courts have held the claims that were compromised earlier must be related to the claims in the subsequent proceeding in which the earlier agreement is offered for the exclusion in Rule 408 to take effect. *See Broadcort Capital Corp. v. Summa*

The Consent Order was a negotiated agreement between the CFPB and GreenSky. GreenSky's purpose in entering into the Consent Order was to resolve claims asserted by the CFPB regarding the specific loan origination issues that are the subject of the Consent Order (i.e., ensuring merchants could not apply for unauthorized loans in customers' names). The language of the Consent Order expressly states that GreenSky is not admitting any findings of fact or conclusions of law. *See* Consent Order, p. 2. If the CFPB and GreenSky had not compromised and settled the loan authorization issues addressed in the Consent Order, there could well have been protracted litigation through multiple forums over a substantial period of time. This would have cost both the CFPB and GreenSky substantial sums of money, and would have subjected both sides to the risk of an unfavorable outcome.

Instead, the negotiations and agreements between the CFPB and GreenSky enabled GreenSky to work with the CFPB to develop policies and procedures to avoid future consumer complaints and limit GreenSky's potential exposure with respect to the claims brought by the CFPB. For its part, the CFPB benefitted from the Consent Order because GreenSky's cooperation enabled the CFPB to resolve its issues with GreenSky much sooner and with substantially less resources expended than if the parties had engaged in

---

*Medial Corp.,* 972 F.2d 1183, 1194 (10th Cir.1992) (evidence of settlement discussion involving different dispute and "a different claim than the one at issue in the current trial" was not barred). However, Plaintiff's Amended Complaint clearly attempts to link the Consent Order with the issues in this case by asserting "GreenSky's actions herein are a violation of the ... Consent Order." Amended Complaint, ¶ 85. If, in fact, the Consent Order somehow relates to the class action claims in this case, it should be excluded under Rule 408. If not, then it should be excluded under Rules 402 and 403, as discussed above.

protracted litigation.  The Consent Order also benefitted consumers, as a government-approved system with oversight was put in place sooner rather than later to minimize any issues regarding customer approval of loans before any loan proceeds were provided to merchants.  Under the circumstances, it makes perfect sense that the resolution of these types of claims would be favored under the law.  *See Eisenberg v. University of New Mexico*, 936 F.2d 1131, 1134 (10th Cir. 1991) (stating that purpose of Rule 408 is to encourage settlement of disputes).

However, if individual complainants like Plaintiff are permitted to use compromised agreements such as the Consent Order as "admissions" or "findings of guilt" to further their personal claims, there would be a chilling effect on such agreements and related negotiations.  *See, e.g., Graves v. United States*, No. 13-cv-22501-MOORE/MCALILEY, 2014 WL 11899874, at *2-3 (S.D. Fla. Oct. 30, 2014).  Companies like GreenSky would have much less of an incentive to enter into any agreement with a government agency if such agreement could be used in the future by individual claimants in their personal lawsuits.  This, in turn, would frustrate the government's interest in expeditiously resolving enforcement actions against companies like GreenSky through consent orders.  Accordingly, it is very clear that the nature and purposes of Rule 408 are well-served by applying its prohibitions to consent orders.

The second assertion – that the Consent Order is not "confidential" - is somewhat baffling, as GreenSky has never asserted the Consent Order is confidential.  By their very nature, consent orders are almost never confidential, as they are generally entered by a court or a public agency and are typically part of the public record.  Significantly, the word

"confidential" does not appear as a requirement anywhere in Rule 408. *See* FED. R. EVID. 408. Further, numerous courts have recognized that consent orders and related negotiations can be excluded from evidence in a subsequent lawsuit under Federal Rule of Evidence 408 without raising any issue regarding confidentiality. *See, e.g., Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 535–37 (D.N.J. 2008); *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 658–59 (E.D.N.Y. 2012); *Wozniak*, 2006 WL 5116701, at *1 & n.5. The "confidentiality" issue raised by Plaintiff in her Response is a red herring, and there is no merit to Plaintiff's assertion that Rule 408 applies only to agreements that are confidential.

Even where evidence would not be strictly excluded under Rule 408, the 10th Circuit has recognized that "the risks of prejudice and confusion entailed in receiving settlement evidence are such that often ... the underlying policy of Rule 408 require[s] exclusion even when a permissible purpose can be discerned[.]" *EEOC v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1546 (10th Cir. 1991); *Oklahoma Land Holdings, LLC v. BMR II, LLC*, No. CIV-17-1036-D, 2020 WL 4284806, at *5 (W.D. Okla. Jul. 27, 2020). Plaintiff's claims will rise or fall on the merits of *this* case, and any evidence of prior settlements "will have an undue tendency to suggest decision on an improper basis." *Johnson v. Land O'Lakes, Inc.*, 181 F.R.D. 388, 393 (N.D. Iowa 1998); *see also* FED. R. EVID. 403.

Accordingly, for the reasons stated herein and in its original Objection, GreenSky objects to Plaintiff's proposed use of the Consent Order in this case for any purpose.

Respectfully submitted,

Dated: October 30, 2023

*s/ Kyle R. Prince*

Derrick T. DeWitt, OBA #18044
Kyle R. Prince, OBA #33040
DeWITT PARUOLO & MEEK
P.O. Box 138800
Oklahoma City, OK 73113
T: (405) 705-3600
F: (405) 705-2573
ddewitt@46legal.com
kprince@46legal.com

-and-

Sean W. Fleming
*Admitted Pro Hac Vice*
Texas State Bar No. 24027250
MACDONALD DEVIN MADDEN
KENEFICK & HARRIS, P.C.
12770 Coit Road, Suite 1100
Dallas, Texas 75251
T: (214) 744-3300
F: (214) 747-0942
SFleming@MacdonaldDevin.com
**Attorneys for Defendant GreenSky, LLC,
incorrectly identified as BMO Harris Bank,
NA d/b/a GreenSky, LLC**

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October, 2023, I electronically transmitted

this document to the Clerk of Court using the ECF System for filing and transmittal of a

Notice of Electronic Filing to the following ECF registrants:


M. Kathi Rawls, OBA #18814
Minal Gahlot, OBA #22145
kathi@rawlsgahlot.com
minal@rawlsgahlot.com

Janet R. Varnell, FBN #0071072
jvarnell@vandwlaw.com

**_Attorneys for Plaintiffs_**


_s/ Kyle R. Prince_

12