# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SUSAN PARISI,

      Plaintiff,

vs.

 

OKLAHOMA WINDOWS AND DOORS,
LLC d/b/a RENEWAL BY ANDERSON OF
OKLAHOMA AND BMO HARRIS
BANK, NA d/b/a GREENSKY, LLC,

      Defendants.

_____/

CASE NO. CIV-23-cv-115-R

(Removed from the District Court of Oklahoma County, State of Oklahoma, Case No. CJ-2022-5727)

---

## DEFENDANT, OKLAHOMA WINDOWS AND DOORS, LLC

## d/b/a RENEWAL BY ANDERSON OF OKLAHOMA'S MEMORANDUM OF LAW IN

## SUPPORT OF ITS MOTION TO DISMISS THE AMENDED CLASS ACTION

## COMPLAINT (OR STAY)  AND COMPEL ARBITRATION

---

Dated:  December 7, 2023          Respectfully submitted,

| | |
|---|---|
|  /s/ Diane J. Zelmer                    <br>Diane J. Zelmer, Esq. (pro hac vice)<br>FL Bar No. 27251<br>BERENSON LLP<br>4495 Military Trail, Suite 203<br>Jupiter, Florida 33458<br>Telephone: 561-429-4496<br>Email: djz@berensonllp.com<br>*Attorney for Defendant, OKLAHOMA WINDOWS AND DOORS, LLC* | Sheila D. Sayne, Esq.<br>OBA # 31213<br>Sayne Law PLLC<br>P.O. Box 33309<br>Tulsa, Oklahoma 74153-3309<br>Telephone: 918-740-3013<br>sheila.sayne@outlook.com<br>*Attorney for Defendant, OKLAHOMA WINDOWS AND DOORS, LLC* |



# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

A.   THE AGREEMENT ...................................................................................................... 1

B.   LEGAL STANDARD .................................................................................................... 3

C.   SUMMARY OF ARGUMENT ......................................................................................... 4

D.   ARGUMENT ............................................................................................................... 5

   1.   The Parties Have Expressly Delegated The Determination Of Arbitrability To The Arbitrator. ............................................................................................................ 5

   2.   The Federal Arbitration Act Governs This Dispute And Strongly Favors Arbitration. ........................................................................................................ 7

   3.   The Written Arbitration Provision is Enforceable. ...................................... 10

   4.   The Class Waiver Provisions Are Enforceable, and Not Substantively Unconscionable. ............................................................................................... 13

   5.   The Plaintiff's Claim Falls Within the Scope of the Arbitration Provision. .............. 14

   6.   OKLAHOMA WINDOWS Has Not Waived Its Right to Arbitrate. .......................... 16

   7.   The Court Should Dismiss or Stay of All Proceedings. ................................... 16

E.   REQUEST FOR EXTENSION TO FILE MOTION TO DISMISS ON OTHER GROUNDS ............. 17

F.   CONCLUSION ........................................................................................................... 18

CERTIFICATE OF SERVICE .............................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995) .................................................. 9

*Allis Chalmers Mfg. Co. v. Byers*, 88 P.2d 368 (Okla. 1939) ....................................................... 11

*Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228 (2013) ....................................................... 3, 15

*Am. Home Assur. Co. v. Vecco Concrete Const. Co. of Virginia*, 629 F.2d 961 (4th Cir. 1980)………… ................................................................................................................... 7, 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 4

*ARW Exploration v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) .................................................. 4

*AT&T Tech., Inc. v. Comm. Workers of America*, 475 U.S. 643 (1986) .................................... 14

*Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279 (10th Cir.1997) .......................................................... 4

*Bayron-Paz v. Wells Fargo Bank, N.A.*, No, 22 Civ. 6122 (DLC), 2023 WL 4399041 (S.D.N.Y. July 7, 2023) ................................................................................................................... 12

*Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017) ......................................................... 6

*Bernhardt v. Polygraphic Co.*, 350 U.S. 198 (1956) ...................................................... 7

*Brown v. Coleman Co., Inc.*, 220 F.3d 1180 (10th Cir.2000) ......................................................... 4

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) .................................................. 9

*Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) .................................... 11

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746 (3d Cir. 2016) ................ 6

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) ...................................................... 9

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ........................................................ 8

*Fancher v. Westwind Enterprises, Ltd.*, 2018 WL 11411336 (W.D. Ok Aug. 8, 2018) .............. 16



*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) .................................................... 10

*Franco v. State ex el. Bd. of Regents of the Univ. of Okla.*, 2020 OK CIV APP 64, ¶ 32, 482 P.3d 1, 9 (Okla. Civ. App. 2020) ......................................................................................... 11

*Freeman v. Prudential Sec., Inc.*, 1993 OK CIV APP 65, ¶ 9, 856 P.2d 592, 594 ........................ 8

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2nd Cir. 1987) ...................................... 11

*Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13 (2017) ............................................. 16

*Hancock v. American Tel. and Tel. Co., Inc.*, 2011 WL 3626785 (W.D. Okla. 2011) ................. 14

