## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

SUSAN PARISI,                          )
                                       )
                  Plaintiff,           )
                                       )
v.                                     )        No. CIV-23-115-R
                                       )
OKLAHOMA WINDOWS AND                   )
DOORS, LLC, d/b/a RENEWAL BY           )
ANDERSEN OF OKLAHOMA; and              )
BMO HARRIS BANK, NA, d/b/a             )
GREENSKY, LLC,                         )
                                       )
                  Defendants.          )

## <u>ORDER</u>

Before the Court is Defendant Renewal by Andersen of Oklahoma's Motion to Compel Arbitration [Doc. 69]. Plaintiff responded, and the matter at issue [Doc. 71].[1] The Motion to Compel Arbitration is DENIED for the reasons below.

## I.    BACKGROUND

This case stems from a purported agreement to install and finance new windows in Plaintiff's home. The Court described the events of this case at length in a previous Order

---

[1] Additionally, Defendant GreenSky, LLC filed a Notice of Joinder in its co-defendant's Motion [Doc. 70]. Plaintiff opposed joinder, and the issue is fully briefed [Docs. 76, 79]. The Court finds joinder is proper, though fruitless. FED. R. CIV. P. 12(g)(2) does not bar GreenSky's joinder. *See Conrad v. Phone Directories*, 585 F.3d 1376, 1383 n.2 (10th Cir. 2009). As well, GreenSky may join its co-defendant's Motion because the issues are "integrally related" and "substantially interdependent[.]" *See Reeves v. Enter. Prod. Partners, LP*, 17 F.4th 1008, 1015 (10th Cir. 2021); *see also Ferrell v. Cypress Env't Mgmt.-TIR, LLC,* No. 20-5092, 2021 WL 5576677 at *4 (10th Cir. Nov. 30, 2021).

denying co-defendant GreenSky's Motion to Compel Arbitration. *See* Doc. 66. Consequently, the Court limits its discussion of facts to only those pertinent to this Motion.[2]

### A. The Initial Meeting and Purported Agreement on November 23, 2021

Susan Parisi received communications from Andersen advertising the ability to upgrade her home's windows with a loan requiring zero money down, zero interest for two years, and zero payments for twenty-four months ("Zero-Interest Loan"). Doc. 71-1: Parisi Decl. at ¶ 4. Parisi met with Russell Kelley, a representative from Andersen, at her home on November 23, 2021. *Id.* Parisi wished to replace multiple windows in her home. Doc. 36: Compl. at ¶¶ 63-64. However, Parisi informed Kelley she was beginning treatment for cancer soon, and she would need the Zero-Interest Loan option due to the costs and time her treatment would entail. *Id.* ¶ 62; Parisi Decl. at ¶ 6.

Kelley confirmed that Parisi's project was eligible for the advertised Zero-Interest Loan from GreenSky, a frequent financier of Andersen projects. Parisi Decl. at ¶ 7. He stated Parisi would need to sign a credit application on his iPad so that GreenSky could review her creditworthiness. *Id.* at ¶¶ 8-10. Kelley did not inform Parisi her signature could be used for purposes other than the credit check and loan application. *Id.* at ¶ 13. Parisi signed Kelley's iPad once. *Id.* at ¶ 15. Then, Kelley stated he needed additional signatures to secure the Zero-Interest Loan for Parisi. *Id.* at ¶ 16. Kelley proceeded to swipe through

---

[2] The Court looks to facts discussed in that previous Order. Analyzing a motion to compel arbitration is akin to summary judgment practice, meaning this Court can examine the record as a whole to determine whether a genuine dispute of fact regarding the existence of an agreement to arbitrate exists. Doc. 66 at 2 n.1 (citing *Bellman v. i3 Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014)).

additional pages on his iPad on which Parisi could see only a signature line and a check box. *Id.* at ¶ 17. As directed, Parisi checked a box to affix her prior signature on approximately twelve of these additional screens. *Id.* at ¶ 18. Kelley did not inform Parisi of any additional contract terms she may have agreed to via her actions on the iPad. *Id.* at ¶¶ 19-20. In fact, Parisi was unaware she was purportedly signing a contract at all; she only ever intended to apply for the Zero-Interest Loan by signing the iPad. *Id.* at ¶ 21.

