## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SUSAN PARISI,

      Plaintiff,

vs.

OKLAHOMA WINDOWS AND DOORS,
LLC d/b/a RENEWAL BY ANDERSON OF
OKLAHOMA AND BMO HARRIS
BANK, NA d/b/a GREENSKY, LLC,

      Defendants.

_____/

CASE NO. CIV-23-cv-115-R

(Removed from the District Court of Oklahoma County, State of Oklahoma, Case No. CJ-2022-5727)

_____

**DEFENDANT, OKLAHOMA WINDOWS AND DOORS, LLC**

**d/b/a RENEWAL BY ANDERSON OF OKLAHOMA'S MEMORANDUM OF**

**LAW IN SUPPORT OF ITS MOTION TO DISMISS THE (SECOND) AMENDED**

**PEITION AND MOTION TO CERTIFY CLASS ACTION**

_____

Dated:  August 12, 2025      Respectfully submitted,

|  /s/ Diane J. Zelmer        <br> Diane J. Zelmer, Esq. (pro hac vice) <br> FL Bar No. 27251 <br> BERENSON LLP <br> 4495 Military Trail, Suite 203 <br> Jupiter, Florida 33458 <br> Telephone: 561-429-4496 | Sheila D. Sayne, Esq. <br> OBA # 31213 <br> Sayne Law PLLC <br> P.O. Box 33309 <br> Tulsa, Oklahoma 74153-3309 <br> Telephone: 918-740-3013 <br> sheila.sayne@outlook.com |



| Email: djz@berensonllp.com *Attorney for Defendant, OKLAHOMA WINDOWS AND DOORS, LLC* | *Attorney for Defendant, OKLAHOMA WINDOWS AND DOORS, LLC* |
| --- | --- |



## TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………iii

TABLE OF AUTHORITIES ................................................................................. iv

A.    LEGAL STANDARD ................................................................................. 1

B.    SUMMARY OF ARGUMENT ..................................................................... 3

C.    ARGUMENT ........................................................................................ 5

I.    PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF AGAINST OKLAHOMA WINDOWS FOR VIOLATION OF THE OKLAHOMA CONSUMER CREDIT CODE ................................................................................... 5

a.    *Plaintiff Fails to Allege that OKLAHOMA WINDOWS is a "Lender."* .................... 5

b.    *Plaintiff Fails to Allege that OKLAHOMA WINDOWS is a "Creditor."* ................ 6

c.    *Plaintiff is Not a "Debtor."* ..................................................................... 12

II.    PLAINTIFF LACKS STANDING UNDER ARTICLE III. ................................. 12

III.    THE COURT SHOULD STRIKE THE CLASS DEFINITION ............................ 15

a.    *The Alleged Class Definition is An Impermissible Fail-Safe Class.* ....................... 16

b.    *The Class is Based on Allegations Against Both Defendants Who Have Different Roles.* ........................................................................................... 18

c.    *The Alleged Class Definition Must Not Include Consumers Who Entered into an Arbitration Agreement With Either Defendant.* ........................................... 18

d.    *The Class Claims are Not Cohesive with the Action Against OKLAHOMA WINDOWS* ...................................................................................... 20

IV.    ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT ................... 22

a.    *The Complaint Fails to Identify the Cause of Action(s) Against OKLAHOMA WINDOWS.* ..................................................................................... 23

b.    *Plaintiff Fails to Plead Fraud With Particularity, and any Fraud Claims are Not Appropriate for Classwide Determination.* ................................................. 24

CERTIFICATE OF SERVICE .......................................................................... 27



## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AerSale, Inc. v. City of Roswell, New Mexico*, No. 222CV00218MISDLM, 2023 WL 7165107 (D.N.M. Oct. 31, 2023) ................................................................................12

*Alsortish v. GreenSky, LLC*, 2017 WL 699830 (E.D. La. Feb. 22, 2017) ........................11

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ...................................2

*Anderson v. Frederick Ford Mercury, Inc.*, 694 F. Supp. 2d 324 (D. Del. 2010).............15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...............................................................................1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...............................................................1

*Bender v. Williamsport Area School Dist.*, 475 U.S. 534 (1986) .....................................12

*Bentley v. GreenSky Trade Credit, LLC*, 2015 WL 1509243 (D. Conn. 2015).................11

*Bustamante v. First Fed. Sav. And Loan Assn' of San Antonio*, 619 F. 2d 360 (5th Cir. 1980) ...............................................................................................................................11

*Cetto v. LaSalle Bank Nat. Ass'n*, 518 F.3d 263 (4th Cir. 2008)....................................7, 9

*Che v. Aurora Loan Svcs., LLC* 847 F.Supp.2d 1205 (C.D.Cal.2010)...............................9

*City of Los Angeles v. Lyons,* 461 U.S. 95 (1983) .............................................................15

*Danier v. Fed. Nat. Mortg. Ass'n*, No. 12-62354-CIV, 2013 WL 462385 (S.D. Fla. Feb. 7, 2013) ...............................................................................................................................9

*DeLeon v. Beneficial Const. Co.*, 55 F. Supp. 2d 819 (N.D. Ill. 1999) ............................11

*Denton v. Nationstar Mortg. LLC*, No. 18-CV-241-GKF-JFJ, 2020 WL 1917486 (N.D. Okla. Apr. 20, 2020) .....................................................................................................10

*Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080 (8th Cir. 2021) .....................3, 21

*Donelson v. United States Through Dep't of the Interior*, 730 F. App'x 597 (10th Cir. 2018) ..............................................................................................................................13

*Ebert v. Gen. Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016)....................................................20



*Geer v. Cox*, 242 F.Supp.2d 1009 (D. Kan. 2003) ...........................................................2, 6

*Gratz v. Bollinger*, 539 U.S. 244, 289, 123 S.Ct. 2411 (2003)...........................................13

*Holt v. United States*, 46 F.3d 1000 (10th Cir.1995) ...........................................................2

*Horton v. Country Mortg. Svcs.*, No. 07 C 6530, 2010 WL 55902 (N.D.Ill. Jan.4, 2010)..9

*In re Rodriguez*, 695 F.3d 360 (5th Cir.2012) ...................................................................17

*In re St. Jude Med. Inc.*, 425 F.3d 1116 (8th Cir. 2005)................................................20, 21

*In re Williams*, No. 18-12940-BFK, 2023 WL 6618956 (Bankr. E.D. Va. Oct. 10, 2023) .......................................................................................................................................13

*John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443 (5th Cir. 2007) .......................................3

*Jones v. Carnes*, 2016 WL 205500 (W.D. Kentucky 2016)..................................................9

*Koch v. Koch Indus., Inc.*, 203 F.3d 1202 (10th Cir. 2000)................................................25

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173 (10th Cir. 2013) .........................14

*Locicero v. Intrust Bank*, N.A., 2018 WL 4374908 (S.D. Fla. 2018)..................................11

