# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

SUSAN PARISI,

       **Plaintiff,**

**v.**

OKLAHOMA WINDOWS AND DOORS, LLC d/b/a RENEWAL BY ANDERSEN OF OKLAHOMA, BMO HARRIS BANK, NA, and GREENSKY, LLC,

       **Defendants.**

**Case No.: 5:23-cv-00115-R**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT GREENSKY, LLC'S MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ....................................................................................... iii

STANDARD OF REVIEW ...........................................................................................1

ARGUMENT .................................................................................................................2

I.    Parisi states a claim for violation of the Oklahoma Uniform Consumer
      Credit Code..........................................................................................................2

      A.    Parisi has standing to bring her claims against GreenSky......................2

      B.    This case concerns unlawful credit extension and enforcement—
            not the absence of a transaction ...........................................................3

      C.    Parisi plausibly alleges a covered "loan" and a consumer credit
            transaction under the OCCC...................................................................4

      D.    The OCCC protects prospective and actual debtors, and
            GreenSky's own conduct establishes debtor status................................5

      E.    Parisi alleges concrete injury resulting from GreenSky's OCCC
            violations..................................................................................................6

      F.    GreenSky's contract-formation and "alternative compliance"
            arguments do not support dismissal ......................................................7

      G.    The Law-of-the-Case Doctrine Does Not Bar Statutory Claims
            Never Decided by the Tenth Circuit......................................................8

      H.    GreenSky's class certification arguments should be disregarded as
            premature ..............................................................................................12

II.   Parisi states a claim for violation of the Oklahoma Consumer Protection
      Act .....................................................................................................................13

III.  GreenSky's theoretical alternative compliance with TILA does not defeat
      Parisi's claims....................................................................................................16

IV.   CONCLUSION ........................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                          **Pg(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................2

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................1, 2

*Burnett v. Mortg. Elec. Registration Sys., Inc.,*
    706 F.3d 1231 (10th Cir. 2013)...................................................................2

*Carpenter v. Boeing Co.,*
    456 F.3d 1183 (10th Cir. 2006)................................................................13

*Carriuolo v. General Motors Co.,*
    823 F.3d 977 (11th Cir. 2016) ..................................................................12

*Comcast Corp. v. Behrend,*
    133 S.Ct. 1426 (2013) ..............................................................................13

*Dalton v. City of Tulsa,*
    560 P.2d 955 (Okla. 1977)..........................................................................5

*Dias v. City & Cty. of Denver,*
    567 F.3d 1169 (10th Cir. 2009)...................................................................2

*Erickson v. Pardus,*
    551 U.S. 89 (2007) .....................................................................................2

*Fernandez v. Clean House, LLC,*
    883 F. 3d 1296 (10th Cir. 2018)................................................................18

*First Nat. Bank in Marlow v. Bicking,*
    2016 OK CIV APP 22, 376 P.3d 954 (Div. 2 2015)...................................11

*Gage v. General Motors Corp.,*
    796 F.2d 345 (10th Cir.1986) .....................................................................9

*Ghailani v. Sessions,*
    859 F.3d 1295 (10th Cir. 2017).................................................................18

*Gomez v. Toledo*,
   446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) ...................................18

*Heathcoat v. Potts*,
   905 F.2d 367 (11th Cir.1990) ...........................................................................9

*Holmes v. LG Marion Corp.*,
   258 Va. 473, 521 S.E.2d 528 (1999)................................................................15

*In re BDC Corp.*,
   221 B.R. 534 (D. Utah 1998)..........................................................................8

*In re Integra Realty Res., Inc.*,
   354 F.3d 1246 (10th Cir. 2004)......................................................................13

*Kennedy v. Lubar*,
   273 F.3d 1293 (10th Cir.2001)......................................................................10

*Khalik v. United Air Lines*,
   671 F.3d 1188 (10th Cir. 2012)......................................................................2

*Levin v. Miller*,
   763 F.3d 667 (7th Cir. 2014) ........................................................................18

*Lippoldt v. Cole*,
   468 F. 3d 1204 (10th Cir. 2006)..............................................................7, 11

*McIlravy v. Kerr-McGee Coal Corp.*,
   204 F. 3d 1031 (10th Cir. 2000)......................................................................9

