**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **SUSAN PARISI,** | |
| **Plaintiff,** | |
| **v.** | **Case No.: 5:23-cv-00115-R** |
| **OKLAHOMA WINDOWS AND DOORS, LLC d/b/a RENEWAL BY ANDERSEN OF OKLAHOMA, BMO HARRIS BANK, NA, and GREENSKY, LLC,** | |
| **Defendants.** | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT OKLAHOMA
WINDOWS AND DOORS, LLC'S MOTION TO DISMISSS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS........................................................................................i

TABLE OF AUTHORITIES ............................................................................ iii

I.    INTRODUCTION..................................................................................1

II.   LEGAL STANDARD ............................................................................3

III.  ARGUMENT .........................................................................................5

      A.    Plaintiff states a claim for violation of the Oklahoma Uniform Consumer Credit Code against Andersen...............................................4

      B.    There is no "law of the case" as to whether Andersen had disclosure obligations under the OCCC...................................................7

      C.    It is a fact-based merits issue as to whether Andersen's role in extending credit to Parisi subjects it to liability for disclosure violations......................................................................................................8

      D.    The Truth in Lending Act does not foreclose multiple creditors............9

      E.    The OCCC is to be liberally construed ................................................10

      F.    Andersen's role as a "creditor" involves factual issues related to damages ................................................................................................11

      G.    Andersen's argument that Parisi is not a debtor fails..........................12

      H.    Parisi has Article III Standing against Andersen.................................13

            1.    Parisi adequately alleged an injury in fact.................................13

            2.    Parisi adequately alleged traceability.......................................14

            3.    Andersen's cited cases are unavailing.......................................15

            4.    Andersen falsely asserts Parisi "admissions." ..........................16

            5.    Parisi is not limited to actual damages under the OCCC ..........17

I.      Plaintiff's class definition is not a fail-safe class ..................................18

J.     Andersen's class certification arguments are untimely and should be denied ..................................................................................................20

K.    Andersen's alternative motion for more definite statement is inconsistent with its opposition to Parisi's Motion to Amend .............22

IV.  CONCLUSION ..................................................................................23

## TABLE OF AUTHORITIES

**Cases**                                                                          **Pg(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................1, 3

*Banks v. Central Refrigerated Services, Inc.,*
    2017 WL 1683056 (D. Ut. May 2, 2017) .......................................................19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................1, 3

*Bennett v. Spear,*
    520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) .................................14

*Bryant v. Food Lion, Inc.,*
    774 F.Supp. 1484 (D.S.C.1991).......................................................................4

*Cailao v. Hotelmacher LLC,*
    No. CIV-17-800-SLP, 2019 WL 13159739 (W.D. Okla. Feb. 5, 2019) ............4

*Carpenter v. Boeing Co.,*
    456 F.3d 1183 (10th Cir. 2006)......................................................................21

*Cline v. Sunoco, Inc. (R&M),*
    2025 WL 3199871 (10th Cir. Nov. 17, 2025) ........................................... 18, 20

*Colton v. Sandridge Exploration and Production, LLC,*
    No. CIV-22-00986-JD, 2025 WL 1387798 (W.D. Ok. May 13, 2025).............4

*Comcast Corp. v. Behrend,*
    133 S.Ct. 1426 (2013) ...................................................................................22

*Cox v. Taylor,*
    2008 WL 2278513 (W.D. Ok. May 30, 2008)..................................................8

*Dewey v. State ex rel. Okla. Firefighters Pension & Ret. Sys.,*
    28 P.3d 539 (Okla. 2001).  ..............................................................................2

*Dias v. City & Cnty. of Denver,*
    567 F.3d 1169 (10th Cir.2009).......................................................................14

*First Life Assurance Co. v. Mountain*,
    1993 OK CIV APP 20, §3, 848 P. 2d 1177......................................................................2

*Flowers v. EZPawn Oklahoma, Inc.*,
    307 F Supp.2d 1191 (N.D. Ok. 2004).............................................................................9

*Hinkle v. Rock Springs Nat'l Bank*,
    538 F.2d 295 (10th Cir. 1976) .......................................................................................6

*In re Integra Realty Res., Inc.*,
    354 F.3d 1246, 1261 (10th Cir. 2004) .........................................................................21

*In re Wal–Mart Stores, Inc. Wage and Hour Litig.*,
    505 F.Supp.2d 609 (N.D.Cal.2007)..............................................................................4

*Janczak v. Tulsa Winch*, Inc.,
    No. 13-CV-0154-CVE-FHM, 2015 WL 7288625
    (N.D. Ok. November 17, 2015)......................................................................................7

*Lavigne v. First Community Bancshares, Inc.*,
    2018 WL 2694457 (D. N.M. June 5, 2018)..................................................................20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ..................................................14

*Lupia v. Medicredit, Inc.*,
    8 F.4th 1184 (10th Cir. 2021) ......................................................................................13

*Marriott v. National Mut. Cas. Co.*,
    195 F. 2d 462 (10th Cir. 1952).....................................................................................10

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) .......................................................................................18

*Mitchell v. Wells Fargo Bank*,
    355 F. Supp. 3d 1136 (D. Utah 2018)..........................................................................15

*N.H. v. Presbyterian Church (U.S.A.)*,
    1999 OK 88, 998 P.2d 592 ............................................................................................8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee* Foods *LLC*,
    31 F.4th 651 (9th Cir. 2022)........................................................................................21

