# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SUSAN PARISI,

      Plaintiff,

 vs.

OKLAHOMA WINDOWS AND DOORS,
LLC d/b/a RENEWAL BY ANDERSON OF
OKLAHOMA AND BMO HARRIS
BANK, NA d/b/a GREENSKY, LLC,

      Defendants.

_____/

CASE NO. CIV-23-cv-115-R

(Removed from the District Court of Oklahoma County, State of Oklahoma, Case No. CJ-2022-5727)

_____

**DEFENDANT, OKLAHOMA WINDOWS AND DOORS, LLC**

**d/b/a RENEWAL BY ANDERSON OF OKLAHOMA'S MEMORANDUM OF**

**LAW IN SUPPORT OF ITS MOTION TO DISMISS THE (FOURTH) AMENDED**

**COMPLAINT AND MOTION TO CERTIFY CLASS ACTION**

_____

Dated:  March 24, 2026        Respectfully submitted,

| _/s/ Diane J. Zelmer_____ | Sheila D. Sayne, Esq. |
|---|---|
| Diane J. Zelmer, Esq. (pro hac vice) | OBA # 31213 |
| FL Bar No. 27251 | Sayne Law PLLC |
| BERENSON LLP | P.O. Box 33309 |
| 4495 Military Trail, Suite 203 | Tulsa, Oklahoma 74153-3309 |
| Jupiter, Florida 33458 | Telephone: 918-740-3013 |
| Telephone: 561-429-4496 | sheila.sayne@outlook.com |
| Email: djz@berensonllp.com | *Attorney for Defendant, OKLAHOMA* |
| *Attorney for Defendant, OKLAHOMA* | *WINDOWS AND DOORS, LLC* |
| *WINDOWS AND DOORS, LLC* | |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES .................................................................................iiiii

A.    LEGAL STANDARD ....................................................................................1

B.    SUMMARY OF ARGUMENT.......................................................................3

C.    ARGUMENT ................................................................................................5

I.    PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER COUNT I
AGAINST OKLAHOMA WINDOWS FOR VIOLATION OF THE OKLAHOMA
CONSUMER CREDIT CODE. ...........................................................................5

a.    *Plaintiff Does Not Adequately Allege that OKLAHOMA WINDOWS is a "Lender."*
…………………………………………………………………………..6

b.    *Plaintiff Does Not Adequately Allege that OKLAHOMA WINDOWS is a
"Creditor."*..........................................................................................7

II.    PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER COUNT II
AGAINST OKLAHOMA WINDOWS FOR VIOLATION OF TILA .........................13

III.    PLAINTIFF's COMPLAINT MUST BE DISMISSED BECAUSE IT
CONSTITUTES SHOTGUN PLEADING AND FAILS TO IDENTIFY SPECIFIC
CONDUCT OF LIABLITY FOR EACH SEPARATE DEFENDANT ........................15

IV.    PLAINTIFF FAILS TO STATE A CAUSE OF ACTION UNDER COUNT IV
FOR VIOLATION THE ELECTRONIC FUNDS TRANSFER ACT ........................17

V.    PLAINTIFF's CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS
18

a.    *Plaintiff's Claims On Behalf of Additional Class Plaintiffs Do Not Relate Back* ...19

b.    *Plaintiff's Class Claims Against OKLAHOMA DOORS Do Not Relate Back* ........22

VI.    PLAINTIFF LACKS STANDING UNDER ARTICLE III. ..................................23

VII. THE COURT SHOULD STRIKE THE CLASS DEFINITION ...........................26

a.    *The Alleged Class Definition Must Not Include Consumers Who Entered into an
Arbitration Agreement With Either Defendant.* .........................................26

CERTIFICATE OF SERVICE ..................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Alsortish v. GreenSky, LLC*, 2017 WL 699830 (E.D. La. Feb. 22, 2017) ........................12

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ...................................2

*AMC W. Hous. LP v. NIBCO, Inc.*, No. CIV-18-959-D, 2019 WL 4491331 (W.D. Okla. Sept. 18, 2019) ..................................................................................................................19

*Anderson v. Frederick Ford Mercury, Inc.*, 694 F. Supp. 2d 324 (D. Del. 2010).............25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................................1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................1

*Bender v. Williamsport Area School Dist.*, 475 U.S. 534 (1986) ......................................23

*Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d 274 (D. Conn. 2015).........15, 18

*Bentley v. GreenSky Trade Credit, LLC*, 2015 WL 1509243 (D. Conn. 2015).................13

*Bustamante v. First Fed. Sav. And Loan Assn' of San Antonio*, 619 F. 2d 360 (5th Cir. 1980) ...............................................................................................................................13

*Cetto v. LaSalle Bank Nat. Ass'n*, 518 F.3d 263 (4th Cir. 2008)...................................8, 11

*Che v. Aurora Loan Svcs., LLC* 847 F.Supp.2d 1205 (C.D.Cal.2010).............................11

*City of Los Angeles v. Lyons,* 461 U.S. 95 (1983)............................................................26

*Danier v. Fed. Nat. Mortg. Ass'n*, No. 12-62354-CIV, 2013 WL 462385 (S.D. Fla. Feb. 7, 2013) ...............................................................................................................................11

*DeLeon v. Beneficial Const. Co.*, 55 F. Supp. 2d 819 (N.D. Ill. 1999) .............................12

*Denton v. Nationstar Mortg. LLC*, No. 18-CV-241-GKF-JFJ, 2020 WL 1917486 (N.D. Okla. Apr. 20, 2020) .......................................................................................................12

*Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080 (8th Cir. 2021) ..........................3

*Donelson v. United States Through Dep't of the Interior*, 730 F. App'x 597 (10th Cir. 2018) ................................................................................................................................23

*Fields v. King-Tiller, LLC*, No. 8:20-CV-2759-MSS-JSS, 2021 WL 2829040 (M.D. Fla. Mar. 8, 2021)................................................................................................................15

*Geer v. Cox*, 242 F.Supp.2d 1009 (D. Kan. 2003) ........................................................2, 6

*Gratz v. Bollinger*, 539 U.S. 244, 289, 123 S.Ct. 2411 (2003)..........................................23

*Holt v. United States*, 46 F.3d 1000 (10th Cir.1995).........................................................2

*Horton v. Country Mortg. Svcs.*, No. 07 C 6530, 2010 WL 55902 (N.D.Ill. Jan.4, 2010)11

*In re Williams*, No. 18-12940-BFK, 2023 WL 6618956 (Bankr. E.D. Va. Oct. 10, 2023) ........................................................................................................................................24

*John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443 (5th Cir. 2007) .....................................3

*Jones v. Carnes*, 2016 WL 205500 (W.D. Kentucky 2016)..............................................11

*Kellom v. Quinn*, 86 F.4th 288 (6th Cir. 2023), *cert. denied sub nom. Kellom v. United States*, 144 S. Ct. 2661 (2024) .....................................................................................20

*LeBlanc v. New Eng. Raceway, LLC*, 116 Conn.App. 267 (2009)...................................18

*Legacy Crossing, L.L.C. v. Travis Wolff & Co., L.L.P.*, 229 F. App'x 672 (10th Cir. 2007) ........................................................................................................................................19

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173 (10th Cir. 2013) .........................24

*Locicero v. Intrust Bank*, N.A., 2018 WL 4374908 (S.D. Fla. 2018)...............................12

*Lukas v. Lucci, Ltd., Inc.*, 966 F. Supp. 1163 (S.D. Fla. 1997) ........................................10

*Mayfield v. Fid. State Bank of Cleveland*, 121 Okla. 179 (1926)......................................28

*Mayle v. Felix,* 545 U.S. 644 (2005).................................................................................19

