# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| SUSAN PARISI,<br><br>        **Plaintiff,**<br><br>**v.**<br><br>OKLAHOMA WINDOWS AND DOORS, LLC d/b/a RENEWAL BY ANDERSEN OF OKLAHOMA, BMO HARRIS BANK, NA, and GREENSKY, LLC,<br><br>        **Defendants.** | **Case No.: 5:23-cv-00115-R**<br><br>**CLASS ACTION** |

## PLAINTIFF'S OPPOSITION TO DEFENDANT OKLAHOMA WINDOWS AND DOORS, LLC D/B/A RENEWAL BY ANDERSEN OF OKLAHOMA'S MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES............................................................................................ ii

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD ......................................................................................... 2

III.  ARGUMENT ...................................................................................................... 3

     A.    Parisi Has Sufficiently Stated a Plausible Claim Under the Oklahoma
       Consumer Credit Code ........................................................................... 3

       1.    There is a factual dispute as to whether Andersen is a Lender
          or Arranger of Credit under the OCCC ............................................. 5

       2.    There is a factual dispute as to whether Andersen is a Creditor
          under the OCCC and TILA ................................................................ 6

     B.    Parisi's Amended Complaint is not a Shotgun Pleading ............................ 10

     C.    Parisi's Oklahoma Consumer Protection Act Claim is not Time
       Barred ..................................................................................................... 12

     D.    Parisi Adequately Pleads an EFTA Claim .................................................. 13

     E.    Parisi's Claims are not Time Barred............................................................ 14

     F.    All Claims in Parisi's Fourth Amended Complaint Relate Back to the
       Conduct Alleged in Her 2022 Complaint..................................................... 15

     G.    The Claims of Absent Class Members Satisfy the Statute of
       Limitations................................................................................................. 18

     H.    Parisi Adequately Pleads Article III Standing ............................................ 22

     I.    Andersen's Alternative Motion to Strike Class Definition Under Rule
       12(f) Must Fail............................................................................................ 24

IV.   CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Pg(s)**

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974) ...............................................................................................18, 19

*Anderson v. District Bd. Of Trustees of Cent. Florida Community College*,
    77 F.3d 364 (11th Cir. 1996) ...........................................................................................11

*Anderson v. PAR Electrical Contractors, Inc.*,
    318 F.R.D. 640 (D. Kan. 2017) ....................................................................................... 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................2, 5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). ...........................................5

*Bentley v. Greensky Trade Credit, LLC*
    156 F. Supp. 3d 274 (D. Conn. 2015) .................................................................... 13

*Bishop v. Air Line Pilots Ass'n, Int'l*,
    331 F.R.D. 481 (N.D. Ill. 2019) .....................................................................18, 19

*Bryant v. Food Lion, Inc.*,
    774 F. Supp. 1484 (D.S.C.1991) ...........................................................................3

*Chan v. Barbour, Inc.*,
    263 F. Supp. 3d 521 (E.D. Pa. 2017)....................................................................... 16

*Copart, Inc. v. Administrative Review Bd., U.S. Dept. of Labor*,
    495 F. 3d 1197 (10th Cir. 2007) ..............................................................................4

*Cox v. Taylor*,
    2008 WL 2278513 (W.D. Ok. May 30, 2008) ..................................................9, 13

*Donnelly v. Yellow Freight System, Inc.*,
    874 F. 2d 402 (7th Cir. 1989)................................................................................ 16

*Electronic Payment Systems, LLC v. Electronic Payment Solutions of America Inc.*,
    2018 WL 6790307 (D. Col. Nov. 28, 2018)..........................................................11

ii

*Esplin v. Hirschi*,
    402 F. 2d 94 (10th Cir. 1968) ...................................................................................... 19

*Federal Deposit Ins. Corp. v. Bennett*,
    898 F. 2d 477 (5th Cir. 1990) ......................................................................... 16, 17, 18

*Flowers v. EZPawn Oklahoma, Inc.*,
    307 F Supp.2d 1191 (N.D. Ok. 2004) ......................................................................... 10

*Francis v. Mead Johnson & Co.*,
    2010 WL 3733023 (D. Co. Sept. 16, 2010) ...............................................................2, 3

*Gaddy v. Radio Systems Corp.*,
    59 F. Supp. 3d 857 (E.D. Tenn. 2014) ........................................................................ 16

*GenoSource, LLC v. Inguran, LLC*,
    386 F. Supp. 3d 984 (N.D. Iowa 2019) ....................................................................... 17

*Henry v. Westchester Foreign Autos, Inc.*,
    522 F.Supp.2d 610 (S.D.N.Y.2007) .............................................................................. 8

*In re Olympia Brewing Co. Securities Litigation*,
    612 F. Supp. 1370 (N.D. Ill. 1985)............................................................................... 17

*Johansen v. E.I. DuPont de Nemours & Co.*,
    810 F.2d 1377 (5th Cir.) ............................................................................................... 16

*Kellom V. Quinn*,
    86 F.4th 288 (6th Cir. 2023)......................................................................................... 19

*Kimmel v. Gallaudet University*,
    722 F. Supp. 2d 79 (D.D.C. 2010) ............................................................................... 17

*Kivel v. WealthSpring Mortg. Corp.*,
    398 F.Supp.2d 1049 (D. Minn. 2005) ............................................................................ 8

*Kyle K. v. Chapman*,
    208 F.3d 940 (11th Cir. 2000)...................................................................................... 12

*Leichliter v. Optio Solutions, LLC*,
    672 F. Supp. 3d 1165 (10th Cir. 2023).........................................................................23

*Llewellyn v. Allstate Home Loans, Inc.*,
   711 F.3d 1173 (10th Cir. 2013) ................................................................. 24

*Lupia v. Medicredit, Inc.*,
   8 F.4th 1184 (10th Cir. 2021) ................................................................... 23

*Maccharulo v. Gould*,
   643 F. Supp. 2d 587 (S.D. N.Y. 2009) ...................................................... 17

