# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| SUSAN PARISI,<br><br>**Plaintiff,**<br><br>v.<br><br>**OKLAHOMA WINDOWS AND DOORS, LLC d/b/a RENEWAL BY ANDERSEN OF OKLAHOMA, BMO HARRIS BANK, NA, and GREENSKY, LLC,**<br><br>**Defendants.** | **Case No.: 5:23-cv-00115-R**<br><br>**CLASS ACTION** |

## PLAINTIFF'S OPPOSITION TO GREENSKY, LLC'S AND BMO HARRIS BANK, NA'S MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ........................................................................... ii

I.  INTRODUCTION.................................................................................1

II.  LEGAL STANDARD ............................................................................2

III.  ARGUMENT .......................................................................................4

    A.  Parisi's Claim Under the Oklahoma Consumer Credit Code is Plausible............................................................................................4

    B.  Law of the Case Does Not Support Dismissal of Parisi's Claims ..........6

    C.  Parisi Adequately Pleads Article III Standing........................................9

    D.  Parisi's Claims are not Time Barred....................................................11

    E.  All Claims in Parisi's Fourth Amended Complaint Relate Back to the Conduct Described in Her 2022 Complaint ..................................14

    F.  The Claims of Absent Class Members Satisfy the Statute of Limitations............................................................................................18

    G.  Defendants' Motion to Strike Class Allegations Under Rule 12(f) is Premature .........................................................................................23

IV.  CONCLUSION ..................................................................................24

## **TABLE OF AUTHORITIES**

**Cases**                                                                          **Pg(s)**

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974) ................................................................................19

*Anderson v. PAR Electrical Contractors, Inc.*,
    318 F.R.D. 640 (D. Kan. 2017).................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................2, 3

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................... 2

*Bishop v. Air Line Pilots Ass'n, Int'l*,
    331 F.R.D. 481 (N.D. Ill. 2019) ............................................................ 18, 21

*Bryant v. Food Lion, Inc.*,
    774 F. Supp. 1484 (D.S.C.1991)............................................................... 3

*Bunch v. Terpenning*,
    229 P. 3d 574 (Okla.Civ.App.2009).......................................................... 7

*Carpenter v. Boeing Co.*,
    456 F. 3d 1183 (10th Cir. 2006)................................................................18

*Chan v. Barbour, Inc.*,
    263 F. Supp. 3d 521 (E.D. Pa. 2017) ........................................................14

*Copart, Inc. v. Administrative Review Bd., U.S. Dept. of Labor*,
    495 F. 3d 1197 (10th Cir. 2007)............................................................... 7

*Dalton v. City of Tulsa*,
    560 P.2d 955 (Okla. 1977)........................................................................ 5

*Donnelly v. Yellow Freight System, Inc.*,
    874 F. 2d 402 (7th Cir. 1989) .................................................................15

*Esplin v. Hirschi*,
    402 F. 2d 94 (10th Cir. 1968) .................................................................19

*FCC v. AT&T Inc.*,
    562 U.S. 397, 131 S.Ct. 1177, 179 L.Ed.2d 132 (2011) .................................. 5

*Federal Deposit Ins. Corp. v. Bennett*,
    898 F. 2d 477 (5th Cir. 1990) ................................................................. 15, 16

*Francis v. Mead Johnson & Co.*,
    2010 WL 3733023 (D. Co. Sept. 16, 2010) ...................................................... 3

*Gaddy v. Radio Systems Corp.*,
    59 F. Supp. 3d 857 (E.D. Tenn. 2014)............................................................14

*GenoSource, LLC v. Inguran, LLC*,
    386 F. Supp. 3d 984 (N.D. Iowa 2019)...........................................................16

*In re Olympia Brewing Co. Securities Litigation*,
    612 F. Supp. 1370 (N.D. Ill. 1985) ...............................................................16

*Johansen v. E.I. DuPont de Nemours & Co.*,
    810 F.2d 1377 (5th Cir.)................................................................................15

*Kellom V. Quinn*,
    86 F.4th 288 (6th Cir. 2023) .........................................................................19

*Kimmel v. Gallaudet University*,
    722 F. Supp. 2d 79 (D.D.C. 2010)................................................................16

*Leichliter v. Optio Solutions, LLC*,
    672 F. Supp. 3d 1165 (10th Cir. 2023).........................................................10

*Llewellyn v. Allstate Home Loans, Inc.*,
    711 F.3d 1173 (10th Cir. 2013).....................................................................10

*Lupia v. Medicredit, Inc.*,
    8 F.4th 1184 (10th Cir. 2021) ................................................................. 10, 11

*Maccharulo v. Gould*,
    643 F. Supp. 2d 587 (S.D. N.Y. 2009).........................................................16

*McClelland v. Deluxe Fin. Servs., Inc.*,
    431 F. App'x 718 (10th Cir. 2011)..........................................................20, 21

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ...............................................................24

*Miller v. Fairchild Industries, Inc.*,
668 F. Supp. 461 (D. Md. 1987)...........................................................15

*Morgan v. McCottor*,
365 F.3d 882 (10th Cir. 2004) .............................................................10

*Onyx Props. LLC v. Board of County Commissioners of Elbert County*,
916 F. Supp.2d 1191 (D. Colo. 2012) .............................................20, 21

*Paper, Allied–Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*,
428 F.3d 1285 (10th Cir.2005)............................................................. 3

