# EXHIBIT 1



**OFFICE OF THE ATTORNEY GENERAL
STATE OF FLORIDA
DEPARTMENT OF LEGAL AFFAIRS**

**IN THE INVESTIGATION OF:**

**AG Case No.: L20-3-1433**

**GREENSKY HOLDINGS, LLC, a Georgia
limited liability company; and
GREENSKY, LLC, a Georgia limited
liability company,**

.

  Respondents.

_____/

**<u>ASSURANCE OF VOLUNTARY COMPLIANCE</u>**

This Assurance of Voluntary Compliance ("Assurance") is entered into by the Office of

the Attorney General, State of Florida, Department of Legal Affairs (the "RELEVANT

ATTORNEY GENERAL") on behalf of the State of Florida (the "RELEVANT STATE"), and

GreenSky Holdings, LLC and GreenSky, LLC (together with its current and former subsidiaries,

"GREENSKY").  On the date hereof, GREENSKY is also entering into an Assurance of

Voluntary Compliance (the "Other Assurances" and, together with this Assurance, the

"Assurances") on substantially similar terms as this Assurance with each of the Attorneys

General (each an ATTORNEY GENERAL and collectively with the RELEVANT ATTORNEY GENERAL, the "ATTORNEYS GENERAL") of Alabama, Alaska, the District of Columbia, Georgia, and Texas (each a "STATE" and collectively with the RELEVANT STATE, the "STATES").  The ATTORNEYS GENERAL and GREENSKY are entering into the Assurances to resolve the investigation by the ATTORNEYS GENERAL that considered whether GREENSKY violated the ATTORNEYS GENERAL consumer protection and trade practices statutes and regulations listed in footnote one below[1] (collectively, the "CONSUMER STATUTES"). In consideration of their mutual agreement to the terms of this Assurance, and such other consideration as described herein, the sufficiency of which is hereby acknowledged, without admitting any liability or wrongdoing on the part of GREENSKY, GREENSKY and the RELEVANT ATTORNEY GENERAL (collectively, the "PARTIES") hereby agree as follows:

## 1.    DEFINITIONS

For the purposes of this Assurance, the following definitions shall apply:

I.    **"BORROWER"** shall mean any PERSON participating in the GREENSKY PROGRAM who identified any of the STATES as the PERSON's address in the PERSON's loan application, including BORROWERs that may have participated in the GREENSKY PROGRAM without their knowledge or consent.

II.    **"CASH REDRESS"** shall consist of a refund of payment(s) from a BORROWER to a PARTICIPATING LENDER as facilitated by GREENSKY on the relevant loan, net of any funds previously returned to the BORROWER by a PARTICIPATING LENDER, GREENSKY,

---

[1] *See generally*, ALA. CODE § 8-19-1 *et seq.*; ALASKA STAT. § 45.50.471; D.C. Code § 28-3901, *et seq.*; FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, CHAPTER 501, PART II, FLORIDA STATUTES; O.C.G.A. §§ 10-1-390—408; and TEX. BUS. & COM. CODE ANN. §§ 17.41 through 17.63.

a GREENSKY PROGRAM MERCHANT, or otherwise (such as through a chargeback process managed by a payment card network). The SETTLEMENT ADMINISTRATOR will direct GREENSKY to provide documentation of all such payments and previous refunds and will calculate the cash redress to be paid to each BORROWER in accordance with the terms of the Assurances. The SETTLEMENT ADMINISTRATOR may conduct any reasonable investigation into this documentation.

III.    **"CLAIM FORM"** shall mean the form set forth in the REDRESS PLAN.

IV.    **"CREDIT LIMIT"** shall mean the maximum amount that the BORROWER may request the LENDER pay to a GREENSKY PROGRAM MERCHANT.

V.    **"CREDIT REDRESS"** shall consist of GREENSKY, on behalf of a BORROWER's PARTICIPATING LENDER, discharging balances on the relevant loan, permanently forgoing any further collection on those balances, and reporting the new balance to the Credit Reporting Agencies or removing the GREENSKY PROGRAM tradeline from the BORROWER's credit report. The SETTLEMENT ADMINISTRATOR will direct GREENSKY to provide documentation of all account balances, and will calculate the credit redress to be provided to the BORROWER in accordance with the terms of the Assurances. The SETTLEMENT ADMINISTRATOR may conduct any reasonable investigation into this documentation.

VI.    **"COMPLAINT"** shall mean any verbal communication or any written documentation regarding an identified BORROWER expressing dissatisfaction with GREENSKY and/or any GREENSKY PROGRAM MERCHANT that has been received directly by GREENSKY, or which has been forwarded to GREENSKY from any entity, whether private or governmental. General loan servicing requests or other routine inquiries where the

3

BORROWER's inquiry has been resolved or otherwise addressed at or reasonably following the conclusion of the inquiry or other inquiries that are "frivolous" as defined in §1022.43(f)(1) of Regulation V are not considered COMPLAINTs.

VII. **"COVERED CONDUCT"** shall mean GREENSKY's conduct related to the GREENSKY PROGRAMs and the PATIENT SOLUTIONS PROGRAM during the RELEVANT TIME PERIOD.

VIII. **"CUSTOMER SOLUTIONS TEAM"** shall mean the GREENSKY team responsible for receiving and resolving all BORROWER COMPLAINTs.

IX. **"EFFECTIVE DATE"** shall be June 30, 2026; provided that if, on June 30, 2026, a STATE that requires court approval of that STATE's Assurance has not yet received such approval from the court, the effective date shall be date the court approves that STATE's Assurance, whichever is later.

X. **"GOOD"** shall mean any tangible chattel purchased or leased for use.

XI. **"GREENSKY's COMPLAINT MANAGEMENT SYSTEM"** shall mean the GREENSKY system used to intake, investigate, document, resolve, and track consumer COMPLAINTs.

XII. **"GREENSKY PROGRAM"** shall mean any lending program where GREENSKY acts as a program administrator and that is associated with a GREENSKY PROGRAM MERCHANT in which the lending program is owned, financed, offered, originated, underwritten, serviced, facilitated, and/or administered by: (1) GREENSKY or (2) a PARTICIPATING LENDER or any other third party lender where GREENSKY acts as a program administrator for such third party or PARTICIPATING LENDER in connection with the related LOAN AGREEMENT and BORROWER. The PARTIES agree that The Home Depot

4

Loan Program is not a "GREENSKY PROGRAM" for purposes of this Assurance and that none of the provisions of this Assurance shall apply to The Home Depot Loan Program or any successor program. For the avoidance of doubt, the PARTIES agree that a GREENSKY PROGRAM that is designed such that a consumer directly submits a loan application to a lender via a GREENSKY facilitated program or technology, with no involvement of a GREENSKY PROGRAM MERCHANT in the submission of the application (other than providing a link for a consumer to directly submit a loan application to a lender), is not a "GREENSKY PROGRAM."

XIII. **"GREENSKY PROGRAM MERCHANT"** shall mean any third-party provider or seller of GOODs and/or SERVICEs to consumers that participates in the submission of an application for a GREENSKY PROGRAM loan for the purpose of consumers financing purchases from such provider or seller through a GREENSKY PROGRAM. For the avoidance of doubt, the PARTIES agree that solely providing a link for a consumer to directly submit a loan application to a lender via GREENSKY does not make an entity a GREENSKY PROGRAM MERCHANT.