*Johnson v. Lynn Hickey Dodge Inc.*, 1998 WL 826829 (10th Cir. 1998) ..................................... 11

*Jones v. Sallie Mae, Inc.*, 2013 WL 6283483 (M.D. Fla. Dec. 4, 2013) ............................... 12, 13

*Lojewski v. Grp. Solar USA, LLC*, No. 22 CIV. 10816 (PAE), 2023 WL 5301423 (S.D.N.Y. Aug. 17, 2023) ........................................................................................................ 12

*Long v. DeGeer*, 753 P.2d 1327, 1328 (Okl.1988) .......................................................................... 8

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) ..................................... 9. 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...................................... 4

*Mayfield v. Fid. State Bank of Cleveland*, 121 Okla. 179 (1926) ................................................. 11

*Mey v. DIRECTV, LLC*, 971 F.3d 284 (4th Cir. 2020) ............................................................ 14, 15

*MicroStrategy, Inc. v. Lauricia,* 268 F.3d 244 (4th Cir. 2001) ..................................................... 16

*Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985) ............................................ 9

*Morris v. Airbnb, Inc.*, 2020 WL 5823542 (W.D. Okla. 2020) ..................................................... 13

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983) ........................... 3, 8, 15

*Muriithi v. Shuttle Exp., Inc.,* 712 F.3d 173 (4th Cir. 2013) ........................................................ 14

*Nichols Ford, Ltd. v. Garza*, No. 02-20-00191-CV, 2021 WL 3931916 (Tex. App. Sept. 2, 2021) ................................................................................................................. 12



*Noohi v. Toll Bros., Inc.*, 708 F.3d 599 (4th Cir. 2013)................................................................ 17

*Oil, Chem., & Atomic Workers Int'l Union, Local 2–124 v. American Oil Co.*, 528 F.2d 252 (10th

    Cir. 1976) ................................................................................................................................ 3

*Perry v. Thomas*, 482 U.S. 483 (1987) ....................................................................................... 9

*Peterson v. Shearson/American Express, Inc.,* 849 F.2d 464 (10th Cir. 1988) ........................... 3

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671 (5th Cir. 2012) ......... 7

*Preston v. Ferrer*, 552 U.S. 346 (2008)....................................................................................... 9

*Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139 (10th Cir. 2014)........................................ 15

*Schooley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 867 F. Supp. 989, aff'd, 107 F.3d 21

    (10th Cir. 1997)..................................................................................................................... 11

*SmartText v. Interland, Inc.*, 296 F.Supp.2d 1257 (D. Kan. 2003)................................................ 3

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662 (2010) ............................................ 3

*Terminix Intern. Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327 (11th Cir. 2005)...... 7

*The Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116 (2002)..................................... 17

*Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co.*, 1997 OK CIV APP 58, ¶ 24,

    947 P.2d 594, 599 ................................................................................................................. 8

*United States v. Gonzales*, 520 U.S. 1 (1997)............................................................................. 15

*Vaden v. Discover Bank*, 556 U.S. 49 (2009) ............................................................................... 3

*Voss v. City of Oklahoma City*, 1980 OK 148, ¶ 8, 618 P.2d 925, 928 ......................................... 8

*Walther v. Sovereign Bank,* 386 Md. 412 (2005) ....................................................................... 14

*Willco Enterprises, LLC v. Woodruff*, 2010 OK CIV APP 18, ¶ 13, 231 P.3d 767, 772................ 8

*Williams v. Imhoff*, 203 F.3d 758 (10th Cir. 2000) ..................................................................... 16



**Statutes**

12 O.S. § 1857 ............................................................................................................. 7, 11

12 O.S. Supp.2006 § 1857(A) ............................................................................................... 8

27 WILLISTON ON CONTRACTS § 70:114 (4th ed. Nov. 2021 update) ................................. 11

9 U.S.C. § 1 ....................................................................................................................... 9

9 U.S.C. § 2 ...................................................................................................... 8, 9, 10, 11

9 U.S.C. § 3 ..................................................................................................................... 16

9 U.S.C. § 4 ....................................................................................................................... 4

**Other Authorities**

Webster's Third New International Dictionary 97 (1976) ............................................... 15



Defendant, OKLAHOMA WINDOWS AND DOORS, LLC d/b/a RENEWAL BY ANDERSON OF OKLAHOMA ("OKLAHOMA WINDOWS" or the "Defendant"), by and through their undersigned counsel, hereby files this Memorandum of Law in Support of its Motion to Dismiss the Amended Class Action Complaint [Doc. 36] (or Stay) and Compel Arbitration ("Motion"), and states as follows:

### A. THE AGREEMENT

1. On November 23, 2021, Plaintiff, SUSAN PARISI ("PARISI") (the "Plaintiff") entered into a contract with OKLAHOMA WINDOWS for the purchase of four (4) windows to be installed at 1613 N. Markwell Avenue, Oklahoma City, OK 73127, in exchange for the sum of $17,743. A copy of the PARISI CONTRACT is attached to the Declaration of Jon Erickson as **Exhibit "1.1"** (hereinafter "Contract").