Thirty minutes later, GreenSky called Kelley and informed Parisi via speakerphone that she had been approved for the two-year loan program with GreenSky. Doc. 18-3: Kaliban Decl. at ¶ 17; Parisi Decl. at ¶¶ 25-26. Kelley showed Parisi his iPad to evidence she had been approved for the Zero-Interest Loan, but the loan's financial terms were not visible. Compl. ¶ 65; Parisi Decl. ¶ 28. Parisi did not sign anything following her supposed approval for the loan. *Id.* at ¶¶ 15, 28. Before leaving Parisi's home, Kelley told her he would send a copy of the loan contract. *Id*. at ¶ 29. He emailed Parisi a copy of the agreement that night. *Id.* at ¶ 31; Doc. 69-1 at 37. However, Parisi did not discover a signed contract was attached to the email for nearly two years because she did not notice it in the Spam folder of her email inbox. Parisi Decl. at ¶ 32.

   *B.  The Purported Contract between Parisi and Renewal by Andersen*

The contract is a thirty-page document, and Parisi's signature appears fourteen times. Doc. 69-1: Contract at 6-36.[3] Parisi alleges these signatures are affixed, without her

---

[3] Page numbers on the document refer to the ECF pagination. The Court advises Counsel that the document should have been submitted as a separate exhibit from the Erickson affidavit and Kelley email.

authorization, to pages she had neither seen nor had described to her. Parisi Decl. at ¶¶ 34-35. She also alleges multiple signatures in the document are forged. *Id.* at ¶¶ 36-38.

The contract states the Buyer (Parisi) "agrees to purchase the products and/or services . . . in accordance with the terms and conditions described in this Agreement Document and Payment Terms, any documents listed in the Table of Contents, and any other document attached to this Agreement . . . ." Contract at 7. The total price is listed as $17,743. *Id.* The entire balance is financed; Parisi made no initial deposit. *Id.* The Contract includes notice of the right to cancel within three business days of acceptance. *Id.* at 9.

A GreenSky Financing Form is completed and signed on the fifth page of the contract.[4] *Id.* at 10. It states Parisi's Loan Plan is "Plan 3541 - 24 month promotional period. Interest waived if balance paid off before promotional period ends." *Id.* These terms reflect the Zero-Interest Loan for which Parisi applied. Parisi Decl. at ¶¶ 21, 33. However, Kelley called Parisi a few days after their initial meeting and informed her she had, in fact, not qualified for the Zero-Interest Loan. *Id.* at ¶ 39.

The Contract also contains an Arbitration provision which states:

> Buyer and Contractor agree that any dispute between them, or any of their respective affiliates, officers, directors, employees, agents or owners arising under or in connection with this Agreement, or the products and services to be provided by Contractor, that has been not resolved through mediation, will be determined by binding arbitration . . . . The arbitration must be conducted on an individual basis. Neither of the parties nor the arbitrator will have any authority or power to proceed with any claim as a class action or otherwise to join or consolidate any claim with any other claims or any other proceeding involving third parties. In the event a court determines that this limitation on joinder or class action claims is unenforceable, then this entire commitment to arbitrate will become null and void and the parties must

---

[4] Parisi claims her signature on this page and the next are forged. Parisi Decl. at ¶¶ 37-38.

submit all claims to the jurisdiction of the courts. The parties agree that any action or claim or request for an injunction shall not be subject to arbitration.

*Id.* at 13. Andersen seeks to enforce this arbitration clause.

C. *GreenSky's Financing Offer to Parisi*

As laid out in greater detail in a prior Order [Doc. 66 at 2-8], GreenSky did not offer Parisi the Zero-Interest Loan. Rather, following the submission of her credit application via Kelley's iPad, GreenSky offered Parisi a loan with starkly different terms. Doc. 66: Order at 6. The Court previously detailed GreenSky's actual offer:

> Loan Plan 7541 ("High-Interest Loan") requires payments beginning in six months, charges an annual percentage rate of 24.99%, and projects a total cost of $37,717.08 over the life of the $17,744 loan. Doc. 39-3; Doc. 18-3 at 12. The Loan Agreement states, "THIS IS A DIFFERENT PLAN THAN REQUESTED." Doc. 39-3 at 6.

*Id.* at 6 (omitting footnotes and citing to documents in the record).

GreenSky emailed Parisi three times within a span of five minutes regarding its loan offer on the afternoon of November 23. Kaliban Decl. at ¶¶ 23-27; Doc. 71-1 at 20-25.[5] The first two prompted Parisi to activate her loan; the third congratulated her on activating the loan. Doc. 71-1 at 20-25. Parisi, however, states she never opened these emails, activated her loan, or saw an emailed copy of the GreenSky offer because these emails went to her Spam folder, too. Parisi Decl. at ¶ 43; Doc. 71 at 4 n.2. GreenSky also mailed Parisi a copy of its loan offer [Doc. 39-3] the same day.[6] Kaliban Decl. at ¶¶ 18-22.