*Lukas v. Lucci, Ltd., Inc.*, 966 F. Supp. 1163 (S.D. Fla. 1997) ...........................................8

*Marcus v. BMW of North America LLC*, 687 F.3d 583 (3d Cir.2012) ...............................17

*Mayfield v. Fid. State Bank of Cleveland*, 121 Okla. 179 (1926)......................................20

*Messner v. Northshore University HealthSystem*, 669 F.3d 802 (7th Cir. 2012)..............16

*Mincey v. World Savings Bank, FSB*, 614 F.Supp.2d 610 (S. Carolina 2008) ...................8

*Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136 (D. Utah 2018) ....................2, 13, 14

*Morgan v. McCottor*, 365 F.3d 882 (10th Cir. 2004) ........................................................13

*Nagel v. DFL Pizza, LLC*, No. 1:21-CV-00946-DDD-SBP, 2024 WL 5095298 (D. Colo. Dec. 4, 2024).................................................................................................................19

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) .............................3

*Radulescu v. W. Union Co.*, No. 1:19-cv-03009-DDD-SKC, 2023 WL 9035367 (D. Colo. Nov. 27, 2023) ................................................................................................................19



*Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir.2011) ................................17

*Rector v. City and County of Denver,* 348 F.3d 935 (10th Cir.2003)...............................15

*Robey-Harcourt v. Bencorp Fin. Co.*, 212 F. Supp. 2d 1332 (W.D. Okla. 2002), *aff'd*, 326 F.3d 1140 (10th Cir. 2003)....................................................................................10, 11

*Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181 (10th Cir. 1995) .............................................6

*Rosolen v. Home Performance All., Inc.*, No. 219CV00024JLBNPM, 2021 WL 8201477 (M.D. Fla. Apr. 23, 2021) ...............................................................................................11

*Rouse v. H.B. Fuller Company*, 694 F. Supp. 3d 1149 (D. Minn. 2023) ...........................3

*Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076 (S.D.Ohio May 7, 2014)...................16

*Sealey v. Boulevard Construction Co.*, 70 Ohio App.2d 277 (1980) ................................8

*Shaffer v. Eden*, 209 F.R.D. 460 (D. Kan. 2002).............................................................22

*Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26 (1976).......................................15

*Simon v. Metro. Prop. & Cas. Ins. Co.*, No. CIV-08-1008-W, 2009 WL 10664188 (W.D. Okla. Feb. 23, 2009).....................................................................................................14

*Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320 (10th Cir. 2002) .......................2

*Slapikas v. First Am. Title Ins. Co.,* 250 F.R.D. 232 (W.D. Pa. 2008) .............................16

*Stallbaumer v. NextEra Energy Res., LLC*, No. 22-CV-04031-HLT-ADM, 2023 WL 3496245 (D. Kan. May 17, 2023) ................................................................................16

*Thole v. US Bank NA*, 140 S.Ct. 1615 (2020)..................................................................15

*Thompson v. Jiffy Lube Int'l, Inc.,* 250 F.R.D. 607 (D. Kan. 2008)...................................15

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S.Ct. 1507, (2019) .......................................................................24

*United States v. Rodriguez-Aguirre*, 264 F.3d 1195 (10th Cir. 2001)...............................2

*Vallagio at Inverness Residential Condo. Ass'n, Inc. v. Metro. Homes, Inc.*, 412 P.3d 709, (Colo. App. 2015), aff'd, 395 P.3d 788 (Colo. 2017) ...................................................19



*Vizcaino v. United States Dist. Court for Western Dist. of Wash.*, 173 F.3d 713 (9th Cir.1999) ....................................................................................................................17

*Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698 (D.N.J. 2013) ...........................3

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir.2012)....................................17

*Zarichny v. Complete Payment Recovery Servs.*, Inc., 80 F. Supp. 3d 610 (E.D. Pa. 2015) ................................................................................................................................16, 17

**Statutes**

14A § 5-203(1)(a) ..............................................................................................................14

14A O.S. § 3-301(6) .............................................................................................................7

14A O.S. § 3-306 .........................................................................................................5, 6, 14

14A O.S. § 5-203 ...............................................................................................................6, 9

15 USC 1602(g) ...................................................................................................................7

Article III of the United States Constitution...............................................................12, 15

**Rules**

Rule 12(b)(1) ...........................................................................................................1, 2, 12

Rule 12(b)(6) .......................................................................................................................1

Rule 12(e) ..........................................................................................................................22

Rule 12(f)......................................................................................................................1, 3, 15

Rule 23..............................................................................................................................19

Rule 23(b)(2) ....................................................................................................................20

Rule 9................................................................................................................................24

Rule 9(b) ...........................................................................................................................24

**Other Authorities**

Erin L. Geller, The Fail–Safe Class as an Independent Bar to Class Certification, 81 Fordham L.Rev. 2769, 2782 (April 2013) .................................................................17



Defendant, OKLAHOMA WINDOWS AND DOORS, LLC d/b/a RENEWAL BY ANDERSON OF OKLAHOMA ("OKLAHOMA WINDOWS" or the "Defendant"), pursuant to Rule 12(b)(1), Rule 12(b)(6) and Rule 12(f) of the Federal Rules of Civil Procedure, by and through their undersigned counsel, hereby files this Memorandum of Law in Support of its Motion to Dismiss the (Second) Amended Petition and Motion to Certify Class Action (hereinafter "Complaint") [DE 36], and states as follows:

### A.    LEGAL STANDARD

*Rule 12(b)(6)*.   A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where a party fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When resolving a Rule 12(b)(6) motion, the Court generally limits itself to the contents of the pleadings and construes the complaint in favor of the plaintiff, taking all pleaded facts as true. *See, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. Such factual allegations must be specific and not mere conclusory allegations, as a court will not accept as true conclusory allegations or unwarranted deductions of fact. *Id*. at 555; *Iqbal*, 556 U.S. at 678. Plaintiff's allegations must transcend the "speculative," "conceivable," and "possible," and must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 556–57, 566–67, 570 (2007). In making this determination, the Court must disregard "legal conclusions" and "conclusory statements," and must scrutinize the well-pleaded factual allegations to ensure that they are more than "'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 677–79 (2009); *see also Am. Dental Ass'n*



*v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010).  "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Geer v. Cox*, 242 F.Supp.2d 1009, 1016 (D. Kan. 2003) (internal quotation marks and citation omitted)

> *Rule 12(b)(1)*.
>
> "Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms." *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.1995). "First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint." *Id*. (citation omitted). "In addressing a facial attack, the district court *1150 must accept the allegations in the complaint as true." *Id*. "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id*. (citation and internal quotation marks omitted). "In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*. (internal quotation marks omitted) (citation omitted). Because the court "construe[s] the [Defendants'] Rule 12(b)(1) motion to dismiss for lack of standing to be a facial attack on the complaint, rather than a factual one," it accepts Plaintiffs' "allegations of material facts as true and construe[s] the complaint in favor of" the Plaintiffs. *Id*.

*Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1149–50 (D. Utah 2018).  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1) without converting a motion to dismiss to a motion for summary judgment.  *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002).



*Rule 12(f)*.  Under Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "A district court may grant a motion to strike prior to class action certification when 'it is apparent from the pleadings that the class cannot be certified under Rule 23(b)(2).'" *Rouse v. H.B. Fuller Company*, 694 F. Supp. 3d 1149, 1164 (D. Minn. 2023) (quoting *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1094 (8th Cir. 2021)).  Under such circumstances, it is an abuse of discretion for the court to deny motions to strike the class allegations.  *Id. at 1092*.

Federal courts are split as to whether class-action allegations may be stricken under Rule 12(f) prior to the filing of a motion for class-action certification when certification is a clear impossibility. Some courts permit this.  *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *cf. John v. Nat'l Sec. Fire & Cas. Co*., 501 F.3d 443, 444-45 (5th Cir. 2007) (affirming dismissal of unsupportable class-action allegations on Rule 12(b)(6) motion). Others deny as premature motions to strike class-action allegations made before a plaintiff moves to certify a class. *See, e.g., Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 706-07 (D.N.J. 2013).

### B.    SUMMARY OF ARGUMENT

Plaintiff's Complaint against OKLAHOMA WINDOWS should be dismissed.  Plaintiff purportedly attempts to raise a cause of action against OKLAHOMA WINDOWS under the Oklahoma Consumer Credit Code ("OCCC"), however, OKLAHOMA WINDOWS has no obligation under the OCCC as it is not a "lender" nor a "creditor."  Indeed, this District has recognized that an "arranger of credit" does not qualify as a "creditor," and



other Federal Courts have likewise narrowed applicability of consumer credit codes specifically to a "creditor" as intended by Congress.

Second, this Court lacks jurisdiction over the claims raised against OKLAHOMA WINDOWS because Plaintiff cannot establish Article III standing. Plaintiff's only alleged injury applies to Defendant "Harris/GreenSky" and not to any conduct by OKLAHOMA WINDOWS. Further, the only injury alleged is conclusory in nature and fails to specify any facts that would support an injury to claim "emotional distress" or "harassment." Even if Plaintiff did suffer any injury, it is not the result of Defendants failing to provide disclosures under the OCCC. Moreover, the OCCC does not even provide recovery for these types of damages; rather the OCCC allows Plaintiff to recover "actual damages," and Plaintiff has not alleged any such damages. Thus, Plaintiff cannot meet Article III standing requirements.

Finally, Plaintiff's class definition must be stricken as it is an impermissible "fail-safe class" that would require determination of the merits before the class is identified. Further, the class definition fails to carve out those consumers subject to the arbitration agreements and class actions waivers entered into by and between one of the Defendants, and any such determination of validity of any arbitration agreement (as Parisi argued in this Court and on appeal) would require mini-trials/appeals for each and every consumer. Moreover, because Parisi's circumstances are so very fact intensive and individualized, Plaintiff's claims are not cohesive to assert an action against Defendants on a classwide basis.

Accordingly, OKLAHOMA WINDOWS requests the Court to grant its motion to dismiss, or alternatively grant its motion for more definite statement to identify the causes



of action raised against OKLAHOMA WINDOWS, and to plead any allegations of fraud with particularity.

### C.    ARGUMENT

### I.    PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF AGAINST OKLAHOMA WINDOWS FOR VIOLATION OF THE OKLAHOMA CONSUMER CREDIT CODE.

In Paragraph 10 of the Complaint, Parisi erroneously alleges that both "Defendants" (including OKLAHOMA WINDOWS) failed to comply with Section 14A O.S. § 3-306, *et. al* of the Oklahoma Consumer Credit Code and provide certain financing disclosures. [DE No. 36, pp. 3-4]. However, only a "lender" is obligated to comply with the disclosure requirements of 14A O.S. § 3-306, *et. al*.

#### a. Plaintiff Fails to Allege that OKLAHOMA WINDOWS is a "Lender."

Section 14A O.S. § 3-306(2) expressly requires the "lender" to give "the debtor" certain identified information. In its Complaint, Plaintiff does not identify OKLAHOMA WINDOWS as the lender (and indeed, OKLAHOMA WINDOWS is not and never has been the lender of any loan to Parisi). Rather, Plaintiff identifies "Greensky" as a "BMO Harris Bank N. A." as "the actual lender identified in the loan. . . ." [DE No. 36, ¶ 7]. Plaintiff has further attached to its Complaint a document from GreenSky that clearly identifies "BMO HARRIS BANK N.A." as the lender. [DE No. 36-6, p. 1]. This is consistent with other evidence in the record and submitted on appeal to the Tenth Circuit, and it is the undisputed law of the case that OKLAHOMA WINDOWS is ***not*** the lender.



The GreenSky Financing Form attached to the Windows Contract [1] identifies the "GreenSky Finance Amount" and the website "myloan.greenskycredit.com" to download the loan agreement. [DE 39-1, p. 13]. The Installment Loan Agreement identifies "BMO HARRIS BANK N.A." as the "Lender" and "Renewal by Andersen of Oklahoma" as the "Merchant." [DE 18-3, pp. 12-21]. Indeed, in its opinion, the Tenth Circuit [2] also recognized that "BMO HARRIS BANK N.A." was identified as the lender. [DE 95, p. 5]. The Tenth Circuit stated that the GreenSky Financing Form offering zero percent interest entered into by the parties simply reflected "payment terms." [DE 95, p. 14].

Indeed, there can only be ***one*** lender who was obligated to provide certain statutory disclosures – Plaintiff cannot allege that ***both*** parties are lenders of the loan. Therefore, Plaintiff has failed to state a claim for relief against OKLAHOMA WINDOWS as it is not a "lender," and thus, had no obligation to provide such disclosures or information in compliance with 14A O.S. § 3-306, *et. al*.

### b. Plaintiff Fails to Allege that OKLAHOMA WINDOWS is a "Creditor."

In Paragraph 10, Plaintiff seeks to hold both "Defendants" (including OKLAHOMA WINDOWS) liable under Section 14A O.S. § 5-203. However, Section 14A O.S. § 5-203(1)(e.s.) only subjects a "creditor" to liability as follows:

---

[1] The Windows Contract, which is central to plaintiff's claim, is referred to in the Complaint. [DE 36, ¶ 66]. Thus, the Court may consider the document on a motion to dismiss. *Geer*, 242 F.Supp.2d at 1016.

[2] *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) ("[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal.").



> Except as otherwise provided in this section, any **creditor** who fails to comply with any requirement imposed by the provisions on disclosure (Part 3), other than the provisions on advertising pursuant to Sections 2-313 of Article 2 of this title and 3-312 of Article 3 of this title, or with any requirement imposed by the provision on the right to rescind pursuant to Section 5-204 of this title, with respect to any person is liable to that person in an amount equal to the sum of:

In Part 3, Section 14A O.S. § 3-301(6) defines the term creditor, and states that "[f]or purposes of this part, the terms "creditor", "card issuer", "applicant", "card holder", "dwelling" and "consumer" have the same meanings those terms have in the Federal Consumer Credit Protection Act ("FCCPA"), as limited by the subject matter of this article. The FCCPA defines "creditor" as follows:

> The term 'creditor' refers only to a person who **both** (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 USC 1602(g).[3] **<u>Both</u>** requirements must be satisfied. *Cetto v. LaSalle Bank Nat. Ass'n*, 518 F.3d 263, 270 (4th Cir. 2008) ("The language of the first sentence of § 1602(f) is unambiguous in defining 'creditor' to refer "only to a person who both (1) regularly extends ... consumer credit ... and (2) is the person to whom the debt arising from the

---

[3] The parallel provision in Regulation Z provides:
Creditor means: (i) A person (A) who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than 4 installments (not including a downpayment), and (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract.



consumer credit transaction is initially payable on the face of the evidence of indebtedness....").

As indicated *supra*, Part C.I.a., the Installment Loan Agreement (together with the terms and conditions) clearly identifies "BMO HARRIS BANK N.A." as the "Lender," and provides an agreement ***to make payments*** "by mailing a check or money order to Dept# 3025, GreenSky, PO Box 2153, Birmingham AL 35287-3025."  [DE No. 18-3, pp. 12-13, ¶ 5].  *Mincey v. World Savings Bank, FSB*, 614 F.Supp.2d 610 (S. Carolina 2008) (holding that Golden West or Wachovia did not meet definition of "creditor" because the attachments to the complaint indicated that the payments were to be made to WSB). Likewise, the "GreenSky Financing Form" identifies the "GreenSky Finance Amount" as and lists the "myloan.greenskycredit.com" as the website to download the loan agreement. [DE No. 69-1, p. 10].  Indeed, there is no document identifying OKLAHOMA WINDOWS as "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness."  *Cetto,* 518 F.3d at 270 (holding that mortgage broker is not a "creditor" under TILA because the initial debt was not payable to the broker).

It should be noted that Courts have rejected the contention that home improvement contracts calling for partial payment upon initiation of the project and payment of the balance upon completion as subjecting a contractor to liability under TILA.  *Lukas v. Lucci, Ltd., Inc.*, 966 F. Supp. 1163 (S.D. Fla. 1997); *Sealey v. Boulevard Construction Co.*, 70 Ohio App.2d 277 (1980) (holding that home improvement contract that calls for a cash down payment at the inception of the contract and the unpaid balance of the cash price



upon completion does not subject a contractor to liability under TILA).  As the Western District Court in Kentucky stated, to hold "otherwise would make virtually every contractor a 'creditor,' as every construction contract involving progress payments or a split payment scheduled would be subject to TILA." *Jones v. Carnes*, 2016 WL 205500 (W.D. Kentucky 2016).[4]    Thus, on this basis alone, because OKLAHOMA WINDOWS does not fit within the second prong of the "creditor" definition, OKLAHOMA WINDOWS is not liable under Section 14A O.S. § 5-203.

Even if Plaintiff could satisfy the second prong of the "creditor" definition, the first prong also fails.  In its Complaint, Plaintiff fails to allege that OKLAHOMA WINDOWS is the "creditor."  [DE 36].  Although Plaintiff does allege that "Andersen regularly extends credit to consumers to facilitate the sale of its windows and is subject to the Oklahoma Consumer Credit Code and the Oklahoma Consumer Protection Act. . ." [DE 36, ¶ 90] and states that GreenSky "accepted Assignment of the loan" [DE 36, ¶ 95], this statement is entirely inconsistent with the documents attached to the Complaint and the evidence submitted and ruled on by the Tenth Circuit, including the Installment Loan Agreement and GreenSky Financing Form.  OKLAHOMA WINDOWS is ***not*** identified as an assignor or a party who is extending any credit, rather it is undisputed that "BMO HARRIS BANK

---

[4] Even loan services are not deemed subject to TILA unless they are also creditors (i.e., the loan servicer must own the loan). *See, also, Danier v. Fed. Nat. Mortg. Ass'n*, No. 12-62354-CIV, 2013 WL 462385, at *4 (S.D. Fla. Feb. 7, 2013) (TILA does not apply to loan servicers unless they are also creditors in the transaction at issue) (citing, e.g. *Cetto v. LaSalle Bank Nat. Ass'n*, 518 F.3d 263, 268 (4th Cir. 2008) *Che v. Aurora Loan Svcs., LLC* 847 F.Supp.2d 1205, 1209 (C.D.Cal.2010) *Horton v. Country Mortg. Svcs.*, No. 07 C 6530, 2010 WL 55902, at *3 (N.D.Ill. Jan.4, 2010).



N.A." is the lender and party that extended credit to Plaintiff.  [DE No. 36-6, p. 1]; [DE 18-3, pp. 12-21]; [DE 95, p. 5].  As in *Lukas*, viewing the transaction between Plaintiff and OKLAHOMA WINDOWS as representative of OKLAHOMA WINDOWS' "course of business," OKLAHOMA WINDOWS does not "regularly extend consumer credit payable in more than four installments" and "did not extend credit to Plaintiff[s]."  *Lukas,* 966 F. Supp. at  1165.

This District has recognized that "[o]f all the possible participants in selling credit services and arranging for and closing consumer credit transactions, Congress has chosen to make TILA's disclosure obligations and related duties ***applicable only to creditors***." *Robey-Harcourt v. Bencorp Fin. Co.*, 212 F. Supp. 2d 1332, 1333 (W.D. Okla. 2002), *aff'd*, 326 F.3d 1140 (10th Cir. 2003) (e.s.).  In that vein, this District refused to extend TILA liability to brokers because plaintiff failed to produce adequate evidence indicating that the defendants regularly extended consumer credit or were the "persons" to whom the debt was to be payable.  *Id*. (e.s.).  The District Court specifically rejected Plaintiff's argument that the mortgage brokers were "creditors" to the extent they were "arranger[s] of credit," noting that the definition of creditor was amended in 1982 to remove an "arranger of credit."  *Id*. at 1334.  *See also, Denton v. Nationstar Mortg. LLC*, No. 18-CV-241-GKF-JFJ, 2020 WL 1917486, at *8 (N.D. Okla. Apr. 20, 2020) (holding that Fannie Mae was not liable under TILA because the debt was payable to NationsBanc, not Fannie Mae).