*Miller v. Shell Oil Co.*,
   345 F.2d 891 (10th Cir. 1965) ......................................................................18

*Mink v. Suthers*,
   482 F. 3d 1244 (10th Cir. 2007)......................................................................7

*U.S. v. Monsisvais,*
   946 F.2d 114 (10th Cir. 2002) ......................................................................18

*Patterson v. Beall*,
   19 P.3d 839 (Ok. 2000) ................................................................................15

iv

*Stifel, Nicolaus & Co. v. Woolsey & Co.*,
     81 F.3d 1540 (10th Cir.1996) .................................................................8

*Taxpayers for the Animas–La Plata Referendum v. Animas–La Plata Water Conservancy Dist.*,
     739 F.2d 1472 (10th Cir.1984)...............................................................7

*TST Truck Ins., Ltd. v. First Nat. Bank of Wamego*,
     No. 09-4158-SAC, 2014 WL 1047993 (D. Kan. Mar. 18, 2014) ......................9

*Wilmer v. Board of County Com'rs of Leavenworth Co.*,
     69 F. 3d 406 (10th Cir. 1995) ...............................................................10

*Xechem, Inc. v. Bristol–Myers Squibb Co.*,
     372 F.3d 899 (7th Cir. 2004) ...............................................................18

## Statutes, Regulations and Misc.

Fed. R. Civ. P. 12(b)(1)...............................................................................2

Fed. R. Civ. P. 12(b)(6)...............................................................2, 3, 12, 18

Fed. R. Civ. P. 12(f)............................................................................ 1`2

Fed. R. Civ. P. 15(b) ................................................................................13

Fed. R. Civ. P. 23(a) .................................................................................13

Fed. R. Civ. P. 23(c)(1) .............................................................................13

Fed. R. Civ. P. 23(c)(1)(c) .........................................................................12

Fed. R. Civ. P. 23(c)(1)(C) .........................................................................13

Fed. R. Civ. P. 8(a)(2)................................................................................1

Federal Consumer Credit Protection Act (TILA) ................................................*passim*

Ok. St. 14A, § 3-301(2) ..............................................................................16

Ok. St. 14A, § 3-104.................................................................................4

Ok. St. 14A, § 3-106(1) ...............................................................................4

vi

Ok. St. 14A, § 3-306.................................................................................................16

Okla. Stat. tit. 14A, § 5-203.....................................................................................7

Ok St. 15 § 752 ..................................................................................... 14, 15, 16

Ok St. 15 § 753 ..................................................................................... 14, 15, 16

This case is about a systematic scheme by Defendants to defraud Plaintiff Susan Parisi ("Parisi") and other consumers out of thousands of dollars for home improvement loans. Despite Defendant GreenSky LLC ("GreenSky") previously agreeing to a Consumer Financial Protection Bureau ("CFPB") consent order that identified the very same conduct Parisi and putative class members experienced that led to this litigation – conduct including failing to disclose the terms of loan financing, originating and servicing loans that consumers did not authorize, and disbursing loan proceeds directly to GreenSky program merchants without consumer authorization, Defendants have continued their unlawful conduct.

Here, GreenSky, through its merchant partner, induced Parisi to proceed with a home-improvement purchase, disbursed loan proceeds directly to the merchant, and then treated Parisi as a debtor. It billed her, reported her to credit bureaus, and attempted to collect, without first providing required disclosures before credit may be lawfully consummated. Whether Defendants ultimately formed an enforceable contract does not erase their statutory duties, their deceptive conduct, or the concrete injuries they inflicted. Therefore, the Motion to Dismiss (the "Motion") should be denied.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint does not need detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Specific facts are not necessary," rather "the

statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests."' *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555 (alteration in original)); *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

When a court reviews a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the Parisi. *Twombly,* 550 U.S. at 555. . To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the court can draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Courts apply a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (cleaned up, further quotation omitted).