*Paikai v. Gen. Motors Corp.*,
    Case No. 2:07–cv–00892, 2009 WL 275761 (E.D.Cal. Feb.5, 2009) ...............4

*Petrella v. Brownback*,
    697 F.3d 1285 (10th Cir. 2012)....................................................................14

*Ruiz v. McDonnell*,
    299 F.3d 1173 (10th Cir. 2002)......................................................................3

*Sanders v. National Credit Service*,
    2021 WL 4449995 (W.D. Okl. Sept. 28, 2921) ...............................................3

*Santa Fe Alliance for Public Health and Safety v. City of Santa Fe, New Mexico*,
    993 F. 3d 802 (10th Cir. 2021).....................................................................14

*Sherman v. Trinity Teen* Solutions, Inc.,
    84 F. 4th 1182 (10th Cir. Oct. 31, 2023)................................................... 18, 20

*Simon v. Metro. Prop. & Cas. Ins. Co.*,
    No. CIV-08-1008-W, 2009 WL 10664188 (W.D. Okla. Feb. 23, 2009) .........15

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003).........................................................................21

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ......................................................................21

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538, 140 S. Ct. 1615, 207 L.Ed.2d 85 (2020) ........................... 17, 18

*Tyson Foods, Inc.* v. *Bouaphakeo*,
    577 U.S. 442, 136 S.Ct. 1036 (2016)...........................................................20

*United States v. Casados*,
    26 F.4th 845 (10th Cir. 2022) .....................................................................19

*United States v. Ohiri*,
    Case No. 03-2239, 133 Fed. Appx. 555 (10th Cir. June 7, 2005) ....................3

*Young v. Nationwide Mut. Ins.* Co.,
    693 F.3d 532 (6th Cir. 2012) ......................................................................21

## Statutes, Regulations and Misc.

2 Newberg and Rubenstein on Class Actions § 4:55 (6th ed. 2025) .........................20

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357
    (3d ed. Supp. 2005).................................................................................3

7AA C. Wright, A. Miller, M. Kane & R. Klonoff, Federal Practice & Procedure §
    1778 (3d ed. 2005) ...............................................................................21

Fed. R. Civ. P. 12(b)(1).............................................................................3

Fed. R. Civ. P. 12(b)(6).............................................................................3

Fed. R. Civ. P. 12(f)..................................................................................3

Fed. R. Civ. P. 15(b)................................................................................21

Fed. R. Civ. P. 23(b)(2) and (b)(3)..............................................................2

Fed. R. Civ. P. 23(c)(1)............................................................................21

Fed. R. Civ. P. 23(c)(1)(c)........................................................................21

Fed. R. Civ. P. 23(c)(1)(C)).......................................................................21

12 O.S. §§ 2023B.2 and 3 .........................................................................2

14A § 3-104. ..........................................................................................12

14A O.S §5-203 ......................................................................................11

14A O.S. § 3-301(4) ..................................................................................5

14A O.S. §1-102 .....................................................................................10

14A O.S. §3-301(2) ...................................................................................6

14A O.S. §3-306 ...................................................................................6, 12

14A-O.S. §1-103 .....................................................................................10

vii

Ok. St. 14A 5-203(1)(b)..........................................................................................17

Plaintiff, Lt. Col. Susan Parisi (Ret.) ("Parisi") responds in opposition to Defendant Oklahoma Windows and Doors, LLC d/b/a Renewal By Anderson of Oklahoma's ("Andersen") Motion to Dismiss the Amended Class Action Complaint (the "Motion"). [D.E. 100, 101].

## I.    INTRODUCTION

Defendant Andersen asks this Court to view it as a mere bystander despite acting in concert with Defendants GreenSky, LLC ("GreenSky") and BMO Harris Bank, NA ("Harris")[1] to unlawfully sell home repairs to consumers, like Susan Parisi ("Parisi"), with unauthorized financing. Andersen argues that it is neither a "lender" nor a "creditor," that Parisi lacks Article III standing, and that the class allegations should be stricken. These arguments misstate the law, misconstrue Parisi's allegations, and improperly seek premature class and merits determinations. At this stage, Parisi's well-pled allegations must be accepted as true and construed in her favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that courts must accept all factual allegations as true at the pleading stage); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (requiring only plausibility, not probability, of relief).

Parisi alleges that Andersen deceptively marketed its products door-to-door and extended credit to homeowners, the terms of which were neither timely nor accurately

---

[1] Although Plaintiff Parisi responds here to Defendant Andersen's Motion to Dismiss Plaintiff's Complaint [D.E. 36], this Court permitted Plaintiff to amend her Complaint for the limited purpose of adding Harris as a defendant and correcting the case caption to reflect the proper names of the parties. [D.E. 115]. Accordingly, Harris is referred to in this Response as a separate defendant.

disclosed. That is actionable under the Oklahoma Consumer Credit Code ("OCCC") and other Oklahoma consumer-protection law. Parisi alleges emotional distress, financial exposure, and statutory violations—injuries sufficient for standing. Andersen's attempt to strike class allegations is premature, given that Rule 23[2] issues are fact-intensive, merits-related, and not properly resolved on the pleadings.