*McClelland v. Deluxe Fin. Servs., Inc.*, 431 F. App'x 718 (10th Cir. 2011)....................20

*Melton v. Account Resolution Team, Inc.*, No. 3:15-CV-00469, 2016 WL 6875883 (E.D. Tenn. Nov. 21, 2016) .....................................................................................................20

*Mincey v. World Savings Bank, FSB*, 614 F.Supp.2d 610 (S. Carolina 2008) ..................9

*Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136 (D. Utah 2018) .........................2, 24

*Morgan v. McCottor*, 365 F.3d 882 (10th Cir. 2004) ......................................................23

*Nagel v. DFL Pizza, LLC*, No. 1:21-CV-00946-DDD-SBP, 2024 WL 5095298 (D. Colo. Dec. 4, 2024).................................................................................................................28

*Onyx Props. LLC v. Board of County Commissioners of Elbert County*, 916 F. Supp.2d 1191 (D. Colo. 2012) ...................................................................................................21

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) .............................3

*Radulescu v. W. Union Co.*, No. 1:19-cv-03009-DDD-SKC, 2023 WL 9035367 (D. Colo. Nov. 27, 2023) ...........................................................................................................27

*Rector v. City and County of Denver,* 348 F.3d 935 (10th Cir.2003)...............................26

*Reveredge Dentistry Partnership v. City of Cleveland*, No. 1:22-CV-1007, 2024 WL 639689 (N.D. Ohio Feb. 15, 2024) ..............................................................................20

*Robey-Harcourt v. Bencorp Fin. Co.*, 212 F. Supp. 2d 1332 (W.D. Okla. 2002), *aff'd*, 326 F.3d 1140 (10th Cir. 2003).....................................................................................11, 12

*Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181 (10th Cir. 1995) .............................................6

*Rosolen v. Home Performance All., Inc.*, No. 219CV00024JLBNPM, 2021 WL 8201477 (M.D. Fla. Apr. 23, 2021) ...........................................................................................12

*Rouse v. H.B. Fuller Company*, 694 F. Supp. 3d 1149 (D. Minn. 2023) ..........................3

*Sealey v. Boulevard Construction Co.*, 70 Ohio App.2d 277 (1980) ...............................10

*Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26 (1976)......................................26

*Simon v. Metro. Prop. & Cas. Ins. Co.*, No. CIV-08-1008-W, 2009 WL 10664188 (W.D. Okla. Feb. 23, 2009)...................................................................................................24

*Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320 (10th Cir. 2002) .......................2

*Thole v. US Bank NA*, 140 S.Ct. 1615 (2020)................................................................25

*Thompson v. Jiffy Lube Int'l, Inc.,* 250 F.R.D. 607 (D. Kan. 2008)...................................26

*United States v. Rodriguez-Aguirre*, 264 F.3d 1195 (10th Cir. 2001)................................2

*Vallagio at Inverness Residential Condo. Ass'n, Inc. v. Metro. Homes, Inc.*, 412 P.3d 709, (Colo. App. 2015), aff'd, 395 P.3d 788 (Colo. 2017) ...................................................27

*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018)........................................15

*Walker v. Windham Invs., Inc*., No. 1:24-CV-4138-VMC-JKL, 2025 WL 1421109 (N.D. Ga. Jan. 15, 2025), report and recommendation adopted, No. 1:24-CV-04138-VMC, 2025 WL 2743692 (N.D. Ga. June 11, 2025) ..............................................................16

*Weske v. Samsung Elecs., Am., Inc*., 934 F. Supp. 2d 698 (D.N.J. 2013) .........................3

*Wesley v. Schaller Subaru, Inc.,* 277 Conn. 526 (2006).....................................................18

**Statutes**

14A § 5-203(1)(a) .................................................................................................................25

14A O.S. § 3-301(6) ...............................................................................................................8

14A O.S. § 3-306 .................................................................................................................5, 7

14A O.S. § 5-203 .................................................................................................................7, 11

15 U.S.C. § 1602(f)................................................................................................................14

15 U.S.C. § 1602(g)...............................................................................................................14

15 USC 1602(g) ......................................................................................................................8

Article III of the United States Constitution..................................................................23, 26

Okla. Stat. tit. 12, § 95; Okla. Stat. tit. 14A, § 5-203(1), (6) .............................................19

**Rules**

FED. R. CIV. P. 15(c)(1)(B) ..................................................................................................19

FED. R. CIV. P. 3 ...................................................................................................................20

FED. R. CIV. P.12(b)(1) ................................................................................1, 2, 23

FED. R. CIV. P.12(b)(6) ....................................................................................1

FED. R. CIV. P.12(f) ...................................................................................1, 3, 26

FED. R. CIV. P.23 ........................................................................................27, 28

Defendant, OKLAHOMA WINDOWS AND DOORS, LLC d/b/a RENEWAL BY ANDERSON OF OKLAHOMA ("OKLAHOMA WINDOWS" or the "Defendant"), pursuant to Rule 12(b)(1), Rule 12(b)(6) and Rule 12(f) of the Federal Rules of Civil Procedure, by and through their undersigned counsel, hereby files this Memorandum of Law in Support of its Motion to Dismiss the (Fourth) Amended Petition and Motion to Certify Class Action (hereinafter "Complaint") [DE 129], and states as follows:

## A.    LEGAL STANDARD

*Rule 12(b)(6)*.  A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where a party fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When resolving a Rule 12(b)(6) motion, the Court generally limits itself to the contents of the pleadings and construes the complaint in favor of the plaintiff, taking all pleaded facts as true. *See, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547.  Such factual allegations must be specific and not mere conclusory allegations, as a court will not accept as true conclusory allegations or unwarranted deductions of fact. *Id*. at 555; *Iqbal*, 556 U.S. at 678.  Plaintiff's allegations must transcend the "speculative," "conceivable," and "possible," and must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 556–57, 566–67, 570 (2007).  In making this determination, the Court must disregard "legal conclusions" and "conclusory statements," and must scrutinize the well-pleaded factual allegations to ensure that they are more than "'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 677–79 (2009); *see also Am. Dental Ass'n*

*v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010). "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Geer v. Cox*, 242 F.Supp.2d 1009, 1016 (D. Kan. 2003) (internal quotation marks and citation omitted)

> *Rule 12(b)(1)*.
>
> "Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms." *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.1995). "First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint." *Id*. (citation omitted). "In addressing a facial attack, the district court *1150 must accept the allegations in the complaint as true." *Id*. "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id*. (citation and internal quotation marks omitted). "In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*. (internal quotation marks omitted) (citation omitted). Because the court "construe[s] the [Defendants'] Rule 12(b)(1) motion to dismiss for lack of standing to be a facial attack on the complaint, rather than a factual one," it accepts Plaintiffs' "allegations of material facts as true and construe[s] the complaint in favor of" the Plaintiffs. *Id*.

*Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1149–50 (D. Utah 2018). A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1) without converting a motion to dismiss to a motion for summary judgment. *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002).

*Rule 12(f)*.  Under Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "A district court may grant a motion to strike prior to class action certification when 'it is apparent from the pleadings that the class cannot be certified under Rule 23(b)(2).'" *Rouse v. H.B. Fuller Company*, 694 F. Supp. 3d 1149, 1164 (D. Minn. 2023) (quoting *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1094 (8th Cir. 2021)).  Under such circumstances, it is an abuse of discretion for the court to deny motions to strike the class allegations.  *Id. at 1092*.