*McClelland v. Deluxe Fin. Servs., Inc.*,
   431 F. App'x 718 (10th Cir. 2011) ...................................................... 19, 20

*Miller v. Fairchild Industries, Inc.*,
   668 F. Supp. 461 (D. Md. 1987) ................................................................ 17

*Morgan v. McCottor*,
   365 F.3d 882 (10th Cir. 2004) ................................................................... 23

*N.H. v. Presbyterian Church (U.S.A.)*,
   1999 OK 88, 998 P.2d 592 .................................................................... 9, 13

*Onyx Props. LLC v. Board of County Commissioners of Elbert County*,
   916 F. Supp.2d 1191 (D. Colo. 2012) ....................................................... 20

*Paikai v. Gen. Motors Corp.*,
   2009 WL 275761 (E.D. Cal. Feb.5, 2009) ................................................ 24

*Peoples Home Health, LLC v. Case N Covenant Home Health Care, LLC*,
   2020 WL 12309341 (N.D. Fla. Oct. 15, 2020) ..................................... 11, 12

*Quern v. Jordan*,
   440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) ................................. 4

*Reveredge Dentistry Partnership v. City of Cleveland*,
   No. 1:22-CV-1007, 2024 WL 639689 (N.D. Ohio Feb. 15, 2024) .............. 19

*Robbins v. Oklahoma*,
   519 F.3d 1242 (10th Cir. 2008) ................................................................... 2

*Shepeard v. Quality Siding & Window Factory, Inc.*,
   730 F. Supp. 1295 (D. Del. 1990) .............................................................. 10

*Sherwood Forest No. 2 Corp. v. City of Norman*,
632 P.2d 368 (Okla.1980) ........................................................................ 12

*Shook v. El Paso Cnty.*,
386 F.3d 963 (10th Cir. 2004) ................................................................. 24

*Smith v. U.S.*,
561 F. 3d 1090 (10th Cir. 2009) ................................................................ 2

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................................. 22

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ............................................................................ 22

*Treadway v. Gateway Chevrolet Oldsmobile Inc.*,
362 F.3d 971  (7th Cir. 2004) ................................................................... 8

*United States v. Johnson*,
288 F.2d 40 (5th Cir.1961) ...................................................................... 18

*Weiland v. Palm Beach County Sheriff's Office*,
792 F. 3d 1313 (11th Cir. 2015) .............................................................. 11

## Statutes

15 U.S.C. § 1601 ......................................................................................... 7

15 U.S.C. § 1681a(r)(5) ............................................................................... 8

15 U.S.C. § 1691a ........................................................................................ 8

15 U.S.C. § 1693a(9) .................................................................................. 13

24 Okla. Stat § 2 (2025) ............................................................................... 6

Okla. Stat. tit. 15, § 753 (27) (2006) ......................................................... 12

## Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................... 2

Federal Rule of Civil Procedure 15(c)(1)(B) ........................................... 15

vi

**<u>Regulations</u>**

12 C.F.R. § 202.2(1) ................................................................................................... 8

vi

## I.      INTRODUCTION

The Motion to Dismiss (the "Motion") (ECF No. 133) filed by Defendant Oklahoma Windows and Doors, LLC d/b/a Renewal By Andersen Of Oklahoma ("Andersen" or "Defendant"), should be denied. Andersen, and Defendants GreenSky, LLC ("GreenSky") and BMO Harris Bank, NA ("BMO Harris") (collectively, "All Defendants"), play an unfair and deceptive three-shell game extending home improvement loans and collecting payments from consumers like Plaintiff Susan Parisi ("Plaintiff" or "Parisi"), who are tricked into unauthorized financing without required disclosures. Defendant argues it cannot be held liable because it is neither a "lender" nor a "creditor" under the Oklahoma Consumer Credit Code ("OCCC") or Truth in Lending Act ("TILA"), nor a "financial institution" under the Electronic Funds Transfer Act ("EFTA").[1] But Defendant obfuscates its role as a central player in the scheme. Andersen came to Parisi's home, originated a loan account, and later accessed Parisi's GreenSky Shopping Pass and paid itself funds from the unauthorized loan.

Andersen claims Parisi's operative Fourth Amended Complaint ("Amended Complaint" or "Am. Compl.") is a shotgun pleading, but this is just smoke and mirrors designed to distract and confuse. All Defendants worked together in a joint enterprise to deceive Parisi. Accordingly, Parisi appropriately alleges they are all liable for operating their joint enterprise.

---

[1] GreenSky and BMO Harris have also filed a Motion to Dismiss [Doc. 134], which Parisi has responded to in a separate brief.

And despite Andersen's arguments, Parisi's claims relate back and therefore fall within their respective statutes of limitations. Moreover, Parisi clearly has standing.

Finally, Defendant's arguments on class issues are not just flawed, they are premature. A motion to dismiss is not the proper procedural vehicle for the Court to consider whether the class is ascertainable or any other issues governed by Rule 23. Nor is it the proper stage for Andersen to advance factual assertions about its "course of business" or to contend that its standard contract terms contain valid arbitration provisions. The Amended Complaint's allegations are taken as true, not Defendant's arguments. For all of these reasons, discussed more fully below, Defendant's Motion must be denied.

## II.    LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) challenge, a complaint must plead sufficient facts to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All well pleaded allegations are taken as true and all reasonable inferences drawn in Plaintiff's favor. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A 12(b)(1) facial attack on the complaint's allegations regarding subject matter jurisdiction questions the complaint's sufficiency and likewise requires the court to accept the allegations as true. *Smith v. U.S.*, 561 F. 3d 1090, 1098 (10th Cir. 2009).

A motion to strike is a drastic remedy disfavored by the courts. *Francis v. Mead Johnson & Co.*, 2010 WL 3733023, at * 1 (D. Co. Sept. 16, 2010). Motions to strike class allegations at the pleading stage are even more disfavored because that requires a reviewing court to "preemptively terminate the class aspects of ... litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the

discovery to which they would otherwise be entitled on questions relevant to class certification." *Id*. (quoting *Bryant v. Food Lion, Inc*., 774 F. Supp. 1484, 1495 (D.S.C.1991)).