*Perrin v. United States*,
444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ............................. 5

*Quern v. Jordan*,
440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) .......................... 7

*Racher v. Lusk*,
No. CIV-13-665-M, 2013 WL 6037122 (W.D. Okla. Nov. 14, 2013) ............. 4

*Reveredge Dentistry Partnership v. City of Cleveland*,
No. 1:22-CV-1007, 2024 WL 639689 (N.D. Ohio Feb. 15, 2024)...................19

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008)............................................................ 2

*Shook v. El Paso Cnty.*,
386 F.3d 963 (10th Cir. 2004) ............................................................24

*Simon v. Metro. Prop. & Cas. Ins. Co.*,
2009 WL 10664325 (W.D. Okla. Feb. 27, 2009) .................................3, 24

*Smith v. U.S.*,
561 F. 3d 1090 (10th Cir. 2009)........................................................... 3

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................... 9

*State ex rel. State Ins. Fund v. Houston*,
    No. 97,553, 2003 WL 25284639 (Okla. Civ. App. Aug. 12, 2003) ................. 4

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
    566 U.S. 560, 132 S.Ct. 1997, 182 L.Ed.2d 903 (2012) ................................. 5

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021).............................................................................9, 11

*United States v. Johnson*,
    288 F.2d 40 (5th Cir.1961) .............................................................................16

## Statutes

15 U.S.C. § 1693a(12)...................................................................................17

15 U.S.C. § 1693(f) .....................................................................................17

15 U.S.C.A. §1634......................................................................................... 8

## Rules

Fed. R. Civ. P. 8(a)(2)................................................................................... 3

Fed. R. Civ. P. 12 ......................................................................................2, 3

Fed. R. Civ. P. 15(c)(1)(B) ............................................................................13

Fed. R. Civ. P. 23(c)(1)(C) ....................................................................... 18, 19

## I.     INTRODUCTION

Defendants GreenSky, LLC ("GreenSky") and BMO Harris Bank, NA ("BMO Harris") (together, "Defendants"), along with Oklahoma Windows and Doors, LLC d/b/a Renewal By Andersen Of Oklahoma ("Andersen") (collectively, "All Defendants") violate consumer protection laws by operating a scheme to originate home improvement loans and collect payments on them, tricking consumers like Plaintiff Susan Parisi ("Parisi") into unauthorized loans without required disclosures. Defendants GreenSky and BMO Harris argue in their Motion to Dismiss (the "Motion") [Doc. 134], that Plaintiff Parisi's Fourth Amended Complaint ("Amended Complaint" or "Am. Compl.") includes "entirely new claims and causes of actions," but Defendants simply want to avoid responsibility for their unlawful conduct and seek to relitigate issues already addressed by this Court.[1] As this Court concluded in granting Plaintiff's Motion for Reconsideration, "the claims in Plaintiff's Fourth Amended Complaint stem from the same set of background facts as those in the operative complaint." Order [Doc. 128], at 10. Thus, contrary to Defendants' arguments, Parisi's claims relate back to her earlier action, and therefore are not time-barred.

Defendants further attempt to defeat Parisi's claims by arguing that the "law of the case" establishes that she never consented to Defendants' unauthorized loans, and therefore cannot be a "debtor" under state and federal statutes designed to protect

---

[1] Defendant Andersen makes similar arguments in its Motion to Dismiss [Doc. 133], which Parisi has responded to in a separate brief.

debtors. In other words, Defendants claim Parisi's hard-fought litigation result is somehow their new magic talisman. Certainly, Parisi has been able, through this litigation, this Court, and the Tenth Circuit, to stop Defendants from forcing her to arbitrate her claims. That just outcome, however, does not mean that Parisi was not "obligated on a debt" and therefore a "debtor" for some time until that happened. Defendants created her account by setting up an unauthorized loan initiated through Andersen; reported her "delinquency" to the credit bureaus; and refused to remove the tradeline when she disputed the debt. Consequently, Parisi has standing as a debtor to enforce Oklahoma law.

Defendants' remaining arguments fare no better. Their attempt to litigate class certification issues at the pleading stage through a 12(b)(6) motion to dismiss, as well as their alternative motion to strike class allegations under Rule 12(f), are premature at best, and should be denied.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). The Court must accept all factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Twombly*, 550 U.S. at 555. This standard reflects the liberal pleading regime of the Federal Rules of Civil Procedure, which prioritize resolution on the merits.

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A 12(b)(1) facial attack on the complaint's allegations regarding subject matter jurisdiction questions the complaint's sufficiency and requires the court to accept the allegations as true. *Smith v. U.S.*, 561 F. 3d 1090, 1098 (10th Cir. 2009) (citing *Paper, Allied–Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir.2005)).

A motion to strike is a drastic remedy disfavored by the courts. *Francis v. Mead Johnson & Co.*, 2010 WL 3733023, at * 1 (D. Co. Sept. 16, 2010). Motions to strike class allegations at the pleading stage are even more disfavored because that requires a reviewing court to "preemptively terminate the class aspects of ... litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Id.* (quoting *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C.1991)); *see also, Simon v. Metro. Prop. & Cas. Ins. Co.*, 2009 WL 10664325, at *2 (W.D. Okla. Feb. 27, 2009) (denying motion to strike class allegations at pleading stage).