XIV. **"GREENSKY RELEASEES"** shall mean GREENSKY and its current and former predecessors, successors, assigns, and its parents, subsidiaries, agents, directors, officers, shareholders, members and/or employees, but only with respect to claims arising from GREENSKY'S conduct during the COVERED CONDUCT period as released under the Assurances. The term "GREENSKY RELEASEES" does not include any entity or person for any conduct other than GREENSKY's conduct during that period.

XV. **"HEALTH CARE PRODUCTS"** shall mean health-related GOODs or SERVICEs financed through the PATIENT SOLUTIONS PROGRAM.

XVI. **"KNOWN DISABLED ADULT"** shall mean any BORROWER who is identified as disabled to GREENSKY in the process of making a COMPLAINT.

XVII.       **"LOAN AGREEMENT"** shall mean the original and any subsequent agreement that set forth the terms between the BORROWER and a PARTICIPATING LENDER related to a loan made pursuant to the GREENSKY PROGRAM.

XVIII.       **"PARTICIPATING LENDER"** shall mean any lender that participates in the GREENSKY PROGRAM and originates, funds, and/or underwrites loans to BORROWERs in connection therewith.

XIX. **"PATIENT SOLUTIONS PROGRAM"** shall mean the GREENSKY PROGRAM that provided consumer financing for HEALTH CARE PRODUCTS that was closed as of August 31, 2022. GREENSKY hereby agrees and acknowledges that the PATIENT SOLUTIONS PROGRAM was closed as of August 31, 2022, and will not be reestablished in the STATES by GREENSKY in the future without notice to the ATTORNEYS GENERAL. GREENSKY affirms and certifies that it has not originated or facilitated the origination of any new loans under the PATIENT SOLUTIONS PROGRAM since August 31, 2022. For the avoidance of doubt, the injunctive terms in Sections 2.I – 2.II of this Assurance do not apply to the PATIENT SOLUTIONS PROGRAM. The injunctive terms in Section 2.III of this Assurance do not apply to the PATIENT SOLUTIONS PROGRAM, unless the PATIENT SOLUTIONS PROGRAM is reinstated by GREENSKY. In the event the PATIENT SOLUTIONS PROGRAM is reinstated by GREENSKY, then the terms of this Assurance applicable to a GREENSKY PROGRAM shall apply to the PATIENT SOLUTIONS PROGRAM, as applicable.

XX.  **"PERSON"** shall mean both natural persons and business entities.

6

XXI. "**PROGRAM AGREEMENT**" shall mean the agreement setting forth the terms between a GREENSKY PROGRAM MERCHANT and GREENSKY relating to the GREENSKY PROGRAM.

XXII. **"REDRESS NOTIFICATION LETTER"** shall mean the form set forth in the REDRESS PLAN.

XXIII.    **"REDRESS PLAN"** shall mean the plan outlining how CASH REDRESS and CREDIT REDRESS will be determined and administered under this Assurance that is attached to this Assurance as **Attachment A**.  For the sake of clarity, the REDRESS PLAN under this Assurance and the redress plans under each of the Other Assurances are identical and may be satisfied by a single redress process that satisfies the terms of this Assurance and the Other Assurances.

XXIV.    **"RELEVANT TIME PERIOD"** shall mean the time period from January 1, 2014, through the EFFECTIVE DATE of the Assurances.

XXV.    **"SENIOR CITIZEN"** shall mean a consumer aged 60 or older.

XXVI.    **"SERVICE"** shall mean work, labor, or services purchased or leased for use, including services furnished in connection with the sale or repair of GOODs.

XXVII.    **"TRANSACTION"** shall mean any payment of loan proceeds that is made by a PARTICIPATING LENDER to a GREENSKY PROGRAM MERCHANT on behalf of a BORROWER in connection with a GREENSKY PROGRAM loan.

XXVIII.    **"VULNERABLE ADULT"** shall mean any person who is a SENIOR CITIZEN or who is a KNOWN DISABLED ADULT.

## 2. INJUNCTIVE TERMS

**I. LOAN APPLICATION AND AUTHORIZATION PROCESS**

GREENSKY and GREENSKY's officers, directors, employees, personnel, agents, and representatives who have responsibilities related to the subject matter of this Assurance and who receive actual notice of this Assurance, whether acting directly or indirectly, shall comply with the following:

A.    GREENSKY shall obtain and retain evidence of a BORROWER's authorization of a loan in one of the following forms prior to the loan being activated and prior to asserting or reporting to a Credit Reporting Agency any obligation on the part of the BORROWER: (i) an audio recording of a telephone call with the BORROWER containing the BORROWER's verbal authorization; (ii) a signed written authorization from the BORROWER; or (iii) other documentary evidence evidencing BORROWER's authorization of the loan obtained during the ACCOUNT ACTIVATION PROCESS (described in Section 2.I(B) (below)) for example by using email, the internet, mobile messaging technology (such as SMS), or substantially similar technology.

B.    GREENSKY shall maintain an account activation process that each BORROWER will be required to complete to be able to use his or her loan proceeds to pay a GREENSKY PROGRAM MERCHANT (the "ACCOUNT ACTIVATION PROCESS"). The ACCOUNT ACTIVATION PROCESS shall include that loans shall originate in a "blocked status" and remain blocked until all BORROWERs on the account have completed the ACCOUNT ACTIVATION PROCESS. In order to activate an account, each BORROWER will, regardless of the order of the following steps, (1) be required to be authenticated by GREENSKY, pursuant to Section 2.I(D) of this Assurance, such that GREENSKY will have a reasonable belief the

8

BORROWER is the one activating his or her account, and (2) be required to provide GREENSKY with certain certifications and authorizations confirming, *at a minimum*, that the BORROWER (a) applied for a GREENSKY PROGRAM loan; (b) received his or her LOAN AGREEMENT for the loan (which LOAN AGREEMENT will include the applicable estimated annual percentage rate ("APR") and the CREDIT LIMIT); (c) is activating the account to make payments to his or her GREENSKY PROGRAM MERCHANT; and (d) is authorizing payments to his or her GREENSKY PROGRAM MERCHANT on the account that in total shall be no greater than the CREDIT LIMIT. The ACCOUNT ACTIVATION PROCESS shall also include that no TRANSACTIONs on the account can be funded until all BORROWERs on the account have completed the ACCOUNT ACTIVATION PROCESS. GREENSKY shall have policies, procedures, and training materials with respect to the ACCOUNT ACTIVATION PROCESS.

C.      GREENSKY shall have policies and procedures requiring that it provide all applicable Truth In Lending Act disclosures in accordance with applicable law.

D.      GREENSKY shall authenticate a BORROWER's identity as required in Section 2.I(B) above by (a) relying on a response originating from a message sent to a verified email or mobile number, (b) requiring the BORROWER to correctly answer one or more "out of wallet" questions provided by a trusted third-party service provider that provides such services for identity verification, or (c) completing some other process that relies on knowledge or a thing the BORROWER possesses, such as a driver's license. Unless and until an account has been activated, the BORROWER will not be financially responsible for any TRANSACTION and the account will not be reported to a Credit Reporting Agency as a consumer obligation. Activation may be completed verbally during a recorded telephone call between a BORROWER and one of GREENSKY's employees or electronically via a web-based or a mobile-based (e.g., email or

text) activation process.