2. PARISI received a copy of the Contract via e-mail, the same day that she signed the Contract. A copy of the email is attached as **Exhibit "1.2."**

3. The Contract contained a three day right to cancel the Contract, through and including November 26, 2023. **Ex. 1.1, p. 4.**

4. It is clear from PARISI's own declaration that she was using this very same email address, and thus, had received the Contract [Docs. 27-8 to 27-16].

5. The Contract contains the following mediation, arbitration and class waiver language:

> **Informal Dispute Resolution and Mediation: Before submitting a claim to mediation and arbitration as described below, the Buyer agrees to present the Contractor with written notice of any construction defects and allow the Contractor within thirty (30) days (1) to inspect any construction defects and (2) present to the Buyer a written response which may include Contractor's offer to repair defects or to compensate Buyer for such defects. Before submitting a claim to mediation and arbitration as described below, the**



**Contractor agrees to present the Buyer with written notice regarding any payment disputes and similarly allow the Buyer to respond in writing within thirty (30) days.**

**If that process does not resolve the dispute, the complaining party must submit all claims to mediation within 10 days following notice of the claim to the other party. The mediation shall take place at offices of the American Arbitration Association (AAA) in the state where the work is to be performed; if there is no such office, the mediation will take place at a location designated by the mediator within the state where the work is to be performed. Each party will identify a person with decision-making authority who shall attend the mediation. The mediation will be nonbinding and conducted by the AAA in accordance with its then-current Construction Industry Mediation Procedures. The parties shall equally share the cost of the mediation. The parties agree that any action or claim or request for an injunction shall not be subject to mediation.**

**Arbitration: Buyer and Contractor agree that any dispute between them, or any of their respective affiliates, officers, directors, employees, agents or owners arising under or in connection with this Agreement, or the products and services to be provided by Contractor, that has been not resolved through mediation, will be determined by binding arbitration administered by the AAA pursuant to its then-current Construction Industry Fast Track Procedures. The arbitration shall take place at offices of the AAA in the state where the work is to be performed; if there is no such office, the arbitration will take place at a location designated by the arbitrator within the state where the work is to be performed. The arbitration shall be heard by one (1) arbitrator who has at least ten (10) years of experience in the construction industry. The arbitrator must follow the law of the state where the work is being performed and not disregard the terms of this Agreement.**
**The arbitration must be conducted on an individual basis. Neither of the parties nor the arbitrator will have any authority or power to proceed with any claim as a class action or otherwise to join or consolidate any claim with any other claims or any other proceeding involving third parties. In the event a court determines that this limitation on joinder or class action claims is unenforceable, then this entire commitment to arbitrate will become null and void and the parties must submit all claims to the jurisdiction of the courts. The parties agree that any action or claim or request for an injunction shall not be subject to arbitration.**

(Ex. 1.1, Terms and Conditions of Sale, p. 8-9)(hereafter "Mandatory Arbitration Clause").

6.    OKLAHOMA WINDOWS purchases some of the products and supplies used to manufacture and/or install its windows and doors from various interstate sources, including from the following:



Ritz Safety, LLC (lead safe work practices "LSWP" materials)
255 Crescentville Rd
Cincinnati, OH 45246

Caliber Supply (Silco caulk)
1710 N Higley Rd Ste 103
Mesa, AZ 85205

Bayworld (bay/bow supplier)
395 Reed St.
Mansfield, OH 44903

Renewal by Andersen (window units, coil and trim)
9900 Jamaica Ave S
Cottage Grove, MN 55016

**Ex. 1, ¶ 6**.

### B. LEGAL STANDARD

There is a liberal federal policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *Peterson v. Shearson/American Express, Inc.,* 849 F.2d 464, 465 (10th Cir. 1988); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662 (2010); *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009). Indeed, the public policy favoring arbitration agreements is understandable, as arbitration agreements are generally a less expensive and more expeditious means of settling litigation and relieving docket congestion. Any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. *Oil, Chem., & Atomic Workers Int'l Union, Local 2–124 v. American Oil Co.*, 528 F.2d 252, 254 (10th Cir. 1976); *see also Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25. Accordingly, "'[c]ourts must 'rigorously enforce' arbitration agreements.'" *Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 233, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013).

In the context of a motion to compel arbitration, this standard of review requires the moving party to present evidence sufficient to demonstrate an enforceable arbitration agreement. *SmartText v. Interland, Inc.*, 296 F.Supp.2d 1257, 1263 (D. Kan. 2003). Once the moving party has made such a showing, the burden shifts to the party opposing arbitration to demonstrate a



genuine issue of material fact as to the making of the arbitration agreement. *Id.; Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir.1997). In deciding whether the non-movant has identified a genuine issue of material fact for trial, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted).