---

[5] Counsel is advised that these emails should have been submitted to the Court as a separate exhibit, not as an attachment to Ms. Parisi's Declaration.

[6] This purported loan agreement, the subject of GreenSky's Motion to Compel Arbitration, is a separate document from the Andersen Contract at the center of this Motion.

However, Parisi did not receive the physical copy until the following week. Parisi Decl. at ¶ 43.

GreenSky alleged Parisi accepted the terms of the High-Interest Loan via a transaction initiated by Andersen. Kaliban Decl. at ¶ 28; Order at 11-12. Accordingly, GreenSky previously attempted to enforce an arbitration provision found in the High-Interest Loan Agreement [Doc. 17, 46]. The Court denied GreenSky's Motion to Compel and substantially identical Motion to Dismiss, finding Parisi had never effectively accepted the offer from GreenSky. Order at 10.

Now, Andersen seeks to enforce the arbitration provision found in its agreement with Parisi and asks the Court to stay or dismiss Plaintiff's action alleging violations of the Oklahoma Consumer Credit Code. GreenSky joins its co-Defendant's motion, and the Plaintiff opposes both the joinder and the Motion.

## II.    LEGAL STANDARD

When considering a motion to compel arbitration, a court must first determine if there was an agreement and then determine if the agreement provides the moving entity with the right to compel arbitration. *Caclovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1057 (10th Cir. 2018). Courts apply state-law principles governing the formation of contracts to determine if an agreement to arbitrate exists. *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017). The party moving to compel arbitration bears the burden to show the arbitration clause applies. *Id.* If parties dispute the existence of an agreement, the nonmovant should receive the "benefit of all reasonable doubts and inferences that may arise" *Id.* (internal quotation omitted). The process is akin to summary judgment practice.

*Id.* "[T]he party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement[.]" *Bellman* at 612. If a genuine dispute of material fact prevents determining whether the agreement is enforceable, a district court should proceed to a jury trial, if the nonmoving party so requests, to determine the facts and whether the parties agreed to arbitrate. *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014).

## III.   DISCUSSION

Parisi and Andersen never entered into a valid contract because there was no mutual assent as to the material terms of the agreement. The parties could not assent to the terms of a nonexistent loan offer. As a matter of law, the parties did not contract.[7] Accordingly, no agreement between the parties to arbitrate exists, and Defendant's motion to compel arbitration is DENIED.

Oklahoma contract law governs the formation of this agreement and dictates the conclusion Plaintiff and Defendant never entered into the Andersen Contract. In Oklahoma, an enforceable agreement requires a "meeting of the minds on all essential terms of the contract." *South Central Industries v. Kerrtas Marketing, LLC*, 21-802, 2022 WL 1518935 at *2 (W.D. Okla. Feb. 7, 2022) (quoting *Young v. Chappell*, 239 P.3d 476, 479 (Okla. Civ. App. 2010)). "[T]he consent of the parties must be mutual, and consent is not mutual unless the parties agree on the same thing at the same time." *Smalley v. Bond*, 218 P. 513, 515

---

[7] Plaintiff propounds theories of contract invalidity based upon forgery and violations of electronic signature laws. *See* Doc. 71 at 12-14, 18-21. It is unnecessary for the Court to address these theories because, even assuming Parisi accepted an offer from Andersen, the lack of mutual assent prevents formation of a contract.

(Okla. 1923). For the arbitration clause in the Andersen Contract to be enforceable, Parisi and Andersen must have agreed to all the same essential terms of the contract at the same time.