Likewise, in very similar circumstances as here, where a consumer brought a TILA claim against a home improvement contractor, a District Court in Florida emphasized that



the contractor was not a "creditor" because parties who "arrange[] for the extension of

credit," are not included within the "creditor" definition:

> Second, prior to 1982, TILA's definition of "creditor" included people who "arranged for the extension of credit"—which is precisely the role that HPA seems to have played. But TILA was amended to eliminate that part of the definition. *See generally Robey-Harcourt v. Bencorp Fin. Co.*, 212 F. Supp. 2d 1332, 1334 (W.D. Okla. 2002), aff'd, 326 F.3d 1140 (10th Cir. 2003). Indeed, the Northern District of Illinois took note of this amendment when it dismissed a TILA claim with prejudice based on a home improvement financing arrangement very similar to the one in this case. *See DeLeon v. Beneficial Const. Co.*, 55 F. Supp. 2d 819, 822, 829 (N.D. Ill. 1999) (noting that arrangers of credit were no longer subject to TILA and dismissing claim against construction company that arranged financing of owners' home improvements by referring them to a mortgage broker, who then located a lender). The Court declines to rewrite federal law to include a long-defunct cause of action against arrangers of credit under TILA.

*Rosolen v. Home Performance All., Inc.*, No. 219CV00024JLBNPM, 2021 WL 8201477,

at *7 (M.D. Fla. Apr. 23, 2021).[5]

Accordingly, Plaintiff cannot meet either the first or second prong of the "creditor"

definition to invoke liability under the OCCC because OKLAHOMA WINDOWS does

---

[5] Recognizing that only the "creditor" is liable under the Federal Consumer Credit Protection Act (and other state consumer credit provisions, including the OCCC which adopts the FCCPA definition of creditor), it should be noted that plaintiffs asserting violations of TILA for the same type of "Shopping Pass" obtained here filed suit ***against the actual lenders or brokers/servicers***. *See, Locicero v. Intrust Bank*, N.A., 2018 WL 4374908 (S.D. Fla. 2018) (asserting allegations against Intrust Bank, the lender, and GreenSky, as broker in arranging for loans); *Alsortish v. GreenSky, LLC*, 2017 WL 699830 (E.D. La. Feb. 22, 2017) (alleging allegations against GreenSky as the servicer, and SunTrust or Synovous Bank as the lender); *Bentley v. GreenSky Trade Credit, LLC*, 2015 WL 1509243 (D. Conn. 2015) (joining Union First Market Bank as party defendant noting that GreenSky was only a third party service provider and that another lender was responsible for funding the loan). *See also, Bustamante v. First Fed. Sav. And Loan Assn' of San Antonio*, 619 F. 2d 360 (5th Cir. 1980) (filing suit against lender for home improvement loan).



not appear on the face of the loan agreement, is not the entity to whom payments are payable, and does not regularly extend consumer credit.   Assuredly, such a holding would ***upset the entire home improvement industry***.   Therefore, OKLAHOMA WINDOWS is not a "creditor" and cannot be held liable for damages under the OCCC.

### c.  Plaintiff is Not a "Debtor."

Plaintiff is also not a "debtor" under the OCCC.  OKLAHOMA WINDOWS hereby provides notice that it joins in the Motion to Dismiss filed by GreenSky on even date herewith under Sections III.A. and III.D. of its Motion.  [DE 99].  *See, e.g., AerSale, Inc. v. City of Roswell, New Mexico*, No. 222CV00218MISDLM, 2023 WL 7165107, at \*5 (D.N.M. Oct. 31, 2023) (acknowledging joinder in co-defendant's Rule 12(b) motion).

### II.    PLAINTIFF LACKS STANDING UNDER ARTICLE III.

OKLAHOMA WINDOWS brings this Motion under Rule 12(b)(1) for lack of jurisdiction due to Plaintiff's failure to meet Article III standing requirements.  Federal courts have only the power authorized by Article III of the United States Constitution and the statutes enacted by Congress pursuant thereto.  *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986).  As a result, a plaintiff must have constitutional standing in order for a federal court to have jurisdiction. *Id*. at 542. Under current federal law, constitutional standing requires that a "plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Id*. at 560.  Additionally, "there must be a causal connection between the injury and the conduct complained of" and "it must be 'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a



favorable decision.'" *Id*. at 560-61 (citations omitted). "A main focus of the standing inquiry is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury." *Morgan v. McCottor*, 365 F.3d 882, 888 (10th Cir. 2004).

> As the District Court in Utah stated relating particularly to class actions:

> "The fact that a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured ...." *Gratz v. Bollinger*, 539 U.S. 244, 289, 123 S.Ct. 2411, 2438, 156 L.Ed.2d 257 (2003). Indeed, "a named plaintiff must possess standing as to each individual claim asserted in a complaint." *Donelson v. United States Through Dep't of the Interior*, 730 F. App'x 597, 601 (10th Cir. 2018). It is Plaintiffs' burden to demonstrate standing. See Petrella, 697 F.3d at 1293.

*Mitchell*, 355 F. Supp. 3d at 1149–50.

Here, Plaintiff has suffered ***no*** "injury in fact." In her Complaint, Plaintiff does not allege that she made any payments, paid any finance charge, nor that any loan remains outstanding. *In re Williams*, No. 18-12940-BFK, 2023 WL 6618956, at *7 (Bankr. E.D. Va. Oct. 10, 2023) (holding no standing where debtor did not allege a missed payment, late fees, or other concrete injury or intangible harm when statements were sent to debtor's attorney instead of to her).

Rather, Plaintiff alleges that "Harris/GreenSky continued to harass and bill Ms. Parisi, falsely indicating that she was past due; causing Ms. Parisi unnecessary anguish and emotional distress while undergoing cancer treatment. (Exhibit 6, 10/2/22 Past Due Notice from Harris/GreenSky)." [DE 36, p. 18]. First, this allegation is wholly deficient for alleging any "injury in fact" caused by the actions of OKLAHOMA WINDOWS -- as



OKLAHOMA WINDOWS did not engage in any alleged harassment or billing.  Second, this allegation fails to allege a "concrete and particularized" injury that is not conjectural nor hypothetical.  *Simon v. Metro. Prop. & Cas. Ins. Co*., No. CIV-08-1008-W, 2009 WL 10664188, at *2 (W.D. Okla. Feb. 23, 2009); *see also Llewellyn v. Allstate Home Loans, Inc*., 711 F.3d 1173, 1182 (10th Cir. 2013) (to establish a basis for emotional distress, Plaintiff is required to describe her injury in reasonable detail and not rely on conclusory statements); *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1151 (D. Utah 2018) (no Article III standing when plaintiff failed to allege "specific facts" demonstrating an injury in fact as to any actual identity theft, damages or use of plaintiff's confidential information without consent; such statements were too conclusory, and disregarded by the Court).

Further, there is no connection between the alleged injury and the conduct of OKLAHOMA WINDOWS.  The alleged violations against Defendants for failure to provide financial disclosures in accord with the OCCC are not the result of any alleged "anguish and emotional distress."  Indeed, the class definition is so broad that it includes many of the requirements of 14A O.S. § 3-306, but fails to identify how each specific violation resulted in any particular harm.  [DE 36 ¶ 24].  In fact, contrary to the class allegations, Parisi admits receiving disclosures via email, and has acknowledged receipt in her archive folders.  [DE 36, ¶ 51].  The harm, if any, was the result of Plaintiff not obtaining or qualifying for a zero percent loan, or the actions taken in collection of the alleged loan -- not the failure of either Defendant to provide any OCCC disclosures.

Finally, the OCCC does not even provide recovery for the alleged "anguish" and "emotional distress."  Although the OCCC does provide recovery to an individual for



"actual damage" 14A § 5-203(1)(a), Parisi has failed to allege any such actual damages. Under these circumstances, the U.S. Supreme Court has ruled that no Article III injury exists, even if Parisi was entitled to statutory damages. *Thole v. US Bank NA*, 140 S.Ct. 1615 (2020) (no Article III standing where there is no injury in fact and the only damages are statutory). *See also, Anderson v. Frederick Ford Mercury, Inc.*, 694 F. Supp. 2d 324, 330 (D. Del. 2010) (declining TILA statutory damages where plaintiff was never obligated to pay finance charges). Indeed, as in *Thole*, here, Parisi will receive "not a penny less" if they lost this lawsuit, and "not a penny more" if she wins this lawsuit. *Thole*, 140 S.Ct. at 1619. Notably, although an attorney may have a stake in the lawsuit, and interest in attorneys' fees is insufficient to create Article III standing. *Id*. Since Parisi has no concrete stake in the lawsuit, she lacks Article III standing.[6]

## III.    <u>**THE COURT SHOULD STRIKE THE CLASS DEFINITION**</u>

Alternatively, pursuant to Rule 12(f), the Court should strike the class definition. Here, it is apparent from the pleadings that the class definition is an impermissible because

---

[6] Parisi also lacks standing for any injunctive relief:

> But a plaintiff lacks standing to seek prospective injunctive relief if she cannot show a real or immediate threat of future harm. *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). And individual standing is ordinarily a prerequisite for maintaining a class action. *Rector v. City and County of Denver,* 348 F.3d 935, 949–50 (10th Cir.2003) (by definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirement of Rule 23). *See also Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Absent a threat of future harm, plaintiff does not share a critical aspect of the claims of other class members for prospective injunctive relief, and her claim is thus not typical.

*Thompson v. Jiffy Lube Int'l, Inc.,* 250 F.R.D. 607, 623 (D. Kan. 2008).



(1) it constitutes a fail-safe class, (2) improperly includes both Defendants who have different roles, and (3) it is not cohesive to the allegations in the Complaint.

### a.  The Alleged Class Definition is An Impermissible Fail-Safe Class.

A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).  Its existence, therefore, cannot be ascertained until the conclusion of the case, when liability is determined.  *See Slapikas v. First Am. Title Ins. Co.,* 250 F.R.D. 232, 250–51 (W.D. Pa. 2008).  Here, Plaintiff's class purports to include only those who did not receive information in compliance with the Oklahoma Consumer Credit Code.  The problem with a fail-safe class is that if the Plaintiff successfully demonstrates that the Defendants failed to receive proper disclosures, then the class members win.  However, if the Plaintiff is unsuccessful in meeting its burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendants.  This is the definition of a prohibited fail-safe class. *See, e.g., Stallbaumer v. NextEra Energy Res., LLC*, No. 22-CV-04031-HLT-ADM, 2023 WL 3496245, at *10 (D. Kan. May 17, 2023); S*auter v. CVS Pharmacy, Inc*., 2014 WL 1814076 at *9 (S.D.Ohio May 7, 2014).  A Court may strike a fail-safe class on the grounds that class treatment on the face of the complaint leaves little doubt that the class claims are not viable.  *Zarichny v. Complete Payment Recovery Servs*., Inc., 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015).[7]

---

[7] It's important to note the decision and review of fail-safe classes from other circuits:



Further, "fail-safe classes [are] one category of classes failing to satisfy the ascertainability requirement." Erin L. Geller, The Fail–Safe Class as an Independent Bar to Class Certification, 81 Fordham L.Rev. 2769, 2782 (April 2013). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus v. BMW of North America LLC*, 687 F.3d 583 (3d Cir.2012) (concluding that the proposed class so defined "raise[d] serious ascertainability issues" because BMW could not know which of its cars came equipped with those tires (made by another company), or when or where the tires might have been replaced). Similarly, here, without substantial fact finding, there is no way for OKLAHOMA WINDOWS to know which consumers dispute ever receiving any financial disclosures from the lender. Indeed, Parisi submitted a lengthy affidavit in order to dispute entering into the Contract and to dispute receiving financing disclosures because such disclosures allegedly went to her spam folder. [DE 71-1,¶ 51]. Since we are at the outset of this litigation, there is no way to provide notice to that putative class without the sort of

---

Other Circuits that have considered fail-safe classes are split. Both the Sixth and Seventh Circuit have held that fail-safe classes are precluded from certification. *See Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532 (6th Cir.2012); *see also Randleman v. Fid. Nat'l Title Ins. Co*., 646 F.3d 347 (6th Cir.2011); *accord Messner*, 669 F.3d 802 (7th Cir.2012). But the Fifth Circuit in *In re Rodriguez*, 695 F.3d 360 (5th Cir.2012), reaffirmed its rejection of a rule against fail-safe classes based on Fifth Circuit precedent. And the Ninth Circuit has not explicitly precluded fail-safe classes, relying on the same Fifth Circuit precedent. *See Vizcaino v. United States Dist. Court for Western Dist. of Wash*., 173 F.3d 713, 722 (9th Cir.1999) (rejecting the district court's reasoning that it was circular to define a class using a legal conclusion that was essential to an ultimate finding of liability).

*Zarichny v. Complete Payment Recovery Servs*., Inc., 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015).



extensive fact-finding that class actions should avoid.  In addition, at the conclusion of the litigation, should Defendants prevail against Plaintiff, any other putative class recipient would be free to litigate the same claim against Defendants.  The fail-safe class is impermissible and must be stricken.

### b. The Class is Based on Allegations Against <u>Both</u> Defendants Who Have Different Roles.

Further, to be part of the class, **both** Defendants must be determined to be liable for and have failed to produce such disclosures.  This class definition that lumps both Defendants together is entirely unworkable and fails to delineate separate actions of GreenSky versus OKLAHOMA WINDOWS.  For example, in the Complaint, Plaintiff clearly alleges separate allegations against each Defendant in the Complaint, and even identifies OKLAHOMA WINDOWS as a "Merchant." [DE 36, ¶¶ 13, 42-100].  Moreover, Plaintiff asserts that GreenSky stipulated to an Agreed Order finding it violated the "Consumer Financial Protection Bureaus' rules."  [DE 36, ¶ 89].  Any such allegations being considered as a whole for both Defendants would be highly prejudicial against OKLAHOMA WINDOWS who had no part in any such action.

### c. The Alleged Class Definition Must Not Include Consumers Who Entered into an Arbitration Agreement With Either Defendant.

Plaintiff's class definition should also be stricken because it includes consumers who entered into arbitration agreements.  The record in this Court and on appeal is replete with factual disputes concerning the arbitration agreement that Plaintiff entered into with OKLAHOMA WINDOWS (as well as that arbitration agreement with GreenSky), which is reflective of Defendants' "course of business."  Indeed, most, if not all, of the putative



class would be subject to the very same arbitration agreements that Parisi disputed entering

into with the Defendants.  Regardless, as indicated by the District Court of Colorado below,

Plaintiff cannot meet the typicality, adequacy, commonality or superiority requirements of

Rule 23 for those consumers subject to arbitration:

> Plaintiff also argues that, even if the arbitration agreements exist, "the Court has no way of evaluating whether [they] are enforceable." Dkt. 120 at 15. This argument is flawed for a few reasons. First, as one who is not party to an arbitration agreement, Plaintiff has no standing to challenge the provisions of the other putative members' contracts, i.e., it is not Plaintiff's argument to make.7 *Radulescu v. W. Union Co.*, No. 1:19-cv-03009-DDD-SKC, 2023 WL 9035367, at \*4 (D. Colo. Nov. 27, 2023) (citing *Vallagio at Inverness Residential Condo. Ass'n, Inc. v. Metro. Homes, Inc.*, 412 P.3d 709, 718, (Colo. App. 2015), aff'd, 395 P.3d 788 (Colo. 2017)). Second, no one in the present action can know what position other putative class members might take regarding their arbitration agreements—will they honor them, challenge them in litigation, pursue settlement, or suggest other courses. These uncertainties caution against using these proceedings to render a judgment about other putative members' contracts. *Id*. at \*5. **Third, the uncertainties about whether other putative class members can properly litigate in this Court at all highlights that common issues do not predominate for the large majority of the putative class and undermines Plaintiff's ability to fulfill the typicality and adequacy requirements of Rule 23(a)(3) and (4) and the common question and superiority requirements of Rule 23(b)**. At the very least, should this case proceed as the class is currently constituted, Plaintiff would not be able to raise arbitration-related defenses that would inevitably become a point of focus for a majority of the class. None of this is acknowledged in Plaintiff's class allegations, which describe a class of potential litigants that is too broadly defined to satisfy Rule 23. As a result, I grant DFL's motion and deny certification of Plaintiff's proposed class. **Plaintiff's amended complaint must narrow the putative class to include individuals who, like him, have not entered into an arbitration agreement. Plaintiff may then seek to have that class certified under Rule 23**.

*Nagel v. DFL Pizza, LLC*, No. 1:21-CV-00946-DDD-SBP, 2024 WL 5095298, at \*5 (D.

Colo. Dec. 4, 2024) (e.s.).

Indeed, here, the entire opinion of the Tenth Circuit on Defendants' Motions to

Compel Arbitration is based on the particular factual circumstances asserted by Parisi in



dispute of the arbitration clause. [DE 95]. Thus, if the class were to proceed as pled, the Court would first require a determination as to whether *any* class member may invalidate its arbitration clause. Any consumer who has signed a contract containing an arbitration clause and class action waiver will be presumed to have read its contents and be bound by the clause. *See e.g.*, *Mayfield v. Fid. State Bank of Cleveland*, 121 Okla. 179, 249 (1926) (a person signing an instrument is presumed to know its contents, and if he fails to read it, cannot escape liability even if false representations were made as to its contents). To negate this presumption, this Court would have to determine whether such circumstances as those raised by Parisi in this court and on appeal, are so unique as those raised by Parisi that would allow such a consumer to escape the mandatory arbitration clause as invalid. Therefore, the "class" asserted by Plaintiff would impermissibly require the Court to consider very factual unique circumstances of each consumer and require multiple mini-trials/appeals. Thus, as in *Nagel*, this Court should require Plaintiff to narrow the class to those consumers who are not subject to the terms of an arbitration agreement.[8]

### d. The Class Claims are Not Cohesive with the Action Against OKLAHOMA WINDOWS

As the Eight Circuit Held:

To certify a class under Rule 23(b)(2), the "class claims ... must be cohesive." *In re St. Jude Med. Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005). "[T]he cohesiveness requirement of Rule 23(b)(2) is more stringent than the predominance and superiority requirements for maintaining a class action under Rule 23(b)(3)." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016). The existence of a significant number of individualized factual and legal issues defeats cohesiveness and is a

---

[8] Even if the class definition is narrowed, any consumers that could be identified on a classwide basis as not being subject to an arbitration agreement are very unlikely to have encountered circumstances "common" to Parisi.



proper reason to deny class certification under Rule 23(b)(2). *St. Jude*, 425 F.3d at 1122. A significant number of individualized factual and legal issues exist "where members of a proposed class will need to present evidence that varies from member to member" such that the class claim is not "susceptible to generalized, class-wide proof." *See Ebert*, 823 F.3d at 478-79 (internal quotation marks omitted).

*Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1093 (8th Cir. 2021).

Here, the class claims are not cohesive with the allegations on the fact of the Complaint, and those determined by the Tenth Circuit on appeal. As the Eighth Circuit held in dismissing a class action at the pleading state, "a significant number of individualized determinations must be made in deciding whether the class members' claims have merit." Likewise, here, Plaintiff asserts specific facts related to the Class Representative Parisi, in paragraphs 56-100. However, it would be hard stretched to find any of the almost 50 paragraphs that would *not* require individual inquiries. Indeed, such allegations would require mini-trials to determine, *inter alia*, (1) if the loan was presented on the iPad [DE 36, ¶ 65], (2) if the financing credit terms were visible on the iPad [DE 36, ¶ 65], (3) if the consumer disputes signing the contract [DE 36, ¶ 67], (4) if the contract that she signed was presented solely as an application for financing [DE 71-1, ¶13], (5) if the consumer alleges that they did not receive the contract terms because they went to a spam folder [DE 36, ¶ 68]; [DE 71-1, ¶ 31], (6) if the consumer did not receive the financing terms and disclosures because the disclosures were archived [DE 36, ¶ 51]; [DE 71-1, ¶ 31], (7) if the consumer was promised zero percent financing for 24 months, [DE 36, ¶ 61] (8) if the consumer received different financing that was promised [DE 36, ¶ 73]; (9) if the consumer did not authorize the transaction [DE 36, ¶ 73]; (10) if the lender attempted to collect on the loan amounts at a different interest rate [DE 36, ¶ 73]; (11) if



Harris/GreenSky committed acts of fraud and defamed individuals by reporting falsely that credit extensions were valid or in default [DE 36, ¶ 95]; (12) what particular acts of fraud were committed [DE 36, ¶ 95]; (13) if Andersen, in concert with Harris GreenSky, also committed fraud and forgery when indicating terms of the credit were different than advertised [DE 36, ¶ 93]; (14) which Defendant party was responsible for the disclosures, and (15) whether any consumer suffered any Article III injury.

Moreover, as indicated, *supra*, Part C.III.c., the record and subsequent opinion entered by the Tenth Circuit on appeal makes it very clear that the determination of whether or not each class member is bound by the arbitration clause is going to be an individualized and fact intensive question that is not appropriate for class action.  [DE 95].

## IV.    <u>ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT</u>

In the alternative, OKLAHOMA WINDOWS requests the Court to require Plaintiff to submit a more definite statement (1) to delineate the cause of action against OKLAHOMA WINDOWS versus the cause of action against GREENSKY, and (3) to plead any "fraud" with particularity.  Rule 12(e) (a party may move for a more definite statement of any pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading.")  A motion for more definite statement is disfavored and should not be granted merely because the pleading lacks detail; rather, the standard to be applied is whether the claims alleged are sufficiently specific to enable a responsive pleading in the form of a denial or admission.  *Shaffer v. Eden*, 209 F.R.D. 460, 464 (D. Kan. 2002).  Here, OKLAHOMA WINDOWS lacks the specificity to determine the claims raised against it, and as such, the Court should require a more definite statement.



### a. *The Complaint Fails to Identify the Cause of Action(s) Against OKLAHOMA WINDOWS.*

Plaintiff's Complaint is entirely vague, and OKLAHOMA WINDOWS is unable to determine the claims raised against it in order to provide a reasonable response to the Complaint. First, Plaintiff fails to state separate counts against each Defendant, and instead lumps all allegations together against both Defendants. Plaintiff, further, fails to indicate what type of cause(s) of action it is asserting against OKLAHOMA WINDOWS. Plaintiff merely asserts:

> Andersen violated the Oklahoma Consumer Credit Code disclosure requirements in its door-to-door sales of replacement windows pursuant to the consumer credit extension in the State of Oklahoma.

> Andersen, in concert with Harris GreenSky, also committed fraud and forgery when its agent falsely indicated the terms of the window sale credit extension were other than previously advertised, as enumerated above.

[DE 36, 92-93]. These allegations do not adequately put OKLAHOMA WINDOWS on notice as to whether Plaintiff is alleging one cause of action or multiple causes of action against OKLAHOMA WINDOWS or whether Plaintiff is alleging the same type of action against OKLAHOMA WINDOWS as it alleges against GreenSky. Plaintiff does not identify whether it is asserting a violation of the Oklahoma Consumer Credit Code, fraud action, or other type of statutory or common law action against OKLAHOMA WINDOWS. Based on the class allegations, it appears that Plaintiff's sole cause of action against OKLAHOMA WINDOWS *may* be for violation of the OCCC. [DE 36, ¶ 92].



Other than this one (potential) claim, Plaintiff is unable to ascertain the cause of actions alleged against it in order to adequately respond to the Complaint.

Plaintiff also alleges "actual, consequential, statutory, treble, exemplary and punitive damages" as damages; however, Plaintiff does not state the basis in law of her damages claims.  [DE 36, p. 19].  Plaintiff states she is seeking "statutory" damages but does not identify the statute.  Plaintiff states that she is seeking punitive damages and treble damages, but does not indicate what specific cause of action or statute would entitle her to such relief.  Indeed, Plaintiff fails to allege that she suffered any actual damages by the actions of OKLAHOMA WINDOWS at all.  *See, supra*, Part II.  These allegations are insufficient to allow OKLAHOMA WINDOWS to determine whether or not a motion to strike part (or all) of the damage claim is appropriate.

### b. *Plaintiff Fails to Plead Fraud With Particularity, and any Fraud Claims are Not Appropriate for Classwide Determination.*

To the extent that Plaintiff is alleging a fraud count against OKLAHOMA WINDOWS, then Plaintiff has failed to allege such fraud with particularity.  Pursuant to Rule 9, "[a] party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S.Ct. 1507, (2019) (internal quotation marks omitted). "Rule 9(b)'s purpose is to afford



defendant fair notice of plaintiff's claims and the factual ground upon which they are based." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation marks and alterations omitted). Here, Plaintiff fails to allege any distinct count for fraud so it is unknown what particular facts may (or may not) apply to any alleged action for fraud against OKLAHOMA WINDOWS. Plaintiff merely alleges:

> Andersen, in concert with Harris GreenSky, also committed fraud and forgery when its agent falsely indicated the terms of the window sale credit extension were other than previously advertised, as enumerated above.

[DE 36, ¶ 93]. Plaintiff's allegation fails to put OKLAHOMA WINDOWS on notice of what conduct it considers to be fraudulent, and what actions OKLAHOMA WINDOWS alleged engaged in that were "in concert" with Harris/GreenSky. Thus, OKLAHOMA WINDOWS requests the Court to grant its motion for more definite statement to allow OKLAHOMA WINDOWS to adequately respond and provide defenses to the Complaint.[9]

WHEREFORE, Defendant, OKLAHOMA WINDOWS requests this Court grant its Motion to Dismiss the (Second) Amended Petition and Motion to Certify Class [DE 36] against OKLAHOMA WINDOWS, and for such other and further relief as is just and proper.

---

[9] Moreover, to the extent that Plaintiff does allege fraud against OKLAHOMA WINDOWS, any such action against OKLAHOMA WINDOWS for fraud, would negate any class action as any such action would be based on fact intensive issues that are not appropriate for determination on a class-wide basis.



Dated:  August 12, 2025              Respectfully submitted,

        _/s/ Diane J. Zelmer_____
Diane J. Zelmer, Esq. (pro hac vice)
FL Bar No. 27251
BERENSON LLP
4495 Military Trail, Suite 203
Jupiter, Florida 33458
Telephone: 561-429-4496
Email: djz@berensonllp.com
*Attorney for Defendant, OKLAHOMA WINDOWS
AND DOORS, LLC*

Sheila D. Sayne, Esq., OBA # 31213
Sayne Law PLLC
P.O. Box 33309
Tulsa, Oklahoma 74153-3309
Telephone: 918-740-3013
sheila.sayne@outlook.com
*Attorney for Defendant, OKLAHOMA WINDOWS
AND DOORS, LLC*



## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed and served electronically using CM/ECF, which is served upon all parties of record on the list for this case on this 12th day of August, 2025.

Respectfully submitted,

/s/ Diane J. Zelmer
Diane J. Zelmer, Esq., Fla. Bar 27251