## **ARGUMENT**

I. **Parisi states a claim for violation of the Oklahoma Uniform Consumer Credit Code**

A. <u>Parisi has standing to bring her claims against GreenSky.</u>

Although styled as a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), GreenSky's Motion is actually a hybrid 12(b)(1) Motion mixed with an Opposition to Class Certification. As such, GreenSky's Motion is not a

12(b)(6) Motion at all.  Parisi has stated a claim for relief and therefore GreenSky's Motion is due to be denied.  GreenSky devotes nearly its entire brief to an argument about class certification, inappropriate on a 12(b)(6) motion in general, untimely because no motion for class certification is before this Court, and unavailing to dismiss Parisi's claims on an individual basis. Then, GreenSky argues near the end of its brief that Parisi has no standing to maintain her claim based on violations of the Oklahoma Uniform Consumer Credit Code ("OCCC") disclosure requirements.  GreenSky's entire argument hinges on the Tenth Circuit's affirmation of this Court's denial of GreenSky's Motion to Compel Arbitration. GreenSky contends that no contract to arbitrate was formed; therefore, Parisi is not a "debtor." Motion, at 1-2.

B.     <u>This case concerns unlawful credit extension and enforcement—not the absence of a transaction.</u>

GreenSky's Motion rests on a false premise: that because this Court and the Tenth Circuit held Parisi did not assent to an arbitration agreement, Parisi therefore was never a "debtor" and may not invoke the OCCC. That framing misunderstands both the statute and Parisi's allegations.

This is not a case in which no transaction occurred. Parisi alleges that GreenSky, through its merchant partner, induced her to proceed with a home-improvement purchase, disbursed loan proceeds directly to the merchant for her account, opened and serviced a loan account in her name, reported a debt to consumer reporting agencies, and attempted to collect payment. The OCCC governs precisely this type of conduct: the extension, disclosure, and enforcement of consumer credit.

Whether GreenSky ultimately formed an enforceable contract does not erase its statutory duties or Parisi's resulting injuries.

At the pleading stage, the question is not whether GreenSky can ultimately prevail on a contract-formation defense. The question is whether Parisi has plausibly alleged that GreenSky engaged in conduct regulated by the OCCC and failed to comply with its disclosure requirements. She has.

C.    <u>Parisi plausibly alleges a covered "loan" and a consumer credit transaction under the OCCC.</u>

The OCCC applies to a "consumer loan" made by a person regularly engaged in the business of making loans where, among other things, the debt is incurred for personal, family, or household purposes and is payable in installments or subject to a finance charge. Ok. St. 14A, § 3-104. GreenSky does not dispute that it is a lender regularly engaged in making consumer loans, nor does it contend that the transaction at issue falls outside the statute's monetary or purpose limitations.

The OCCC defines a "loan" broadly to include "the creation of debt by the lender's payment of or agreement to pay money to the debtor or to a third party for the account of the debtor." Ok. St. 14A, § 3-106(1). Parisi alleges that GreenSky paid loan proceeds directly to the merchant for her account, opened a loan associated with her identity and credit, and treated her as obligated for repayment. Those allegations are more than sufficient to plausibly allege a "loan" subject to the OCCC.

At this stage, GreenSky cannot avoid the statute by recharacterizing its own conduct as legally nonexistent. A lender that disburses funds, reports a tradeline, and

4

attempts collection has engaged in the extension and enforcement of credit for purposes of consumer-protection law.

> **D.** The OCCC protects prospective and actual debtors, and GreenSky's own conduct establishes debtor status.

GreenSky's argument hinges on the assertion that Parisi is not a "debtor." But the OCCC does not define "debtor" narrowly or require an enforceable contract as a prerequisite to statutory protection. To the contrary, the Oklahoma Supreme Court has emphasized that the OCCC's disclosure provisions exist to ensure "meaningful disclosure of credit terms so that a **prospective debtor** will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit." *Dalton v. City of Tulsa*, 560 P.2d 955, 956 (Okla. 1977) (emphasis added).

That principle defeats GreenSky's argument outright. Disclosure obligations arise **before consummation**, not after a lender decides whether it can enforce a contract. A lender cannot induce a consumer to proceed with a credit transaction, fail to provide required disclosures, and then escape liability by later asserting that no enforceable agreement existed.

Moreover, even under GreenSky's preferred definition, Parisi plausibly qualifies as a debtor. GreenSky treated her as one. It reported a debt in her name, attempted to collect payment, and refused to correct or withdraw the tradeline despite her disputes. A lender cannot simultaneously deny debtor status while holding a consumer out to the credit reporting system as obligated on a loan.

> **E.** Parisi alleges concrete injury resulting from GreenSky's OCCC violations.

5

Parisi plausibly alleges injury sufficient to support standing and statutory liability. She alleges that GreenSky's failure to provide required disclosures deprived her of the ability to understand and compare credit terms, resulted in the creation and reporting of an unauthorized debt, damaged her credit, subjected her to collection efforts, and caused significant emotional distress. Specifically, Parisi alleged that she met with Defendant Andersen's employee, Russell Kelley ("Russell"), discussed the windows she wanted to install, and that Russell showed her an iPad to evidence that she had been approved for the type of loan for which she applied.  Complaint, ¶¶60, 63, 65. She further alleges that based on Russell's statements, she agreed to the purchase. *Id.*, at ¶67.  She then alleges that she received notification from GreenSky that Defendant Anderson had received a payment of $8,871.50 for the sale of its windows to her, and that her payments would start six months after installation of the windows. *Id.*, at ¶69.  Parisi alleges that despite her attempts to dispute the charge and her objections to the loan being reported under her name and credit history, Defendant GreenSky refused to delete its tradeline, did not notify the credit bureaus that she disputed the debt, ignored the fraudulent sale, and failed to conduct any written investigation. *Id.*, at ¶¶77 – 80, 98. Parisi also alleged that GreenSky continued to falsely report her alleged debt. *Id.*, at ¶¶83, 99.  These are concrete, real-world harms—not abstract procedural grievances.

Standing is determined at the time the complaint is filed. *Mink v. Suthers*, 482 F. 3d 1244,1253-54 (10th Cir. 2007) ("[S]tanding is determined at the time the action is

6

brought, and we generally look to when the complaint was first filed, not to subsequent events.") (citations omitted). When Parisi filed suit, GreenSky was reporting the debt and attempting to enforce it. Subsequent rulings regarding arbitration do not retroactively erase those injuries or moot claims for past damages. *See Lippoldt v. Cole,* 468 F. 3d 1204, 1217 (10th Cir. 2006) *(quoting Taxpayers for the Animas–La Plata Referendum v. Animas–La Plata Water Conservancy Dist.,* 739 F.2d 1472, 1479 (10th Cir.1984) ("[B]y definition claims for past damages cannot be deemed moot.").

F.    GreenSky's contract-formation and "alternative compliance" arguments do not support dismissal.

GreenSky's suggestion that disclosure violations are "pointless" if a loan is later deemed unenforceable has no support in the statute or case law. To the contrary, the OCCC expressly provides civil liability for failure to comply with its disclosure provisions. Okla. Stat. tit. 14A, § 5-203. Whether GreenSky might ultimately argue compliance with federal law is, at most, an affirmative defense that cannot be resolved on a motion to dismiss.

Parisi was not required to plead around hypothetical defenses. She has plausibly alleged that GreenSky extended and enforced consumer credit without providing the disclosures Oklahoma law requires. That is sufficient to state a claim.

G.    The Law-of-the-Case Doctrine Does Not Bar Statutory Claims Never Decided by the Tenth Circuit

GreenSky's citation to *In re BDC Corp.,* 221 B.R. 534, 536 (D. Utah 1998) to argue that the law of the case dictates the outcome of its Motion is unavailing.  Despite GreenSky's contention that "this case is similar," it is not.  *In re BDC Corp.* was a

bankruptcy matter in which a bankruptcy court disallowed a proof of claim that concerned contract breach and contract related claims where the Tenth Circuit had already decided that no contract existed. *Id.*, at 536. In explaining the law of the case doctrine, the court cited another Tenth Circuit opinion:

> The law of the case doctrine obligates every court to honor the decisions of higher courts in the judicial hierarchy. "When a court decides upon a rule of law, that decision should continue to govern the **same issues** in subsequent stages in the same case." Thus, for example, a trial court may not reconsider a question decided by an appellate court.

*Id*. (citing *Stifel, Nicolaus & Co. v. Woolsey & Co.*, 81 F.3d 1540, 1543 (10th Cir.1996) (emphasis added).

In other words, when the appellate court decides "the same issues," that decision carries through the rest of the case. In *BDC Corp.*, the appellate court decided that there had been no sale, so the company's cause of action for breach of contract could not be pursued. Here, the Tenth Circuit only ruled on the issue of whether Parisi agreed to arbitrate her claims against Defendants. It did not decide whether Defendants violated the OCCC or otherwise violated the Oklahoma Consumer Protection Act. It certainly did not rule that Parisi was not a "debtor" for purposes of the OCCC.

Likewise inapposite are GreenSky's cited cases, *McIlravy v. Kerr-McGee Coal Corp.*, 204 F. 3d 1031, 1033 (10th Cir. 2000) and *TST Truck Ins., Ltd. v. First Nat. Bank of Wamego*, No. 09-4158-SAC, 2014 WL 1047993, at *4 (D. Kan. Mar. 18, 2014). The *McIlravy* decision followed two jury trials and returned to the Tenth Circuit for a second appeal concerning termination of employees and reconsideration of employee

handbook provisions and procedures that had already been considered and ruled upon. 204 F. 3d at 1035. While unhelpful substantively, the *McIlravy* court did offer important insight into the law of the case doctrine:

> The enunciated rationales for the law of the case doctrine are compelling: The doctrine is "based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided," *Gage v. General Motors Corp.*, 796 F.2d 345, 349 (10th Cir.1986) (citations omitted), so avoiding both a wasteful expenditure of resources by courts and litigating parties and the gradual undermining of public confidence in the judiciary—in short, Dickens's Jarndyce v. Jarndyce syndrome. The promotion of judicial economy—a primary concern underlying the law of the case doctrine—requires that litigants be encouraged to present all available claims and defenses at the earliest opportunity. *See id.* ("The law of the case doctrine is a restriction self-imposed by the courts in the interests of judicial efficiency.") (citations omitted). The doctrine "also serves the purposes of discouraging panel shopping at the court of appeals level." *Monsisvais*, 946 F.2d at 116 (citing *Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir.1990)).

*Id.*

In short, the law of the case doctrine is not intended to end a case before it has begun, as Defendant argues for here.

In *TST Truck Ins., Ltd., supra*, the court considered summary judgment motions, not motions to dismiss. But nevertheless, the district court noted that the law of the case principles apply only to decisions on the actual merits. *Id.*, at *1 (citing *Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir.2001). "[O]nly matters actually decided, explicitly or implicitly, become law of the case." *Id.* (quoting *Wilmer v. Board of County Com'rs of Leavenworth Co.*, 69 F. 3d 406, 409 (10th Cir. 1995)).

9

Here, the Tenth Circuit affirmed a decision by this Court denying Defendants' Motions to Compel Arbitration.    Both this Court's and the Tenth Circuit's determination that Parisi did not agree to arbitrate her claims because she did not agree to the contract Defendants sought to enforce did not decide that Parisi was not a debtor under the OCCC.    GreenSky treated her as a debtor every time it reported her purported debt to credit reporting bureaus.  Complaint, ¶¶ 77-83.

Similarly, here, the violations of the OCCC occurred when Parisi first applied for and was told she was approved for her loan.  The subsequent rulings by this Court and the Tenth Circuit do not undo her allegations that Defendants failed to provide her with the required disclosures prior to her consummating the loan. When Parisi filed her complaint, neither this Court nor the Tenth Circuit had determined whether or not Parisi had agreed to arbitrate her claims or whether there had been a meeting of the minds on the contract that Defendants attempted to enforce. GreenSky's conclusory statement that "[a]s a person who never became subject to any debt, Parisi does not qualify as a 'debtor' under the Consumer Disclosure Requirements" should be flatly rejected by this Court.

GreenSky's argument about the way in which the law should be interpreted is untethered from any citations to authority: "[D]isclosures regarding the 'identity of the lender required to make the disclosure; and the 'number, amount, and due dates or period of payments' would be disclosed prior to the consummation of loan, but those disclosures become pointless if a loan agreement is not consummated." Motion, at 8. Who says that they would be pointless? GreenSky does – not Parisi. But her claims are

10

to be taken as true and construed in the light most favorable to her – not to GreenSky. Even more egregious is GreenSky's argument that "a plaintiff cannot sustain an injury that would have been caused by a failure to disclose information about a transaction that never actually came into existence." Motion, at 9. In other words, GreenSky *would have caused Parisi injury* but for this Court and the Tenth Circuit ending GreenSky's attempt to enforce an arbitration agreement to which Parisi never agreed. This is not the way the law works. A plaintiff's injuries are not mooted because of a court ruling long after her complaint is filed. *See Lippoldt v. Cole,* 468 F. 3d at 1217.

Parisi's Complaint describes why statutory disclosure and authorization issues matter – Parisi alleged that GreenSky tried to enforce a loan obligation and then reported on that purported loan obligation to credit reporting agencies, even though the loan agreement was not lawfully formed nor ultimately enforceable because of court decisions. However, the negative reporting and impact of the collection demands do not vanish simply because of a decision by courts on whether GreenSky could compel arbitration. Nor do the disclosure violations, the fraud, the forgery, or the other deceptive and unfair trade practices visited upon Parisi by the Defendants. *First Nat. Bank in Marlow v. Bicking*, 2016 OK CIV APP 22, 376 P.3d 954, 955 (Div. 2 2015) (reversing summary judgment against consumer homeowner and holding that defendant bank's TILA and OCCC disclosure violations occurring prior to or simultaneously with the execution of original "high cost" note were not extinguished or cured by amended compliant note).

11

H.      GreenSky's class certification arguments should be disregarded as premature.

GreenSky's attempt to defeat class certification with arguments regarding adequacy, typicality, and predominance are premature and improperly raised on a Rule 12(b)(6) motion. Parisi has yet to file a motion for class certification, nor has there been any class discovery – or any discovery for that matter. The Complaint plausibly alleges standardized recurring, noncompliant consumer-loan issuance tied to GreenSky's merchant program; there are common questions about whether the required disclosures were delivered pre-consummation in a retainable form. The allegations are sufficient to put GreenSky on notice as to what disclosures it failed to make, and what disclosures it had a duty to provide.

GreenSky's "alternative" argument (which it fails to develop at all) that Parisi's class definition should be struck under Rule 12(f) should likewise be denied. Class definitions can be modified throughout litigation as the case develops and discovery reveals evidence. Fed. R. Civ. P. 23(c)(1)(c); *Carriuolo v. General Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016) (power of district court to alter or amend class certification orders at any time prior to decision on merits "is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims."). Pleadings can also be conformed to the evidence as a case develops.  Fed. R. Civ. P. 15(b). As the Supreme Court has pointed out, class certification is an evidentiary issue, and "it may be necessary for the court to probe behind the pleadings before coming to rest on the

12

certification question." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (internal quotation marks omitted). Indeed, a court must conduct a "rigorous analysis" to determine that the prerequisites of Rule 23(a) are met. *Id*. "That is so because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id*. (cleaned up, citations omitted).

GreenSky invites the Court to error by asking it to improperly prejudge facts and assume how class certification evidence and arguments will develop, rather than conducting the required rigorous class certification analysis after full briefing. *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1187 (10th Cir. 2006) ("The district court can modify or amend its class-certification determination at any time before final judgment in response to changing circumstances in the case.") (citing Fed. R. Civ. P. 23(c)(1)(C)); *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) ("Moreover, a trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment.") (citing Fed. R. Civ. P. 23(c)(1)).

## II.    **Parisi states a claim for violation of the Oklahoma Consumer Protection Act.**

GreenSky argues that the only claim made in Parisi's complaint is that GreenSky failed to comply with a laundry list of alleged disclosure requirements under the OCCC. Motion, at 2, 5. This is false.  Parisi alleges a classic bait-and-switch financing scheme, unauthorized billing, and post-transaction deception. All of this

13

conduct has repeatedly been recognized as both deceptive and unfair under the Oklahoma Consumer Protection Act ("OCPA").

While Parisi did allege numerous violations of the OCCC by GreenSky, Parisi also alleged that GreenSky, in concert with Andersen and BMO Harris Bank, NA ("Harris")[1], committed fraud, detailing the way in which it did so in detail. Complaint, ¶¶ 14, 93, 95. She also alleged that GreenSky had defamed her by reporting falsely that credit extensions were valid, in default, or both, and at the time of the filing of the Complaint, continued to do so. *Id.*, ¶88, 95. She further alleged that GreenSky, in concert with Andersen and Harris, had committed forgery. *Id.*, ¶93. These allegations make out a claim for unlawful practices under the OCPA. Ok St. 15 §§ 752, 753.

Under the OCPA, "Deceptive trade practice" means a misrepresentation, omission, or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during, or after a consumer transaction is entered into, and may be written or oral; an "Unfair trade practice" means any practice which offends established public policy, or if the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Ok St. 15 §§ 752 (13), (14). "Because the OCPA is remedial in nature it is to be liberally construed to effectuate its underlying purpose."

---

[1] Although Plaintiff Parisi responds here to Defendant Greensky's Motion to Dismiss Plaintiff's Complaint [D.E. 36], this Court permitted Plaintiff to amend her Complaint for the limited purpose of adding BMO Harris as a defendant and correcting the case caption to reflect the proper names of the parties. [D.E. 115]. Accordingly, Harris is referred to in this Response as a separate defendant

14

*Patterson v. Beall*, 19 P.3d 839, 846 (Ok. 2000) (citing *Holmes v. LG Marion Corp.*, 258 Va. 473, 521 S.E.2d 528 (1999)). The four elements that must be included in an OCPA claim are: (1) that the defendant engaged in an unlawful practice as defined in the statute; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury. *Patterson*, 19 P. 3d, at 846-847.

The statute identifies several unlawful practices that have been identified in Parisi's allegations, including, inter alia, § 753(9): Advertises, knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised (Complaint, ¶¶59-65, 93-94); § 753(12): Makes false or misleading statements of fact, knowingly or with reason to know, concerning the price of the subject of a consumer transaction [ ] (Complaint, ¶¶59-65, 93-94); § 753(13): Employs "bait and switch" advertising, which consists of an offer to sell the subject of a consumer transaction which the seller does not intend to sell, which advertising is accompanied by one or more of the following practices: a. refusal to show the subject of a consumer transaction advertised (Complaint, ¶¶65-72, 93-94); § 753(18): Violates any provision of the Home Repair Fraud Act[2] (Complaint, ¶¶ 61, 65-69, 93-94); §

---

[2] The Home Repair Fraud Act (15 Ok. St. §765.1 to 765.3) constitutes part of the Oklahoma Consumer Protection Act. 15 Ok. St. §765.1. Any violation of the Home Repair Act constitutes an unlawful business practice and is subject to the OCPA provisions. *Id.* The use of deception, described in the Home Repair Act as employing false pretenses or promises to get a consumer to sign a contract also is alleged by Parisi. Complaint, ¶¶ 61, 65-69, 93-94.

15

753(21): Commits an unfair or deceptive trade practice as defined in § 752 of this title[3] (Complaint, ¶¶65-72, 77-88, 93-94); and § 753(27): Knowingly causes a charge to be made by any billing method to a consumer for a product or products which the person knows was not authorized in advance by the consumer (Complaint, ¶¶69, 77-80, 88).

Parisi also alleged that the challenged practice occurred in the course of defendant's business (Complaint, ¶¶69, 76-83); that she suffered an injury in fact (Complaint, ¶¶84, 86, 88); and that the Defendant's conduct caused her injury (Complaint, ¶¶77-80, 83, 88, 90). Accordingly, Parisi has stated a claim for relief under the OCPA and GreenSky's Motion is due to be denied.

## III.    GreenSky's theoretical alternative compliance with TILA does not defeat Parisi's claims.

GreenSky's attempt to conflate some type of abstract alternative compliance with not having any duty of disclosure under the OCCC must fail. Contrary to Defendant's interpretation, the OCCC expressly requires certain consumer disclosures to be made under the law. Ok. St. 14A, § 3-306. GreenSky misconstrues the statute to contend that Parisi's allegations are meaningless simply because the statute offers an alternative means for compliance. This is patently false. Ok. St. 14A, § 3-301(2) lets a lender comply with either "this part" (the Oklahoma OCCC disclosures) or the Federal

---

[3] §752(13): "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral; §752(14): "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

Consumer Credit Protection Act (TILA), and compliance with either is sufficient. But this alternative safe harbor argument does not eliminate the OCCC's disclosure requirements. If a lender like GreenSky fails to comply with TILA, it must comply with the OCCC and vice versa. GreenSky has no ability at the pleading stage to establish that it complied with TILA and can therefore ignore § 3-306. And in fact, Defendant did not even attempt to allege its compliance with TILA disclosures, which would be more in the nature of an affirmative defense. But Parisi's Complaint controls and Parisi has sufficiently alleged facts that show GreenSky failed to comply with the OCCC; Parisi has offered no facts to support a GreenSky TILA defense.

Greensky's attempt to argue that "any failure to comply with the [Oklahoma] Consumer Disclosure Requirements would not, in itself, violate" the OCCC is a non-starter. Section 14A-5-203 of the statute, in express language, declares otherwise: ("Civil liability for violation of disclosure provisions") "[A]ny creditor who fails to comply with any requirement imposed by the provisions on disclosure (Part 3) . . . is liable to that person []." It then sets forth the contours of that liability for closed end credit, specifically including "paragraphs … of subsection (2) of Section 3-306." Ok. St. 14A-5-203. There is clearly an available cause of action, and to claim otherwise in the abstract is simply unavailing. Perhaps that is why Defendant offers no authority for its novel argument.

At the most, Defendant's quasi-affirmative defense that it (may have) complied with TILA (no such contention has been made), cannot be a basis to dismiss Parisi's claims. Parisi was not required to anticipate any of GreenSky's affirmative defenses in

17

her complaint; it is GreenSky's burden to plead an affirmative defense. *Fernandez v. Clean House, LLC*, 883 F. 3d 1296, 1299 (10th Cir. 2018) (citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) ("[T]he burden of pleading [affirmative defenses] rests with the defendant."); *Ghailani v. Sessions*, 859 F.3d 1295, 1306 (10th Cir. 2017) (the complaint need not anticipate affirmative defenses); *Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014) ("The [Supreme] Court held in Gomez ... that complaints need not anticipate affirmative defenses; neither *Iqbal* nor *Twombly* suggests otherwise."). That is why dismissal based on an affirmative defense is only possible when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements. *Fernandez*, 883 F. 3d at 1299 (citing *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."); *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("If the defense appears plainly on the face of the complaint itself, the motion [to dismiss for failure to state a claim] may be disposed of under [Rule 12(b)]."). No "ingredients" for Defendant's half-hearted would-be affirmative defense of TILA compliance were included in Parisi's Complaint and thus its ploy to argue no cause of action under the OCCC because it could have also complied with TILA must fail.  An argument that federal compliance would have been enough simply cannot defeat Parisi's claim.

18

## IV.     Conclusion

For the reasons stated herein, the Court should deny GreenSky's Motion to Dismiss.

Dated: December 12, 2025

**VARNELL & WARWICK, P.A.**

/s/ Janet R. Varnell
Janet R. Varnell, FBN: 0071072
400 N. Ashley Drive, Suite 1900
Tampa, FL  33602
Telephone: (352) 753-8600
jvarnell@vandwlaw.com

**RAWLS LAW OFFICE PLLC**

/s/ M. Kathi Rawls
M. Kathi Rawls, OBA #18814
222 NW 13th  St.
Oklahoma City,  OK  73103
Kathi@carfraud.net
mkr@rawlslawoffice.com

**NATIONAL ASSOCIATION OF CONSUMER ADVOCATES**
Eric Zell, Ohio Bar #0084318
1215 17th St. NW, 5th Floor
Washington, DC 20006
202-452-1989 x111
eric@consumeradvocates.org

Attorneys for Plaintiff

19

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2025, a true and correct copy of the above and foregoing document was served in accordance with the Local Rules on all counsel of record via the Court's electronic filing system.

/s/ Janet R. Varnell
Janet R. Varnell