While it was GreenSky that previously agreed to a Consumer Financial Protection Bureau ("CFPB") consent order that took aim at the very same unlawful conduct alleged here – the scheme works because GreenSky Program Merchants like Andersen initiate the loans from consumers' homes and play their part in Defendants' deceptive and unfair practices that harm consumers. Thus, rather than being an innocent bystander, Andersen was key – and its self-serving legal conclusions are not sufficient to defeat Plaintiff's allegations. Moreover, Plaintiff's allegations of fraud are supported by detailed facts that set forth the circumstances under which Defendants together initiated a loan without her authorization and then proceeded to pay Andersen proceeds from that loan – again without her authorization. Andersen's Motion is due to be denied.

---

[2] Although the operative Complaint (and Andersen's Motion) refers to the Oklahoma class action rule 12 O.S. §§ 2023B.2 and 3 (because this action was originally filed in state court and Parisi's attempt to substantively amend her complaint was denied [D.E. 113]), Parisi will move to certify her claims as a class action under Fed. R. Civ. P. 23(b)(2) and (b)(3). The state and federal rules however are the same since the Oklahoma legislature amended the state law in 1984. *See First Life Assurance Co. v. Mountain*, 1993 OK CIV APP 20, §3, 848 P. 2d 1177, 1178. Oklahoma state courts often draw on federal class action decisions rendered under Rule 23. *See, e.g., Dewey v. State ex rel. Okla. Firefighters Pension & Ret. Sys.,* 28 P.3d 539, 547 (Okla. 2001).

## II.    LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court must accept all factual allegations as true and draw reasonable inferences in Plaintiff's favor. *Twombly*, 550 U.S. at 555. Dismissal is proper only when there is no "plausible claim for relief." *Iqbal*, 556 U.S. at 678. This liberal pleading standard prioritizes resolution on the merits. *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. Supp. 2005) ("the court has considerable leeway under the liberal pleading standards of the federal rules in deciding when a complaint is formally insufficient and whether to permit leave to replead") (emphasis added). *See generally United States v. Ohiri*, No. 03-2239, 133 Fed. Appx. 555, 559 (10th Cir. June 7, 2005) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

A Rule 12(b)(1) standing challenge can be either "(1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Sanders v. National Credit Service*, 2021 WL 4449995, * 2 (W.D. Okl. Sept. 28, 2921) (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002)). Andersen's Rule 12(b)(1) standing challenge is a facial attack, and therefore, the Court must assume the truth of the allegations. *Ruiz*, 299 F.3d at 1180.

Motions to strike class allegations under Rule 12(f) are generally disfavored because courts recognize such motions attempt to cut off class claims before the representative member of the class has had a chance to conduct meaningful discovery.

3

*Colton v. Sandridge Exploration and Production, LLC*, No. CIV-22-00986-JD, 2025 WL 1387798, at \*3 (W.D. Ok. May 13, 2025) (citing *Cailao v. Hotelmacher LLC*, No. CIV-17-800-SLP, 2019 WL 13159739, at \*10 (W.D. Okla. Feb. 5, 2019). They should not be granted unless it is clear from the face of the complaint that "no class action could ever be certified." *Friedman v. Dollar Thrifty Automotive Group, Inc.*, 2013 WL 5448078, at \*3 (D. Colo. Sept. 27, 2013) (declining to strike class allegations at the pleading stage). Such a motion requires a reviewing court to "preemptively terminate the class aspects of ... litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Bryant v. Food Lion, Inc.*, 774 F.Supp. 1484, 1495 (D.S.C.1991); *see also In re Wal–Mart Stores, Inc. Wage and Hour Litig.*, 505 F.Supp.2d 609, 616 (N.D.Cal.2007) (denying a motion to strike class allegations as premature); *Paikai v. Gen. Motors Corp.*, 2:07–0cv–00892, 2009 WL 275761, at \* 11 (E.D.Cal. Feb.5, 2009) (stating that "the very purpose of allowing separate class certification proceedings" is to defer addressing potential problems with a proposed class to a later date).

## III.   ARGUMENT

### A.   Plaintiff states a claim for violation of the Oklahoma Uniform Consumer Credit Code against Andersen.

Andersen argues that it cannot have failed to comply with OCCC disclosure requirements because only a "lender" is obligated to do so and Plaintiff does not identify Andersen as the lender. Motion, at 12.  Andersen then argues that it "is not

and never has been the lender of any loan to Parisi." *Id*.  Then Andersen claims that it is the "undisputed law of the case" that Andersen is not the lender. *Id*.

At the pleading stage, Plaintiff has plausibly alleged that Andersen is subject to disclosure liability under the OCCC, independent of whether Harris ultimately funded the loan. The Oklahoma Legislature expressly extended OCCC obligations beyond lenders to include merchants and intermediaries who "regularly arrange" consumer credit, recognizing that consumer harm frequently occurs at the point of sale. Section 14A O.S. § 3-301(4) ("[a] person who regularly arranges for the extension of consumer loans … from persons who are not subject to disclosure duties shall make the disclosures required of a lender under this part.") The actual language of the OCCC does not require that an arranger be the lender, creditor, or assignee of the loan, only that it regularly participates in placing consumers into credit transactions.

Parisi alleges that: 1) Andersen marketed the financing in her home, 2) initiated or facilitated the credit application on its device, 3) accessed the GreenSky Shopping Pass without authorization, 4) triggered the disbursement of loan proceeds 5) to itself, not Parisi, before Parisi knowingly accepted any loan. Complaint, ¶¶ 2, 8, 12, 13, 14, 22, 90, 91. These are not passive acts; taken together, they constitute the very "arranging" conduct the OCCC regulates.

Federal regulators have independently confirmed that GreenSky's business model relies on merchants like Anderson to market financing, intake applications, initiate loan funding, and receive direct disbursement of loan proceeds—sometimes without consumer authorization. The CFPB found that this merchant-driven process

5

resulted in consumers learning of loans only after credit reporting or collection activity began. [*See* D.E. 39-2] Because the OCCC imposes disclosure obligations on persons who arrange consumer credit, Andersen's arranger status independently triggers the duty to ensure required disclosures were provided before credit was consummated.

Federal disclosure law has long recognized that more than one entity may bear disclosure obligations depending on its role in arranging or extending credit. *See Hinkle v. Rock Springs Nat'l Bank*, 538 F.2d 295, 299–300 (10th Cir. 1976) (recognizing that disclosure regulations contemplate transactions involving multiple disclosure responsible creditors and allocating responsibility based on each party's role and relationship with the consumer). Whether Andersen ultimately assigned the loan or whether another entity was listed as "lender" on the installment agreement does not negate arranger-based disclosure duties under § 3 301(4). At a minimum, the OCCC's application to Andersen's alleged conduct presents a mixed question of law and fact that cannot be resolved on a Rule 12 motion.

By contrast, Andersen's contention that "there can only be one lender who was obligated to provide certain statutory disclosures" is untethered from any cited law. The statement, "Plaintiff cannot allege that both parties are lenders of the loan," is conclusory and incorrect, and without legal authority.

Andersen's citation to 14A O.S. §3-306 is unavailing; it simply sets forth disclosure requirements for consumer loans not pursuant to revolving loan accounts. It does not limit disclosure duties to only one lender. Nor does 14A O.S. §3-301(2), which requires a lender to "disclose to the debtor to whom credit is extended…"

Nothing in either of those provisions limits the number of lenders who are obligated to provide the statute's disclosures.

**B.      There is no "law of the case" as to whether Andersen had disclosure obligations under the OCCC.**

Nor is the "law of the case" helpful to Andersen. The Tenth Circuit did not rule on whether Andersen was or was not a lender with disclosure obligations under the OCCC.   It only stated that Harris was named in the "high interest loan" as the "Lender" – a loan that the Tenth Circuit ruled contained different terms than the terms for which Parisi applied. [D.E. 95, p. 12]. Actually, the Tenth Circuit noted that Andersen "strains credibility by asserting the essential terms comprise only the purchase and installation of the windows, to the exclusion of the payment terms." *Id.*, at 10-11. It likewise strains credibility that Andersen's "law of the case" released it from liability as a "lender." If more than one lender extended credit, then each is a "lender" pursuant to the plain meaning of the term. The statute does not provide otherwise; nor did the Tenth Circuit.  *Janczak v. Tulsa Winch*, Inc., No. 13-CV-0154-CVE-FHM, 2015 WL 7288625, at *2 (N.D. Ok. November 17, 2015) ("[D]efendant misapprehends the reach of the law of the case doctrine. The law of the case doctrine which is intended to prevent relitigation of issues already decided in the same action, does not apply to factual findings.").

**C.    It is a fact-based merits issue as to whether Andersen's role in extending credit to Parisi subjects it to liability for disclosure violations.**

Plaintiff's allegations are sufficient to reject Andersen's attempt at a formalistic reading of the OCCC. It ignores the remedial purpose of the statute and Parisi's alleged facts. As the only Defendant who entered Parisi's home to sell her windows and financing, it is a question of fact as to whether Anderson acted as the agent of Defendant GreenSky in the extension of credit to Parisi. *Id.*, ¶44; *see Cox v. Taylor*, 2008 WL 2278513, at *2 (W.D. Ok. May 30, 2008) (citing *N.H. v. Presbyterian Church (U.S.A.)*, 1999 OK 88, ¶ 12, 998 P.2d 592, 598) ("The Oklahoma Supreme Court has made clear that whether or not a relationship creates an agency is generally a question of fact.")). Anderson worked in concert with GreenSky and Harris when it initiated the extension of credit, accessed the Shopping Pass without authorization, and received an initial payment of proceeds purportedly from Parisi's account. Complaint, ¶69.    That, in turn, was treated as Parisi's acceptance of the loan without her knowledge or consent. *Id.*, ¶¶69, 73, 78, 91, 92, 93.

Because determining if Anderson acted as a lender is a factual determination, it must be determined in the context of the overlapping roles the Defendants played in a financing scheme where GreenSky and Anderson coordinated the extension and funding of loans ultimately assigned to Harris and received consumers' payments for product, services, and merchant fees. These are proper subjects of discovery, but at this stage of litigation, Anderson's conclusive assertion that it is not a lender cannot win the day.  Plaintiff's allegations do not support Andersen's contention that it was not

the lender, and in fact, contend just the opposite. *Flowers v. EZPawn Oklahoma, Inc.*, 307 F Supp.2d 1191, 1205 (N.D. Ok. 2004) (finding in removal proceedings that petition's allegations that non-bank defendants were primary lender, creditor, and collector in payday loans with usurious rates did not support any legal or factual finding that a non-party bank was true lender).

### D. The Truth in Lending Act does not foreclose multiple creditors.

Andersen spills much ink discussing the Truth in Lending Act ("TILA") and its definition of "creditor." Motion, at 15-18. But Parisi's claims are not brought under TILA. Plaintiff alleges disclosure violations under the OCCC, and alleges other violations of the Oklahoma Consumer Protection Act. In fact, Andersen joined GreenSky's Opposition to Parisi's Motion to Amend [D.E. 110], an opposition that included arguments *against* the addition of Parisi's proposed TILA claim. [D.E. 109].[3] Thus, Andersen should not now be heard to invoke TILA to dismiss Parisi's operative complaint.

In any case, the Tenth Circuit has found that there can be multiple creditors under TILA. *Hinkle v. Rock Springs Nat. Bank*, 538 F. 2d at 297 (finding defendant seller of mobile home and defendant bank each hid information and under broad definitions in Regulation Z both should be treated as creditors under TILA.). It is simply premature for Andersen to throw Harris and GreenSky under the proverbial bus at this

---

[3] Parisi's proposed amended Complaint, [D.E. 105], included a TILA claim, but this Court denied Parisi's Motion to Amend. [D.E. 113]. Parisi has filed a Motion for Reconsideration. [D.E. 114].

juncture of the litigation in order to escape being defined as a creditor. Motion, at 18, n. 5 (citing several cases brought under TILA against GreenSky).

### E.    The OCCC is to be liberally construed.

The OCCC is to be liberally construed and applied to promote the law's underlying purposes and policies. 14A O.S. §1-102. Those are to enlarge consumer understanding of credit transaction terms and to protect consumer buyers and borrowers against unfair practices by consumer credit suppliers like Andersen. *Id.* Parisi alleges that Anderson marketed the financing of its product sales and installation, promised her 0% interest with no payments until 24 months after the windows were installed, and extended and facilitated financing, placing it squarely within the scope of entities that "arrange or extend" credit. Complaint, ¶¶ 2, 8, 12, 13, 14, 22, 90, 91.  Further, "[i]t is fundamental that a statute designed to protect the public, if its language permits, must be construed in the light of the legislative intent and purposes it sought to achieve. It is entitled to a broad interpretation so that its public purposes may be fully effectuated." *Marriott v. National Mut. Cas. Co.*, 195 F. 2d 462, 466 (10th Cir. 1952). The OCCC expressly provides that the Uniform Commercial Code and principles of law and equity, including the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause, supplement its provisions. 14A-O.S. §1-103. Here, Plaintiff alleges Andersen was more than a passive merchant; its conduct directly induced her to enter into the financing arrangement and it acted in concert with Harris and GreenSky when credit was

extended to Parisi without required disclosures and when misrepresentations, fraud, and forgery occurred.  Accordingly, at the pleading stage, these facts plausibly state a claim under the OCCC, particularly because principles of law and equity, including agency, estoppel, misrepresentation, and fraud supplement its provisions. *Id.*

### F.    Andersen's role as a "creditor" involves factual issues related to damages.

Andersen's argument regarding whether it is a creditor under 14A O.S §5-203 goes directly to limitations on damages, not to Andersen's liability as a lender and arranger of credit. 14A O.S §5-203 ("[A]ny creditor who fails to comply with any requirement imposed by … (Part 3) … is liable … in an amount equal to the sum of: …").  Because the OCCC is expressly supplemented by principles of law and equity, including the law relative to principal and agent, fraud, and misrepresentation, it should not be the basis of a dismissal of Parisi's claims at the pleading stage. Parisi alleges that Defendants acted together to further a scheme they executed utilizing a complex, financial technology-assisted apparatus. Thus, any joint and several liability damages issues cannot be fleshed out without discovery. Andersen seizes on 14A O.S §5-203 as a basis for dismissal, but there is only one reference to it in the entire Complaint. Moreover, the Complaint cites specifically to violations of numerous other provisions of the OCCC. Complaint, ¶10. Accordingly, taking the allegations in the light most favorable to Parisi, Andersen's argument as to 14A O.S §5-203 cannot be the basis of dismissal.

G.    **Andersen's argument that Parisi is not a debtor fails.**

Andersen provides notice that it joins Sections III.A and III.D. of GreenSky's Motion to Dismiss Parisi's Complaint.

If the Court does not strike or refuse to consider Andersen's "joinder" of GreenSky's argument (which enlarges Andersen's brief by nine pages over the limit), it should deny the argument on its merits. Parisi's allegations are sufficient to consider her the "debtor" in this litigation. Indeed, the OCCC uses the term of debtor functionally, *i.e.*, the party to whom a creditor grants "credit" and who incurs/owes the "debt;" and when it defines a consumer loan as a loan in which the "debtor is a person other than an organization," and the debt is incurred primarily for personal, family, or household purposes. 14A § 3-104. Defendant GreenSky argued that if "there is no loan, there is no debt. If there is no debt, there is no debtor." GreenSky Motion, at 7 [D.E. 99]. But taking the definition of loan in the OCCC, there was a loan, and Plaintiff's allegations establish that. Thus, under GreenSky's (and Andersen's) logic, where there is a loan, there is a debt, and where there is a debt, there is a debtor. Ok. St. 14A - §3-106.

Moreover, when Parisi filed her Complaint (and amended it to name Andersen), the issue of contract formation had not been decided. Parisi was a debtor because during the relevant time, she was liable for the purported debt incurred. And even the Court's decision denying the Motions to Compel Arbitration and the Tenth Circuit affirmation of that decision do not undo the impact of the reported debt on Parisi's credit report as alleged in the Complaint. Complaint, ¶¶ 83, 95, 97, 99. Nor

12

does it undo Parisi's allegations that Andersen's failure to provide required disclosures deprived her of the ability to understand and compare credit terms, resulted in the creation and reporting of an unauthorized debt, damaged her credit, subjected her to collection efforts, and caused significant emotional distress. *Id.*, ¶¶ 65, 68, 73, 84, 91, 96, 97, 99.

**H.    Parisi has Article III Standing against Andersen**

Parisi has adequately alleged Article III standing as to Andersen because her injury is both concrete and fairly traceable to Andersen's own conduct. The injury here is not limited to post loan collection activity by GreenSky or Harris; it begins with Andersen's alleged failure to provide required OCCC disclosures at the moment the credit was initiated in Parisi's home.

1. <u>Parisi adequately alleged an injury in fact.</u>

Andersen misconstrues the law and ignores the allegations in Parisi's Complaint when it contends that Parisi "has suffered no 'injury in fact'" because she did not allege that she "made any payments, paid any finance charge, nor that any loan remains outstanding." Motion, at 20. Under Tenth Circuit precedent, intangible harms may qualify as concrete injuries when they bear a close relationship to traditionally recognized harms, and an exact duplication of a common law tort is not required. *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191–93 (10th Cir. 2021) (holding plaintiff had Article III standing where statutory violations caused an injury analogous to the common law tort of intrusion upon seclusion and explaining that harms must be similar "in kind, not degree"). The denial of statutorily required information itself

constitutes a concrete injury where, as alleged here, the statute was enacted to protect consumers' ability to understand and meaningfully assent to credit obligations, and where the deprivation of that information exposes the consumer to an unauthorized financial obligation and its foreseeable consequences.

    2.  <u>Parisi adequately alleged traceability</u>.

The causation prong of Article III standing requires that the injury be "fairly traceable to the challenged action of the defendant." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal alterations omitted). Traceability does not require proximate cause at the pleading stage, but only a substantial likelihood that the defendant's conduct caused the injury alleged. *Santa Fe Alliance for Public Health and Safety v. City of Santa Fe, New Mexico*, 993 F. 3d 802, 814 (10th Cir. 2021). Nor does it require a showing that a "defendant's actions are the very last step in the chain of causation." *Id.* (citing *Bennett v. Spear*, 520 U.S. 154, 169, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). At the motion to dismiss stage, a plaintiff can satisfy the "fairly traceable" requirement with allegations which, if proven, permit the conclusion that the challenged conduct is a "but for" cause of the injury. *Petrella v. Brownback*, 697 F.3d 1285, 1293 (10th Cir. 2012) (citing *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir.2009)).

Here, the informational injury is directly traceable to Andersen because Andersen is alleged to have initiated the financing, accessed the Shopping Pass, and caused loan proceeds to be disbursed to itself without Parisi's informed authorization. "But for" Andersen, the subsequent billing notices, credit reporting, and emotional

14

distress Parisi alleges would not have transpired.  They flowed from that initial, undisclosed credit transaction. At the pleading stage, Parisi need not prove that Andersen alone sent collection notices; it is sufficient that Andersen's alleged statutory violations were a substantial factor in exposing her to an unauthorized debt and its foreseeable consequences. These allegations plausibly establish injury in fact, traceability, and redressability as to Andersen.

       3.   <u>Andersen's cited cases are unavailing</u>.

Andersen's cited caselaw is inapposite.  In *Simon v. Metro. Prop. & Cas. Ins. Co.*, No. CIV-08-1008-W, 2009 WL 10664188, at *2 (W.D. Okla. Feb. 23, 2009), the court found the plaintiff had Article III standing to bring his claim against a medical insurer because he pleaded an injury in fact when he alleged he was deprived of the benefit of his bargain based on allegations that he paid premiums due and that he incurred medical expenses and submitted claims that were not fully paid. In *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1151 (D. Utah 2018), the court considered different groups within a larger group of plaintiffs, some of whom settled earlier in the case and some of whom continued as opt-out plaintiffs.  However, out of the remaining opt-out plaintiffs, the court identified a sub-group of "bystander plaintiffs," identified as plaintiffs who had not alleged any unauthorized bank accounts opened in their names, nor that their account information was ever improperly used or accessed by the defendant bank, or that they were subject to any improper sales practice. *Id*., at 1147. By contrast, another group of plaintiffs were referred to as the "wrongful account plaintiffs." *Id*. The court determined that the "bystander plaintiffs" did not have

standing because even where the bystander plaintiffs alleged an injury, they did not allege any specific facts that demonstrated they had actually suffered any concrete and particularized injury. *Id*. The court did not dismiss the claims of the wrongful account plaintiffs. Accordingly, the case stands for the unremarkable proposition that a plaintiff must allege a concrete and particularized injury, which Parisi has done.

### 4. Andersen falsely asserts Parisi "admissions."

Andersen contends that Parisi "admits receiving disclosures via email, and has acknowledged receipt in her archive folders." Motion, at 21 (citing D.E. 36, ¶51). This is simply false. First, paragraph 51 states, "Harris/GreenSky also issues consumers a "shopping pass" number, which functions like a credit card (Shopping Pass). Harris/GreenSky treats use of the Shopping Pass, or associated funds, as acceptance of the loan." Second, Parisi's Complaint alleges that she was "not provided any accurate disclosures about the interest she would be paying on the credit extensions." Complaint, ¶68. Andersen acted in concert with Harris and GreenSky to extend credit to Parisi on a loan she never authorized, and for which she never received any disclosures prior to any purported consummation. Accordingly, Parisi's damages were caused by the Defendants acting together to perpetrate their scheme. Andersen's nonsensical opinion that the "alleged violations against Defendants for failure to provide financial disclosures in accord with the OCCC are not the result of any alleged "anguish and emotional distress" is illogical, and fails to stand on solid legal ground. Motion, at 21.

16

5.  Parisi is not limited to actual damages under the OCCC.

As for actual damages, under the OCCC, Parisi is entitled to actual damages, but not exclusively actual damages. The OCCC also provides for statutory damages of not less than Four Hundred Dollars ($400.00) or greater than Four Thousand Dollars ($4,000.00), or in the case of a class action, an amount the court may allow, with no minimum recovery for each member and the total recovery *other than for actual damages* is capped at $500,000.00. Ok. St. 14A 5-203(1)(b) (emphasis added). Thus, actual damages are on top of statutory damages, as well as reasonable costs and fees. The plain language of the statute makes this clear: "In determining the amount of award in any class action, the court shall consider among other relevant factors the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional." Ok. St. 14A-5-203(c).

Once again, Andersen cites to a completely inapposite case, *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 140 S. Ct. 1615, 1620, 207 L.Ed.2d 85 (2020), contending that "[u]nder these circumstances, the U.S. Supreme Court has ruled that no Article III injury exists, even if Parisi was entitled to statutory damages." Motion, at 22. But "under these circumstances" mischaracterizes *Thole*, an ERISA case that considered whether participants in a defined-benefit plan had standing for alleged mismanagement claims where, regardless of the investment decisions of the plan's fiduciaries, the plaintiffs were legally and contractually entitled to the same fixed

17

monthly payment amount. *Id.*, at 1618. *Thole*, relying on *Spokeo, supra*, only revisits the well-tread standing requirement of a concrete injury even in the context of a statutory violation. *Id.*, at 1621.   Because Parisi has a concrete injury, despite it being an intangible one, *Thole* is unavailing to Andersen. It is false to suggest, as Andersen does, that "as in *Thole*, here, Parisi will receive 'not a penny less' if they lost this lawsuit, and 'not a penny more' if she wins this lawsuit." Motion, at 22 (quoting *Thole, supra*). If Parisi prevails, she will be entitled to her damages, just as the class members will, as well as statutory damages determined by the Court.

### I.      Plaintiff's class definition is not a fail-safe class

Andersen argues that Plaintiffs' proposed class definition is an inappropriate "fail-safe class." Motion, at 23.  Just because the Class definition references language required by a statute, does not make it a fail-safe class. Andersen fails to comprehend the nuance. A "fail-safe" class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Cline v. Sunoco, Inc. (R&M)*, 2025 WL 3199871, at *16, n. 19 (10th Cir. Nov. 17, 2025) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). The Tenth Circuit has not determined that a fail-safe class definition is an independent bar to class certification. *Cline v. Sunoco, Inc. (R&M), supra* (citing *Sherman v. Trinity Teen* Solutions, Inc., 84 F. 4th 1182, 1191, n. 6 (10th Cir. Oct. 31, 2023)). That is because some circuits have simply determined that the problem "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis," while

18

others have ruled that it is an "independent basis to deny class certification." *Id.* (collecting cases, including, *United States v. Casados*, 26 F.4th 845, 853 (10th Cir. 2022) ("We may affirm on alternative grounds only when those grounds are dispositive, indisputable, and appear clearly in the record." (quotation marks omitted)). Here, any problem with the class definition is curable by amendment after discovery.

Here, the definition of the Complaint uses objective criteria to identify class members and does not depend on subjective criteria such as class members' state of mind. *Cline, supra*, at \*16. Class membership can be determined by whether Defendants provided the required OCCC disclosures. Defendants will have those records. Even if identifying the members of the class is difficult, administrative feasibility is not a factor for class certification. *Id.* The Tenth Circuit has held that "administrative feasibility may bear on whether class resolution is superior to individual resolution," but it should not operate as a trump card that outweighs all other factors under Rule 23." *Id.* (cleaned up) ("[W]e see no reason to make administrative feasibility a required element of this test, particularly given the strong criticism it has attracted from other courts.").

Andersen seems to believe that because the proposed class definition references language required by the OCCC, the definition creates a fail-safe class. To the contrary, many class definitions regularly refer to notice or disclosures when liability turns on their receipt. *See, e.g., Banks v. Central Refrigerated Services, Inc.*, 2017 WL 1683056, at \*6 (D. Ut. May 2, 2017) (rejecting argument that class definition including

19

failure to issue notice was fail-safe class); *Lavigne v. First Community Bancshares, Inc.,* 2018 WL 2694457, at \*8 (D. N.M. June 5, 2018) (modified Telephone Consumer Protection Act class definition including previous notice to defendants that wrong party was called was not fail-safe class).

**J.      Andersen's class certification arguments are untimely and should be denied.**

Andersen's remaining arguments that the Court should strike Parisi's class definition, which focus on Defendants' roles, and whether class members may have entered into arbitration agreements, are not appropriately addressed at the pleading stage.  Motion, at 25-29.  Although Andersen attempts to set out a litany of individual inquiries (Motion, at 28-29), Rule 23 does not require that there are *no* individualized inquiries. *Sherman v. Trinity Teen Solutions, Inc.*, 84 F. 4th, at 1193 (holding district court erred when it assessed whether *any* individualized inquiries would be necessary to resolve the putative class's claims rather than whether Plaintiffs had demonstrated the class shared at least *one common question* of law or fact, the resolution of which would drive the litigation.). Accordingly, a class can satisfy Rule 23 requirements even where there are affirmative defenses that raise individual questions of law or fact. *Cline, supra,* at \*13 (citing 2 Newberg and Rubenstein on Class Actions § 4:55 (6th ed. 2025) (footnotes and internal quotation marks omitted); *Tyson Foods, Inc.* v. *Bouaphakeo,* 577 U.S. 442, at 453–54, 136 S.Ct. 1036 (2016) (predominance is met "under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members" (quoting

20

7AA C. Wright, A. Miller, M. Kane & R. Klonoff, Federal Practice & Procedure § 1778 (3d ed. 2005))); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee* Foods *LLC*, 31 F.4th 651, 668 (9th Cir. 2022) (same); *Young v. Nationwide Mut. Ins.* Co., 693 F.3d 532, 544 (6th Cir. 2012) (same); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301 (3d Cir. 2011) (same); *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) (same) (collecting cases).

But despite the inadequacy of Andersen's class certification arguments, these *are* class certification arguments, and no class certification motion is before the Court. Class definitions can be modified throughout litigation as the case develops and discovery reveals evidence. Fed. R. Civ. P. 23(c)(1)(c); *Carriuolo v. General Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016) (power of district court to alter or amend class certification orders at any time prior to decision on merits "is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims."). Pleadings can also be conformed to the evidence as a case develops. Fed. R. Civ. P. 15(b); *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1187 (10th Cir. 2006) ("The district court can modify or amend its class-certification determination at any time before final judgment in response to changing circumstances in the case.") (citing Fed. R. Civ. P. 23(c)(1)(C)); *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) ("[A] trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment.") (citing Fed. R. Civ. P. 23(c)(1)). As the Supreme

21

Court has pointed out, class certification is an evidentiary issue, and "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (internal quotation marks omitted). Indeed, a court must conduct a "rigorous analysis" to determine that the prerequisites of Rule 23(a) are met. *Id.* "That is so because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (cleaned up, citations omitted). Accordingly, Andersen's class certification arguments are untimely, and should not be the basis of dismissal.

### K.    Andersen's alternative motion for more definite statement is inconsistent with its opposition to Parisi's Motion to Amend.

Andersen is on notice that Parisi has raised claims under the OCCC for failure to provide required disclosures, for misrepresentation, for forgery, and for fraud. Complaint, ¶¶ 10, 13, 68, 90, 91, 92, 95. These claims also provide the basis for Parisi's claim that Defendants have violated the Oklahoma Consumer Protection Act. ¶¶ 90, 91. Parisi has likewise alleged that Defendants worked in concert in its fraudulent extension of credit for the sale of consumer goods and services in Oklahoma. Complaint, ¶¶ 8, 93. Her fraud allegations reflect the who (Defendants, in concert); the what (inducing her into a loan agreement she did not authorize and paying Andersen from that loan proceeds as if she authorized the shopping pass payment); the when (at the home visit from Andersen and in the weeks and months following); the where (at her home when she thought she was applying for a zero interest, zero

22

payments for twenty four months loan); and the how (through a scheme whereby Andersen markets and sells the windows by promising a favorable zero interest loan utilizing GreenSky technology on its iPad, funding through GreenSky and Harris, then drawing out loan proceeds without authorization to pay for half of the project cost immediately. The Court denied Parisi's Motion to Amend her Complaint, which amendment Andersen also opposed. Nevertheless, if the Court upon reconsideration grants Parisi's Motion to Amend, her proposed Amended Complaint sets forth separate causes of action based on the facts alleged in the current Complaint, as Andersen requests.[4]

## IV.    CONCLUSION

For the reasons stated herein, the Court should deny Andersen's Motion to Dismiss

Dated: December 12, 2025

**VARNELL & WARWICK, P.A.**

/s/ Janet R. Varnell
Janet R. Varnell, FBN: 0071072
400 N. Ashley Drive, Suite 1900
Tampa, FL  33602
Telephone: (352) 753-8600
jvarnell@vandwlaw.com

**RAWLS LAW OFFICE PLLC**

/s/ M. Kathi Rawls
M. Kathi Rawls, OBA #18814
222 NW 13th  St.
Oklahoma City,  OK  73103
Kathi@carfraud.net

---

[4] Parisi's Motion for Reconsideration of the Court's denial of her Motion to Amend is pending. [D.E.114].

mkr@rawlslawoffice.com

**NATIONAL ASSOCIATION OF
CONSUMER ADVOCATES**
Eric Zell, Ohio Bar #0084318
1215 17th St. NW, 5th Floor
Washington, DC 20006
202-452-1989 x111
eric@consumeradvocates.org

*Attorneys for Plaintiff*

24

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 12, 2025, a true and correct copy of the above and foregoing document was served in accordance with the Local Rules on all counsel of record via the Court's electronic filing system.

/s/ Janet R. Varnell
Janet R. Varnell