Federal courts are split as to whether class-action allegations may be stricken under Rule 12(f) prior to the filing of a motion for class-action certification when certification is a clear impossibility. Some courts permit this.  *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *cf. John v. Nat'l Sec. Fire & Cas. Co*., 501 F.3d 443, 444-45 (5th Cir. 2007) (affirming dismissal of unsupportable class-action allegations on Rule 12(b)(6) motion). Others deny as premature motions to strike class-action allegations made before a plaintiff moves to certify a class. *See, e.g., Weske v. Samsung Elecs., Am., Inc*., 934 F. Supp. 2d 698, 706-07 (D.N.J. 2013).

### B.    SUMMARY OF ARGUMENT

Plaintiff's Complaint against OKLAHOMA WINDOWS should be dismissed. Plaintiff purportedly attempts to raise claims against OKLAHOMA WINDOWS under the Oklahoma Consumer Credit Code ("OCCC") and Truth in Lending Act ("TILA"), however, OKLAHOMA WINDOWS has no obligation under the OCCC as it is not a "lender" and it has no obligation under the OCCC or TILA a sit is not a "creditor."  Indeed,

this District has recognized that an "arranger of credit" does not qualify as a "creditor," and other Federal Courts have likewise narrowed applicability of consumer credit codes specifically to a "creditor" as intended by Congress.

Similarly, Plaintiff has failed to state a cause of action against OKLAHOMA WINDOWS under the Electronic Fund Transfer Act ("ETFA"). The EFTA only creates liability against a "financial institution" which could only be BMO HARRIS BANK who is the program bank who loaned the funds.

Third, Plaintiff erroneously engages in shotgun pleading attributing the titles "creditor" and "lender" to every single defendant, which is inconsistent with materials in this action previously filed and considered. Moreover, Plaintiff fails to identify the specific conduct of each Defendant, and instead, attributes all conduct to all three Defendants. This type of shotgun pleading is impermissible.

Fourth, the claims raised in Plaintiff's Fourth Amended Complaint are barred by the applicable statute of limitations. This is especially true, where, as here, Plaintiff did not allege any *class* claims until the one year statute of limitations passed for any claims under the OCCC, EFTA and TILA. Plaintiff's addition of class plaintiffs does not relate back to the original pleading. Moreover, in its Fourth Amended Complaint, Plaintiff improperly seeks to *broaden* the class of plaintiffs by identifying an entirely different class and including new claims, long after the statute of limitations has passed for such claims. These claims are time barred and cannot relate back to the original pleading, which did not even originally name OKLAHOMA WINDOWS as a Defendant.

Further, this Court lacks jurisdiction over the claims raised against OKLAHOMA WINDOWS because Plaintiff cannot establish Article III standing.  Plaintiff's only alleged injury that is vague and unascertainable, and/or applies to the other Defendants and not to any conduct by OKLAHOMA WINDOWS.  Moreover, Plaintiff has not adequately alleged any actual damages caused by OKLAHOMA WINDOWS, and thus, is not entitled to recovery of statutory damages.  Thus, Plaintiff cannot meet Article III standing requirements.

Finally, Plaintiff's class definition fails to carve out those consumers subject to the arbitration agreements and class actions waivers entered into by and between one of the Defendants, and any such determination of validity of any arbitration agreement (as Parisi argued in this Court and on appeal) would require mini-trials/appeals for each and every consumer.

Accordingly, OKLAHOMA WINDOWS requests the Court to grant its motion to dismiss all counts against OKLAHOMA WINDOWS.

### C.    ARGUMENT

### I.    PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER COUNT I AGAINST OKLAHOMA WINDOWS FOR VIOLATION OF THE OKLAHOMA CONSUMER CREDIT CODE.

In Paragraph Count I of the Fourth Amended Complaint, Parisi erroneously alleges that all "Defendants" (including OKLAHOMA WINDOWS) failed to comply with Section 14A O.S. § 3-306, *et. al* of the Oklahoma Consumer Credit Code and provide certain financing disclosures.  [DE No. 129, pp. 25-26].  However, only a "lender" is obligated to comply with the disclosure requirements of 14A O.S. § 3-306, *et. al*.

### a. Plaintiff Does Not Adequately Allege that OKLAHOMA WINDOWS is a "Lender."

In paragraph 120, Plaintiff asserts disclosure violations by all Defendants in violation of 14A O.S. § 3-306 2(aa) through (k). [DE 129, ¶ 120]. Section 14A O.S. § 3-306(2) expressly requires the "lender" to give "the debtor" certain identified information. In its Fourth Amended Complaint, Plaintiff does not sufficiently identify OKLAHOMA WINDOWS as the lender (and indeed, OKLAHOMA WINDOWS is not and never has been the lender of any loan to Parisi). Rather, Plaintiff identifies "BMO Harris Bank" as "lender." [DE No. 129, ¶ 72]. Plaintiff also previously filed a document from GreenSky that clearly identifies "BMO HARRIS BANK N.A." as the lender. [DE No. 36-6, p. 1]. This is consistent with other evidence in the record and submitted on appeal to the Tenth Circuit, and it is the undisputed law of the case that OKLAHOMA WINDOWS is ***not*** the lender. The GreenSky Financing Form attached to the Windows Contract[1] identifies the "GreenSky Finance Amount" and the website "myloan.greenskycredit.com" to download the loan agreement. [DE 39-1, p. 13]. The Installment Loan Agreement identifies "BMO HARRIS BANK N.A." as the "Lender" and "Renewal by Andersen of Oklahoma" as the "Merchant." [DE 18-3, pp. 12-21]. Indeed, in its opinion, the Tenth Circuit[2] also recognized that "BMO HARRIS BANK N.A." was identified as the lender. [DE 95, p. 5].

---

[1] The Windows Contract, which is central to plaintiff's claim, is referred to in the Second Amended Complaint. [DE 36, ¶ 66]. Thus, the Court may consider the document on a motion to dismiss. *Geer*, 242 F.Supp.2d at 1016.

[2] *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) ("[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal.").

The Tenth Circuit stated that the GreenSky Financing Form offering zero percent interest entered into by the parties simply reflected "payment terms." [DE 95, p. 14].

To get around this, Plaintiff now generally asserts that "Defendants are either creditors, sellers, arrangers of consumer sales credit, lenders, creditors, or assignees." [DE 129, ¶ 111.] However, this statement is merely conclusory and vague, and cannot survive a motion to dismiss. Plaintiff already identifies BMO HARRIS as the lender [DE No. 129, ¶ 72], and has failed to plead the factual basis of Plaintiff's assertion that somehow OKLAHOMA WINDOWS is now a lender and subject to the OCCC. To do so, Plaintiff would need to assert that OKLAHOMA WINDOWS loaned Plaintiff funds, which it did not do. Plaintiff cannot allege such vague assertions against OKLAHOMA WINDOWS when it expressly contradicts with the prior filings and other allegations in this matter.

Indeed, there can only be _**one**_ lender who was obligated to provide certain statutory disclosures – Plaintiff cannot allege that all _**three**_ parties are lenders of the loan. Therefore, Plaintiff has failed to state a claim for relief in Count I against OKLAHOMA WINDOWS as it is not a "lender," and thus, had no obligation to provide such disclosures or information in compliance with 14A O.S. § 3-306, *et. al*.

### b. Plaintiff Does Not Adequately Allege that OKLAHOMA WINDOWS is a "Creditor."

In Paragraph 121, under Count I, Plaintiff alleges that Defendants violated Section 14A O.S. § 5-203. Plaintiff seeks to hold all three "Defendants" (including OKLAHOMA WINDOWS) liable under Section 14A O.S. § 5-203. However, Section 14A O.S. § 5-203(1)(e.s.) only subjects a "creditor" to liability as follows:

> Except as otherwise provided in this section, any **creditor** who fails to comply with any requirement imposed by the provisions on disclosure (Part 3), other than the provisions on advertising pursuant to Sections 2-313 of Article 2 of this title and 3-312 of Article 3 of this title, or with any requirement imposed by the provision on the right to rescind pursuant to Section 5-204 of this title, with respect to any person is liable to that person in an amount equal to the sum of:

In Part 3, Section 14A O.S. § 3-301(6) defines the term creditor, and states that "[f]or purposes of this part, the terms "creditor", "card issuer", "applicant", "card holder", "dwelling" and "consumer" have the same meanings those terms have in the Federal Consumer Credit Protection Act ("FCCPA"), as limited by the subject matter of this article.

TILA, which is part of the FCCPA, defines "creditor" as follows:

> The term 'creditor' refers only to a person who **both** (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 USC 1602(g).[3] **<u>Both</u>** requirements must be satisfied. *Cetto v. LaSalle Bank Nat. Ass'n*, 518 F.3d 263, 270 (4th Cir. 2008) ("The language of the first sentence of § 1602(f) is unambiguous in defining 'creditor' to refer "only to a person who both (1) regularly extends ... consumer credit ... and (2) is the person to whom the debt arising from the

---

[3] The parallel provision in Regulation Z provides:
> Creditor means: (i) A person (A) who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than 4 installments (not including a downpayment), and (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract.

consumer credit transaction is initially payable on the face of the evidence of indebtedness....").

As indicated *supra*, Part C.I.a., the Installment Loan Agreement (together with the terms and conditions) clearly identifies "BMO HARRIS BANK N.A." as the "Lender," and provides an agreement **to make payments** "by mailing a check or money order to Dept# 3025, GreenSky, PO Box 2153, Birmingham AL 35287-3025." [DE No. 18-3, pp. 12-13, ¶ 5]. *Mincey v. World Savings Bank, FSB*, 614 F.Supp.2d 610 (S. Carolina 2008) (holding that Golden West or Wachovia did not meet definition of "creditor" because the attachments to the complaint indicated that the payments were to be made to WSB). Likewise, the "GreenSky Financing Form" identifies the "GreenSky Finance Amount" as and lists the "myloan.greenskycredit.com"[4] as the website to download the loan agreement. [DE No. 69-1, p. 10]. Indeed, there is no document identifying OKLAHOMA WINDOWS as "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." *Cetto,* 518 F.3d at 270 (holding that mortgage broker is not a "creditor" under TILA because the initial debt was not payable to the broker).

Further, the fact that Plaintiff generally asserts that "Defendants are either creditors, sellers, arrangers of consumer sales credit, lenders, creditors, or assignees" and that

---

[4] The allegations in the Fourth Amended Complaint demonstrate that Plaintiff agreed to allow OKLAHOMA WINDOWS to submit her signature for a credit check and loan application. [DE 129, ¶ 45-50]. Plaintiff also acknowledges that it was GreenSky, the servicer of the loan, who spoke with Plaintiff regarding the loan and approval of the loan. [DE 129, ¶ 45-50].

"Defendants are regularly engaged in the business of originating and extending 'consumer loans'" does not change this result.  There are document filings in this matter that are inconsistent with Plaintiff's allegations, and demonstrate that BMO HARRIS is the party to whom the debt was "initially payable on the face of evidence."  [DE 129, ¶ 111.]; *see supra* Part C.I.a.   Plaintiff itself identifies BMO HARRIS as the lender.  [DE 129, ¶¶ 72, 115.]  Plaintiff's vague and general statements are entirely inconsistent with the documents attached to the former pleadings in this matter and the evidence submitted and ruled on by the Tenth Circuit, including the Installment Loan Agreement and GreenSky Financing Form.  It is undisputed that "BMO HARRIS BANK N.A." is the lender and party that extended credit to Plaintiff.  [DE 129, ⁋ 72]; [DE No. 36-6, p. 1]; [DE 18-3, pp. 12-21]; [DE 95, p. 5].

It should be noted that Courts have rejected the contention that home improvement contracts calling for partial payment upon initiation of the project and payment of the balance upon completion as subjecting a contractor to liability under TILA.  *Lukas v. Lucci, Ltd., Inc.*, 966 F. Supp. 1163 (S.D. Fla. 1997); *Sealey v. Boulevard Construction Co.*, 70 Ohio App.2d 277 (1980) (holding that home improvement contract that calls for a cash down payment at the inception of the contract and the unpaid balance of the cash price upon completion does not subject a contractor to liability under TILA).  As the Western District Court in Kentucky stated, to hold "otherwise would make virtually every contractor a 'creditor,' as every construction contract involving progress payments or a split payment scheduled would be subject to TILA."  *Jones v. Carnes*, 2016 WL 205500

(W.D. Kentucky 2016).[5]   Thus, on this basis alone, because OKLAHOMA WINDOWS does not fit within the second prong of the "creditor" definition, OKLAHOMA WINDOWS is not liable under Section 14A O.S. § 5-203.  As in *Lukas*, viewing the transaction between Plaintiff and OKLAHOMA WINDOWS as representative of OKLAHOMA WINDOWS' "course of business," OKLAHOMA WINDOWS does not "regularly extend consumer credit payable in more than four installments" and "did not extend credit to Plaintiff[s]."  *Lukas,* 966 F. Supp. at  1165.

This District has recognized that "[o]f all the possible participants in selling credit services and arranging for and closing consumer credit transactions, Congress has chosen to make TILA's disclosure obligations and related duties ***applicable only to creditors***." *Robey-Harcourt v. Bencorp Fin. Co*., 212 F. Supp. 2d 1332, 1333 (W.D. Okla. 2002), *aff'd*, 326 F.3d 1140 (10th Cir. 2003) (e.s.).  In that vein, this District refused to extend TILA liability to brokers because plaintiff failed to produce adequate evidence indicating that the defendants regularly extended consumer credit or were the "persons" to whom the debt was to be payable.  *Id*. (e.s.).  The District Court specifically rejected Plaintiff's argument that the mortgage brokers were "creditors" to the extent they were "arranger[s] of credit," noting that the definition of creditor was amended in 1982 to remove an "arranger of

---

[5] Even loan services are not deemed subject to TILA unless they are also creditors (i.e., the loan servicer must own the loan). *See, also, Danier v. Fed. Nat. Mortg. Ass'n*, No. 12-62354-CIV, 2013 WL 462385, at *4 (S.D. Fla. Feb. 7, 2013) (TILA does not apply to loan servicers unless they are also creditors in the transaction at issue) (citing, e.g. *Cetto v. LaSalle Bank Nat. Ass'n*, 518 F.3d 263, 268 (4th Cir. 2008) *Che v. Aurora Loan Svcs., LLC* 847 F.Supp.2d 1205, 1209 (C.D.Cal.2010) *Horton v. Country Mortg. Svcs*., No. 07 C 6530, 2010 WL 55902, at *3 (N.D.Ill. Jan.4, 2010).

credit." *Id*. at 1334. *See also, Denton v. Nationstar Mortg. LLC*, No. 18-CV-241-GKF-JFJ, 2020 WL 1917486, at *8 (N.D. Okla. Apr. 20, 2020) (holding that Fannie Mae was not liable under TILA because the debt was payable to NationsBanc, not Fannie Mae).

Likewise, in very similar circumstances as here, where a consumer brought a TILA claim against a home improvement contractor, a District Court in Florida emphasized that the contractor was not a "creditor" because parties who "arrange[] for the extension of credit," are not included within the "creditor" definition:

> Second, prior to 1982, TILA's definition of "creditor" included people who "arranged for the extension of credit"—which is precisely the role that HPA seems to have played. But TILA was amended to eliminate that part of the definition. *See generally Robey-Harcourt v. Bencorp Fin. Co*., 212 F. Supp. 2d 1332, 1334 (W.D. Okla. 2002), aff'd, 326 F.3d 1140 (10th Cir. 2003). Indeed, the Northern District of Illinois took note of this amendment when it dismissed a TILA claim with prejudice based on a home improvement financing arrangement very similar to the one in this case. *See DeLeon v. Beneficial Const. Co*., 55 F. Supp. 2d 819, 822, 829 (N.D. Ill. 1999) (noting that arrangers of credit were no longer subject to TILA and dismissing claim against construction company that arranged financing of owners' home improvements by referring them to a mortgage broker, who then located a lender). The Court declines to rewrite federal law to include a long-defunct cause of action against arrangers of credit under TILA.

*Rosolen v. Home Performance All., Inc*., No. 219CV00024JLBNPM, 2021 WL 8201477, at *7 (M.D. Fla. Apr. 23, 2021).[6]

---

[6] Recognizing that only the "creditor" is liable under the Federal Consumer Credit Protection Act (and other state consumer credit provisions, including the OCCC which adopts the FCCPA definition of creditor), it should be noted that plaintiffs asserting violations of TILA for the same type of "Shopping Pass" obtained here filed suit ***against the actual lenders or brokers/servicers***. *See, Locicero v. Intrust Bank*, N.A., 2018 WL 4374908 (S.D. Fla. 2018) (asserting allegations against Intrust Bank, the lender, and GreenSky, as broker in arranging for loans); *Alsortish v. GreenSky, LLC*, 2017 WL 699830 (E.D. La. Feb. 22, 2017) (alleging allegations against GreenSky as the servicer, and SunTrust or Synovous Bank as the lender); *Bentley v. GreenSky Trade Credit, LLC*, 2015

Accordingly, Plaintiff cannot meet either the first or second prong of the "creditor" definition to invoke liability under the OCCC because OKLAHOMA WINDOWS does not appear on the face of the loan agreement, is not the entity to whom payments are payable, and does not regularly extend consumer credit.[7]   Assuredly, such a holding would *upset the entire home improvement industry*.   Therefore, OKLAHOMA WINDOWS is not a "creditor" and cannot be held liable for damages under the OCCC.

**II.    <u>PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER COUNT II AGAINST OKLAHOMA WINDOWS FOR VIOLATION OF TILA</u>**

As stated, *supra*, Part C.I.b., which is incorporated herein, Plaintiff cannot allege a count under TILA because TILA only applies to "creditors."   TILA defines a "creditor" as:

> a person who **both** (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

---

WL 1509243 (D. Conn. 2015) (joining Union First Market Bank as party defendant noting that GreenSky was only a third party service provider and that another lender was responsible for funding the loan).  *See also, Bustamante v. First Fed. Sav. And Loan Assn' of San Antonio*, 619 F. 2d 360 (5th Cir. 1980) (filing suit against lender for home improvement loan).

[7] Paragraphs 116 and 119 are examples of the impermissible and inaccurate shotgun pleading that Plaintiff used in this Fourth Amended Complaint, where it improperly states that all three "Defendants are regularly engaged in the business of originating and extending 'consumer loans'." [DE 129, 116. 119].  However, these statements contradict the roles of the Defendants in this matter as clearly stated in other documents in this matter already submitted and reviewed by the Tenth Circuit.  [DE 129, ¶ 72]; [DE No. 36-6, p. 1]; [DE 18-3, pp. 12-21]; [DE 95, p. 5].

15 U.S.C. § 1602(g). TILA defines the term "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f).

Plaintiff impermissibly engages in shotgun pleading (*see, infra*, Part C.III.) by stating that ***all*** Defendants are "creditors." However, there can only be one party "to whom the debt arising from the consumer credit transaction is initially payable on the evidence of indebtedness." A review of the GreenSky Financing Form attached to the Windows Contract demonstrates that OKLAHOMA WINDOWS is not the party extending any credit. [DE 39-1, p. 13]. The Installment Loan Agreement identifies "BMO HARRIS BANK N.A." as the "Lender" and "Renewal by Andersen of Oklahoma" as the "Merchant." [DE 18-3, pp. 12-21]. Therefore, Plaintiff can only state a cause of action for TILA against BMO Harris Bank. As one district court stated in denying application of TILA to GreenSky in an other action:

> TILA only applies to creditors. *See id.* at 106 (affirming district court's conclusion that the defendant could not be held liable under TILA because it was not a creditor); *see also generally Grimes v. Fremont Gen. Corp.*, 785 F.Supp.2d 269, 283 n. 21 (S.D.N.Y.2011). Ms. Bentley admits that GreenSky is not a "creditor." Opp. Br. 18, ECF No. 93. Indeed, the lender listed on the loan agreement is StellarOne Bank, not GreenSky. Kaliban Aff., Ex. F, GreenSky Installment Loan Agreement, ECF No. 82-4. GreenSky did not extend Ms. Bentley any credit under the agreement, but rather appears to be a servicer of the loan. *Id.*

> Because TILA only regulates creditors, Ms. Bentley cannot sustain a claim against GreenSky under the Act. *See In re Residential Capital, LLC*, 501 B.R. 531, 540 (Bankr.S.D.N.Y.2013) ("Courts have refused to find servicers liable for violations of TILA even whether they failed to communicate with the borrower or communicated erroneous information") (collecting cases); *accord Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 718–19 (6th Cir.2013) (holding that a loan servicer cannot be held liable for TILA

violations). Accordingly summary judgment must be granted on all TILA claims against GreenSky.

*Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d 274, 296 (D. Conn. 2015).

Certainly, if GreenSky is not a "creditor" for purposes of TILA, then OKLAHOMA

WINDOWS, who is even more removed from GreenSky, cannot be a "creditor" and thus,

is not subject to liability under TILA.

### III. PLAINTIFF's COMPLAINT MUST BE DISMISSED BECAUSE IT CONSTITUTES SHOTGUN PLEADING AND FAILS TO IDENTIFY SPECIFIC CONDUCT OF LIABLITY FOR EACH SEPARATE DEFENDANT

"Shotgun pleadings violate Rule 8, which requires 'a short and plain statement of

the claim showing that the pleader is entitled to relief,' by fail[ing] to one degree or another

... to give the defendants adequate notice of the claims against them and the grounds upon

which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir.

2018).  As stated by the Eleventh Circuit:

> The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings": (i) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (ii) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (iii) a complaint that fails to "separat[e] into a different count each cause of action or claim for relief"; and (iv) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

*Fields v. King-Tiller, LLC*, No. 8:20-CV-2759-MSS-JSS, 2021 WL 2829040, at *2 (M.D.

Fla. Mar. 8, 2021).  Here, the Fourth Amended Complaint constitutes shotgun pleading

because it fails to identify the basis of liability against each Defendant, and instead

impermissibly lumps the activities and basis of liability of all Defendants together. "Significantly, none these allegations ever specify what particular conduct, if any, is attributable to any specific Defendant, or why any conduct would make any Defendant liable under Plaintiffs' asserted causes of action." *Walker v. Windham Invs., Inc.*, No. 1:24-CV-4138-VMC-JKL, 2025 WL 1421109, at *7 (N.D. Ga. Jan. 15, 2025), report and recommendation adopted, No. 1:24-CV-04138-VMC, 2025 WL 2743692 (N.D. Ga. June 11, 2025).

For example, in Count III, Plaintiff states that ***all*** Defendants failed "to disclose material credit terms and costs" made "false or misleading representations concerning rights, remedies, or obligations under the contract" and engaged in "unfair and deceptive practices likely to mislead reasonable consumers." [DE 129, ¶ 137].  However, Plaintiff fails to state what specific disclosures that OKLAHOMA WINDOWS was responsible to provide as opposed to GreenSky or BMO Harris Bank.  Second, certainly not ***all three Defendants*** were liable for disclosures.  And even if Plaintiff did allege the specific disclosures that were required by OKLAHOMA WINDOWS, as stated *supra* Parts C.I. and C.II. OKLAHOMA WINDOWS is not required to make OCCC or TILA disclosures. Further, Plaintiff fails to state what type of "conduct" by OKLAHOMA WINDOWS constitutes an "unlawful practice" as opposed to the other Defendants.  [DE 129, ¶ 137].

The same is true for every count.  For example, in Count IV, Plaintiff alleges and attributes the ***same*** conduct ***to all three Defendants***, alleging that "Defendants issued an unauthorized access device" "Defendants created Shopping Pass accounts" "each Defendant ratified the unauthorized conduct." [DE 129, ¶¶ 149, 154, 161].  In addition to

classifying all Defendants as a "creditor" and/or "lender" in Count I, Plaintiff states that all "Defendants failed to deliver all material disclosures" and "a written itemization of the amount financed." [DE 129, ¶¶ 119.a. 119.d].   Similarly, in Count II, Plaintiff alleges that "Defendants intentionally failed to disclose" "accurate and complete disclosures required under TILA." [DE 129, ¶ 128].

Therefore, Plaintiff's Complaint is nothing more than shotgun pleading, and further, OKLAHOMA WINDOWS cannot be liable for such actions under Counts I and II when it was not obligated to provide such disclosures in the first place.

**IV.**     **<u>PLAINTIFF FAILS TO STATE A CAUSE OF ACTION UNDER COUNT IV FOR VIOLATION THE ELECTRONIC FUNDS TRANSFER ACT</u>**

Plaintiff's cause of action under Count IV arises under the Electronic Fund Transfer Act.  The EFTA only creates liability against a "financial institution" which is defined as "means a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer."   15 USC § 1693a(9).  Plaintiff clearly identifies BMO Harris Bank as the "program bank" and "financial institution" of record.  [DE 129, ¶ 150].

Plaintiff generally and vaguely alleges that OKLAHOMA DOORS is an agent of the other Defendants.  [DE 129, ¶ 114].  However, Plaintiff fails to allege that BMO Harris Bank (the direct "financial institution") exercises sufficient control over OKLAHOMA WINDOWS.  Moreover, Plaintiff fails to allege that OKLAHOMA WINDOWS had the power to bind GreenSky or BMO Harris Bank to a particular loan.  [DE 129, ¶ ¶ 81-85].

Courts have held that relationships similar to this one do not create an agency relationship. *Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d at 295 (agency does not exist where GreenSky did not exercise sufficient control over them or where agreement did not give other Defendants the power to bind GreenSky legally to a given loan, but only to submit applications for their approval) (citing *LeBlanc v. New Eng. Raceway, LLC*, 116 Conn.App. 267, 976 A.2d 750, 758–59 (2009) (finding that no agency relationship existed where, among other factors, the purported agent had no actual or apparent authority to directly bind the alleged principal in a contract); (citing *Wesley v. Schaller Subaru, Inc.,* 277 Conn. 526, 893 A.2d 389, 401-08 (2006) (holding that an agency relationship did not exist between a car dealership and a financing company because the financing company "does not control the actual negotiation of the initial transaction" between the dealership and its customers).  Therefore, OKLAHOMA DOORS cannot be liable under the EFTA.

## V.    PLAINTIFF's CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

The new claims Plaintiff has added to its Fourth Amended Complaint are barred by the statute of limitations.  The following statute of limitations apply to the claims raised by Plaintiff:

- **COUNT I – Oklahoma Consumer Credit Code ("OCCC") – one year statute of limitations**:  Okla. Stat. tit. 14A, § 5-203(1), (6) ("[n]o action pursuant to this section may be brought more than one (1) year after the date of the occurrence of the violation[.]").
- **COUNT II – Truth in Lending Act ("TILA") – one year statute of limitations**:  15 U.S.C. § 1640(a), (e) (claims must be brought "within one year from the date of the occurrence of the violation[.]")
- **COUNT III – Oklahoma Consumer Protection Act ("OCPA") – three year statute of limitations**.  Okla. Stat. tit. 12, § 95; *see Legacy Crossing, L.L.C. v. Travis Wolff & Co., L.L.P.*, 229 F. App'x 672, 682–83 (10th Cir.

2007); *AMC W. Hous. LP v. NIBCO, Inc.*, No. CIV-18-959-D, 2019 WL 4491331, at \*4–5 (W.D. Okla. Sept. 18, 2019).

- **COUNT IV – Electronic Funds Transfer Act ("EFTA") – one year statute of limitations**. 15 U.S.C. § 1693m(a),(g) (an EFTA civil action must be brought within one year from the date of the occurrence of the violation.) *Id*., § 1693m(g).

Plaintiff filed her motion for leave to file the amended pleading on October 1, 2025. [DE 105]. Accordingly, to satisfy the statute of limitations for these claims, the claims must have accrued no earlier than October 1, 2024 for the OCCC, TILA and ETFA claims, and no earlier than October 1, 2022 for the OPCA claims. To the contrary, the conduct complained of occurred back no later than December 2021. [DE 129, ¶¶ 37, 55, 68-69]. Thus, the actions are time barred.

### a. Plaintiff's Claims On Behalf of Additional Class Plaintiffs Do Not Relate Back

Under federal law, an amendment "relates back" to the date of the original pleading if the "amendment asserts a claim ... that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). An amendment does *not* relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix,* 545 U.S. 644, 650 (2005). The Class identified in the Fourth Amended Complaint is as follows:

The "Greensky Class": All Oklahoma consumers who, from November 23, 2019 through the present, had a GreenSky Shopping Pass account opened in their name where the acceptance of the loan terms was made through the use of the Shopping Pass number by a GreenSky Merchant.

The "Anderson Subclass" is defined as all members of the Greensky Class whose loans were charged for products or services sold by Anderson.

[DE 129, ¶¶ 94-96]. This is substantially broader than the class sought in the Amended Petition, which identified the proposed class as:

> Oklahoma consumers who, since one year prior to the filing of the litigation, had allegedly failed to receive various disclosures from Defendants as allegedly required under the OCCC.

[DE 36, ¶ 24(a)-(e)]. Where, as here, **new plaintiffs** are added through an amended pleading, such plaintiffs' claims do **not** relate back to the filing of the original pleading. *Kellom v. Quinn*, 86 F.4th 288, 294–95 (6th Cir. 2023), *cert. denied sub nom. Kellom v. United States*, 144 S. Ct. 2661, 219 L. Ed. 2d 1286 (2024) ("Generally, when an amended complaint adds claims or parties who weren't previously part of the lawsuit, the lawsuit 'commence[s]' for those claims and parties when they are added.") (quoting FED. R. CIV. P. 3); *see also Reveredge Dentistry Partnership v. City of Cleveland*, No. 1:22-CV-1007, 2024 WL 639689, at *18-20 (N.D. Ohio Feb. 15, 2024) (holding claims of additional plaintiffs joined in amended pleading did not relate back to filing of original pleading and dismissing claims of additional plaintiffs based on limitations).

Similarly, the Tenth Circuit has held class claims added to an amended pleading do not relate back to an earlier pleading, but instead are evaluated as of the date such class claims were actually filed. *McClelland v. Deluxe Fin. Servs., Inc.*, 431 F. App'x 718, 730 (10th Cir. 2011) (holding broadened discrimination claims on behalf of proposed class in amended pleading did not relate back to previous pleading focused on claims of individual plaintiffs); *see also Melton v. Account Resolution Team, Inc.*, No. 3:15-CV-00469, 2016 WL 6875883, at *2-3 (E.D. Tenn. Nov. 21, 2016) (applying *McClelland* to hold class claims added to amended pleading did not relate back). The *McClelland* holding is not

limited to cases where class allegations are added for the first time in an amended complaint, but also includes cases where existing class claims have been altered in an amended complaint to include additional class members whose claims were not asserted in an earlier pleading. *Onyx Props. LLC v. Board of County Commissioners of Elbert County*, 916 F. Supp.2d 1191, 1198 (D. Colo. 2012) (holding expanded class sought in amended pleading did not relate back to more limited class originally pled).

It is important to note that the Original Petition filed on November 22, 2022 fails to identify any proposed class at all. [DE 1-1]. It was not until December 22, 2022, the Plaintiff filed the Amended Petition that it alleged any ***class*** claims. [DE 36]. Thus, to allege to any claims ***on behalf of class members*** against Defendants, the alleged violations must have occurred no earlier than December 22, 2021 for the OCCC, EFTA and TILA class claims. However, none of the conduct concerning the alleged lack of disclosures or violations of these statutes occurred prior to that date – in fact, the Fourth Amended Complaint alleges that the conduct of OKLAHOMA WINDOWS that is the subject of this action occurred on November 23, 2021, and even the additional interaction with GreenSky occurred no later than December 17, 2021. [DE 129, ¶¶ 37, 55, 68-69]. As such, that should be the end of the day as it applies to any ***class*** claims raised for the first time on December 22, 2022. To hold otherwise, would allow Plaintiff to have added class members as additional plaintiffs ***after the statute of limitations period already passed***.

Moreover, not only did Plaintiff first allege the class claims after the statute of limitations passed, but in the Fourth Amended Complaint, Plaintiff broadened its proposed class of persons from including those class members ***who failed to receive disclosures*** to

those whose **had a Greensky account and loans were charged** for services provided by Andersen.  Because the Class alleged in the Fourth Amended Complaint is an entirely different group of class members, asserting the new claims on behalf of the proposed class could not relate back.

### b. Plaintiff's Class Claims Against OKLAHOMA DOORS Do Not Relate Back

It was not until August 21, 2023, the Plaintiff filed the Amended Petition to add OKLAHOMA WINDOWS.  [DE 36].  Prior to that date, the claims were raised against a different party – C CASHION WINDOWS, LLC.  [DE 1-1].  Thus, OKLAHOMA WINDOWS was not even a party to this action until August 21, 2023, and was added as a party _**after**_ _the one year statute of limitations_ for the OCCC, TILA and EFTA claims had _**already passed**_.  Certainly, OKLAHOMA WINDOWS, a non-party to the lawsuit, was not on notice of any potential class claims within the statute of limitations as the original petition did not include any class claims.  _McClelland_, 431 F. App'x at 731 ("without specific allegations of class-wide discrimination, such vague claims by individual plaintiffs are not enough to alert a defendant that class claims are on the horizon").  In fact, even in the Amended Petition filed on December 22, 2022, the only allegations against "Anderson" (C CASHIO WINDOWS, LLC) include an alleged violation of the OCCC disclosure requirements and allegations of fraud and forgery. [ DE 1-3, ¶¶ 92-93, p. 16].  There is no allegation of violation of the TILA, EFTA or OCPA.  _Id_.  Therefore, the class claims and new additional claims raised by Plaintiff in its Fourth Amended Complaint do not relate back, and thus, cannot be raised against OKLAHOMA WINDOWS.

## VI.    PLAINTIFF LACKS STANDING UNDER ARTICLE III.

OKLAHOMA WINDOWS brings this Motion under Rule 12(b)(1) for lack of jurisdiction due to Plaintiff's failure to meet Article III standing requirements. Federal courts have only the power authorized by Article III of the United States Constitution and the statutes enacted by Congress pursuant thereto. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). As a result, a plaintiff must have constitutional standing in order for a federal court to have jurisdiction. *Id*. at 542. Under current federal law, constitutional standing requires that a "plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Id*. at 560. Additionally, "there must be a causal connection between the injury and the conduct complained of" and "it must be 'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id*. at 560-61 (citations omitted). "A main focus of the standing inquiry is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury." *Morgan v. McCottor*, 365 F.3d 882, 888 (10th Cir. 2004).

As the District Court in Utah stated relating particularly to class actions:

"The fact that a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured ...." *Gratz v. Bollinger*, 539 U.S. 244, 289, 123 S.Ct. 2411, 2438, 156 L.Ed.2d 257 (2003). Indeed, "a named plaintiff must possess standing as to each individual claim asserted in a complaint." *Donelson v. United States Through Dep't of the Interior*, 730 F. App'x 597, 601 (10th Cir. 2018). It is Plaintiffs' burden to demonstrate standing. See Petrella, 697 F.3d at 1293.

*Mitchell*, 355 F. Supp. 3d at 1149–50.

Here, Plaintiff has suffered ***no*** "injury in fact."  In her Fourth Amended Complaint, Plaintiff does not allege that she made any payments, paid any finance charge, nor that any loan remains outstanding.  *In re Williams*, No. 18-12940-BFK, 2023 WL 6618956, at *7 (Bankr. E.D. Va. Oct. 10, 2023) (holding no standing where debtor did not allege a missed payment, late fees, or other concrete injury or intangible harm when statements were sent to debtor's attorney instead of to her).

Rather, in Counts I and III, Plaintiff alleges that "inability to shop for credit on informed terms, reputational harm to their creditworthiness, time expended disputing unauthorized use of shopping passes." [DE 129, ¶¶ 122, 140].  First, this allegation is wholly deficient for alleging any "injury in fact" caused by the alleged actions of OKLAHOMA WINDOWS -- as OKLAHOMA WINDOWS did not engage in any harm to Plaintiff's inability to shop for credit or creditworthiness.  Second, this allegation fails to allege a "concrete and particularized" injury that is not conjectural nor hypothetical. *Simon v. Metro. Prop. & Cas. Ins. Co.*, No. CIV-08-1008-W, 2009 WL 10664188, at *2 (W.D. Okla. Feb. 23, 2009); *see also Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1182 (10th Cir. 2013) (to establish a basis for emotional distress, Plaintiff is required to describe her injury in reasonable detail and not rely on conclusory statements); *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1151 (D. Utah 2018) (no Article III standing when plaintiff failed to allege "specific facts" demonstrating an injury in fact as to any actual identity theft, damages or use of plaintiff's confidential information without consent; such statements were too conclusory, and disregarded by the Court).  Here, Plaintiff has

pled no facts that support her alleged damages – where did she attempt to shop for credit and was declined or where and how was her creditworthiness harmed?

Further, there is no connection between the alleged injury and the conduct of OKLAHOMA WINDOWS.  The alleged violations against Defendants for failure to provide financial disclosures in accord with the OCCC are not the result of any alleged "inability to shop for credit" or "reputational harm to their creditworthiness."  The harm, if any, was the result of Plaintiff not obtaining or qualifying for a zero percent loan, or actions taken in collection of the alleged loan, if any, -- not the failure of Defendants not to provide any OCCC disclosures.

Finally, although the OCCC and TILA and EFTA do provide recovery to an individual for "actual damages", Parisi has failed to allege any such actual damages.  Under these circumstances, the U.S. Supreme Court has ruled that no Article III injury exists, even if Parisi was entitled to statutory damages.  *Thole v. US Bank NA*, 140 S.Ct. 1615 (2020) (no Article III standing where there is no injury in fact and the only damages are statutory).  *See also, Anderson v. Frederick Ford Mercury, Inc.*, 694 F. Supp. 2d 324, 330 (D. Del. 2010) (declining TILA statutory damages where plaintiff was never obligated to pay finance charges).  Indeed, as in *Thole*, here, Parisi will receive "not a penny less" if they lost this lawsuit, and "not a penny more" if she wins this lawsuit.  *Thole*, 140 S.Ct. at 1619.  Notably, although an attorney may have a stake in the lawsuit, and interest in

attorneys' fees is insufficient to create Article III standing. *Id.* Since Parisi has no concrete stake in the lawsuit, she lacks Article III standing.[8]

## VII.    THE COURT SHOULD STRIKE THE CLASS DEFINITION

Alternatively, pursuant to Rule 12(f), the Court should strike the class definition. Here, it is apparent from the pleadings that the class definition should be stricken where, as here, the majority, if not all, of the class members are subject to arbitration agreements and class action waivers. Plaintiff, for the first time in its Fourth Amended Complaint, defines the class as follows:

> The "Greensky Class": All Oklahoma consumers who, from November 23, 2019 through the present, had a GreenSky Shopping Pass account opened in their name where the acceptance of the loan terms was made through the use of the Shopping Pass number by a GreenSky Merchant.
>
> The "Anderson Subclass" is defined as all members of the Greensky Class whose loans were charged for products or services sold by Anderson.

[DE 129, ¶¶ 94-96].

### a. The Alleged Class Definition Must Not Include Consumers Who Entered into an Arbitration Agreement With Either Defendant.

---

[8] Parisi also lacks standing for any injunctive relief:

> But a plaintiff lacks standing to seek prospective injunctive relief if she cannot show a real or immediate threat of future harm. *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). And individual standing is ordinarily a prerequisite for maintaining a class action. *Rector v. City and County of Denver,* 348 F.3d 935, 949–50 (10th Cir.2003) (by definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirement of Rule 23). *See also Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Absent a threat of future harm, plaintiff does not share a critical aspect of the claims of other class members for prospective injunctive relief, and her claim is thus not typical.

*Thompson v. Jiffy Lube Int'l, Inc.,* 250 F.R.D. 607, 623 (D. Kan. 2008).

Plaintiff's class definition should also be stricken because it includes consumers who entered into arbitration agreements. The record in this Court and on appeal is replete with factual disputes concerning the arbitration agreement that Plaintiff entered into with OKLAHOMA WINDOWS (as well as that arbitration agreement with GreenSky), which is reflective of Defendants' "course of business." Indeed, most, if not all, of the putative class would be subject to the very same arbitration agreements that Parisi disputed entering into with the Defendants. Regardless, as indicated by the District Court of Colorado below, Plaintiff cannot meet the typicality, adequacy, commonality or superiority requirements of Rule 23 for those consumers subject to arbitration:

> Plaintiff also argues that, even if the arbitration agreements exist, "the Court has no way of evaluating whether [they] are enforceable." Dkt. 120 at 15. This argument is flawed for a few reasons. First, as one who is not party to an arbitration agreement, Plaintiff has no standing to challenge the provisions of the other putative members' contracts, i.e., it is not Plaintiff's argument to make.7 *Radulescu v. W. Union Co.*, No. 1:19-cv-03009-DDD-SKC, 2023 WL 9035367, at \*4 (D. Colo. Nov. 27, 2023) (citing *Vallagio at Inverness Residential Condo. Ass'n, Inc. v. Metro. Homes, Inc.*, 412 P.3d 709, 718, (Colo. App. 2015), aff'd, 395 P.3d 788 (Colo. 2017)). Second, no one in the present action can know what position other putative class members might take regarding their arbitration agreements—will they honor them, challenge them in litigation, pursue settlement, or suggest other courses. These uncertainties caution against using these proceedings to render a judgment about other putative members' contracts. *Id*. at \*5. **Third, the uncertainties about whether other putative class members can properly litigate in this Court at all highlights that common issues do not predominate for the large majority of the putative class and undermines Plaintiff's ability to fulfill the typicality and adequacy requirements of Rule 23(a)(3) and (4) and the common question and superiority requirements of Rule 23(b)**. At the very least, should this case proceed as the class is currently constituted, Plaintiff would not be able to raise arbitration-related defenses that would inevitably become a point of focus for a majority of the class. None of this is acknowledged in Plaintiff's class allegations, which describe a class of potential litigants that is too broadly defined to satisfy Rule 23. As a result, I grant DFL's motion and deny certification of Plaintiff's proposed class. **Plaintiff's amended complaint must narrow the putative class to include individuals who,**

**like him, have not entered into an arbitration agreement. Plaintiff may then seek to have that class certified under Rule 23**.

*Nagel v. DFL Pizza, LLC*, No. 1:21-CV-00946-DDD-SBP, 2024 WL 5095298, at *5 (D. Colo. Dec. 4, 2024) (e.s.).  Similarly, here, the putative class should be narrowed only to include individuals, who, like Parisi, did not enter into a valid arbitration agreement with OKLAHOMA WINDOWS.

Indeed, here, the entire opinion of the Tenth Circuit on Defendants' Motions to Compel Arbitration is based on the particular factual circumstances asserted by Parisi in dispute of the arbitration clause. [DE 95].  Thus, if the class were to proceed as pled, the Court would first require a determination as to whether *any* class member may invalidate its arbitration clause.  Any consumer who has signed a contract containing an arbitration clause and class action waiver will be presumed to have read its contents and be bound by the clause.  *See e.g.*, *Mayfield v. Fid. State Bank of Cleveland*, 121 Okla. 179, 249 (1926) (a person signing an instrument is presumed to know its contents, and if he fails to read it, cannot escape liability even if false representations were made as to its contents).  To negate this presumption, this Court would have to determine whether such circumstances as those raised by Parisi in this court and on appeal, are so unique as those raised by Parisi that would allow such a consumer to escape the mandatory arbitration clause as invalid. Therefore, the "class" asserted by Plaintiff would impermissibly require the Court to consider very factual unique circumstances of each consumer and require multiple mini-

trials/appeals.  Thus, as in *Nagel*, this Court should require Plaintiff to narrow the class to those consumers who are not subject to the terms of an arbitration agreement.[9]

WHEREFORE, Defendant, OKLAHOMA WINDOWS requests this Court grant its Motion to Dismiss the (Fourth) Amended Complaint [DE 129] against OKLAHOMA WINDOWS, and for such other and further relief as is just and proper.

Dated:  March 24, 2026          Respectfully submitted,

                               /s/ Diane J. Zelmer_____
                              Diane J. Zelmer, Esq. (pro hac vice)
                              FL Bar No. 27251
                              BERENSON LLP
                              4495 Military Trail, Suite 203
                              Jupiter, Florida 33458
                              Telephone: 561-429-4496
                              Email: djz@berensonllp.com
                              *Attorney for Defendant, OKLAHOMA WINDOWS AND DOORS, LLC*

                              Sheila D. Sayne, Esq., OBA # 31213
                              Sayne Law PLLC
                              P.O. Box 33309
                              Tulsa, Oklahoma 74153-3309
                              Telephone: 918-740-3013
                              sheila.sayne@outlook.com
                              *Attorney for Defendant, OKLAHOMA WINDOWS AND DOORS, LLC*

---

[9] Even if the class definition is narrowed, any consumers that could be identified on a classwide basis as not being subject to an arbitration agreement are very unlikely to have encountered circumstances "common" to Parisi.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed and

served electronically using CM/ECF, which is served upon all parties of record on the list

for this case on this 24th day of March, 2026.

Respectfully submitted,

/s/ Diane J. Zelmer
Diane J. Zelmer, Esq., Fla. Bar 27251