## III.   ARGUMENT

### A.   Parisi Has Sufficiently Stated a Plausible Claim Under the Oklahoma Consumer Credit Code.

The OCCC, pursuant to 14A, §3-306, requires that the "lender shall give to the debtor" certain disclosures, including the identity of the lender required to make the disclosure; the amount financed, the finance charge; and total payments.  Under 14A §3-207, "lender" includes an assignee of the lender's right to payment. Parisi alleges that All Defendants operated a joint enterprise to originate and collect consumer credit. Amended Complaint (hereafter "Am. Compl."), ¶87. Factual issues remain, however, as to what role each Defendant played. What is known is that Parisi was not provided with the required disclosures before she was placed into a high interest loan without her knowledge. Am. Compl., ¶¶ 119-121. And under applicable law, disclosures must be delivered *before* the consumer credit sale is consummated. *Id*., at 3, 89, 119.

Andersen argues that Parisi "does not sufficiently identify" Andersen as the lender, that Parisi "identifies BMO Harris Bank as 'lender,'" and that Parisi also previously filed a document from GreenSky that clearly identifies BMO Harris as the lender. Motion, at 14. Defendant argues, without any citation to law, that "there can only be one lender who was obligated to provide certain statutory disclosures – Plaintiff cannot allege that all three parties are lenders of the loan." Motion, at 15. This is incorrect.  There can be co-lenders

and multiple creditors extending credit.  Nothing in the OCCC limits disclosure duties to one entity. But in any case, the OCCC does not limit its obligations to lenders.

Defendant further argues that "it is the undisputed law of the case that" Andersen is not the lender. *Id*.  This is false. There is no law of the case establishing that Andersen is not the lender. This Court and the Tenth Circuit ruled on whether there was a meeting of the minds as to the high interest contract and the arbitration provision therein. [Doc. 66; Doc. 82; Doc. 94]. They did not rule on a host of other merits issues, including whether Andersen was a lender (or arranger of credit) subject to disclosure obligations under the OCCC or whether Andersen owed duties as an agent of GreenSky and BMO Harris. *Copart, Inc. v. Administrative Review Bd., U.S. Dept. of Labor*, 495 F. 3d 1197, 1201 (10th Cir. 2007) (citing *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined.")).

Importantly, the Oklahoma Legislature expressly extended OCCC obligations beyond lenders to include merchants and intermediaries who "regularly arrange" consumer credit, reflecting a legislature determination that consumer harm frequently occurs at the point of sale. *See* 14A O.S. § 3-301(4) ("[a] person who regularly arranges for the extension of consumer loans … shall make the disclosures required of a lender under this part.") The actual language of the OCCC does not require that an arranger be the lender, creditor, or assignee of the loan, only that it regularly participates in placing consumers into credit transactions, which Andersen clearly does.

4

At the pleading stage, Parisi has plausibly alleged that Andersen is subject to disclosure liability under the OCCC, independent of whether BMO Harris ultimately funded the loan. She alleges that: (1) Andersen marketed the financing to her, (2) initiated or facilitated the credit application on its device, (3) accessed the GreenSky Shopping Pass without authorization, (4) triggered the disbursement of loan proceeds, (5) to itself, not Parisi, before Parisi knowingly accepted any loan. Complaint, ¶¶ 36, 38, 41, 44-45, 47, 53-54, 111-114. These are not passive acts; taken together, they constitute the very "arranging" conduct the OCCC regulates.

1. There is a factual dispute as to whether Andersen is a Lender or Arranger of Credit under the OCCC.

At the pleading stage, Defendant's conclusory self-identification is not dispositive of its role under the OCCC. Absent discovery, the precise roles and relationships among Defendants remains unresolved. At this stage of proceedings, the Court must accept well pleaded facts as true and draw reasonable inferences in Parisi's favor. *Ashcroft*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Parisi alleges that Andersen played a key role participating in a loan scheme that injured Parisi. For example, Parisi alleges that Defendant Andersen acted at all relevant times as a merchant seller and agent of the other Defendants in connection with the sale and financing of consumer goods. Am. Compl., ¶114. Andersen advertised and marketed home-improvement products, solicited consumers in their homes, collected consumer information to submit loan applications, arranged the extension of consumer credit, and then used that information to create an obligation for Parisi and other members of the

5

Andersn subclass' Shopping Pass accounts. *Id*. Andersen and other program Merchants were enrolled, trained, and credentialed to market financing, intake consumer information, present "authorizations," and submit disbursement requests through GreenSky's platform. *Id*., ¶152. In performing those functions, Andersen acted as GreenSky's agent and BMO Harris Bank's sub-agent, and participated with GreenSky and BMO Harris Bank in a joint enterprise to finance merchant sales through the program. *Id*.

At the least, Andersen is an arranger of credit. Without a developed record, it is impossible to determine that BMO Harris was the only entity liable for providing required disclosures under the OCCC. Accordingly, at this stage, Plaintiff's allegations are sufficient to reject Andersen's attempt at a formalistic reading of the OCCC. Andersen ignores the remedial purpose of the statute and Parisi's alleged facts. The OCCC is to be liberally construed and applied to promote the law's underlying purposes and policies. 14A O.S. §1-102.

2. There is a factual dispute as to whether Andersen is a Creditor under the OCCC and TILA.

Defendant also argues that it has no liability under the OCCC or TILA because it is not a creditor. But Defendant conflates the OCCC with TILA throughout its Motion. Given the interwoven roles All Defendants play in the scheme to extend credit to consumers without lawful disclosures or authorization, whether Andersen is a creditor will depend on discovery evidence, not on its conclusory assertions regarding its role. Oklahoma law defines a creditor as one in whose favor an obligation exists, by reason of which he is, or may become, entitled to the payment of money. 24 Okla. Stat § 2 (2025). Andersen is a

creditor under this definition because Parisi initially contracted with Andersen to install windows in her home, Parisi's obligation was to Andersen, and Andersen would become entitled to payment of money from Parisi.

Pursuant to 14A O.S. §3-301(6), the OCCC provides that the term creditor has the same meanings those terms have in the Federal Consumer Credit Protection Act ("FCCPA"). The FCCPA is an umbrella law that encompasses several other laws, including TILA, the Equal Credit Opportunity Act ("ECOA"); the Fair Credit Reporting Act ("FCRA"); the Fair Debt Collection Practices Act ("FDCPA"); and the EFTA. 15 U.S.C. § 1601 et seq. There are different "meanings" for the term "creditor" under these laws. Under TILA, which Andersen cites, a creditor is a person who (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.[2]  But the OCCC does not designate TILA for its definition of "creditor."

Under ECOA, which, like TILA, is a part of the FCCPA, the term "creditor" means any person who regularly extends, renews, or continues credit; any person who regularly

---

[2] Even this definition raises an issue of fact, for the Tenth Circuit noted that the undisputed evidence demonstrated that Andersen had initiated a transaction using the Shopping Pass without Parisi's valid authorization; the GreenSky representative clarified the transaction occurred "because the merchant charges a percentage upfront on the loan." *See* Doc. 94, Tenth Circuit Order Affirming District Court, at 17-18.

arranges for the extension, renewal, or continuation of credit; or any assignee of an original

creditor who participates in the decision to extend, renew, or continue credit. 15 U.S.C.A.

§ 1691a(e).[3] Regulation B, implemented in order to carry out ECOA's purpose, extends

the definition of "creditor":

> Creditor means a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit. The term creditor includes a creditor's assignee, transferee, or subrogee who so participates. For purposes of § 202.4(a) and (b), the term creditor also ***includes a person who, in the ordinary course of business, regularly refers applicants or prospective applicants to creditors***, or selects or offers to select creditors to whom requests for credit may be made.

12 C.F.R. § 202.2(1) (emphasis added).

Thus, the term "creditor" under ECOA includes not only traditional lenders like

banks and credit card companies, but also anyone who arranges credit, or anyone who

regularly refers prospective applicants to other creditors, like Andersen, as well as home

improvement contractors, automobile dealers, and real estate brokers. *See, e.g., Treadway*

*v. Gateway Chevrolet Oldsmobile Inc*., 362 F.3d 971, 980-81  (7th Cir. 2004) (Car

dealership that failed to submit prospective car buyer's credit application to lenders

qualified as a "creditor" under ECOA); *Henry v. Westchester Foreign Autos, Inc*., 522

F.Supp.2d 610, 614-15 (S.D.N.Y.2007) (genuine issue of material fact existed as to

whether auto dealership was creditor under ECOA sections requiring creditors to furnish

notice of reasons for adverse action against consumer); *Kivel v. WealthSpring Mortg.*

*Corp*., 398 F.Supp.2d 1049, 1054 (D. Minn. 2005) (mortgage broker was creditor for

---

[3] The FCRA, also part of the FCCPA, defines creditor and credit as having the same meanings as in section 702 of the ECOA (15 U.S.C. § 1691a). *See* 15 U.S.C. § 1681a(r)(5).

purposes of ECOA procedural notification requirements even though broker did not have authority or discretion to extend credit).

Parisi alleges that Andersen regularly, and as part of a joint enterprise with Defendants GreenSky and BMO Harris, extends credit to consumers. Am. Compl., ¶¶ 113, 114, 116.  Parisi will be able to clarify Andersen's exact role in the scheme with the benefit of discovery, but Andersen cannot prevail on a motion to dismiss with conclusory assertions that it "does not regularly extend consumer credit" and "did not extend credit to Plaintiff." Motion, at 19.  These are simply denials.

Moreover, in its role as the only Defendant who entered Parisi's home to sell her windows and financing, it is a question of fact as to whether Andersen acted as the agent of Defendants GreenSky and BMO Harris to originate Parisi's financing on her windows sales and installation.  *Id*., ¶¶114, 152, 159; *see Cox v. Taylor*, 2008 WL 2278513, at *2 (W.D. Ok. May 30, 2008) (citing *N.H. v. Presbyterian Church (U.S.A.),* 1999 OK 88, ¶ 12, 998 P.2d 592, 598) ("The Oklahoma Supreme Court has made clear that whether or not a relationship creates an agency is generally a question of fact.")).  Andersen worked in concert with GreenSky and BMO Harris when it accessed the Shopping Pass without Parisi's authorization and received an initial payment of proceeds purportedly from Parisi's account. Am. Compl., ¶¶ 3, 17-21, 53-54, 114.  That, in turn, was treated as Parisi's acceptance of the loan without her knowledge or consent. *Id*., ¶¶55, 60, 65-67, 153-154.

Because determining if Andersen acted as a creditor and/or lender or arranger of credit is a factual determination, it must be determined in the context of the overlapping roles the Defendants play in a financing scheme wherein GreenSky and Andersen work in

9

concert to fund loans ultimately assigned to BMO Harris. *See Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F. Supp. 1295, 1300 (D. Del. 1990) (finding siding company was creditor where company that sold and installed siding on plaintiff's residence arranged for financing through a mortgage company to which the debt was ultimately assigned.) These are proper subjects of discovery, but at this stage of litigation, Andersen's conclusive assertion that it is not a lender or creditor cannot win the day. *Flowers v. EZPawn Oklahoma, Inc.,* 307 F Supp.2d 1191, 1205 (N.D. Ok. 2004) (finding in removal proceedings that petition's allegations that non-bank defendants were primary lender, creditor, and collector in payday loans with usurious rates did not support legal or factual finding that non-party bank was true lender).

Accordingly, Andersen's Motion as to Count I for violations of the OCCC and Count II for violations of TILA must be denied.

B.    Parisi's Amended Complaint is not a Shotgun Pleading.

Andersen's "shotgun pleading" argument is also unavailing. Parisi's Amended Complaint identifies each Defendant's role and provides detailed factual allegations regarding Andersen's conduct, including its solicitation of Parisi, arranging of financing, failure to provide disclosures or copies of any contracts, its false statements, and its unauthorized draw of loan proceeds. Am. Compl. ¶¶ ¶¶ 14, 37, 38, 41, 50-53, 55, 57. Parisi alleged that All Defendants (and there are only three) engaged in a joint enterprise and shared a common business purpose, and that Defendants are vicariously liable for the acts and omissions performed within the scope of their agency, joint enterprise, or conspiracy,

10

and for the foreseeable consequences of the standardized processes they designed, controlled, and profited from. *Id*., at ¶¶ 82-88, 93.

Dismissing a pleading as a shotgun pleading is only appropriate where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Weiland v. Palm Beach County Sheriff's Office*, 792 F. 3d 1313, 1325 (11th Cir. 2015) (citing *Anderson v. District Bd. Of Trustees of Cent. Florida Community College*, 77 F.3d 364, 366 (11th Cir. 1996) (emphasis added). No such virtual impossibility exists here. As the *Anderson* court noted, when a defendant is faced with a shotgun pleading it is not expected to frame a responsive pleading but rather to move the court to require the plaintiff to file a more definite statement. *Anderson*, 77 F 3d. at 366. Andersen filed no such motion, but argues instead that it "cannot be liable [under Counts I and II] when it was not obligated to provide such disclosures in the first place." That conclusory defense is unavailing at this stage of the action.

The Amended Complaint clearly describes each Defendant's conduct in detail. *See Electronic Payment Systems, LLC v. Electronic Payment Solutions of America Inc*., 2018 WL 6790307, at *2 (D. Col. Nov. 28, 2018) (finding that 86 paragraph complaint against three defendants with seven of nine claims against defendants as a group not shotgun pleading; provided more than enough detail for anyone reading it to understand factual basis for each claim). And because Parisi has alleged that All Defendants worked together in a joint enterprise as agents of each other, each of Parisi's claims is appropriately against All Defendants. *Peoples Home Health, LLC v. Case N Covenant Home Health Care, LLC*, 2020 WL 12309341, at *2 (N.D. Fla. Oct. 15, 2020) (Under circumstances involving "a

11

group of related defendant entities with overlapping levels of control," "no specific parsing of the individualized misconduct committed is necessary."). A collective reference to "defendants" will not "present problematic pleading" unless the complaint "can[not] be fairly read to aver that all defendants are responsible for the alleged conduct." *Peoples Home Health*, 2020 WL 12309341, at \*2 (alteration in original) (quoting *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000)). Accordingly, Andersen's Motion as to its shotgun pleading argument is due to be denied.

C.    Parisi's Oklahoma Consumer Protection Act Claim is not Time Barred.

Andersen barely mentions the OCPA in its Motion, but recounts the law's three-year statute of limitations and argues that Parisi's claim would have to accrue no earlier than October 1, 2022, under Andersen's flawed calculations. Motion, at 27. But even if the limitations period were measured from the date of Parisi's Motion for Leave to Amend filed on October 1, 2025 (which is incorrect), her claim remains timely. Parisi alleges that on October 2, 2022, she was mailed a past due notice and collection letter seeking $9,688.50 on the unauthorized loan. That collection demand is the earliest that Parisi's claim accrued, placing it within the three-year limitations period even under Andersen's mistaken calculation. *Sherwood Forest No. 2 Corp. v. City of Norman,* 632 P.2d 368, 370 (Okla.1980); ("Generally, a statute of limitations begins to run when a cause of action accrues, and a cause of action accrues at the time when a litigant first could have maintained his action to a successful conclusion."); *see, also,* Okla. Stat. tit. 15, § 753 (27) (2006) (unlawful under OCPA to knowingly cause a charge to be made by any billing method to a consumer for a product or products which the person knows was not authorized in

12

advance by the consumer). And as discussed below, all of Parisi's claims in her Fourth Amended Complaint relate back to her 2022 Complaint. *See*, III(E), III(F).

        D.      <u>Parisi Adequately Pleads an EFTA Claim.</u>

Parisi alleges that All Defendants violated the EFTA by creating Shopping Pass accounts and causing funds to be disbursed in Parisi's and the Class members' names without their knowledge or valid authorization. Am. Compl., ¶153. Consumers did not request the accounts or authorize the disbursements. *Id*. But despite quoting part of it, Andersen ignores the plain language of the EFTA, arguing that EFTA only creates liability against a "financial institution," pointing to the Amended Complaint's identification of BMO Harris as the "program bank" and "financial institution" of record. Motion, at 25. Yet liability under EFTA also extends to "any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9). Instead of engaging with the elements of Parisi's EFTA claim, Andersen attempts to refute Parisi's allegation that "GreenSky, BMO Harris Bank, and program Merchants, including Andersen, operated as joint actors with a common purpose of financing merchant sales, shared benefits including GreenSky program fees, bank interest/fees, and coordinated roles." Am. Compl., at ¶159. Andersen argues that "[c]ourts have held relationships similar to this one do not create an agency relationship," citing the inapposite *Bentley v. Greensky Trade Credit, LLC* case, in which the court held at summary judgment that the plaintiff had provided nothing more than conclusory allegations of an agency relationship. 156 F. Supp. 3d 274, 295 (D. Conn. 2015).  But as noted previously, agency is an issue of fact. *Cox v. Taylor*, 2008 WL 2278513, at *2 (citing *N.H. v. Presbyterian Church (U.S.A.),* 1999 OK 88, ¶ 12, 998 P.2d

592, 598) ("The Oklahoma Supreme Court has made clear that whether or not a relationship creates an agency is generally a question of fact.")).

Andersen's challenge to the EFTA claim consists of a generalized denial based on a factual dispute. But at this stage, Parisi's well-pleaded allegations are taken as true, not Andersen's competing version of events. Accordingly, Andersen's Motion as to EFTA must be denied.

E.    Parisi's Claims are not Time Barred.

Andersen contends that Parisi's class claim under the OCCC, as well as her individual and class claims under TILA, OCPA, and EFTA are time-barred. Motion, at 27. They are not. First, this Court already found, in ruling on Parisi's Motion for Reconsideration, that Parisi's claims "stem from the same set of background facts" as those in her earlier complaint (the "2022 Complaint"). Order Granting Leave to Amend on Reconsideration [Doc. 128], at 10. Second, Andersen's argument that all of Parisi's claims are time barred is based on its citation to Parisi's Motion for Leave to File her Amended Complaint, filed on October 1, 2025. [Doc. 105].  This argument rests on Andersen's mistaken characterization of when Parisi first raised her OCCC claim and when she first alleged the factual underpinnings to her other claims.  Accordingly, Andersen's statute of limitations arguments must fail.

In fact, Parisi filed her original complaint on November 22, 2022, in the District Court of Oklahoma County [Doc. 1-1][4]; she filed her Amended Petition and Motion to

---

[4] As this Court notes in its Order on Reconsideration, the first paragraph of this first complaint refers to Parisi's "Petition and Class Action claims." [Doc. 128], at 2.

Certify a Class Action on December 22, 2022.  [Doc. 1-3].  As described in both her original and her Amended Petition, Parisi's first meeting with Andersen's representative occurred on or around November 23, 2021. *Id*., ¶60.[5] On or about December 7, 2021, she learned that Andersen received $8,871.50, as partial payment for the windows she ordered, and that her payments would start six months after installation of the windows. *Id*., ¶69. Because Parisi had not authorized the payment to Andersen, and only applied for a payment plan that provided for payments to start two years after window installation, Parisi objected repeatedly to the "bait and switch" scheme. *Id*., ¶¶ 79-85.

> F.      <u>All Claims in Parisi's Fourth Amended Complaint Relate Back to the Conduct Alleged in Her 2022 Complaint.</u>

Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amendment "relates back" to the date of the original pleading if the "amendment asserts a claim ... that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Where an amended complaint introduces an entirely different transaction, relation back is unavailable. But when the amended claims arise out of the same conduct, transaction, or occurrence alleged in the original pleading, Rule 15 permits relation back, and it is well settled law that otherwise applicable statute of limitations defenses are avoided. Here, Parisi does not allege new or different conduct. Rather, her allegations are based on the conduct, transaction, or occurrence she set out, or attempted to set out, in her November 2022 complaint. Therefore, Andersen's statute of limitations

---

[5] Paragraph citations are to the Amended Petition's paragraphs, but both petitions included similar or identical allegations.

arguments cannot provide a basis for dismissal and are due to be denied. *See, e.g., Chan v. Barbour, Inc.*, 263 F. Supp. 3d 521 (E.D. Pa. 2017) (finding Title VII and ADEA claims asserted in amended complaint related back to original complaint where original and amended complaints shared identical facts); *Anderson v. PAR Electrical Contractors, Inc.*, 318 F.R.D. 640 (D. Kan. 2017) (finding retaliatory discharge claim in amended complaint related back to original complaint alleging strict liability, negligence, or both for work-related accident injuries); *Gaddy v. Radio Systems Corp.*, 59 F. Supp. 3d 857 (E.D. Tenn. 2014) (finding ADA discrimination claims not included in original complaint related back to original filing for purposes of limitations period where ADA claims, like FMLA claims in original complaint, arose out of plaintiff's allegedly wrongful termination).

Simply adding additional claims for relief is no basis for dismissal. As the Seventh Circuit explained, "the same substantive legal theory need not be alleged in both complaints; rather the claims need only arise out of the same 'conduct, transaction or occurrence.'" *Donnelly v. Yellow Freight System, Inc.*, 874 F. 2d 402,410 (7th Cir. 1989) (complaint alleging Title VII claims related back to original complaint alleging only state law claims); *see also*; *Federal Deposit Ins. Corp. v. Bennett*, 898 F. 2d 477, 480 (5th Cir. 1990) (citing *Johansen v. E.I. DuPont de Nemours & Co.*, 810 F.2d 1377 (5th Cir.), *cert. denied*, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987) (added claims in amended complaint related back even though theory of recovery was wholly different from original complaint claims). The Fifth Circuit in *Bennett, supra*, stated it succinctly:

> The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which

the action depends remains the same and has been brought to defendant's attention by the original pleading.

*Federal Deposit Ins. Corp. v. Bennett*, 898 F. 2d at 480 (citing Wright, Miller, Kane, Federal Practice & Procedure, Vol. 6A, § 1497, p. 94).

Courts find that new causes of action relate back where the defendants have notice of the facts supporting the new causes of action. *Miller v. Fairchild Industries, Inc*., 668 F. Supp. 461 (D. Md. 1987) (finding additional counts in amended complaint related back to original complaint where new causes of action were based on same conduct as original complaint and employer had notice of facts supporting new causes of action);  *In re Olympia Brewing Co. Securities Litigation*, 612 F. Supp. 1370 (N.D. Ill. 1985) (added RICO claims in amended complaint related back to original complaint alleging securities fraud where additional factual allegations were intimately tied up with originally alleged predicate acts of fraud); *Kimmel v. Gallaudet University*, 722 F. Supp. 2d 79 (D.D.C. 2010) (finding constructive discharge claim arose out of same alleged pattern of harassment that formed basis of originally pled hostile-work-environment claims and thus related back); *GenoSource, LLC v. Inguran, LLC*, 386 F. Supp. 3d 984 (N.D. Iowa 2019) (finding added Lanham Act claims related back where claims arose out of same conduct, transaction, or occurrence as original complaint's claim for wrongful conversion); *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 594 (S.D. N.Y. 2009) (ADA and Rehabilitation Act claims added to claims alleging denial of proper mental-health care).

Here, Andersen cannot claim it was unaware of the factual basis underlying Parisi's claims. Even with adjustments to her legal theories, Parisi's claims in the Amended Complaint continue to arise "out of the conduct, transaction, or occurrence

17

*attempted* to be set forth in the original complaint." *Federal Deposit Ins. Corp. v. Bennett*, 898 F. 2d at 480 (emphasis in original) (citing *United States v. Johnson*, 288 F.2d 40, 42 (5th Cir.1961) (recognizing there had been a complete change in legal theory in amended complaint but finding claim continued to arise out of conduct, transaction, or occurrence attempted to be set forth in original complaint).

G.    The Claims of Absent Class Members Satisfy the Statute of Limitations.

Andersen ignores long-settled law established by the Supreme Court and the Tenth Circuit that all persons are within the limitations period who are "subsequently determined" to be class members, even if that determination is made after a successful appeal (and therefore certainly before class certification determinations in the first place). Rather than confront controlling authority, Andersen relies on inapposite case law and mischaracterizes those decisions. In a class action, the filing of the original complaint tolls the statute of limitations for all putative class members. *Bishop v. Air Line Pilots Ass'n, Int'l*, 331 F.R.D. 481, 485 (N.D. Ill. 2019) (citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 549 (1974) ("American Pipe teaches that the filing of a class action within the limitations period satisfies the statute of limitations for all persons who are 'subsequently determined' to be class members.").

In *American Pipe*, the Supreme Court explained that:

> Whatever the merit in the conclusion that one seeking to join a class after the running of the statutory period asserts a 'separate cause of action' which must individually meet the timeliness requirements [reached by some courts before Rule 23 was amended in 1966] such a concept is simply inconsistent with Rule 23 as presently drafted. A federal class action is no longer an invitation to joinder but a truly representative suit…"

*Am. Pipe,* 414 U.S. at 549 (cleaned up, bracketed explanation added). To support this, the Supreme Court cited *Esplin v. Hirschi*, 402 F. 2d 94, 101 (10th Cir. 1968), where the Tenth Circuit reversed a district court's denial of class certification, holding that "the rights of all class members" for statute of limitations purposes are "to be determined by *relation back to the date of the initiation*" of a timely filed class action suit. *Esplin*, 402 F.2d at 101 & n.14 (emphasis added).

Here, none of the absent Class members of the putative class defined in Parisi's Amended Complaint have attempted to intervene or file their own individual suit or class action. All absent Class members are considered to be prosecuting their claims as part of a timely filed class action suit. If the Class is certified, that will satisfy the statute of limitations for the absent Class members' claims. *Bishop*, 331 F.R.D., at 487.

Andersen cites *Kellom V. Quinn*, 86 F.4th 288, 294–95 (6th Cir. 2023), and *Reveredge Dentistry Partnership v. City of Cleveland*, No. 1:22-CV-1007, 2024 WL 639689, at *18-20 (N.D. Ohio Feb. 15, 2024), contending that where "new plaintiffs are added through an amended pleading, such plaintiffs' claims do not relate back to the filing of the original pleading." Motion, at 28. Both *Kellom* and *Riveredge* are summary judgment decisions concerning individual plaintiffs. The applicable statute of limitations for absent class members is different than for new individual plaintiffs.

Defendant also cites the unpublished *McClelland v. Deluxe Fin. Servs., Inc*., 431 F. App'x 718, 730 (10th Cir. 2011), arguing that "the Tenth Circuit has held class claims added to an amended pleading do not relate back to an earlier pleading, but instead are evaluated as of the date such class claims were actually filed." Motion, at 28.  But in that

19

case, there were no class claims presented in the plaintiffs' first two filed complaints. *McClelland*, 431 F. App'x at 731 ("But without specific allegations of class-wide discrimination, such vague claims by individual plaintiffs are not enough to alert a defendant that class claims are on the horizon.").

Andersen argues that the "*McClelland* holding is not limited to cases where class allegations are added for the first time in an amended complaint, but also includes cases where existing class claims have been altered in an amended complaint to include additional class members whose claims were not asserted in an earlier pleading." Motion, at 29 (citing *Onyx Props. LLC v. Board of County Commissioners of Elbert County*, 916 F. Supp.2d 1191, 1198 (D. Colo. 2012). First, the Tenth Circuit has not determined that *McClelland* should have the broad application Andersen seeks. Second, the *Onyx* decision, made on a summary judgment posture, merely held that *American Pipe* tolling is not applicable when "the plaintiff was not a putative member of the class action" at the time the original complaint was filed. *Onyx, supra*, at 1197. In *Onyx*, the court emphasized that the *McClelland* ruling was based on the court concluding that the initial complaint did not give the defendant sufficient notice of impending class claims to allow relation back. *Id*.

Here, Andersen had sufficient notice that Parisi's class claims arise from the scheme to utilize "Shopping Pass" accounts to initiate loans without disclosing the material terms to consumers. At this stage, absent class members are treated as asserting their claims through the timely filed class action. If the class is certified, the statute of limitations is satisfied as to those claims.

20

This litigation has not reached the summary judgment stage like in *McClelland* and *Onyx*. Parisi's allegations are to be taken as true and viewed in the light most favorable to Parisi. The class defined in the Amended Complaint is comprised of those Oklahoma consumers who had a GreenSky Shopping Pass account opened in their name where the loan terms were accepted through the use of the Shopping Pass by a GreenSky merchant. Parisi's Amended Complaint alleges that consumers were offered particular loan terms at the original point of sale but GreenSky permitted the Merchants to apply for and/or accept a loan with different terms without a consumer's knowledge by use of its unique Shopping Pass program. Am. Compl., ¶22. Because consumers had no contemplation that they would be sent differing loan terms, by the time they received or reviewed anything, the Shopping Passes were activated and they had supposedly "accepted" the loan. *Id*., ¶23. Because of the unique scheme permitting the Merchant to act on behalf of a consumer, the consumer was unaware of the loan, its terms, or the concomitant obligations and consequences. *Id*.

In Parisi's 2022 Complaint, she alleges that Defendants issue consumers a Shopping Pass number, which functions like a credit card. *Id*., 2022 Complaint, ¶51. Defendants treat use of the Shopping Pass, or associated funds, as acceptance of the loan. *Id*. Because the merchants sometimes applied for a loan without a consumer's knowledge…Defendants emailed the consumer's loan documents to the Merchant instead of the consumer. *Id*., ¶56.

Accordingly, there is no question as to whether class claims were "on the horizon" from the First Amended Complaint filed in this case. Each of Parisi's complaints, up to and including this operative Fourth Amended Complaint, allege fundamental failures of disclosure in Defendants' scheme to trick consumers into loans they did not authorize and

21

for which they did not even know they were obligated. The absent class members in the Amended Complaint had their claims asserted in the 2022 Amended Complaint.

Andersen contends that because it was not named as a Defendant until August 21, 2023, it was not on notice of any potential class claims within the statute of limitations. But as Parisi pointed out in her Supplemental Brief in support of her Motion to Amend to Correct Named Defendant ("Supplemental Brief") [Doc. 27], Andersen did have notice. Andersen bought the business from the originally named defendant, C Cashion Windows, back in 2020, prior to Parisi's first meeting with Andersen's representative. *Id*., at 2. Other details regarding Andersen's knowledge of Parisi's claims are set forth in the Supplemental Brief. Following that briefing, the Court held a hearing on Parisi's Motion to Amend on August 3, 2023.  After considering the filings and argument, the Court granted Parisi's Motion to Amend to replace C Cashion Windows. [Doc. 35]. Accordingly, Andersen cannot plausibly contend that it lacked notice of Parisi's claims or that the class claims do not arise out of the same conduct, transaction or occurrence alleged in the 2022 Amended Complaint.

H.    Parisi Adequately Pleads Article III Standing.

Andersen's contention that Parisi lacks standing because she "suffered no 'injury in fact'" is entirely without merit and ignores binding precedent. Motion, at 32. The Supreme Court has held that intangible harms can suffice. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) (intangible injuries can be concrete where Congress elevates them). In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021), the Court recognized informational injuries and reputational harms as sufficient when tied to statutory violations.

22

Parisi alleges that Defendants, acting through Defendant Andersen's access of the GreenSky Shopping Pass system, established a loan account without lawful authorization, disbursed funds, demanded payment, reported her as delinquent, caused her emotional distress while in the midst of a serious health crisis, caused reputational harm to her creditworthiness, caused her to spend time and out of pocket costs expended disputing unauthorized debt, and created a risk of financial liability. Am. Compl., ¶¶ 47, 48, 53, 55, 64, 67, 69, 72, 76, 79, 80, 122, 129, 140, 161. That conduct itself constitutes Parisi's injury. And Parisi alleged that all Defendants operated a joint enterprise, shared a common business purpose, used GreenSky's standardized systems, and are liable for the acts/omissions of the others undertaken as agents of one another. *Id.*, ¶¶ 3, 15, 83, 87, 93, 114, 152, 159.

Courts in the Tenth Circuit recognize such harms as sufficient. *Morgan v. McCottor*, 365 F.3d 882, 888 (10th Cir. 2004) (standing requires concrete injury, but may include intangible harms). In *Lupia v. Medicredit, Inc*., it found that the consumer in an FCCPA case, "suffered an injury bearing 'a close relationship' to the tort of intrusion upon seclusion" when the defendant debt collector made an unwanted call and left her a voicemail about a debt, despite her having sent written notice disputing the debt and requesting that it cease telephone communications. 8 F.4th 1184, 1191 (10th Cir. 2021) (adequate evidence for plaintiff to show intangible concrete injury when unwanted collection letters and phone calls continued after plaintiff said to stop); *see also, Leichliter v. Optio Solutions, LLC*, 672 F. Supp. 3d 1165, 1170 (10th Cir. 2023) (Article III standing for plaintiff to show intangible concrete injury when unwanted collection letters and phone

23

calls continued after plaintiff said to stop); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1182 (10th Cir. 2013) (emotional distress damages actionable where credit disclosure statute violated). Accordingly, Parisi's allegations of tangible and intangible injuries are sufficient for Article III standing.

I.      Andersen's Alternative Motion to Strike Class Definition Under Rule 12(f) Must Fail.

Andersen alternatively asks the Court to strike Parisi's class definition based on Andersen's bald assertion that "the majority, if not all, of the class members are subject to arbitration agreements and class action waivers." Motion, at 35.  It invites the Court to error by arguing that it should forego a thorough Rule 23 analysis of typicality, commonality, adequacy and superiority, and instead simply strike the class definition based solely on Andersen's contention that its "course of business" includes arbitration provisions. *Id*.  But Andersen's assertions do not control at this stage; Parisi only needs to allege a plausible class; Rule 23 will govern certification. The Tenth Circuit disfavors striking class claims before discovery. *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004) (courts must evaluate class issues on a factual record). Determining which putative class members are bound requires discovery, not pleading-stage dismissal. *Paikai v. Gen. Motors Corp.*, 2009 WL 275761, at * 11 (E.D. Cal. Feb.5, 2009) ("the very purpose of allowing separate class certification proceedings" is to defer addressing potential problems with proposed class to later date).

24

## IV. CONCLUSION

For all the reasons above, Defendant Andersen's Motion to Dismiss, and alternative Motion to Strike the Class Definition, should be denied.

Dated: April 28, 2026                    **VARNELL & WARWICK, P.A.**

/s/ Janet R. Varnell
Janet R. Varnell, FBN: 0071072
400 N. Ashley Drive, Suite 1900
Tampa, FL  33602
Telephone: (352) 753-8600
jvarnell@vandwlaw.com

**RAWLS LAW OFFICE PLLC**

/s/ M. Kathi Rawls
M. Kathi Rawls, OBA #18814
222 NW 13th  St.
Oklahoma City,  OK  73103
Kathi@carfraud.net
mkr@rawlslawoffice.com

**NATIONAL ASSOCIATION OF
CONSUMER ADVOCATES**

Eric Zell, Ohio Bar #0084318
1215 17th St. NW, 5th Floor
Washington, DC 20006
202-452-1989 x111
eric@consumeradvocates.org

*Attorneys for Plaintiff and the Putative Class*

25

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 28, 2026, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

/s/ Janet R. Varnell
Janet R. Varnell