3

## III.    ARGUMENT

### A.    <u>Parisi's Claim Under the Oklahoma Consumer Credit Code is Plausible.</u>

Parisi brings her OCCC claim under 14A, § 3-306, which requires specific disclosures, including, *inter alia*, the amount financed, finance charges, and the annual percentage rate.  Complaint, ¶¶ 119-121. The disclosures must be delivered before the consumer credit sale is consummated. *Id.* Accordingly, Defendants were required to provide these disclosures before Parisi's account was created, funds disbursed to Defendant Andersen, debt reported, or collection attempted. Nevertheless, Defendant argues that Parisi's claim should be dismissed because she is not a "debtor." Motion, at 5-7.  According to Defendants, because this Court held, and the Tenth Circuit affirmed, that Parisi "never entered into any loan agreement or loan transaction," she "had no 'obligation,' 'liability,' or 'debt' with respect to the events that are the subject of this case." But Defendants' reasoning is woefully flawed.

The OCCC does not define "debtor" at all.  Defendants point to debtor definitions in case law involving other statutes. *See, e.g.*, *Racher v. Lusk*, No. CIV-13-665-M, 2013 WL 6037122, at *9 (W.D. Okla. Nov. 14, 2013) (discussing "debtor" under Oklahoma's Uniform Fraudulent Transfer Act ("UFTA"); *State ex rel. State Ins. Fund v. Houston*, No. 97,553, 2003 WL 25284639, at *2 (Okla. Civ. App. Aug. 12, 2003) (defining "account debtor" under the Secured Transactions section of the Oklahoma Commercial Code).

4

Because the relevant statutes and regulations do not define the term "debt," it must be given its ordinary meaning. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566, 132 S.Ct. 1997, 182 L.Ed.2d 903 (2012); *FCC v. AT&T Inc.*, 562 U.S. 397, 403, 131 S.Ct. 1177, 179 L.Ed.2d 132 (2011); *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). Merriam-Webster's defines debt as "something owed; obligation," or "a state of being under obligation to pay or repay someone or something in return for something received; a state of owing." Debt, https://www.merriam-webster.com/dictionary/debt (last accessed April 15, 2026).

Further, the Oklahoma Supreme Court has emphasized that the OCCC's disclosure provisions exist to ensure "meaningful disclosure of credit terms so that a *prospective* debtor will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit*." Dalton v. City of Tulsa*, 560 P.2d 955, 956 (Okla. 1977) (emphasis added). That means that disclosure obligations arise before consummation of a credit transaction, not after a lender decides whether it can enforce a contract. Defendants cannot induce a consumer to proceed with a credit transaction, fail to provide required disclosures, demand payment, report non-payment to credit reporting agencies, refuse to tell credit reporting agencies there is a dispute, and then escape liability by later asserting that no enforceable agreement ever existed.

Moreover, even under Defendants' preferred definition that a debtor is "generally defined as a person who owes an obligation or is subject to some form of liability," Plaintiff plausibly qualifies as a debtor. GreenSky treated her as a debtor when it reported a debt in her name, attempted to collect payment, and refused to correct or withdraw its tradeline after she disputed it. The fact that this litigation ultimately prevented Defendants from enforcing Plaintiff's purported loan agreement does not mean that no obligation existed at the time the conduct occurred. Defendants cannot simultaneously deny debtor status while holding a consumer out to the credit reporting system as obligated on a loan. Defendants certainly treated Parisi for quite some time up to and including into this litigation as someone who was "under obligation to pay or repay someone or something."

**B.      <u>Law of the Case Does Not Support Dismissal of Parisi's Claims.</u>**

Defendants argue that the decisions of this Court and the Tenth Circuit have now become the law of the case. Motion, at 5-6.  But this Court and the Tenth Circuit ruled on whether there was a meeting of the minds as to the high interest contract and the arbitration provision therein. [Doc. 82 & 94].  They did not rule on a host of other merits issues.

For example, there have been no rulings on whether Parisi meets the definition of a debtor under the OCCC or TILA; on whether Defendants' failure to provide disclosures was unlawful under Oklahoma and federal law; on whether Andersen's access of the GreenSky Shopping Pass was unauthorized, a violation of the Electronic Funds Transfer Act  ("EFTA"), and a scheme involving all Defendants acting in a

joint enterprise; on whether Defendants ratified an unauthorized loan established when the Defendant Andersen accessed the Shopping Pass; and on whether Defendants violated the law when they failed to investigate Parisi's dispute adequately, and failed to alert credit agencies to Parisi's dispute. In other words, the "law of the case" doctrine only applies to the issues of law actually decided. Here, neither this Court nor the Tenth Circuit resolved any of these merits issues. *Copart, Inc. v. Administrative Review Bd., U.S. Dept. of Labor*, 495 F. 3d 1197, 1201 (10th Cir. 2007) (citing *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined.")).

Defendants' theory of the case is convoluted but amounts to this: because this litigation resulted in a ruling that Parisi did not agree to the high interest loan and its arbitration clause, Defendants cannot be held liable for their conduct leading up to that determination.  That position is untenable. They argue, "If there is no loan, there is no debt.  If there is no debt, there is no debtor." Motion, at 4. That may be clever wordplay, but it is not how the law works. For example, a litigation ruling voiding a loan does not cancel a consumer's right to remedies for unlawful conduct in setting up and administering that loan. *See Bunch v. Terpenning*, 229 P. 3d 574, 580 (Okla.Civ.App.2009) (where creditor violated provisions of statute applying to authority to make supervised loans, loan is void and debtor not obligated to pay either principal or loan finance charge.) Put another way that Defendants may understand: No loan, no litigation. No litigation, no voiding of debt. But of course, there is

7

litigation because there was a loan and that loan included debt obligations, rendering Parisi a "debtor."

Defendants make conclusory pronouncements that have no basis in law; nor do Defendants cite to any. For example, Defendants argue that a provision in the Federal Consumer Credit Protection Act (the "FCCPA") evidences an intent that consumer disclosure requirements should not become vehicles for liability when circumstances change and "the ultimate changed circumstance would be the failure to agree to the terms of a loan agreement." Motion, at 4.  But that particular statute is based on information being disclosed in the first place, then subsequently rendered inaccurate – not the circumstances here. 15 U.S.C.A. §1634. Parisi alleged Defendants did not provide the required disclosures and without her knowledge, bound her to a loan through the merchant Andersen's access of the Shopping Pass; she did not allege an error in the disclosures and that after the loan was consummated, circumstances changed. Her allegations control, not Defendants' fanciful version of events.  Likewise, Defendants argue that "a plaintiff cannot sustain an injury that would have been caused by a failure to disclose information about a transaction that was never consummated." *Id*. But Defendants conflate consummation with judicial enforceability and fail to cite any law supporting their position. Parisi alleges that Defendants operationally treated the loan as consummated – they created an account in Parisi's name and a purported loan obligation, disbursed funds to their merchant Andersen, issued billing notices, demanded payment, assessed delinquency fees, and maintained tradelines with credit reporting agencies, Am. Compl., ¶¶ 47, 48, 53, 55,

8

64, 67, 69, 72, 76, 79 – right up until this Court and the Tenth Circuit ruled against them. In other words, Defendants treated the transaction as a completed credit extension regardless of whether Parisi later succeeded in defeating their attempt to enforce it.

Defendants want it both ways. They rely on this Court's and the Tenth Circuit's rulings that no agreement existed to compel arbitration, yet seek to use those same rulings to retroactively excuse their prior conduct, as if the absence of an enforceable agreement now renders their earlier actions acceptable, *i.e.*, "no harm, no foul." The law does not permit that result. At a minimum, whether Defendants consummated the transaction through their conduct presents a factual issue that cannot be resolved on a Rule 12 motion to dismiss.

**C.    <u>Parisi Adequately Pleads Article III Standing.</u>**

Defendants' contention that Parisi lacks Article III standing because she did not pay finance charges or allege monetary loss ignores binding precedent. The Supreme Court has held that intangible harms can suffice. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) (intangible injuries can be concrete where Congress elevates them). In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021), the Court recognized informational injuries and reputational harms as sufficient when tied to statutory violations.

Parisi alleges statutory injury (failure to receive required disclosures), emotional distress, reputational harm, and risk of financial liability. Her claims arise from Defendants' creation of an unauthorized debt in her name. She alleges that

Defendants, acting through Defendant Andersen's access of the GreenSky Shopping Pass system, established a loan account without lawful authorization, disbursed funds, demanded payment, and reported her as delinquent. Am. Compl., ¶¶ 47, 48, 53, 55, 64, 67, 69, 72, 76, 79. That conduct itself constitutes Parisi's injury. Consumer protection statutes are not inapplicable merely because the consumer later proves that the debt was unauthorized. In fact, these statutes are designed to protect consumers before and during the creation, administration, and collection of those obligations. Otherwise, the less valid a transaction, the less statutory protection for the consumers. That would be perverse.

Courts in the Tenth Circuit recognize such harms as sufficient. *Morgan v. McCottor*, 365 F.3d 882, 888 (10th Cir. 2004) (standing requires concrete injury, but may include intangible harms). In *Lupia v. Medicredit, Inc.*, it found that the consumer in an FCCPA case, "suffered an injury bearing 'a close relationship' to the tort of intrusion upon seclusion" when the defendant debt collector made an unwanted call and left her a voicemail about a debt, despite her having sent written notice disputing the debt and requesting that it cease telephone communications. 8 F.4th 1184, 1191 (10th Cir. 2021) (adequate evidence for plaintiff to show intangible concrete injury when unwanted collection letters and phone calls continued after plaintiff said to stop); *see also, Leichliter v. Optio Solutions, LLC*, 672 F. Supp. 3d 1165, 1170 (10th Cir. 2023) (Article III standing for plaintiff to show intangible concrete injury when unwanted collection letters and phone calls continued after plaintiff said to stop); *Llewellyn v.*

10

*Allstate Home Loans, Inc.*, 711 F.3d 1173, 1182 (10th Cir. 2013) (emotional distress damages actionable where credit disclosure statute violated).

Here, Plaintiff specifically alleges harassment through billing notices, continuing after she disputed the charges, false statements of delinquency, and resulting emotional distress during cancer treatment. Thus, her injuries are far beyond an abstract statutory violation.  Defendants impaired Parisi's credit reputation, subjected her to collection activity, and forced her to expend time and effort – while undergoing cancer treatment – to dispute an unauthorized debt. Those allegations more than satisfy Article III at the pleading stage. *Lupia,* 8 F.4th at 1191 (citing *TransUnion LLC*, 141 S. Ct. at 2204) (Article III analysis must include "due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation.").

### D.    Parisi's Claims are not Time Barred.

Defendants contend that Parisi's class claim under the OCCC, as well as her individual and class claims under TILA, OCPA, and EFTA, are time-barred, basing this on its conclusory determination that Parisi's claims are "substantially different" than those in her original complaint.  Motion, at 16. They are wrong. First, this Court already rejected that premise. In granting Parisi's Motion for Reconsideration, the Court found that Parisi's claims "stem from the same set of background facts" as those alleged in her earlier complaint (the "2022 Complaint"). Order Granting Leave to Amend on Reconsideration [Doc. 128], at 10.

11

Second, Defendants' statute of limitations argument rests on a mischaracterization of the record. They rely on Parisi's Amended Petition that was filed on August 21, 2023. [Doc. 36].[2] That is incorrect. Defendants misrepresent when Parisi first raised her OCCC claim and alleged the factual basis for her current claims. As a result, Defendants' limitations calculations are flawed and must be disregarded.

In fact, Parisi filed her original complaint on November 22, 2022, in the District Court of Oklahoma County [Doc. 1-1][3]; she filed her Amended Petition and Motion to Certify a Class Action on December 22, 2022. [Doc. 1-3]. As described in both her original and her Amended Petition, Parisi's first meeting with Andersen's representative occurred on or around November 23, 2021. *Id.*, ¶60.[4] On or about December 7, 2021, she learned that Andersen received $8,871.50, as partial payment for the windows she ordered, and that her payments would start six months after installation of the windows. *Id.*, ¶69. Because Parisi had not authorized the payment to Andersen, and only applied for a payment plan that provided for payments to start two years after window installation, Parisi objected repeatedly to the "bait and switch"

---

[2] Not only do Defendants get the date of Parisi's first assertion of OCCC class claims and the factual underpinnings of her operative complaint wrong, they describe the August 21, 2023, Amended Petition as the date Parisi filed her Motion for Leave to File the Fourth Amended Complaint. That is also incorrect. In fact, that Motion for Leave was filed on October 1, 2025. [Doc. 105]. The August 21, 2023, Amended Petition simply removed Defendant Cashion Windows d/b/a Renewal by Andersen of Oklahoma and replaced it with Defendant Oklahoma Windows and Doors d/b/a Renewal by Andersen of Oklahoma [Doc. 36].

[3] As this Court notes in its Order on Reconsideration, the first paragraph of this first complaint refers to Parisi's "Petition and Class Action claims." [Doc. 128], at 2.

[4] Paragraph citations are to the Amended Petition's paragraphs, but both petitions included similar or identical allegations.

12

scheme, but Defendants continued to falsely report Parisi's failure to pay. *Id.*, ¶¶ 79-85.  On July 18, 2022, Parisi sent a formal letter to Defendants reiterating the details of Defendant Andersen's fraud and Defendants' ratification and participation, but the false reporting continued. *Id.*, ¶86.  For example, nearly a full year after she first disputed the loan, on October 2, 2022, GreenSky mailed Parisi a past due notice and collection letter reflecting that Parisi owed GreenSky a payment on BMO Harris Bank's loan with a total balance of $9,688.50, a past due amount of $224.50, and fees of $78.00. *Id.*, at ¶96, Exh. 6.

On February 2, 2023, GreenSky removed Parisi's action to this Court. [Doc. 1]. Timothy Kaliban, GreenSky's Chief Strategy Officer, filed a declaration in support of that removal. [Doc. 1-6].  Kaliban's declaration states:

> Following the filing of Plaintiff's Amended Petition and Motion to Certify a Class Action in this action, I reviewed GreenSky's records with respect to consumers in Oklahoma who satisfy Plaintiff's definition of the Class: (a) all Oklahoma consumers; (b) **who within one year prior to the filing of this action (November 22, 2022)**; (c) received financing from GreenSky through C Cashion Windows, LLC d/b/a Renewal by Andersen of Oklahoma. Based on my review of GreenSky's records, I have determined that there are 1,651 GreenSky customers who are potential members of the Class.

Declaration of Timothy D. Kaliban, ¶¶4,5 (emphasis added).

As is evident from that declaration, Defendant GreenSky acknowledged that the class should be defined in relation to the "filing of this action (November 22, 2022). Accordingly, this latest effort to defeat Parisi's individual and class claims based on imaginary statute of limitations restrictions must fail.  Parisi's claims are based on the same conduct described in her original complaint, filed on November 22, 2022.

**E.** **All Claims in Parisi's Fourth Amended Complaint Relate Back to the Conduct Described in Her 2022 Complaint.**

Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amendment "relates back" to the date of the original pleading if the "amendment asserts a claim ... that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." In other words, if a plaintiff alleges an entirely different transaction through her amended complaint, the claims will not relate back. But if new or different claims relate back to the filing of the original complaint, it is well settled law that otherwise applicable statute of limitations defenses are avoided. Here, Parisi is not attempting to fault Defendants for entirely different conduct from the conduct she alleged in her original complaint. Rather, her allegations are based on the conduct, transaction, or occurrence she set out, or attempted to set out, in her first complaint back in 2022. Therefore, Defendants effort to dismiss Parisi's claims based on statute of limitations arguments is due to be denied. *See, e.g., Chan v. Barbour, Inc.*, 263 F. Supp. 3d 521 (E.D. Pa. 2017) (finding Title VII and ADEA claims asserted in amended complaint related back to original complaint that asserted claims for discrimination on the basis of sex, ancestry, and age where original and amended complaints shared identical facts); *Anderson v. PAR Electrical Contractors, Inc.*, 318 F.R.D. 640 (D. Kan. 2017) (finding retaliatory discharge claim in amended complaint related back to original complaint alleging strict liability, negligence, or both for work-related accident injuries); *Gaddy v. Radio Systems Corp.*, 59 F. Supp. 3d 857 (E.D. Tenn. 2014) (finding ADA discrimination claims not included in original complaint related

14

back to original filing for purposes of limitations period where ADA claims, like FMLA claims in original complaint, arose out of plaintiff's allegedly wrongful termination).

And simply adding additional claims for relief is not a barrier to an amended complaint. As the Seventh Circuit explained, "the same legal theory need not be alleged in both complaints; rather the claims need only arise out of the same 'conduct, transaction or occurrence.'" *Donnelly v. Yellow Freight System, Inc.*, 874 F. 2d 402,410 (7th Cir. 1989) (complaint alleging Title VII claims related back to original complaint alleging only state law claims); *see also*; *Federal Deposit Ins. Corp. v. Bennett*, 898 F. 2d 477, 480 (5th Cir. 1990) (citing *Johansen v. E.I. DuPont de Nemours & Co.*, 810 F.2d 1377 (5th Cir.), *cert. denied*, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987) (added claims in amended complaint predicated on breach of implied and express warranty related back even though theory of recovery was wholly different from original complaint claims based on product liability).

The Fifth Circuit in *Bennett, supra*, stated it succinctly:

> The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading.

*Federal Deposit Ins. Corp. v. Bennett*, 898 F. 2d at 480 (citing Wright, Miller, Kane, FEDERAL PRACTICE & PROCEDURE, Vol. 6A, § 1497, p. 94).

Courts find that new causes of action relate back where the defendants have notice of the facts supporting the new causes of action. *Miller v. Fairchild Industries, Inc.*, 668 F. Supp. 461 (D. Md. 1987) (finding additional counts in amended complaint

15

alleging retaliatory discharge, prima facie tort, and tortious interference with contract related back to original complaint where new causes of action were based on the same conduct as the original complaint and when employer had notice of the facts supporting new causes of action); *In re Olympia Brewing Co. Securities Litigation*, 612 F. Supp. 1370 (N.D. Ill. 1985) (added RICO claims in amended complaint related back to original complaint alleging securities fraud where additional factual allegations were intimately tied up with originally alleged predicate acts of fraud); *Kimmel v. Gallaudet University*, 722 F. Supp. 2d 79 (D.D.C. 2010) (finding constructive discharge claim arose out of same alleged pattern of harassment that formed basis of originally pled hostile-work-environment claims and thus related back); *GenoSource, LLC v. Inguran, LLC*, 386 F. Supp. 3d 984 (N.D. Iowa 2019) (finding added Lanham Act claims related back where claims arose out of same conduct, transaction, or occurrence as original complaint's claim for wrongful conversion); *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 594 (S.D. N.Y. 2009) (ADA and Rehabilitation Act claims added to claims alleging denial of proper mental-health care).

Here, Defendants cannot claim they are unaware of the factual situation that Parisi's action depends on. From the outset, this action has been grounded in the same core conduct and events. Although Parisi has refined her legal theories, her claims in the Amended Complaint continue to arise "out of the conduct, transaction, or occurrence *attempted* to be set forth in the original complaint." *Federal Deposit Ins. Corp. v. Bennett*, 898 F. 2d at 480 (emphasis in original) (citing *United States v. Johnson*, 288 F.2d 40, 42 (5th Cir.1961) (recognizing there had been a complete change in legal

16

theory in amended complaint but finding claim continued to arise out of conduct, transaction, or occurrence attempted to be set forth in original complaint).

Indeed, as alleged in both the 2022 Complaint and in the Amended Complaint, Defendants entered into a Consent Order in 2021 with the Consumer Financial Protection Bureau. 2022 Complaint, ¶85; Am. Compl., ¶¶27-35. The Consent Order was based on the CFPB finding that GreenSky had allowed Merchants to take out millions of dollars in loans to thousands of consumers without their knowledge or consent between 2014 and 2019. Am. Compl., ¶34. In other words, the factual situation relied on in Parisi's Amended Complaint not only relates back to the original 2022 Complaint, it is duplicative of the Consent Order findings. Accordingly, Defendants cannot claim surprise from the allegations or claims for relief in the Amended Complaint.

For example, Parisi's EFTA claim alleges that Defendants initiated and ratified unauthorized electronic transfers and failed to investigate disputes concerning those transfers. Id., ¶¶ 153 – 155; 157 – 160. EFTA defines an "unauthorized electronic fund transfer" as a transfer initiated without actual authority and from which the consumer receives no benefit. *Id*., ¶146 (citing 15 U.S.C. § 1693a(12)). Plaintiff alleges precisely that: Defendants initiated and administered a purported loan transaction without authorization, resulting in disbursement of funds to Andersen. *Id*, ¶¶ 153-156.

The EFTA also imposes obligations on Defendants to investigate consumer disputes concerning unauthorized transfers. 15 U.S.C. § 1693(f). Parisi alleges she repeatedly disputed the account and informed Defendants that the transaction was

17

unauthorized, yet Defendants continued collection activity and maintained derogatory reporting. Am. Compl., ¶¶63, 64, 65, 72, 78, 157. Those allegations plausibly state claims under EFTA. But the conduct, transaction, or occurrence underlying these allegations was set out in Parisi's earliest complaints. *See* 2022 Complaint, ¶¶ 42, 43, 46, 47, 51-53, 55-58, 69, 71, 73, 76-80, 83, 85-86, 94-99.

**F. The Claims of Absent Class Members Satisfy the Statute of Limitations.**

Defendants object that Plaintiff proposes a revised class definition in her Amended Complaint. That objection is premature at best. Challenges to the scope and wording of a class definition are properly addressed during class certification, not at the pleading stage. Rule 23 expressly permits the Court to alter or amend a certification decision any time before final judgment, underscoring the flexibility of the class definition throughout the litigation. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Indeed, "[P]arties may suggest such changes as the factual record and legal theories develop." *Carpenter v. Boeing Co.*, 456 F. 3d 1183, 1191 (10th Cir. 2006).

Defendants ignore long-settled law established by the Supreme Court and the Tenth Circuit that all persons are within the limitations period who are "subsequently determined" to be class members, even if that determination is made after a successful appeal (and therefore certainly before class certification determinations in the first place). Defendants instead cite to inapposite case law and mischaracterize those decisions. In class actions, the filing of the original complaint tolls the statute of limitations for all putative class members. *Bishop v. Air Line Pilots Ass'n, Int'l*, 331

18

F.R.D. 481, 485 (N.D. Ill. 2019) (citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 549 (1974) ("American Pipe teaches that the filing of a class action within the limitations period satisfies the statute of limitations for all persons who are 'subsequently determined' to be class members.").

> In *American Pipe*, the Supreme Court explained that:
>
> [w]hatever the merit in the conclusion that one seeking to join a class after the running of the statutory period asserts a 'separate cause of action' which must individually meet the timeliness requirements [reached by some courts before Rule 23 was amended in 1966] such a concept is simply inconsistent with Rule 23 as presently drafted. A federal class action is no longer an invitation to joinder but a truly representative suit…"

*Am. Pipe,* 414 U.S. at 549 (cleaned up). To support this, the Supreme Court cited *Esplin v. Hirschi*, 402 F. 2d 94, 101 (10th Cir. 1968), where the Tenth Circuit reversed a district court's denial of class certification, holding that "the rights of all class members" for statute of limitations purposes are "to be determined by *relation back to the date of the initiation*" of a timely filed class action suit. *Esplin*, 402 F.2d at 101 & n.14 (emphasis added).

Defendants cite *Kellom V. Quinn*, 86 F.4th 288, 294–95 (6th Cir. 2023), and *Reveredge Dentistry Partnership v. City of Cleveland*, No. 1:22-CV-1007, 2024 WL 639689, at *18-20 (N.D. Ohio Feb. 15, 2024), contending that where "new putative plaintiffs are added through an amended pleading, such plaintiffs' claims do not relate back to the filing of the original pleading." Motion, at 14. But both *Kellom* (a case concerning a fatal shooting), and *Riveredge* (a property takings case), are summary judgment decisions concerning individual plaintiffs, and are not class actions. The applicable

19

statute of limitations for absent class members is entirely different than for such individual plaintiffs.

Defendants also cite the unpublished *McClelland v. Deluxe Fin. Servs., Inc.*, 431 F. App'x 718, 730 (10th Cir. 2011), arguing that "the Tenth Circuit has held class claims added to an amended pleading do not relate back to an earlier pleading, but instead are evaluated as of the date such class claims were actually filed." Motion, at 15. But that isn't the holding in *McClelland*. In that case, there were no class claims present in the first two complaints filed by plaintiffs. *Id.*, at 730. The court said that the first two complaints alleged discrimination against a limited number of identified employees, whereas the second amended complaint alleged a policy of discrimination across an entire facility. *Id.* ("But without specific allegations of class-wide discrimination, such vague claims by individual plaintiffs are not enough to alert a defendant that class claims are on the horizon.").

Defendants argue that the "*McClelland* holding is not limited to cases where class allegations are added for the first time in an amended complaint, but also includes cases where existing class claims have been altered in an amended complaint to include additional class members whose claims were not asserted in an earlier pleading." Motion, at 15 (citing *Onyx Props. LLC v. Board of County Commissioners of Elbert County*, 916 F. Supp.2d 1191, 1198 (D. Colo. 2012). First, the Tenth Circuit has not determined that *McClelland* should have the broad application Defendants seek. Second, the *Onyx* decision, made on a summary judgment posture, merely held that *American Pipe* tolling is not applicable when "the plaintiff was not a putative member

20

of the class action" at the time the original complaint was filed. *Onyx, supra*, at 1197. In *Onyx*, the court emphasized that the *McClelland* ruling was based on the court concluding that the initial complaint did not give the defendant sufficient notice of impending class claims to allow relation back. *Id.*

Here, Defendants have no basis to argue that absent class members identified in the Amended Complaint fall outside the scope of the originally proposed class. From the start, Defendants have had sufficient notice that Parisi's class claims arise from the same scheme: Defendants using Shopping Passes to initiate loans without disclosing the true loan terms to consumers.  Nevertheless, no discovery has taken place, and no class certification briefing has been presented.

None of the absent class members of the putative class defined in Parisi's Amended Complaint have attempted to intervene or file their own individual suit or class action. All absent class members are considered to be prosecuting their claims as part of a timely filed class action suit. If the class is certified, that will satisfy the statute of limitations for the absent class members' claims. *Bishop v. Air Line Pilots Assoc.*, *Int'l,* 331 F.R.D., at 487.  "In that event, it will not matter whether any absent class member can demonstrate that her claims were tolled, for tolling is irrelevant where, as here, the suit was timely filed."  *Id.*

This litigation has not reached the summary judgment stage like in *McClelland* and *Onyx*. Parisi's allegations are to be taken as true and viewed in the light most favorable to her. Parisi alleges that, at the point of sale, consumers were presented with certain loan terms, but GreenSky's Shopping Pass program allowed merchants to

submit or accept different loan terms without the consumer's knowledge. Am. Compl., ¶22. Because consumers had no reason to expect differing loan terms, by the time they received or reviewed any documentation, the Shopping Pass had already been activated and the loan purportedly "accepted."  *Id.*, ¶23. As a result of this unique structure, where Merchants could act on the consumer's behalf, consumers were unaware that a loan had been initiated, what its terms were, or what obligations and consequences it imposed. *Id.* The class defined in the Amended Complaint is comprised of those Oklahoma consumers who had a GreenSky Shopping Pass account opened in their name where the loan terms were accepted through the use of the Shopping Pass by a GreenSky merchant.

In Parisi's 2022 Complaint, the class is defined as Oklahoma consumers who did not receive all required material disclosures prior to consummation of the loan, including the amount financed, the amount of credit to which the debtor has use, statement of the debtor's right to obtain written itemization of the amount financed, the amount that is or will be paid directly to the debtor, the amount that is or will be credited to the debtor's account, and the amount that is or will be paid to third persons by the lender on the debtor's behalf. 2022 Complaint, ¶24. The 2022 Complaint alleges that Defendants issue consumers a Shopping Pass number, which functions like a credit card. *Id.*, ¶51.  Defendants treat use of the Shopping Pass, or associated funds, as acceptance of the loan. *Id.* Because the merchants sometimes applied for a loan without a consumer's knowledge…Defendants emailed the consumer's loan

22

documents to the Merchant instead of the consumer. *Id.*, ¶56. Again, this is the most fundamental failure to disclose.

Accordingly, there is no question as to whether class claims were "on the horizon" from the First Amended Complaint filed in this case, even – as pointed out by this Court – in the very first complaint filed in November of 2022. Both versions of the class definition target the same core group: Oklahoma consumers who did not receive material disclosures about their financing terms before the loans were consummated. The central allegation in this case has remained unchanged – Defendants' fundamental failure to disclose essential loan terms. The mechanism for that failure is likewise consistent across all pleadings. Parisi alleges that Defendants used the GreenSky Shopping Pass program to bind consumers into loans with Merchants, without disclosing the actual terms of those loans. Each iteration of the complaint, including the operative Fourth Amended Complaint, challenges this same scheme: inducing consumers into loans that they did not authorize and for which they did not even know they were obligated. Accordingly, the class members identified in the Amended Complaint were already encompassed within, and had their claims asserted in, the 2022 Complaint.

### G. Defendants' Motion to Strike Class Allegations Under Rule 12(f) is Premature

Defendants ask this Court to decide class issues of commonality, ascertainability, and arbitration on a motion to dismiss posture, but this is premature. At this stage, Parisi only needs to allege a plausible class; Rule 23 will govern

certification. The Tenth Circuit disfavors striking class claims before discovery. *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004) (courts must evaluate class issues on a factual record). Likewise, the court in *Simon v. Metropolitan Property and Casualty Ins. Co.*, declined to strike class allegations early, recognizing Rule 23 certification is the proper vehicle. 2009 WL 10664325, at \*2.

Whether Plaintiff's proposed class is overbroad (it is not) or constitutes a fail-safe class (it does not) is a fact-intensive inquiry. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (fail-safe determination requires detailed review). Defendant's arguments related to putative class members' arbitration obligations are likewise premature. The Tenth Circuit already found factual disputes concerning the arbitration clause at issue. Resolving whether, and to whom, *any* arbitration provision applies will require a developed factual record. Those determinations cannot be made at the pleading stage and are not a basis for dismissal.

## IV.    CONCLUSION

For all the reasons above, Defendants' Motion to Dismiss, and alternative Motion to Strike Class Allegations, should be denied.

Dated: April 28, 2026                    **VARNELL & WARWICK, P.A.**

/s/ Janet R. Varnell
Janet R. Varnell, FBN: 0071072
400 N. Ashley Drive, Suite 1900
Tampa, FL  33602
Telephone: (352) 753-8600
jvarnell@vandwlaw.com

**RAWLS LAW OFFICE PLLC**

/s/ M. Kathi Rawls
M. Kathi Rawls, OBA #18814
222 NW 13th St.
Oklahoma City, OK 73103
Kathi@carfraud.net
mkr@rawlslawoffice.com

**NATIONAL ASSOCIATION OF
CONSUMER ADVOCATES**

Eric Zell, Ohio Bar #0084318
1215 17th St. NW, 5th Floor
Washington, DC 20006
202-452-1989 x111
eric@consumeradvocates.org

*Attorneys for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 28, 2026, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

/s/ Janet R. Varnell
Janet R. Varnell

25