E.     GREENSKY shall attempt to verify a BORROWER's email address or mobile telephone number before sending account activation messages to such BORROWER's email address or mobile telephone number. If GREENSKY is able to establish to its reasonable satisfaction based on its policies and procedures that the email address and/or mobile telephone number is associated with the BORROWER, GREENSKY's policies will allow the BORROWER to activate an account by responding to or accessing an activation website via the email or text message sent to the respective email address or mobile telephone number for which such association was formed.

F.     If GREENSKY is not able to establish to its reasonable satisfaction that an email address and/or mobile telephone number is associated with the BORROWER or the BORROWER attempts to activate his or her account over the telephone with a GREENSKY employee or via an activation website (other than via a link sent to a verified email address or telephone number as described in Section 2.I(E) of this Assurance), GREENSKY's policies will require that GREENSKY use knowledge-based authentication procedures or other comparably effective authentication procedures in connection with activating an account to establish that the BORROWER is completing the ACCOUNT ACTIVATION PROCESS, including obtaining a BORROWER's authorization for loan proceeds to be disbursed.

G.     GREENSKY shall send or make available to every BORROWER a copy of his or her LOAN AGREEMENT electronically within one (1) business day of acceptance of the loan offer via a secure process described in an electronic communication to the extent the BORROWER provides a valid email address, mobile telephone number, or other valid means of electronic communication, and/or physically via the United States Postal Service within five (5)

business days of acceptance of the loan offer.

H.    The LOAN AGREEMENT shall include all disclosures and information required under state and federal law, including the Truth in Lending Act, where applicable.

I.    In accordance with 16 C.F.R. Part 429 and applicable analogous STATE laws, within three (3) business days of e-signing the LOAN AGREEMENT or longer if required by relevant state law, a BORROWER may cancel or rescind his or her loan for any reason by contacting GREENSKY. GREENSKY shall have policies and procedures providing that in accordance with 16 C.F.R. Part 429 and applicable analogous STATE laws, if a BORROWER cancels or rescinds his or her loan within three (3) business days of e-signing the LOAN AGREEMENT or longer if required by relevant state law, there will be no liability for the BORROWER as to the loan.

J.    GREENSKY shall not fund an increase to a BORROWER's CREDIT LIMIT after the BORROWER has entered into a LOAN AGREEMENT, unless GREENSKY obtains and retains evidence from the BORROWER of the BORROWER's authorization of the CREDIT LIMIT increase, consistent with the ACCOUNT ACTIVATION PROCESS set forth in Sections 2.I(A)-2.I(G) of this Assurance.

II.    **AUTHORIZATION FOR TRANSACTIONS**

GREENSKY and GREENSKY's officers, directors, employees, personnel, agents, and representatives who have responsibilities related to the subject matter of this Assurance and who receive actual notice of this Assurance, whether acting directly or indirectly, shall comply with the following:

A.    GREENSKY shall have procedures and training materials requiring that GREENSKY obtain and retain evidence of approval by a BORROWER of a TRANSACTION

11

before funds are disbursed by a PARTICIPATING LENDER to a GREENSKY PROGRAM MERCHANT in connection therewith, provided that such approval for a TRANSACTION may be collected during the ACCOUNT ACTIVATION PROCESS required by this Assurance.

B.      Notwithstanding Section 2.II(A). of this Assurance, GREENSKY shall maintain a TRANSACTION confirmation process (the "TRANSACTION CONFIRMATION PROCESS") whereby it will send notices of TRANSACTIONs to BORROWERs via email and/or text messages in accordance with applicable law within three business days of the time the GREENSKY PROGRAM MERCHANT initiates or processes a TRANSACTION unless the email address or mobile telephone number is identified as undeliverable or the BORROWER has requested not to be contacted through such methods. These email and text TRANSACTION alerts will be in addition to regular monthly billing statement processes and will be designed to provide BORROWERs with prompt notice about account activity. The email and text alerts will notify the BORROWER of the specific TRANSACTION amount processed by the GREENSKY PROGRAM MERCHANT and will, *at a minimum*, include a direction to the BORROWER to contact GREENSKY if they do not recognize the TRANSACTION and the means for the BORROWER to object to any TRANSACTION for any reason, including a BORROWER's decision to cancel the contract with the GREENSKY PROGRAM MERCHANT. In the event a BORROWER rejects a TRANSACTION confirmation alert and a TRANSACTION has posted to the BORROWER's account, the TRANSACTION CONFIRMATION PROCESS shall provide that a case is opened and assigned to the CUSTOMER SOLUTIONS TEAM to review and engage with the BORROWER and GREENSKY PROGRAM MERCHANT, as necessary, in an attempt to resolve the rejection, including whether the rejection is a COMPLAINT or the BORROWER wants the rejection treated as a COMPLAINT. If GREENSKY determines that the

rejection is a COMPLAINT, GREENSKY will follow the COMPLAINT resolution procedures set forth in this Assurance.

C.    A BORROWER is not liable for TRANSACTIONs that GREENSKY determines the BORROWER did not authorize.

## III.    MERCHANT VETTING PROCEDURES AND OVERSIGHT DUTIES APPLICABLE TO GREENSKY PROGRAM MERCHANTs

GREENSKY and GREENSKY's officers, directors, employees, personnel, agents, and representatives who have responsibilities related to the subject matter of this Assurance and who receive actual notice of this Assurance, whether acting directly or indirectly, shall comply with the following:

A.    GREENSKY shall have policies, procedures, and training materials governing its oversight, risk management, and audit of GREENSKY PROGRAM MERCHANTs, including policies, procedures, and training materials reasonably designed to prevent and prohibit GREENSKY PROGRAM MERCHANTs from engaging in misrepresentations or deceptive conduct, including, but not limited to, applying for loans without BORROWER's knowledge or authorization, and misrepresenting the terms of GREENSKY PROGRAM loans or improperly initiating TRANSACTIONs that are not compliant with the GREENSKY PROGRAM.

B.    Prior to admitting a GREENSKY PROGRAM MERCHANT into the GREENSKY PROGRAM, GREENSKY shall conduct a commercially reasonable risk review for items such as reputation risk, insolvency risk, fraud risk, and business licensing and registration. As technology and sources can evolve over time, it is acknowledged that such risk reviews and the manner in which GreenSky conducts them may change over time. During the term of this Assurance, GREENSKY agrees that this risk review shall include, without limitation, the following components (which may be accomplished in such commercially

13

reasonable manner as GREENSKY may determine): a business reputation review of the GREENSKY PROGRAM MERCHANT; a review of the GREENSKY PROGRAM MERCHANT's entity status with the applicable Secretary of State; a credit history review of the GREENSKY PROGRAM MERCHANT; and a business license review for state licenses applicable to the business identified in the GREENSKY PROGRAM MERCHANT's application. On an annual basis, GREENSKY will provide notice to the ATTORNEYS GENERAL if GREENSKY ceases to include any of the foregoing components referenced in the preceding sentence of Section 2.III(B) during the term of this Assurance.

C.      GREENSKY shall have policies and procedures requiring that a GREENSKY PROGRAM MERCHANT representative attends a training on the GREENSKY PROGRAM within 30 days of the GREENSKY PROGRAM MERCHANT's enrollment as a GREENSKY PROGRAM MERCHANT. Such training may be internet-based.

D.      GREENSKY shall have policies and procedures requiring that each GREENSKY PROGRAM MERCHANT employee who intakes, facilitates, or submits consumer loan applications: (1) attends both an initial and subsequent annual internet-based training on their obligations under the PROGRAM AGREEMENT, including loan application submission procedures, the TRANSACTION CONFIRMATION PROCESS set forth in this Assurance, and requirements related to offering the GREENSKY PROGRAM to BORROWERs, including that GREENSKY PROGRAM MERCHANTs shall not provide any misleading or incomplete information regarding the GREENSKY PROGRAM or loan terms under the GREENSKY PROGRAM to BORROWERs and (2) passes a knowledge test on loan application submission procedures, following the initial internet-based training before the employee may begin intaking, facilitating, or submitting loan applications. GREENSKY shall have a process to verify the

14

attendance at all required initial and annual trainings of all GREENSKY PROGRAM

MERCHANT employees required to receive such training.

1.      This provision shall not prevent a GREENSKY PROGRAM

MERCHANT employee who has not received such training from assisting consumers in

contacting GREENSKY, and then having the consumer directly communicate with GREENSKY

to apply for a GREENSKY PROGRAM loan.

2.      This provision shall not prevent the GREENSKY PROGRAM from using

unassisted application methods, such as an "email to apply" process that allows GREENSKY to

send a loan application directly to the BORROWER to complete and submit the loan application

without the GREENSKY PROGRAM MERCHANT's assistance or "web buttons" that may be

placed on a GREENSKY PROGRAM MERCHANT's web site or other public-facing Internet

sites that allow BORROWERs to complete and submit a loan application without the

GREENSKY PROGRAM MERCHANT's assistance, provided that GREENSKY will deploy

controls for such unassisted application methods designed to ensure BORROWERs are directly

submitting the loan application, and provided that such unassisted application methods will

provide information on how a BORROWER may contact GREENSKY with any questions.

E.      The PROGRAM AGREEMENT shall require that GREENSKY PROGRAM

MERCHANTs warrant and represent that the GREENSKY PROGRAM MERCHANT has

retained and will retain all required licenses, permits, approvals, and certifications that are

required under applicable law to conduct its business, to participate in the GREENSKY

PROGRAM, and to perform its obligations under the GREENSKY PROGRAM MERCHANT's

agreement with any BORROWER. The PROGRAM AGREEMENT also shall require that

GREENSKY PROGRAM MERCHANTs provide evidence of such licenses, permits, approvals,

or certifications upon request by GREENSKY.

1.    GREENSKY shall have policies and procedures requiring that a record of any license provided by a GREENSKY PROGRAM MERCHANT for the business conducted under the GREENSKY PROGRAM is maintained. GREENSKY shall have policies and procedures requiring that if any such license provided by a GREENSKY PROGRAM MERCHANT expires and the GREENSKY PROGRAM MERCHANT fails to provide proof of active license, then the GREENSKY PROGRAM MERCHANT will not be permitted to have their customers submit applications for new loans under the GREENSKY PROGRAM until an active license is provided to GREENSKY.

2.    GREENSKY shall have procedures requiring that upon receipt of a COMPLAINT alleging that a GREENSKY PROGRAM MERCHANT lacks one or more specific necessary licenses, permits, approvals, and/or certifications required by state and/or federal laws or regulations to conduct the business provided under the GREENSKY PROGRAM, GREENSKY shall (a) within 30 days of receiving the COMPLAINT, request from the GREENSKY PROGRAM MERCHANT copies of all such referenced licenses, permits, approvals, and/or certifications; and (b) provide the response from the GREENSKY PROGRAM MERCHANT to the complainant.

F.    GREENSKY shall have procedures regarding conducting GREENSKY PROGRAM MERCHANT monitoring to assess whether active GREENSKY PROGRAM MERCHANTs continue to meet GREENSKY's standards.

G.    GREENSKY shall have processes to contact BORROWERs to assess customer satisfaction.

H.    The PROGRAM AGREEMENT shall require that GREENSKY PROGRAM

16

MERCHANTs provide GREENSKY with a copy of any written COMPLAINT or a report of any verbal COMPLAINT (1) asserted by or received from a governmental or regulatory authority related to GOODs or SERVICEs funded, in whole or in part, by a loan created pursuant to the GREENSKY PROGRAM or related to the GREENSKY PROGRAM, or (2) regarding the GREENSKY PROGRAM, that the GREENSKY PROGRAM MERCHANT receives within five (5) business days of the GREENSKY PROGRAM MERCHANT becoming aware of such COMPLAINT. GREENSKY shall review and keep a log of all COMPLAINTs submitted by GREENSKY PROGRAM MERCHANTs to GREENSKY.

I.      The PROGRAM AGREEMENT shall require that GREENSKY PROGRAM MERCHANTs represent and warrant that they will comply with all applicable laws, rules, and regulations, including the following as applicable to the GREENSKY PROGRAM MERCHANT: the Federal Trade Commission's Cooling Off Rule, 16 C.F.R. § 429.0, et seq.; Alaska's Sale by Door-to-Door Solicitation Act, AS 45.02.350; Florida Statutes § 501.025; O.C.G.A. §§ 10-1-20 through 10-1-27; Texas Business & Commerce Code §§ 601.001, et seq.; D.C. Code § 28–3811; ALA. CODE § 8-19-1 et seq.; and the Federal Trade Commission's Mail Order Rule, 16 C.F.R. § 435.1, et seq.

J.      The PROGRAM AGREEMENT shall require that GREENSKY PROGRAM MERCHANTs cooperate with GREENSKY in responding to COMPLAINTs, which cooperation may include providing documents evidencing a BORROWER's authorization to submit a credit application or evidencing any other matter related to the GREENSKY PROGRAM MERCHANT's obligations under its contractual agreement with the BORROWER and/or the PROGRAM AGREEMENT.

K.      GREENSKY shall perform ongoing monitoring of COMPLAINTs trends of

GREENSKY PROGRAM MERCHANTs. Such monitoring will be designed to identify issues related to COMPLAINTs regarding individual GREENSKY PROGRAM MERCHANTs that exceed GREENSKY's applicable risk tolerance thresholds. GREENSKY shall, upon request, make available summary reports of this monitoring activity to the requesting ATTORNEY GENERAL.

L.      GREENSKY shall have oversight and risk management protocols that are designed to identify GREENSKY PROGRAM MERCHANTs that violate loan application, activation, or TRANSACTION CONFIRMATION policies and procedures. The protocols will identify disciplinary steps to be taken in connection with potentially problematic GREENSKY PROGRAM MERCHANTs. Such disciplinary action shall be escalating and shall include retraining, enhanced monitoring, and other action GREENSKY deems appropriate given the identified GREENSKY PROGRAM MERCHANT behavior, including suspension and termination as described in Sections 2.III(M) and 2.III(N).

M.      GREENSKY shall have policy and procedure documents to establish an escalating disciplinary framework for GREENSKY PROGRAM MERCHANTs that GREENSKY determines have materially violated loan application submission, activation, or TRANSACTION CONFIRMATION policies and procedures described herein. This framework will address preventative controls (such as the ACCOUNT ACTIVATION PROCESS described herein) and detective controls designed to monitor GREENSKY PROGRAM MERCHANT employee behavior and trigger disciplinary action, up to and including GREENSKY PROGRAM MERCHANT suspension and termination. The detective controls shall include identifying GREENSKY PROGRAM MERCHANTs that have confirmed COMPLAINTS related to unauthorized loans associated with accounts originated following the deployment of the

preventative controls described above.

N.      GREENSKY shall have policy and procedure documents to establish an escalating disciplinary framework, including suspension and termination, for any GREENSKY PROGRAM MERCHANT that GREENSKY determines has materially violated (a) GREENSKY's PROGRAM AGREEMENT, including lacking the license(s) to perform the applicable SERVICEs, or (b) loan application submission, activation, or transaction approval policies or procedures, where GREENSKY determines that such violation is such that it creates material risks to GREENSKY, BORROWERs, and/or consumers. GREENSKY shall, subject to its disciplinary framework, including suspension and termination, GREENSKY PROGRAM MERCHANTs that GREENSKY determines demonstrate a concerning, continuing pattern of COMPLAINTs.

O.      GREENSKY shall retain copies of its contractual agreements with GREENSKY PROGRAM MERCHANTs (including the PROGRAM AGREEMENTs) for a period of at least five (5) years following the expiration of each contractual agreement and PROGRAM AGREEMENT.

## IV.    ADDITIONAL PROTECTIONS FOR VULNERABLE ADULTS

GREENSKY and GREENSKY's officers, directors, employees, personnel, agents, and representatives who have responsibilities related to the subject matter of this Assurance and who receive actual notice of this Assurance, whether acting directly or indirectly, shall comply with the following:

A.      GREENSKY shall maintain a program to make telephone calls to SENIOR CITIZEN BORROWERs, based on the age information of the BORROWER reported in the loan

application, and shall use risk-based criteria to select the percentage of SENIOR CITIZEN BORROWERs who receive such calls.

B.    During such calls, to the extent the SENIOR CITIZEN BORROWER agrees to speak with GREENSKY personnel, GREENSKY personnel shall confirm (1) that the SENIOR CITIZEN BORROWER authorized the loan application, (2) that the SENIOR CITIZEN BORROWER understands the loan terms, and (3) that the SENIOR CITIZEN BORROWER knows how to contact the GREENSKY PROGRAM MERCHANT and GREENSKY with any COMPLAINT.

C.    GREENSKY shall maintain policies and procedures that require any COMPLAINT that alleges a BORROWER was taken advantage of because of the BORROWER's age or disability to be escalated to a second line department (*i.e.*, Compliance, Risk, or Legal).

D.    GREENSKY shall provide periodic communications to GREENSKY PROGRAM MERCHANTs regarding effectively communicating with SENIOR CITIZENs and identifying SENIOR CITIZENs who may be the victim of elder abuse, fraud, or exploitation.

E.    GREENSKY shall have policies and procedures regarding GREENSKY notifying Adult Protective Services or other similar agency in the relevant STATE if GREENSKY has reason to believe that a BORROWER who is a VULNERABLE ADULT in one of the STATES is the victim of elder abuse, fraud, or exploitation in connection with a GREENSKY PROGRAM.

## V.    RESOLUTION OF BORROWER COMPLAINTS

GREENSKY and GREENSKY's officers, directors, employees, personnel, agents, and representatives who have responsibilities related to the subject matter of this Assurance and who receive actual notice of this Assurance, whether acting directly or indirectly, shall comply with

20

the following:

A.      **Complaint Resolution Procedures.**

1.      The CUSTOMER SOLUTIONS TEAM shall oversee GREENSKY's complaint resolution process. GREENSKY shall have policies and procedures under which each BORROWER who initiates a COMPLAINT shall have an assigned point of contact within the CUSTOMER SOLUTIONS TEAM for the duration of his or her COMPLAINT.

2.      If a COMPLAINT is submitted, then GREENSKY shall have policies and procedures providing that, within five (5) business days of receiving such COMPLAINT and provided the COMPLAINT remains unresolved, place a block against any additional TRANSACTIONs with respect to the BORROWER, place a provisional credit on the BORROWER's account, and place the BORROWER on a do-not-call list that prevents GREENSKY from making collections calls to the BORROWER, until the COMPLAINT is resolved.

3.      GREENSKY shall work in good faith to resolve (a) COMPLAINTs concerning allegations that a GREENSKY PROGRAM MERCHANT failed to meet its obligations under the GREENSKY PROGRAM AGREEMENT or its contract with a BORROWER, (b) COMPLAINTs concerning allegations that GREENSKY PROGRAM MERCHANT failed to provide GOODs or SERVICEs as agreed with a BORROWER in the MERCHANT's contractual agreement with the BORROWER, and (c) COMPLAINTs concerning allegations surrounding the misleading or incomplete explanation of loan terms, consistent with GREENSKY's complaint policies and procedures.

4.      A COMPLAINT is resolved against the BORROWER only if GREENSKY determines in good faith that the evidence supports it. GREENSKY shall have

policies and procedures providing that until the COMPLAINT is resolved, the BORROWER shall not be required to make any loan payment on an amount related to the disputed GOODs or SERVICEs and GREENSKY shall not make or threaten to make an adverse report to any PERSON about the BORROWER's credit standing, or report that an amount or account is delinquent, because the BORROWER failed to pay the disputed amount or related finance or other related charges.

    B.    **Borrower Relief.**

    1.    GREENSKY shall have policies and procedures providing that once a resolution on a COMPLAINT is reached GREENSKY will: (a) attempt to contact the BORROWER via telephone to discuss the resolution, (b) send confirmation of the resolution to the BORROWER, and (c) close out the complaint in the COMPLAINT MANAGEMENT SYSTEM. GREENSKY may also reverse any provisional credit, resume regular credit reporting, and/or unlock the BORROWER's account. If a COMPLAINT is resolved in the BORROWER's favor, a BORROWER may receive non-monetary or monetary relief, as determined by GREENSKY, which may include: the MERCHANT taking steps reasonably requested by the BORROWER, GREENSKY facilitating revision of the BORROWER's loan terms with their PARTICIPATING LENDER, GREENSKY requesting that the appropriate credit agencies remove a credit inquiry and/or trade line, and/or returning funds to the BORROWER or reducing the balance owed to the PARTICIPATING LENDER on the BORROWER's loan.

    2.    If a COMPLAINT concerning an unauthorized loan or an unauthorized TRANSACTION is resolved in the BORROWER's favor because GREENSKY does not possess or cannot obtain evidence of authorization for such loan or TRANSACTION, GREENSKY shall facilitate with the PARTICIPATING LENDER to make the BORROWER whole within ten (10)

22

business days of said resolution by: (i) canceling the BORROWER's loan if the loan was

unauthorized or canceling the TRANSACTION if the TRANSACTION was unauthorized; (ii)

issuing a permanent account credit on the BORROWER's account if the loan was unauthorized;

and (iii) refunding the BORROWER an amount that would make the BORROWER whole by

refunding to the BORROWER any amounts paid on the unauthorized loan or the unauthorized

TRANSACTION, as applicable.

3.      If the COMPLAINT is resolved in the BORROWER's favor,

GREENSKY shall also submit a request to update or correct any incorrect or inaccurate

information furnished to a Credit Reporting Agency in the subsequent reporting cycle following

the resolution of the COMPLAINT.

C.      **Communications with Attorneys General.**

1.      GREENSKY shall designate one or more management level employees to

be the primary contact for the ATTORNEYS GENERAL for communications regarding

COMPLAINTs and inquiries from individual BORROWERs that are received by any of the

ATTORNEYS GENERAL.

2.      GREENSKY shall provide an initial written response to all such

COMPLAINTs and inquiries received from the ATTORNEYS GENERAL within fourteen (14)

business days of its receipt of a COMPLAINT or inquiry or within an otherwise reasonable time

frame communicated to the relevant BORROWER and ATTORNEY GENERAL.

3.      GREENSKY shall provide information regarding the BORROWER's

COMPLAINT or inquiry to the relevant BORROWER and to the relevant ATTORNEY

GENERAL upon written request.

D.      **GreenSky Complaint Resolution Compliance.** To implement the requirements

of the Assurances, GREENSKY shall:

1.      Revise its consumer complaint management program, as necessary, including by acquiring and allocating all reasonably necessary systems and staff, employee training, and written company policies, practices, and procedures, including specific standards of investigation and COMPLAINT resolution;

2.      As outlined above in Section 2.III(K), review and analyze COMPLAINTs on a reasonably routine basis for the purpose of identifying trends or emerging issues;

3.      As outlined above in Section 2.III(L), review COMPLAINTs history as part of a risk-based process to monitor GREENSKY PROGRAM MERCHANTs and identify GREENSKY PROGRAM MERCHANTs potentially involved in violations of GREENSKY PROGRAM requirements that pose material risk of consumer harm; and

4.      Periodically revise policies and procedures as appropriate, and implement updated practices or solutions, designed to reasonably prevent violations of the CONSUMER STATUTES by GREENSKY, including, but not limited to, unauthorized loans and/or unauthorized TRANSACTIONs.

5.      On an annual basis, conduct a review of policies and procedures to confirm that policies and procedures are designed to reasonably prevent further BORROWER harm (e.g., suspension or termination of a GREENSKY PROGRAM MERCHANT) and remediate BORROWER harm, including, but not limited to, unauthorized loans and/or unauthorized TRANSACTIONs.

## VI.    COMPLIANCE REPORTS, MONITORING, AND RECORDKEEPING PROVISIONS

### A.    Independent Assessments of Compliance

1.      GREENSKY must obtain an initial assessment from an independent

third-party professional selected by GREENSKY and approved by the ATTORNEYS

GENERAL ("ASSESSOR") and annual assessments from the ASSESSOR thereafter for a total

period of five (5) years (each an "ASSESSMENT" and collectively the "ASSESSMENTS"). The

ASSESSMENTS must cover: (1) the period from the EFFECTIVE DATE to one hundred and

eighty (180) days after the EFFECTIVE DATE; and (2) each one-year period thereafter for the

next four (4) years. GREENSKY must submit each ASSESSMENT to the ATTORNEYS

GENERAL within thirty (30) days of GREENSKY's receipt thereof from the ASSESSOR.  Each

ASSESSMENT may collectively cover the relevant requirements under this Assurance and the

Other Assurances in a single ASSESSMENT.

2.      Each ASSESSMENT must evaluate whether GREENSKY has effectively

implemented and maintained the requirements set forth in the Loan Application and

Authorization provisions contained in Section 2.I, the Authorization for Transactions provisions

contained in Section 2.II, the Merchant Vetting Procedures and Oversight Duties provisions

contained in Section 2.III, the additional protections for VULNERABLE ADULTS contained in

Section 2.IV, and the Resolution of BORROWER COMPLAINTS provisions contained in

Section 2.V, and make recommendations to remediate or cure any ineffective implementation or

maintenance of the requirements set forth in this Assurance.

3.      GREENSKY and the ASSESSOR shall confer in good faith to determine

what information is reasonably necessary for the ASSESSOR to conduct the ASSESSMENTS.

GREENSKY shall provide the ASSESSOR information in its possession, custody, or control that

GREENSKY and the ASSESSOR mutually deem reasonably necessary for the ASSESSMENTS.

GREENSKY shall provide the information to the ASSESSOR within a reasonable time after

25

receipt of the request for information after the Assurance has been entered.

4.      No finding of any ASSESSMENT shall rely solely on assertions or attestations by GREENSKY's management. The ASSESSMENT shall be signed by the ASSESSOR and shall state that the ASSESSOR conducted an independent review and did not rely solely on assertions or attestations by GREENSKY's management.

5.      All costs and expenses of the ASSESSOR, including taxes, shall be paid by GREENSKY directly to the ASSESSOR.

6.      No later than 30 days after the SETTLEMENT ADMINISTRATOR has completed redress administration under the REDRESS PLAN and the redress plans under the Other Assurances, GREENSKY shall submit to the ATTORNEYS GENERAL a report regarding the COMPLAINTS where CASH REDRESS or CREDIT REDRESS was provided under the terms of this Assurance and REDRESS PLAN and the Other Assurances and their redress plans. The report must identify (i) the number of COMPLAINTs that were considered for CASH REDRESS or CREDIT REDRESS, including the number of COMPLAINTs in each STATE as reflected by the STATE identified as the BORROWER's address at the time of the COMPLAINT, (ii) the total amount of CASH REDRESS distributed and CREDIT REDRESS applied, (iii) the number and amount of setoffs granted, (iv) the amount of the CASH REDRESS checks deposited by BORROWERs, and (v) the number of tradelines deleted to correct inaccurate consumer reports.

7.      For a period of five (5) years after the EFFECTIVE DATE, GREENSKY shall retain its records of all COMPLAINTS received by GREENSKY or submitted to GREENSKY by a GREENSKY PROGRAM MERCHANT. The records must identify, at a minimum and to the extent the information is reasonably available to GREENSKY, a unique

26

identifier for the BORROWER; the BORROWER's age; the state identified as the BORROWER's address at the time of the COMPLAINT; the name of the GREENSKY PROGRAM MERCHANT at issue; the COMPLAINT date; a summary of the COMPLAINT; and the resolution of the COMPLAINT, including any monetary amounts refunded or credited to the BORROWER or to the loan (including by GREENSKY or the GREENSKY PROGRAM MERCHANT). GREENSKY shall, upon request, make available to the requesting ATTORNEY GENERAL within a reasonable time period COMPLAINTs in categories covered by this Assurance received by GREENSKY or submitted to GREENSKY by a GREENSKY PROGRAM MERCHANT.

8.    GREENSKY shall submit notice within fourteen (14) days of any change in (a) any designated point of contact identified by GREENSKY pursuant to Section 2.V(C)(1) of this Assurance, or (b) the entity structure of GREENSKY or any entity that GREENSKY has an ownership interest in or controls, directly or indirectly, that may affect GREENSKY's compliance obligations arising under this Assurance, including the merger, sale, or dissolution of the entity or any subsidiary or affiliate that engages in any acts or practices subject to this Assurance.

9.    GREENSKY must submit notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against GREENSKY within fourteen (14) days of its filing.

B.    **Compliance Monitoring.**

1.    For matters concerning this Assurance, representatives of the RELEVANT ATTORNEY GENERAL are authorized to communicate directly with GREENSKY. GREENSKY shall permit representatives of the RELEVANT ATTORNEY GENERAL to

interview anyone affiliated with GREENSKY who has agreed to such an interview. The interviewee may have counsel present, and counsel for GREENSKY may also be present.

2.    The RELEVANT ATTORNEY GENERAL may use all other lawful means, including posing through its representatives as consumers, suppliers, or other individuals or entities, to GREENSKY or any individual or entity affiliated with GREENSKY, without the necessity of identification or prior notice. Nothing in this Assurance limits the RELEVANT ATTORNEY GENERAL's lawful use of compulsory process, pursuant to the laws of the RELEVANT STATE.

**C.    Recordkeeping.**

GREENSKY shall retain the following records for five (5) years after the EFFECTIVE DATE:

1.    All documents and records necessary to demonstrate compliance with each provision of this Assurance, including all submissions to the ATTORNEYS GENERAL;

2.    Copies of all sales scripts, training materials, advertisements, public-facing webpages on GREENSKY-controlled websites, and other marketing materials, including any such materials used by a third party on GREENSKY's behalf that are in GREENSKY's possession;

3.    All COMPLAINTs and refund requests (whether received directly or indirectly, such as through a third party), and any responses to those COMPLAINTs or refund requests;

4.    Records showing, for each GREENSKY employee providing services related to any GREENSKY PROGRAM loans, that person's name, telephone number, email, physical or postal address, job title or position, dates of service, and, if applicable, the reason for

28

termination; and

5.    Records showing, for each GREENSKY PROGRAM MERCHANT and for any other service provider providing services related to the GREENSKY PROGRAM loans that has responsibilities related to the subject matter of this Assurance, the dates of service, and, if applicable, the reason for termination, as well as the name of a point of contact, and that person's telephone number, email, physical or postal address, and job title or position.

## VII.    MISCELLANEOUS PROVISIONS

**A.    Whistleblower Provisions.** GREENSKY shall maintain policies and procedures informing all employees at any level that they can report, without repercussion or retaliation, to senior management level employees any actual or potential deficiencies or issues that arise with regard to GREENSKY's operations, duties, and responsibilities, including those arising under this Assurance. Such policies and procedures shall include the maintenance of a toll-free hotline which allows for anonymous reporting.

**B.    Cooperation.** GREENSKY shall cooperate with representatives of the RELEVANT ATTORNEY GENERAL in any investigation or case related to or associated with the subject of this Assurance. GREENSKY shall provide truthful and complete information, evidence, and testimony. GREENSKY shall use its reasonable best efforts to cause its officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that the RELEVANT ATTORNEY GENERAL representative may reasonably request upon five (5) business days' written notice, or other reasonable notice, at such places and times as the RELEVANT ATTORNEY GENERAL representative may reasonably designate, without the service of a subpoena. The individuals may have counsel present, and counsel for GREENSKY may also be present.

**C.      Acknowledgements of the Assurance**

1.      For five (5) years after the EFFECTIVE DATE, GREENSKY shall deliver a copy of this Assurance to: (1) all of its officers, directors, employees, personnel, agents, and representatives who have responsibilities related to the subject matter of this Assurance; and (2) any business entity resulting from any change in structure as set forth in Section 2.VI(A)(8) of this Assurance. Delivery must occur within thirty (30) calendar days after the EFFECTIVE DATE of this Assurance for current personnel. For all others, delivery must occur before they assume their responsibilities.

2.      From each PERSON to whom GREENSKY delivered a copy of this Assurance, GREENSKY must use reasonable best efforts to obtain, within thirty (30) calendar days, a signed and dated acknowledgment of receipt of this Assurance. Electronic signatures and acknowledgements of receipt shall be acceptable to comply with this provision.

3.      As the terms of this Assurance and the Other Assurances are substantially similar, the RELEVANT ATTORNEY GENERAL agrees that GREENSKY's notice obligations pursuant to this Assurance, including Section 2.VII(C)(1), Section 2.VII(C)(2), and the obligations related to GREENSKY and GREENSKY's officers, directors, employees, personnel, agents, and representatives who have responsibilities related to the subject matter of this Assurance who receive actual notice of this Assurance, may be satisfied by providing either this Assurance or any of the Other Assurances to such PERSONs and receiving from such PERSONs an acknowledgment of receipt for the applicable Assurance provided. Only a single Assurance need be provided.

### D.  Implementation

1.    To the extent that additions and/or revisions to GREENSKY's policies, procedures, practices, or other documentation are necessary to comply with the terms of this Assurance, GREENSKY shall have ninety (90) days from the EFFECTIVE DATE to implement such additions and/or revisions. To the extent additions and/or revisions to GREENSKY's trainings for GREENSKY PROGRAM MERCHANT employees are necessary to comply with the terms of this Assurance, GREENSKY shall have ninety (90) days from the EFFECTIVE DATE to implement such additions and/or revisions to its trainings, and such trainings will then be presented to the applicable GREENSKY PROGRAM MERCHANT employees in accordance with GREENSKY's standard schedule for such trainings.

### E.  Termination

1.    The injunctive terms of the Assurances will terminate five (5) years from the EFFECTIVE DATE. The injunctive terms of this Assurance will remain effective and enforceable until such time, except to the extent that any provisions have been amended, suspended, waived, or terminated in writing by the RELEVANT ATTORNEY GENERAL or its designated agent in accordance with the terms of this Assurance.

### 3.    MONETARY PAYMENT

No later than thirty (30) days after the EFFECTIVE DATE, pursuant to the Assurances, GREENSKY must pay a total of THREE MILLION, FIVE HUNDRED THOUSAND DOLLARS AND ZERO CENTS ($3,500,000.00): FIVE HUNDRED SEVENTY-FIVE THOUSAND ONE HUNDRED SIX DOLLARS AND SIXTEEN CENTS ($575,106.16) of which shall be designated as civil penalties and TWO MILLION, NINE HUNDRED TWENTY-FOUR THOUSAND EIGHT HUNDRED NINETY-THREE DOLLARS AND EIGHTY-FOUR

CENTS ($2,924,893.84) of which shall be designated as reimbursement for attorneys' fees and costs (or for such other purposes as otherwise agreed in an Assurance) (collectively, in total, the "PAYMENT"). The PAYMENT shall be divided among the STATES as directed by the ATTORNEYS GENERAL. The portion of the PAYMENT to the RELEVANT STATE shall be paid by GREENSKY directly to the RELEVANT ATTORNEY GENERAL, on behalf of the RELEVANT STATE, in the amount(s) designated by the ATTORNEYS GENERAL and in accordance with instructions for payment provided by the RELEVANT ATTORNEY GENERAL.

In accordance with the above provisions, the portion of the PAYMENT to be paid to the RELEVANT STATE will be paid by GREENSKY as follows:

I.      GREENSKY must pay to the RELEVANT ATTORNEY GENERAL, on behalf of the RELEVANT STATE, FOUR HUNDRED TWENTY-FOUR THOUSAND, EIGHT HUNDRED NINETY THREE DOLLARS and EIGHTY FOUR CENTS ($424,893.84) and such amount may be used for purposes that may include, but are not limited to, additional attorneys' fees, and other costs of investigation and litigation, or be placed in, or applied to, any consumer protection enforcement or revolving fund, including future consumer protection enforcement or litigation, consumer education, or for other uses permitted by state law, at the sole discretion of the RELEVANT ATTORNEY GENERAL.  The RELEVANT ATTORNEY GENERAL shall thereafter allocate and distribute the payment received pursuant to this paragraph as the RELEVANT ATTORNEY GENERAL determines is reasonable, in its sole business judgment.

II.      GREENSKY must pay to the RELEVANT ATTORNEY GENERAL, on behalf of the RELEVANT STATE, TWO HUNDRED THIRTY-NINE THOUSAND AND THIRTY-SEVEN DOLLARS and NO CENTS ($239,037.00) to reimburse attorneys' fees and costs.

## 4.    ENFORCEMENT

I.    The provisions of this Assurance are enforceable by the RELEVANT ATTORNEY GENERAL. The RELEVANT ATTORNEY GENERAL may make such application as appropriate to enforce or interpret the provisions of this Assurance, or, in the alternative, may maintain any action within their legal authority. In any action to enforce this Assurance, the RELEVANT ATTORNEY GENERAL may seek any appropriate relief authorized by law.

II.    An enforcement action under this Assurance may be brought solely by the RELEVANT ATTORNEY GENERAL. No provisions of this Assurance shall be construed as providing a private right of action to enforce the terms of this Assurance, nor shall any provision of this Assurance be construed as a release of any claim that a BORROWER or PERSON may have against GREENSKY.

## 5. RELEASE

I.    Following full payment of the amounts due under this Assurance, the RELEVANT ATTORNEY GENERAL hereby releases and discharges the GREENSKY RELEASEES from all civil claims that the RELEVANT ATTORNEY GENERAL could have brought under the CONSUMER STATUTES on or prior to the EFFECTIVE DATE, but solely to the extent such claims arise from GREENSKY'S conduct during the COVERED CONDUCT period.

II.    Notwithstanding any term of this Assurance, the following are specifically reserved and excluded from the release in Section 5(I) of this Assurance:

A.    Any criminal liability that any person or entity, including GREENSKY, has or may have to the STATES;

B.    State or federal antitrust violations;

C.    State or federal securities violations;

D.    State or federal tax claims; and

33

E.    Any criminal, civil, or administrative claims against GREENSKY by any other agency or subdivision of the STATES.

III.    Nothing contained in this Assurance shall be construed to create, waive, limit, settle, release, or resolve any private right of action, including but not limited to such private causes of action, claims, or remedies that could be brought under the CONSUMER STATUTES.

## 6.    PRESERVATION OF AUTHORITY

Nothing in this Assurance shall be construed to limit the authority or ability of the RELEVANT ATTORNEY GENERAL to protect the interests of the RELEVANT STATE or the people of the RELEVANT STATE. This Assurance shall not bar the RELEVANT ATTORNEY GENERAL or any other governmental entity from enforcing laws, regulations, or rules against GREENSKY for conduct subsequent to or otherwise not covered by this Assurance or the REDRESS PLAN. Further, nothing in this Assurance shall be construed to limit the ability of the RELEVANT ATTORNEY GENERAL to enforce the obligations that GREENSKY has under this Assurance.

## 7.    GENERAL PROVISIONS

I.    This Assurance is entered into by the PARTIES as their own free and voluntary act and with full knowledge and understanding of the obligations and duties imposed by this Assurance.

II.    The PARTIES have fully reviewed the terms of this Assurance, and the rule that uncertainty or ambiguity is to be construed against the drafter shall not apply to the construction or interpretation of this Assurance. In addition, the words "include" and "including" shall be interpreted as "include, without limitation," and "including, without limitation," respectively.

III.    This Assurance contains the entire agreement between the PARTIES and supersedes any prior oral or written communications, discussions, or understandings. Except as otherwise provided herein, and subject to any additional requirements applicable in the RELEVANT

34

STATE, this Assurance shall be modified only by Court approval, if necessary, or by a written instrument signed by or on behalf of the PARTIES.

IV.   Except as otherwise explicitly provided in this Assurance, nothing in this Assurance shall be construed to limit the authority of the RELEVANT ATTORNEY GENERAL to protect the interests of the RELEVANT STATE or the people of the RELEVANT STATE.

V.   If any clause, provision, or section of this Assurance is held illegal, invalid, or unenforceable for any reason, such illegality, invalidity, or unenforceability shall not affect any other clause, provision, or section of this Assurance, and this Assurance shall be construed and enforced as if such illegal, invalid, or unenforceable clause, section, or provision had not been contained herein.

VI.   This Assurance is not intended for use by any third-party in any other proceeding and is not intended, and should not be construed as, an admission of any wrongdoing or liability by GREENSKY, the GREENSKY RELEASEEs, or GREENSKY's current or former parent companies.

VII.   Each of the PARTIES represents and warrants that an authorized representative of such PARTY has signed this Assurance with full knowledge, understanding, and acceptance of its terms and that the representative has done so with authority to legally bind such PARTY.

VIII.   Unless otherwise prohibited by law, any signatures by the PARTIES required for entry of this Assurance may be executed in counterparts, each of which shall be deemed an original, but all of which shall together be one and the same Assurance.

IX.   The headings and titles of the sections and subsections of this Assurance are for convenience of reference only and are not to be considered in construing this Assurance.

35

X.      No portion of the CASH REDRESS or CREDIT REDRESS represents reimbursement to any of the STATES for the costs of any investigation or litigation. The entire amount of CASH REDRESS or CREDIT REDRESS is properly characterized as described in Definitions II and V. No portion of the CASH REDRESS or CREDIT REDRESS constitutes disgorgement, nor is it properly characterized as the payment of statutory or other fines, penalties, punitive damages, other punitive assessments, or attorneys' fees.

XI.     Except as otherwise provided herein, any notices or other documents required to be sent to the RELEVANT ATTORNEY GENERAL or GREENSKY pursuant to this Assurance shall be sent by U.S. mail, Certified Mail Return Receipt Requested, or other nationally recognized courier service that provides for tracking services and identification of the person signing for the documents, with a copy via email. The notices and/or documents shall be sent to the following addresses:

A.      In the case of the RELEVANT ATTORNEY GENERAL, to:

Office of the Attorney General, State of Florida
Consumer Protection Division
c/o Jennifer Pinder, Esq.
3507 East Frontage Road, #325
Tampa, Florida 33607
Jennifer.pinder@myfloridalegal.com

B.      In the case of GREENSKY, to:

GreenSky, LLC
Compliance Department
5565 Glenridge Connector Suite #700
Atlanta, GA 30342
amanda.galifianakis@greensky.com

\*\*\*

36

**IN WITNESS WHEREOF**, the PARTIES have caused this Assurance to be executed and delivered on the date(s) set forth below.

[Signature pages follow]

FOR THE OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA,
DEPARTMENT OF LEGAL AFFAIRS:

Victoria Butler
Director, Consumer Protection Division
Office of Attorney General
State of Florida
Department of Legal Affairs
3507 E. Frontage Rd., Suite 325
Tampa, FL 33607
Tel: 813-287-7950
Fax: 813-281-5515

Jennifer Pinder
Chief Assistant Attorney General, Consumer Protection Division
Office of Attorney General
State of Florida
Department of Legal Affairs
3507 E. Frontage Rd., Suite 325
Tampa, FL 33607
Tel: 813-287-7950
Fax: 813-281-5515

Accepted this 26th day of May, 2026.

38

FOR GREENSKY HOLDINGS, LLC:

By: _____    Dated: _____May 21_____, 2026
    Ritesh Gupta
    Chief Executive Officer




FOR GREENSKY, LLC:

By: _____    Dated: _____May 21_____, 2026
    Ritesh Gupta
    Chief Executive Officer