The FAA provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. An arbitration clause containing broad language creates a general presumption in favor of arbitrability. *Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1184 (10th Cir.2000); *ARW Exploration v. Aguirre*, 45 F.3d 1455. 1462 (10th Cir. 1995).

### C. SUMMARY OF ARGUMENT

Plaintiff signed and entered into a Contract with OKLAHOMA WINDOWS that contains a very strong arbitration clause, and includes class waiver language. The parties expressly agreed that the Construction Industry Fast Track Procedures of the American Arbitration Association procedures apply, which provides the arbitrator with the power to rule on its own jurisdiction and determine arbitrability.

There is a liberal Federal policy favoring arbitration under the Federal Arbitration Act ("FAA"), which governs the enforceability of the parties' arbitration agreement. Here, there can

**BERENSON** LLP
Counsel to the Remodeling and Home Improvement Industry
4495 MILITARY TRAIL, SUITE 203, JUPITER, FL 33458          4 | P a g e

be no dispute that the transaction involves interstate commerce as OKLAHOMA WINDOWS purchases the products used to manufacture the windows, from various interstate sources.

The arbitration clause is enforceable because the Plaintiff signed the Contract, and under Oklahoma law, is bound by its execution even if she did not read or understand its terms. Here, the Plaintiff received the Contract via email, and had a right to cancel within three (3) days; thus, she had ample time to review and determine whether she wanted to be bound by the arbitration provision.

Further, the alleged claims fall within the broad scope of the arbitration agreement because the parties agreed to arbitrate "***any dispute between them, or any of their respective affiliates, officers, directors, employees, agents or owners arising under or in connection with this Agreement, or the products and services to be provided by Contractor***." Clearly, the Plaintiff's allegations concerning whether or not she received proper financial disclosures arise in connection with the Contract; Plaintiffs cannot escape binding arbitration.

Accordingly, OKLAHOMA WINDOWS requests the Court to grant its motion to dismiss or stay and compel arbitration.

### D. <u>ARGUMENT</u>

1. <u>**The Parties Have Expressly Delegated The Determination Of Arbitrability To The Arbitrator.**</u>

Under the express, unambiguous terms of the Mandatory Arbitration Clause contained in the parties' underlying agreement, the parties have agreed that, should any dispute between them arise, an arbitrator shall decide whether the dispute is arbitrable, and resolve any questions concerning the scope and validity of the arbitration provisions.

Here, the parties expressly agreed that "***any dispute between them, or any of their respective affiliates, officers, directors, employees, agents or owners arising under or in***

*connection with this Agreement, or the products and services to be provided by Contractor"*

shall be subject to binding arbitration to be determined by one arbitrator, in accordance with and

*pursuant to the then prevailing Construction Industry Fast Track Procedures of the American*

*Arbitration Association* ("AAA")." **Exhibit 1.1** at Mandatory Arbitration Clause (e.s.) Under

Rule 9(a),(b) of the AAA's Construction Industry Arbitration Rules and Mediation Procedures

("AAA Rules"):

> (a) The arbitrator *shall* have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.

> (b) The arbitrator *shall* have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

R-9. Jurisdiction, AAA Construction Industry Arbitration Rules and Mediation Procedures,

available at https://www.adr.org/sites/default/files/ConstructionRules_Web_0.pdf (emphasis

added).

It is well settled, as a matter of both Federal and State law, that when an agreement

incorporates the rules of the AAA, the parties "clearly and unmistakably" agree that an arbitrator

should decide questions of arbitrability. *See, Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1282

(10th Cir. 2017) (arbitration governed in accordance with rules of JAMS clearly and unmistakably

intended for arbitrator to decide issue of arbitrability). Courts have consistently reasoned that the

AAA's rules delegate the authority to decide questions of arbitrability to the arbitrator, because

those rules grant the arbitrator plenary authority to rule on such threshold issues. *See, Chesapeake*

*Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763–64 (3d Cir. 2016) ("It appears that

'virtually every circuit to have considered the issue has determined that incorporation of the

[AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'" (citations excluded)); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("[E]xpress adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (citations excluded)); *Terminix Intern. Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005) (holding that in agreeing to an arbitration clause stating that arbitration shall be conducted "in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association . . . the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid." (citations excluded)). *See also*, 12 O.S. § 1857 ("[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable").

Accordingly, the Court should grant OKLAHOMA WINDOWS' motion without deciding the issue of arbitrability and dismiss the complaint without prejudice, allowing Plaintiff to refile their complaint against it only in the highly unlikely event that an arbitrator, duly appointed in accordance with the Construction Industry Arbitration Rules of AAA, determines that this dispute is not subject to arbitration, or alternatively stay the action against OKLAHOMA WINDOWS.

**2. The Federal Arbitration Act Governs This Dispute And Strongly Favors Arbitration.**

Before the Federal Arbitration Act becomes applicable to the instant case, two findings must be made: (1) there was an agreement in writing providing for arbitration and (2) the contract evidences a transaction involving interstate commerce. *Am. Home Assur. Co. v. Vecco Concrete Const. Co. of Virginia*, 629 F.2d 961, 963 (4th Cir. 1980) (citing *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956)).

Under the plain language of the FAA, federal courts must treat arbitration agreements as "valid, irrevocable, and enforceable." 9 U.S.C. § 2. As the Supreme Court affirmed, the FAA "establishes a liberal federal policy favoring arbitration agreements."[1] *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal quotation omitted) (quoting *Moses H. Cone Memorial Hospital*, 460 U.S. at 24 (1983)). Here, as in *Epic Sys. Corp.*, "Congress has instructed that arbitration agreements like [the one] before us must be enforced as written." 138 S. Ct. at 1632. The FAA represents not only a generous federal policy favoring arbitration agreements, but also gives rise to a federal common law of arbitrability that preempts state law:

> [T]he Federal Arbitration Act . . . establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. The [statute], which rests on Congress' authority under the Commerce Clause, supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration[.]
> * * *
> Section 2 [of the FAA] declares a national policy favoring arbitration of claims that parties contract to settle in that manner[.] That national policy . . . applies in state

---

[1] The same strong public policy applies even if the arbitration agreement were governed under state law:

> Oklahoma law reflects this State's strong public policy in favor of arbitration. *See* 12 O.S. Supp.2006 § 1857(A); *see also Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co.*, 1997 OK CIV APP 58, ¶ 24, 947 P.2d 594, 599. Section 1857(A) of the New Act declares arbitration agreements "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." This provision reveals "a clear legislative intent that any disputes arising from the interpretation or application" of such agreements "shall have an immediate and speedy resolution by required arbitration." *Voss v. City of Oklahoma City*, 1980 OK 148, ¶ 8, 618 P.2d 925, 928; *see Bruner v. Timberlane Manor Ltd. P'ship*, 2006 OK 90, ¶ 23, 155 P.3d 16, 25 (recognizing § 1857(A) "is a clear expression of Oklahoma's policy favoring arbitration agreements.").

*Willco Enterprises, LLC v. Woodruff*, 2010 OK CIV APP 18, ¶ 13, 231 P.3d 767, 772. Indeed, arbitration agreements are generally favored in Oklahoma. *Freeman v. Prudential Sec., Inc.*, 1993 OK CIV APP 65, ¶ 9, 856 P.2d 592, 594 (quoting *Long v. DeGeer*, 753 P.2d 1327, 1328 (Okl.1988)(agreements of parties to bind themselves to mandatory arbitration are favored. Our Supreme Court recognized that courts "generally look with favor upon arbitration provisions as a shortcut to substantial justice with a minimum of court interference.").



> as well as federal courts and forecloses state legislative attempts to undercut the enforceability of arbitration agreements[.]
>
> \* \* \*
>
> *The FAA's displacement of conflicting state law is now well-established [and] has been repeatedly reaffirmed . . . .* A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results.

*Preston v. Ferrer*, 552 U.S. 346, 349, 353, 357 (2008) (emphasis added); *see also, Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006); *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 56 (1995); *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985). Here, there is a valid written agreement to arbitrate between OKLAHOMA WINDOWS and the Plaintiff. **Exhibit 1.1**.

The FAA applies to every agreement that is part of a transaction "involving [interstate] commerce." 9 U.S.C. § 2; *see also* 9 U.S.C. § 1 (defining "commerce" as "mean[ing] commerce among the several States[.]"). The Supreme Court has interpreted the phrase "involving commerce" broadly, as signaling an intent to exercise Congress' commerce power to the fullest extent of the Commerce Clause. *See, e.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995); *Perry v. Thomas*, 482 U.S. 483, 490 (1987). The term "involving commerce" requires "only 'that the transaction' in fact 'involv[e] interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Dobson*, 513 U.S. at 281.

Here, there can be no genuine dispute that this matter involves interstate commerce sufficient to trigger the FAA's application. The windows, which involve the purchase of materials and payment of taxes, necessarily involve interstate commerce. Indeed, some of the products used to manufacture and/or install the windows and doors are obtained from various interstate sources. An example of some of OKLAHOMA WINDOWS' suppliers and their out of state locations are as follows:



Ritz Safety, LLC (lead safe work practices "LSWP" materials)
255 Crescentville Rd
Cincinnati, OH 45246

Caliber Supply (Silco caulk)
1710 N Higley Rd Ste 103
Mesa, AZ 85205

Bayworld (bay/bow supplier)
395 Reed St.
Mansfield, OH 44903

Renewal by Andersen (window units, coil and trim)
9900 Jamaica Ave S
Cottage Grove, MN 55016

(**Exhibit 1**, Decl. J. Erickson, at ℙ 6). *Dobson*, 513 U.S. at 282 (holding that transaction involved interstate commerce when material used by plaintiff came from outside the state); *Am. Home Assur. Co. v. Vecco Concrete Const. Co. of Virginia*, 629 F.2d 961, 963 (4th Cir. 1980) (holding that transaction involved interstate commerce when there were orders for products and equipment shipped to Virginia from Maryland, Alabama, Utah, Missouri and California). Moreover, the entire dispute involves disputes that Plaintiff had regarding financing obtained from Greensky, which is based in Georgia while Plaintiff lives in Oklahoma. [Doc. 18, p. 10, n. 4]. Therefore, this case involves interstate commerce, and the FAA governs.

### 3. <u>The Written Arbitration Provision is Enforceable.</u>

In determining whether a valid arbitration agreement exists, federal courts "apply ordinary state law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citations excluded). Section § 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid,



irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[2]

It is well-settled under Oklahoma law that a party who signs a contract is presumed to have read and understand its terms and will be bound by its execution. *Mayfield v. Fid. State Bank of Cleveland*, 121 Okla. 179, 249 (1926)(a person signing an instrument is presumed to know its contents, and if he fails to read it, cannot escape liability even if false representations were made as to its contents); *Franco v. State ex el. Bd. of Regents of the Univ. of Okla.*, 2020 OK CIV APP 64, ¶ 32, 482 P.3d 1, 9 (Okla. Civ. App. 2020); *see also Allis Chalmers Mfg. Co. v. Byers*, 88 P.2d 368, 371 (Okla. 1939); *Johnson v. Lynn Hickey Dodge Inc.*, 1998 WL 826829, at *2 (10th Cir. 1998); *Schooley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 867 F. Supp. 989, aff'd, 107 F.3d 21 (10th Cir. 1997); 27 WILLISTON ON CONTRACTS § 70:114 (4th ed. Nov. 2021 update) ("One who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them.")

Here, the fact that Plaintiff signed the Contract with OKLAHOMA WINDOWS which was emailed to her on the same date that she signed it, is more than sufficient evidence to conclude the existence of an arbitration agreement and enforce it. *See also*, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) ("[T]he plain language of [9 U.S.C.] § 2 requires that the arbitration provision be 'written.' It does not, however, require that the agreement to arbitrate be signed by either party; nor does any other provision of the FAA"); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 845-46 (2nd Cir. 1987) ("Under general contract principles a party is

---

[2] This is nearly identical language to that found in the OUAA which provides that an "agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon grounds that at law or in equity for the revocation of a contract." 12 O.S. § 1857.



bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation" and a court must "focus not on whether there was subjective agreement as to each clause in the contract, but on whether there was an objective agreement with respect to the entire contract" (citations excluded)).

Plaintiff's allegation that she signed the agreement on an electronic tablet will not render the arbitration agreement unenforceable, especially where, as here, she had an opportunity to engage with the representative to ask about the Contract, but did not do so. *Lojewski v. Grp. Solar USA, LLC*, No. 22 CIV. 10816 (PAE), 2023 WL 5301423, at *9 (S.D.N.Y. Aug. 17, 2023). There is no indication that Plaintiff requested or attempted to review the terms, and OKLAHOMA WINDOWS refused. *Id*. Indeed, Plaintiff's interactions with the representative on the date of the sale is sufficient to show she chose to sign the Contract without reading it. *Bayron-Paz v. Wells Fargo Bank, N.A.*, No, 22 Civ. 6122 (DLC), 2023 WL 4399041, at *4 (S.D.N.Y. July 7, 2023) (compelling arbitration where plaintiff alleged salesperson obtained signature on agreement through iPad and did not explain agreement terms, as plaintiff "knew that the transaction would be governed by a written agreement ... but chose to sign the iPad twice without requesting that its contents be displayed to him"). Courts have cautioned that consumers need to carefully review a contract before signing. *Nichols Ford, Ltd. v. Garza*, No. 02-20-00191-CV, 2021 WL 3931916, at *5 (Tex. App. Sept. 2, 2021) (enforcing arbitration clause even when they signed the contract in piecemeal without most of each page being visible). Moreover, any allegation by Plaintiff that she did not receive a copy of the Contract does not render the agreement invalid. *See Jones v. Sallie Mae, Inc.*, 2013 WL 6283483, *5 (M.D. Fla. Dec. 4, 2013)(failure to recall receipt, without more, is not sufficient to create a jury issue [on arbitration].)

Indeed, the Plaintiff acknowledged and admitted that she signed "something on his electronic tablet" and that the representative told her that she would receive a copy of the Contract. [Doc. 27.5, p. 2, ¶ 6].   Plaintiff signed the Contract that stated "Buyer(s) hereby acknowledges that Buyer(s) 1) has read this Agreement, understands the terms of this Agreement, and has received a completed, signed, and dated copy of this Agreement . . ." and her signature is included under the arbitration provisions which indicates "[b]y signing below, Buyer and Contractor hereby agree to the Terms and Conditions of the Sale of this Agreement." **Exhibit 1.1, p. 2, 9.** *See Jones v. Sallie Mae, Inc.*, 2013 WL 6283483, *5 (M.D. Fla. Dec. 4, 2013) ("Plaintiff's signature on the Loan Application [acknowledging receipt of Promissory Note containing arbitration provision] is evidence that he received the Promissory Note and read it.).   Furthermore, the Contract was emailed to her on the date that she signed the Contract on November 23, 2021 to an email address that the Plaintiff acknowledges that she has used.  **Ex. 1.2**; [Docs. 27-8 to 27-16].  The Contract that was emailed to Plaintiff clearly contained a notice of a right to cancel within three (3) business days following execution of the agreement, and thus, Plaintiff had ample time to read the terms and conditions, and understand the implications of being bound by arbitration.  (**Exhibit 1.1,** at p.4).  Accordingly, the arbitration clause in the Agreement is enforceable.

### 4. <u>The Class Waiver Provisions Are Enforceable, and Not Substantively Unconscionable.</u>

Oklahoma Courts have found that class waivers are valid and enforceable.[3]  *See Morris v. Airbnb, Inc.*, 2020 WL 5823542, *4 (W.D. Okla. 2020) (ruling that Defendant's Motion to Compel

---

[3] The arbitration language in the contract that specifically and expressly prohibits filing claims on behalf of a class, as follows:

> The arbitration must be conducted on an individual basis. Neither of the parties nor the arbitrator will have any authority or power to proceed with any claim as a class action or otherwise to join or consolidate any claim with any other claims or any other proceeding involving third parties.



Arbitration is granted where the arbitration clause contained a class action waiver); see *also Hancock v. American Tel. and Tel. Co., Inc*., 2011 WL 3626785, *10 (W.D. Okla. 2011) (enforcing arbitration clauses that contained class action waivers and granting a motion to compel arbitration with dismissal of certain claims). Indeed, "[n]umerous courts, both federal and state, have rigorously enforced no-class-action provisions in arbitration agreements and found them to be valid provisions of such agreements and not unconscionable." *Walther v. Sovereign Bank,* 386 Md. 412, 436 (2005) (citations excluded); *see also, Epic Sys. Corp.*, 138 S. Ct. at 1624 (upholding Arbitration Act and agreement for individualized arbitration procedures, and refusing to outlaw class waivers even where NLRA and FLSA statutes allowed for class or collective action). As such, class wavier provisions are not substantively unconscionable. *Muriithi v. Shuttle Exp., Inc.,* 712 F.3d 173, 180 (4th Cir. 2013)(doctrine of unconscionability may not invalidate otherwise valid arbitration agreement to eliminate a term barring classwide procedures); *Walther*, 386 Md. at 438 (no-class-action provision is not "so one-sided or oppressive to petitioners as to render the arbitration agreement at issue unconscionable."). For the foregoing reasons, the arbitration clause containing the class waiver language is enforceable and not substantively unconscionable.

### 5. <u>The Plaintiff's Claim Falls Within the Scope of the Arbitration Provision.</u>

Once the Court determines that the parties have entered into an arbitration agreement, an order to arbitrate should not be denied unless it may be said with assurance that the arbitration clause does not cover the dispute. *AT&T Tech., Inc. v. Comm. Workers of America*, 475 U.S. 643, 650 (1986). "'Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Mey v. DIRECTV, LLC*, 971 F.3d 284, 292 (4th Cir. 2020) (citation excluded); *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. at 62 (when a court interprets such

---

**(Ex. 1.1, p. 9).**





provisions in an agreement covered by the FAA, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." (citation excluded)); *see also*, *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25. Accordingly, "'[c]ourts must 'rigorously enforce' arbitration agreements.'" *Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 233 (2013).

Where an arbitration clause is broad, there is a presumption of arbitrability and only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. *AT&T Tech.*, 475 U.S. at 650. Broad arbitration clauses providing that any dispute "arising out of or related to" the underlying contract are capable of expansive reach. *Mey v. DIRECTV, LLC*, 971 F.3d 284, 292 (4th Cir. 2020); *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1147 (10th Cir. 2014)(citations omitted)(an arbitration clause applying to disputes "arising under" or "in connection with" the agreement constitutes a broad arbitration clause).

The Contract requires arbitration for "***any*** dispute between them" "***arising under or in connection with*** this Agreement" (**Exhibit 1.1, pp. 8-9**) (e.s.). *United States v. Gonzales*, 520 U.S. 1, 5, (1997) ("[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting Webster's Third New International Dictionary 97 (1976)). Accordingly, the arbitration clause is broad and covers the claims raised here in this action. All claims involve the same set of facts and allegations relating to the windows that OKLAHOMA WINDOWS agreed to supply to the Plaintiff pursuant to the parties' Contract, and specifically whether or not the proper financial disclosures were made. Thus, the Plaintiff's claims fall within the scope of the Mandatory Arbitration Provision and this matter is due to be compelled to arbitration.

**6. OKLAHOMA WINDOWS Has Not Waived Its Right to Arbitrate.**

OKLAHOMA WINDOWS has clearly not waived the right to arbitration. Waiver is the voluntary and intentional relinquishment of a known right. *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 n.1 (2017) (citations omitted). Any party arguing waiver of the right to arbitration "bears the heavy burden of proving waiver." *MicroStrategy, Inc. v. Lauricia,* 268 F.3d 244, 250 (4th Cir. 2001) (citation excluded).

Here, OKLAHOMA WINDOWS has **not** waived their right to arbitration or acted in any manner inconsistent with arbitration, but rather and immediately proceeded with filing the instant Motion. Indeed, rather than filing a motion to dismiss on the merits of this action, in an abundance of caution, OKLAHOMA WINDOWS is requesting the Court to rule on OKLAHOMA WINDOWS' Motion first as it is OKLAHOMA WINDOWS' position that all such issues should be decided by an arbitrator. As such, OKLAHOMA WINDOWS has not acted inconsistent with its right to arbitration, and this dispute should be compelled to arbitration.

**7. The Court Should Dismiss or Stay of All Proceedings.**

Not only should the Court compel the arbitration of Plaintiff's claims against OKLAHOMA WINDOWS, the Court has the discretion to either dismiss or stay all other proceedings in this matter. At a minimum, the FAA requires a stay of the action because the issues are referable to arbitration. *See* 9 U.S.C. § 3 (if any issue referable to arbitration is brought to court, "the court in which suit is pending … shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"); *See also, Fancher v. Westwind Enterprises, Ltd*., 2018 WL 11411336, *2 (W.D. Ok Aug. 8, 2018) (citing *Williams v. Imhoff*, 203 F.3d 758, 764 (10th Cir. 2000) ("Under the FAA, a court must stay

proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.")(quotation marks and citation omitted).

Here, all of Plaintiff's claims against the OKLAHOMA WINDOWS fall within the scope of the Mandatory Arbitration Provision in their Agreement. Therefore, in addition to granting their Motion to Compel Arbitration, OKLAHOMA WINDOWS requests this Court to dismiss or stay all proceedings against it pending completion of the arbitral process.[4] Even where certain claims are arbitrable, and others are not, litigation of these claims must be stayed pending resolution of the arbitrable issue upon which they depend. *See, The Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116, 154 (2002) (staying fraud claims that are not arbitrable pending the resolution on the arbitrable issue upon which they depend).

### E. REQUEST FOR EXTENSION TO FILE MOTION TO DISMISS ON OTHER GROUNDS

In an abundance of caution, in the event the Court denies OKLAHOMA WINDOWS' motion to dismiss or stay and compel arbitration, Defendant requests the Court to extend the date in which Defendant may file a motion to dismiss the Complaint on other grounds.[5] Defendant has intentionally not requested the Court to rule on the merits of any matter in an effort to avoid any argument as to whether or not Defendant waived their rights to arbitration by participating in litigation in this matter.

---

[4] Under § 16(a)(1)(A), a party may appeal the denial of a motion to stay federal proceedings pending arbitration; at least to the extent that an appeal concerns the denial of a motion to stay, the fact that the motion also seeks dismissal does not affect its appealability. *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 604 (4th Cir. 2013)

[5] For example, OKLAHOMA WINDOWS contends that the action is barred (a) for failure of plaintiff to file an action against OKLAHOMA WINDOWS within the one year statute of limitations, (b) because OKLAHOMA WINDOWS does not extend any credit and is not a lender, and thus, OKLAHOMA WINDOWS is not a proper Defendant, (c) Plaintiff was issued a full refund, and thus, has no damages, and (d) Plaintiff failed to comply with conditions precedent to bringing this action, including complying with mediation requirements under the Contract.



**F.      CONCLUSION**

For the above good cause, OKLAHOMA WINDOWS respectfully requests the Court enter an order staying or dismissing this action and compelling arbitration, and order any other relief this Court deems just and proper.

WHEREFORE, Defendant, OKLAHOMA WINDOWS requests this Court grant its Motion to Dismiss the Amended Class Action Complaint (or Stay) and to Compel Arbitration, and for such other and further relief as is just and proper.

Dated: December 7, 2023                 Respectfully submitted,

                                /s/ Diane J. Zelmer
                                Diane J. Zelmer, Esq. (pro hac vice)
                                FL Bar No. 27251
                                BERENSON LLP
                                4495 Military Trail, Suite 203
                                Jupiter, Florida 33458
                                Telephone: 561-429-4496
                                Email: djz@berensonllp.com
                                *Attorney for Defendant, OKLAHOMA WINDOWS AND DOORS, LLC*

                                Sheila D. Sayne, Esq., OBA # 31213
                                Sayne Law PLLC
                                P.O. Box 33309
                                Tulsa, Oklahoma 74153-3309
                                Telephone: 918-740-3013
                                sheila.sayne@outlook.com
                                *Attorney for Defendant, OKLAHOMA WINDOWS AND DOORS, LLC*



## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed and served electronically using CM/ECF, which is served upon all parties of record on the list for this case on this 7th day of December, 2023.

Respectfully submitted,

/s/ Diane J. Zelmer
Diane J. Zelmer, Esq., Fla. Bar 27251