The payment terms were an essential element to this agreement, as they are in many agreements. *See e.g., Sarber v. Harris*, 368 P.2d 93, 96 (Okla. 1962) ("The amount of the purchase price as well as the terms of payment formed an essential part of the transaction."); *O'Neal v. Harper*, 75 P.2d 879, 881 (Okla. 1937) ("The purchase price was a material part of the contract and it is necessary that there be a meeting of the minds on the amount thereof before a valid contract could exist. It is not enough that [one party] intended to sell . . . and [one party] intended to buy[.]"). In this instance, Parisi only contacted Andersen after seeing the advertised Zero-Interest Loan offer. Doc. 39-1 at ¶¶ 4, 7. Parisi communicated she needed the Loan to proceed with the project. *Id.* at ¶ 6; Doc. 36 at ¶ 62. When Kelley met with Parisi at her home, they dedicated much of their time to Parisi's application for the Loan. In essence, the Zero-Interest Loan was the foundation of the entire transaction. Parisi was not seeking new windows from Andersen at any cost; Parisi was seeking new windows *only with the assistance of the Zero-Interest Loan*. The Loan was indispensable to the transaction, and thus, it was an essential term on which the parties' minds must have met to have formed a contract.

First, the offer was defective in describing the loan's actual financial terms. "An offer must be definite and certain." 17A Am. Jur. 2d Contracts § 46. It "must sufficiently cover the essentials of the proposed transaction." 17A Am. Jur. 2d Contracts § 48. Here, Andersen's contractual offer promised Parisi the Zero-Interest Loan. The contract assured

Parisi she was purchasing Andersen's "products and/or services . . . in accordance with the terms and conditions described in this Agreement Document and Payment Terms[.]" Contract at 7. The fundamental issue is that Parisi had not, in fact, qualified for the Zero-Interest Loan. Instead, GreenSky offered Parisi only the High-Interest Loan. Thus, the Andersen Contract professed to offer something it could not deliver. The offer did not sufficiently cover the essentials of the proposed transaction between Parisi and Andersen because it did not accurately describe the actual payment terms offered to Parisi. It was an invalid offer.

It follows that Parisi's alleged acceptance of the invalid offer has no legal import. "[A]cceptance must be absolute, unconditional, and identical with the terms of the offer, and must in every respect meet and correspond with the offer; and any qualification of or departure from those terms invalidates the offer." *Nabob Oil Co. v. Bay State Oil & Gas Co.*, 255 P.2d 513, 515 (Okla. 1953) (internal quotation marks omitted). Parisi, even assuming she validly signed the contract on Kelley's iPad, was assenting to the Zero-Interest Loan offer. In reality, no such offer existed. Parisi's purported acceptance of the Andersen Contract was therefore ineffective, as it differed from the terms of the actual offer made to her.

Because offer and acceptance were flawed, there cannot have been mutual assent to the contract's terms. "No contract is complete without the mutual assent of the parties to all essential elements of an agreement. The minds of the parties must meet and unite on all essential elements before an effective contract is created." *Mid-Continent Petroleum Corp. v. Russell*, 173 F.2d 620, 622 (10th Cir. 1949) (discussing Oklahoma contract law).

Andersen misstated its offer. Parisi allegedly accepted the unavailable terms of that offer. Thus, the parties' minds did not "meet and unite" on the Zero-Interest Loan, an essential element of the transaction, and no contract was created. *See id.*

Plaintiff also suggests the contract fails for want of consideration. The Court believes the issue is better conceptualized as a lack of mutual assent, but the consideration argument illustrates a failing of the contract too. "Lack of mutuality means lack of consideration; where there is no other consideration for a contract[,] mutual promises must be binding on both parties to constitute consideration." *Adalex Lab'ys v. Krawitz*, 270 P.2d 346, 349-50 (Okla. 1954). The contract is not mutually enforceable. If Andersen seeks to force Parisi to arbitrate her claims, Parisi cannot force Andersen to provide it a Zero-Interest Loan as promised. Andersen cannot perform its promise because Parisi was never actually offered the Zero-Interest Loan. While it can be argued the promise to replace Parisi's windows is a form of consideration, the parties' intended bargain, reflected in the failed agreement, was for Andersen to replace the windows without Parisi being charged for two years. However, this bargain was illusory and never capable of mutual performance. Thus, the contract lacks consideration.

Accordingly, no summary trial of factual matters is necessary. Andersen does not carry its burden to present sufficient evidence the contract it presented the Court is valid. Andersen, in fact, presents little factual evidence at all. It merely presents the Contract and states conclusively that the agreement is enforceable because Parisi signed it. Moreover, even if the contract was not fundamentally deficient, genuine factual disputes regarding the

propriety of Parisi's acceptance and the contract's validity would prevent the Court from compelling arbitration without a jury's involvement.

## IV.     CONCLUSION

Defendant Andersen's Motion to Dismiss and Compel Arbitration [Doc. 68] is DENIED for the reasons set forth above.

**IT IS SO ORDERED** this 14th day of February 2024.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE