**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SUSAN PARISI,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**OKLAHOMA WINDOWS AND DOORS, LLC d/b/a RENEWAL BY ANDERSEN OF OKLAHOMA, BMO HARRIS BANK, NA, and GREENSKY, LLC,**<br><br>**Defendants.** | ) | **Case No. CIV-23-115-R** |

**ORDER**

Susan Parisi just wanted some new windows. Instead—she alleges—Andersen and GreenSky[1] ventured to swindle her by signing her up for a loan, on terms she didn't anticipate, and requiring prompt payment when she was promised a lengthy payment delay. So she sued Oklahoma Windows and Doors ("Andersen"), BMO Harris Bank, and GreenSky under federal and state consumer protection laws. A flood of motion practice followed, including an interlocutory appeal to the Tenth Circuit. Now in its fourth incarnation, Ms. Parisi's Complaint [Doc. No. 129] is the subject of two Motions to dismiss, from Andersen [Doc. No. 133] and from GreenSky [Doc. No. 134]. Both parties

[1] The Court refers to Defendants GreenSky and BMO Harris collectively as GreenSky because their Motion groups them together, they share the same attorneys, and GreenSky appears on all the correspondence to which Ms. Parisi refers.

argue that the Court lacks jurisdiction and that Ms. Parisi fails to state a claim. The Court addresses both below.

## LEGAL STANDARDS

Ms. Parisi has the burden of showing that the Court has jurisdiction to survive dismissal under FED. R. CIV. P. 12(b)(1). *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Ms. Parisi's complaint must contain "a short and plain statement of [her] claim showing that [she] is entitled to relief." FED R. CIV. P. 8(a)(2). To show entitlement to relief, and survive a motion to dismiss, she must show her claims' facial plausibility—something greater than mere possibility and less than conclusive proof—"allow[ing] the Court to draw the reasonable inference that [Andersen and GreenSky] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1132 n.6 (10th Cir. 2024). At this stage, the Court assumes that Ms. Parisi's well-pleaded factual allegations are true, and "draw[s] all reasonable inferences in [her] favor." *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).

### I. Ms. Parisi has standing, so the Court has jurisdiction.

Andersen and GreenSky argue that Ms. Parisi lacks Article III standing to sue, a basic element of the Court's jurisdiction requiring an actual or imminent, concrete, and particularized injury for each claim under which Ms. Parisi seeks relief. *Carney v. Adams*, 592 U.S. 53 (2020); *Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019).

Ms. Parisi brings four claims for relief. Here are her alleged injuries:

1. Violations of an Oklahoma consumer credit cost disclosures law caused "reputational harm to [her] creditworthiness." Doc. No. 129 at 27 ¶ 122.
2. Violations of a federal credit disclosures law "deprived [her] . . . of the ability to compare credit terms available in the marketplace . . . ." Doc. No. 129 at 29 ¶ 129.
3. Violations of an Oklahoma consumer protection law caused "reputational harm to [her] creditworthiness." Doc. No. 129 at 31 ¶ 140.
4. Violations of a federal law prohibiting the improper issuance of access devices caused her to incur "liability for unauthorized debts." Doc. No 129 at 35 ¶ 161.

Ms. Parisi's first and third injuries are clearly sufficient. Reputational harm is an injury that confers Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("Chief among [concrete, intangible harms] are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms.") (citation modified). Ms. Parisi says her creditworthiness was impacted by this more than $17,000 loan. That's enough. *Id*. at 432–33 (concluding that a credit agency's statement to a car dealership that a buyer's name appeared on a terror watch list was a concrete, intangible injury).

Ms. Parisi's fourth injury is even easier. She says that but for Andersen and GreenSky's unlawful behavior, she incurred debt that she wouldn't have otherwise. That's a pocketbook injury, and it confers standing. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an injury.") (citation modified).

Ms. Parisi's second injury is closer, but still sufficient. She alleges that, because of Andersen and GreenSky's failure to disclose material terms, she suffered monetary losses resulting from the inability to compare credit terms on the open market. *See* 15 U.S.C.

§ 1601(a). Although "bare procedural violations, divorced from any concrete harm," are not cognizable injuries, Ms. Parisi alleges follow-on harms, namely actual damages resulting from these alleged procedural violations; this too confers standing. *TransUnion*, 594 U.S. at 440 (citation modified); *Walters v. Fast AC, LLC*, 60 F.4th 642, 649 (11th Cir. 2023) ("Walters's injuries go beyond [Defendant's] noncompliant [under § 1601] disclosures—he provided evidence of lost time, money, and peace. These are garden-variety injuries in fact under Article III."). The Court thus concludes that Ms. Parisi has standing to pursue each of her claims.

## II. The Court DECLINES to dismiss Ms. Parisi's OCCC claims.

The Oklahoma Consumer Credit Code (OCCC) requires certain financial actors to make financial disclosures. *See* OKLA. STAT. tit. 14A § 3-301. Andersen says it isn't one of those actors, arguing that it's neither a "lender[]," required to make disclosures, nor a "creditor[]," liable for failing to disclose. *Id.* § 2-301; § 3-301; § 5-203.

### A. Andersen is subject to the disclosure obligations required of a "lender."

The OCCC obligates "[t]he lender [to] give to the debtor" a vast variety of information. *Id.* § 3-306(2). Andersen says there can only be one lender, and fingers GreenSky for it. Doc. No. 133 at 7. But the OCCC imposes the same disclosure obligations for lenders onto "[those] who regularly arrange[] for the extension of consumer loans . . . ." OKLA. STAT. tit. 14A §3-301(4).[2]

[2] There's more to this definition, but the parties don't dispute it, focusing instead on the "regularly arrang[ing]" language.

Ms. Parisi plausibly alleges that Andersen regularly arranges for credit extensions, detailing a scheme wherein Andersen operates on GreenSky's behalf to

- "market and promote GreenSky Program loans";
- "submit[] . . . loan application[s] through GreenSky's website or mobile application"; and
- receive "disburse[ments] [of] loan proceeds . . . without any attempt to verify this charge with the consumer."

Doc. No. 129 at 5 ¶ 15–6 ¶21, 24 ¶ 114. Elaborating further, Ms. Parisi details her encounter with Andersen's employee, who

- told her "she would need to sign a credit application so [Andersen] could review her credit-worthiness for the financing";
- used an iPad to assist with the loan application and "swiped" away on the screen right after she signed, before having her sign several more times, where she "was only able to view a signature line and a box . . .";
- "took the iPad, submitted the . . . application . . . into the GreenSky loan portal, and transmitted it electronically to GreenSky . . ."; and
- called GreenSky "on his cell phone and placed [the Greensky representative] . . . on speakerphone."

Doc. No. 129 at 10 ¶ 41; 11 ¶¶ 44–45.

Ms. Parisi thus plausibly alleges that Andersen regularly arranges for credit extensions and is thus subject to the same disclosure requirements as a "lender" under the OCCC.

**B. Because Andersen is a "lender," it's plausibly liable as a "creditor" under the OCCC.**

The OCCC also imposes civil liability for violations of the disclosure obligations above. OKLA. STAT. tit. 14A § 5-203. Andersen says that since this section applies only to

"creditor[s]," the Court must dismiss this claim because Ms. Parisi doesn't plausibly allege that Andersen is a creditor. *Id.* § 5-203(1). But that's wrong because in § 5-203, the Oklahoma Legislature used "creditor" as a catchall to mean, among other things: "[L]enders." *Id.* § 5-203(7).

**C. GreenSky is plausibly liable under the OCCC because Ms. Parisi is a "debtor."**

GreenSky also argues that Ms. Parisi's OCCC claims fail, but for a different reason: Since Ms. Parisi successfully convinced the Court and the Tenth Circuit that her loan agreement and arbitration clause were unenforceable, there's no longer a loan agreement and she no longer counts as a "debtor," meaning she can no longer bring any claims under the OCCC. *See* OKLA. STAT. tit. 14A § 3-306(2) ("The lender shall give to the debtor the following information . . . .").

The OCCC doesn't define "debtor," but Oklahoma law[3] otherwise defines it as "one who, by reason of an existing obligation, is, or may become, liable to pay money to another, whether such liability is certain or contingent." OKLA. STAT. tit. 24 § 1; *see also Debtor*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Someone who owes an obligation to another.").[4] At the time Ms. Parisi alleges GreenSky violated the OCCC, she plainly had

[3] *Walters v. Walters*, 564 P.3d 914, 925 (Okla. Civ. App. 2025) ("When the meaning of a term in a statute is not defined . . . other statutes and judicial decisions applying the term may provide 'guidance' in determining the meaning of the term.").

[4] Absent construction by the Oklahoma Supreme Court, the Court may consider dictionaries as probative of the term's plain meaning. *See Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*, 21 F.4th 704, 710 (10th Cir. 2021).

an existing obligation, or at the very least was or would have become liable to pay money to GreenSky. *See* Doc. No. 129 at 25 ¶ 119.

GreenSky says all that changed when the Court ruled that the loan—which included an arbitration clause—was unenforceable. *See* [Doc. Nos. 66, 94]. But even if Ms. Parisi is neither liable for the debt, nor required to arbitrate her claims under the loan agreement, if GreenSky violated the OCCC, it did so at or before the time that it entered into—what it then considered and later argued to two courts was—a purportedly enforceable agreement. *See First Nat. Bank in Marlow v. Bicking*, 376 P.3d 954, 958–59 (Okla. Civ. App. 2016) (reversing dismissal of claims based on a "high cost mortgage," because the alleged OCCC violations "occurred prior to or simultaneous with the execution of the original note . . . "); *see also In re Webster*, 300 B.R. 787, 799 (Bankr. W.D. Okla. 2003) (noting that Truth in Lending Act "disclosures must be made before credit is extended, thus before the transaction is consummated").[5]

The Court thus DECLINES to dismiss Ms. Parisi's OCCC claims.[6]

---

[5] The Truth in Lending Act (TILA) is a federal act requiring similar disclosures to the OCCC, *see* 15 U.S.C. § 1638, and in any event GreenSky concedes that analogizing to its terms is appropriate. *See* Doc. No. 134 at 5.

[6] GreenSky also says a provision of federal law that excuses liability for lenders who make truthful disclosures later rendered untruthful by a subsequent act should apply to Ms. Parisi's OCCC claims against it. *See* 15 U.S.C. § 1634. But even if the Court were to cut and paste this federal statutory text into the OCCC, it wouldn't apply because § 1634 excuses prior, compliant disclosures from liability when they later become non-compliant. *Id.* Here, the opposite is true; Ms. Parisi claims that GreenSky violated the OCCC when it purportedly entered into an agreement with her, not that any later event rendered previously compliant disclosures non-compliant. *See Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280

### III. The Court DISMISSES Ms. Parisi's TILA claims against Andersen.

The OCCC has a federal twin, the Truth in Lending Act (TILA), which also requires financial actors to disclose information to consumers. *See* 15 U.S.C. § 1638. Andersen advances the same objection—it isn't a "creditor." But this time it's successful because the TILA applies more narrowly than the OCCC.

Under the TILA, a creditor

- "regularly extends . . . consumer credit" and
- "is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or . . . by agreement."

15 U.S.C. § 1602(g). This differs from the OCCC in two ways. First, those who "arrange" for credit extensions are not "creditors" under the TILA—only those who extend credit. *See Robey-Harcourt v. Bencorp Fin. Co.*, 212 F. Supp. 2d 1332, 1334 (W.D. Okla. 2002). Second, the TILA definition only applies to the financial actor who initially owns the debt. Ms. Parisi fails plausibly to allege that Andersen satisfies either of these requirements.

Ms. Parisi's first problem is that although she ably alleges Andersen's conduct arranging or facilitating a credit extension, *see above* section **II(A)**, her allegations, taken as true, fail to show that Andersen extended her any credit. An entity extends credit within the meaning of § 1602(g) only if they are the primary lender who puts money on the line. *See Langenfeld v. Bank of Am., N.A. (USA)*, No. 05-CV-619-TCK-SAJ, 2006 WL 8457206, at *3–5 (N.D. Okla. Jan. 18, 2006), *report and recommendation adopted*, No. 05-CV-619-

---

F.3d 384, 392 (3d Cir. 2002) (noting that "all the TILA requires" is that "the disclosures were accurate reflections of the substance of the agreements at the relevant times").

TCK-SAJ, 2006 WL 8457205 (N.D. Okla. Feb. 15, 2006) (recommending dismissal of TILA claims against a supporting entity where the plaintiff's allegations focused almost entirely on one entity, the creditor). The reason for this is that lumping in actors like Andersen who play a supporting role in the credit transaction would thwart Congress's intent that the TILA no longer apply to those who merely "arrange" for credit extensions.[7]

Here, only one inference follows from the Complaint; GreenSky, alone, extended credit to Ms. Parisi:

- Ms. Parisi, with the help of Andersen's representative, "transmitted [the loan application] to Greensky . . ." Doc. No. 129 at 11¶ 45.
- GreenSky's representative called Ms. Parisi: "Congratulations! You have been approved for the two-year loan program with GreenSky!" Doc. No. 129 at 11 ¶ 47.
- GreenSky "created a 'Shopping Pass' account in her name" and permitted Andersen to charge $8,871.50 to it. Doc. No. 129 at 12¶ 53; 13¶ 55.
- Ms. Parisi asked GreenSky to remove its "tradeline" from her credit report. Doc. No. 129 at 14 ¶ 65.
- Despite this request, Greensky kept "false[ly] reporting on the purported loan it established through Andersen." Doc. No. 129 at 14 ¶ 71.[8]

---

[7] Before 1982, the TILA similarly defined "creditor" to include those who arrange extensions of credit. *Compare* Truth in Lending Act, Pub. L. 90-321, 82 Stat. 147 (1968) *with* Amendment to the Truth in Lending Act, Pub. L. 97-320, 96 Stat. 1538 (1982). This means that companies like Andersen who facilitated credit extensions—like car dealerships—used to be covered as creditors, but no longer. *See Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 155–56; 157–58 (1981) (concluding that individual dealers, in addition to Ford's credit arm, were "creditors" under the TILA because the dealers' practice of "submit[ing] the buyer's credit application to [Ford]" on forms that Ford provided constituted "arrang[ing] for the extension of credit").

[8] She also alleges that she "applied for a consumer credit transaction with Andersen and GreenSky." Doc. No. 129 at 28 ¶ 126.

- GreenSky mailed Ms. Parisi "a past due notice and collection letter reflecting that [she] owed GreenSky a payment" on the loan of $9,688.50. Doc. No. 129 at 14 ¶ 72.

Even if the Court takes every possible inference in her favor, Ms. Parisi's conclusory allegations looping in Andersen, if anything, implicate Andersen as an intermediary, and thus at best an arranger, not an extender, of credit. Compared to the flood of factual allegations implicating only GreenSky, Ms. Parisi's allegations here fall flat. So her TILA claims fail for this reason alone.

Ms. Parisi's second problem is that she nowhere alleges that Andersen initially acquired the loan upon which she sues. Just as the TILA no longer applies to those who "arrange" for credit extensions, it also applies only to the "person" who initially owns the debt. 15 U.S.C. § 1602(g). Here—plain as day on the face of Ms. Parisi's loan agreement as well as the allegations summarized just above—that "person" was GreenSky. *See* Doc. No. 27-7 at 4, 6 (identifying the lender as "BMO HARRIS BANK N.A.," which uses "the brand name," GreenSky "for certain consumer credit plans extended by participating lenders to borrowers for the purchase of goods or services from participating Merchants").[9]

Ms. Parisi hardly addresses the TILA claims in her brief; her one argument—buried in a footnote—fails to persuade. She says that the definition of "creditor" in § 1602(g) "raises an issue of fact" based on the Tenth Circuit's observation that "the undisputed evidence demonstrated [Andersen] had initiated a transaction using the Shopping Pass

---

[9] The Court considers the loan agreement because Ms. Parisi refers to it in her complaint, does not dispute its authenticity—even if she does dispute its legal status—and it remains central to this case. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

without [Ms.] Parisi's valid authorization." *Parisi v. GreenSky, LLC*, No. 23-6218, 2025 WL 1603282, at *7 (10th Cir. June 6, 2025). It's unclear how Andersen charging Ms. Parisi's credit account with GreenSky suggests that Andersen initially owned the debt. If anything, it suggests the opposite. Moreover, were Andersen to later acquire the loan, it still wouldn't be a creditor under § 1602(g). *See Denton v. Nationstar Mortg. LLC*, No. 18-CV-241-GKF-JFJ, 2020 WL 1917486, at *7 (N.D. Okla. Apr. 20, 2020) (concluding that Fannie Mae wasn't a creditor because it acquired ownership of the loan from the original creditor, a mortgage company).

Even if she plausibly alleged that it extended her credit, Ms. Parisi also fails to show that Andersen initially owned the debt, so her TILA claims fail twice over. The Court thus DISMISSES her TILA claims against Andersen.

**IV. Ms. Parisi's Complaint is not a shotgun pleading.**

Andersen next argues that the Court should dismiss Ms. Parisi's complaint because it constitutes a "shotgun pleading," a catchall term describing a whole host of ill-advised pleading behavior. *See Gabriel v. Melton Truck Lines*, No. 21-CV-493-JFH-SH, 2022 WL 3401949, at *5 (N.D. Okla. Aug. 16, 2022) (dismissing a 3,000-page complaint with "1,074 claims" as a shotgun pleading). Andersen focuses on the disfavored practice of incorporating prior allegations by reference and grouping allegations against multiple defendants "without adequately specifying which facts apply to which claims and which parties." *Fawley v. Lucero*, No. 22-2091, 2023 WL 2487323, at *1 (10th Cir. Mar. 14, 2023); *Goode v. Nuance Commc'ns, Inc.*, No. 17-CV-00472-GKF-JFJ, 2018 WL 3371091, at *6 (N.D. Okla. July 10, 2018) ("[C]ourts in this circuit have strongly criticized the use

of shotgun pleading, by which a party pleads several counts or causes of action, each of which incorporates by reference the entirety of its predecessors.") (citation modified).

But Ms. Parisi's Complaint is not a shotgun pleading because it's not difficult to figure out to which defendant she's referring:

- Count 1: all "Defendants failed to deliver all material disclosures" Doc. No. 129 at 25 ¶ 119(a).
- Count 2: "Defendants intentionally failed to disclose" "accurate and complete disclosures required under TILA" Doc. No. 129 at 29 ¶ 128.
- Count 3: Defendants failed "to disclose material credit terms and costs" made "false or misleading representations concerning rights, remedies, or obligations under the contract" and engaged in "unfair and deceptive practices likely to mislead reasonable consumers." Doc. No. 129 at 30 ¶ 137.
- Count 4: "Defendants issued an unauthorized access device" and "Defendants created Shopping Pass accounts" and "each Defendant ratified the unauthorized conduct." Doc. No. 129 at 32 ¶ 149.

Some of these allegations are conclusory, but they are plainly intended to be conclusions, based on factual allegations earlier in the Complaint. And besides, there are only three defendants in this case. *C.f. In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1014 (10th Cir. 2017) ("[The district court] described the complaint as a shotgun pleading that fired out more than ten accusations at seventy defendants, hoping that some accusations stick on some defendants.") (citation modified). The goal in dismissing a shotgun pleading is to "create order out of chaos." *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371, 372 (10th Cir. 1989). That's unnecessary here, since reviewing Ms. Parisi's supporting factual allegations makes it rather simple to separate wheat from

chaff. *See* Doc. No. 129 at 11 ¶ 45–14 ¶ 72. So the Court DECLINES to dismiss Ms. Parisi's Complaint as a shotgun pleading.

## V. The Court DECLINES to dismiss Ms. Parisi's EFTA claims.

Andersen next argues that the Court should dismiss Ms. Parisi's claims brought under the Electronic Fund Transfer Act (EFTA) because, it says, it's not a "financial institution." 15 U.S.C. § 1693a(9). But under the EFTA, a "financial institution" need not be a bank; it can be "any other person who, directly or indirectly, holds an account belonging to a consumer." *Id.* Ms. Parisi alleges that Andersen acted as GreenSky's agent to make "unauthorized electronic fund transfer[s]." *Id.* § 1593a(12). Andersen responds by attacking Ms. Parisi's agency allegations as "vague," but that's not true because she alleges that

- GreenSky trained Andersen, providing it credentials "to market financing, intake consumer information, present 'authorizations', and submit disbursement requests through GreenSky's platform";
- using the "shopping pass" GreenSky created for Ms. Parisi, Andersen "used [it] . . . to request payment"; and
- "GreenSky's control of program rules, access credentials, application review, and funding decisions, and BMO Harris Bank's role as account-holding banks, establish agency and sub-agency relationships."

Doc. No. 129 at 33 ¶ 152, 34 ¶ 15, 35 ¶ 158. At this stage, that's sufficient. *Clark v. Colbert*, 895 F.3d 1258, 1266 (10th Cir. 2018) ("Under Oklahoma law, an agency relationship generally exists if two parties agree that one is to act for the other.") (citation modified).

Andersen responds by citing a case where a court found no agency relationship between GreenSky and a third party. *Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp.

3d 274, 295 (D. Conn. 2015). But the court there concluded that the plaintiff failed to present any genuine dispute of material fact to suggest an agency relationship at summary judgment. *Id.* Here, though, at the motion-to-dismiss stage, because agency is a fact-based inquiry, the Court finds Ms. Parisi's factual allegations sufficient. *A-Plus Janitorial & Carpet Cleaning v. Employers' Workers' Comp. Ass'n*, 936 P.2d 916, 930 (Okla. 1997) ("Agency is generally a question of fact to be determined by the trier."). The Court thus DECLINES to dismiss Ms. Parisi's EFTA claims.

**VI. Ms. Parisi's claims relate back.**

Defendants focus their remaining arguments on procedural issues. GreenSky argues that all of Ms. Parisi's claims are time-barred and fail to relate back to her previous pleadings. Andersen says much the same, arguing that Ms. Parisi's class claims fail to relate back, either because she has improperly modified the class size, or because her claims don't relate back to Andersen personally. The Court disagrees.

The conduct underlying this case occurred sometime in late 2021. Ms. Parisi first filed this case, originally in state court, in November 2022 and amended her Complaint most recently in February 2026. Because the statute of limitations for each of Ms. Parisi's claims has come and gone, any amendments she makes in her operative Complaint are only timely if they relate back to her original Complaint. *See* FED. R. CIV. P. 15(c). New claims relate back whenever "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Id.* When considering whether new claims relate back, "The linchpin is notice . . . within the limitations period." *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986);

*Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 150 (1984) ("The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide."). As such, "An amended pleading . . . is a perfection of an original pleading rather than the establishment of a new cause of action." *Superior Mfg. Corp. v. Hessler Mfg. Co.*, 267 F.2d 302, 304 (10th Cir. 1959).

**A. GreenSky's argument concerning Ms. Parisi's factual allegations fails.**

Amendments are designed to refocus the defendants' attention on facts previously alleged. *Kansas Mill. Co. v. N.L.R.B.*, 185 F.2d 413, 416 (10th Cir. 1950) ("There is nothing [inconsistent] in the first or second amended charge with the general allegations of the original charge. They are somewhat in the nature of a bill of particulars making more definite the general allegations of the original charge and thus relate back to the original charge."). And it's well settled that amendments alleging a new cause of action based on the same underlying facts relate back to a previous pleading. *Gilles v. United States*, 906 F.2d 1386, 1390 (10th Cir. 1990); *S. Colorado Prestress Co. v. Occupational Safety & Health Rev. Comm'n*, 586 F.2d 1342, 1346–47 (10th Cir. 1978) (permitting amendment where the same alleged facts also supported a cause of action under a separate regulatory provision). At the same time, the relation back doctrine recognizes that it would be wrong "to fault the defendants for conduct different from that identified in the original complaint, even if the new pleading shares some elements and some facts in common with the original claim." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (citation modified).

Ms. Parisi's operative Complaint sets out the same transaction or occurrence she attempted to set out in her original state-court Petition. GreenSky notes that Ms. Parisi's original Petition was limited to alleged violations of the OCCC, taking issue with her allegations that "go far beyond whether OCCC disclosures were made," namely that

- Defendants "created Shopping Pass accounts for class members without their knowledge and approval";
- Defendants "made unauthorized electronic fund transfers on behalf of class members"; and
- Defendants "improperly reported negative information regarding class members to credit reporting agencies."

Doc. No. 134 at 26. But Ms. Parisi's original state court Petition includes, if less precisely, each allegation with which GreenSky takes issue:

- Ms. Parisi refers to the Shopping pass in her allegation that Andersen's employee had her sign the loan agreement on an iPad but didn't give her "the opportunity to read it" and that GreenSky told her "that Andersen had received an advance payment of $8,871.50." Doc. No. 1-1 at 3 ¶ 13, 17.
- Ms. Parisi refers to unauthorized transfers in her allegation that GreenSky told her "that if she didn't authorize payment to contact [GreenSky] immediately, which [she] did," and that she "contacted . . . Andersen; who falsely told [her] this had never happened before and he would follow up to find out what happened." Doc. No. 1-1 at 3 ¶ 18–19.
- Ms. Parisi refers to negative credit reporting in her allegation that she "objected to the new loan being reported under her name and credit history" and that GreenSky "continue[d] to defame her in its credit reporting." Doc. No. 1-1 at 3 ¶ 26–35.

The Court has no trouble concluding that Ms. Parisi's allegations relate back to her original Petition.[10]

---

[10] GreenSky also says that Ms. Parisi's class claims for declaratory and injunctive relief don't relate back to her previous class claims that didn't explicitly mention either of those

**B. Andersen's argument concerning Ms. Parisi's class allegations fails.**

Andersen argues that Ms. Parisi's amendments to the class definition are improper. Ms. Parisi makes two changes[11] to the class definition in her now-operative Complaint. She first amends the class definition to more specifically allege conduct than she did in her previous one. *Compare* Doc. No. 129 at 18 ¶ 94–19 ¶ 96 *with* Doc. No. 36 at 6 ¶ 24(a–e). The current class definition encompasses:

> All Oklahoma consumers who, from November 23, 2019 through the present, had a GreenSky Shopping Pass account opened in their name where the acceptance of the loan terms was made through the use of the Shopping Pass number by a GreenSky Merchant.

---

forms of relief. Doc. No. 134 at 19. But in the first pleading where she asserts class claims, she seeks those exact forms of relief. *See* [Doc. No. 1-3 at 10 ¶ 39 (seeking "equitable relief under" OKLA. STAT. tit. 12 § 2023(B)(2), which provides that a class "action may be maintained . . . if the petition . . . contains factual allegations sufficient to demonstrate a plausible claim for relief and . . . [t]he party opposing the class has acted . . . on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief . . .")].

[11] Andersen also raises an issue with the class-member timeline. Ms. Parisi previously brought class claims for all plaintiffs who had similar claims from November 2021 to present but now attempts to tack on two more years back to 2019. Doc. 129 at 18 ¶ 94. By filing this suit, Ms. Parisi tolled the statute of limitations on her claims for all potential class members. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983). This three-year gap likely suffices for one of Ms. Parisi's claims—which carries a three-year statute of limitations. But her other claims are not so expansive; they only come with a one-year statute of limitations. Although it doesn't rule today, when the Court considers whether to certify the class, the timeline for the class claims will necessarily be limited to class members who actually had something to toll in December, 2022. *See McClelland v. Deluxe Fin. Servs., Inc.*, 431 F. App'x 718, 721 (10th Cir. 2011); *Mendoza Gutierrez v. Baltasar*, No. 25-CV-2720-RMR, 2025 WL 2962908, at *13 (D. Colo. Oct. 17, 2025) (deferring the class certification issue "because the [c]ourt require[d] a better understanding of the scope and definition of the proper class").

Doc. No. 129 at 18–19 ¶ 94. But Ms. Parisi previously defined the class only with specific reference to the OCCC, focusing on Andersen and GreenSky's alleged failure to make the necessary disclosures under OKLA. STAT tit. 14A § 3-306. Doc. No. 1-3 at 6–7.

Andersen characterizes the new class definition as "substantially broader" than the previous one and argues that the first definition didn't give it fair notice of the "broader" claims alleged in the new definition.[12]

Specifically, Andersen says it didn't have notice that it would have to defend against class claims involving "All Oklahoma consumers who . . . had a GreenSky Shopping Pass account opened in their name where the acceptance of the loan terms was made through the use of the Shopping Pass number by a GreenSky Merchant." Doc. No. 129 at 18–19 ¶ 94. But Andersen cannot claim to have lacked notice of this alleged scheme since Ms. Parisi included it in each prior version of her Complaint that had class claims. Doc. No. 1-3 at 11 ¶ 51–12 ¶ 58. There appear to be four key components of the new class definition:

1. All Oklahoma consumers;
2. Involving a GreenSky Shopping Pass;
3. Which served as the vehicle through which the loan terms were accepted; and
4. Which Andersen facilitated, and who Ms. Parisi alleges is a GreenSky Merchant.

Doc. No. 129 at 18–19 ¶ 94. Ms. Parisi's prior class allegations involved all four components, including that

[12] GreenSky makes the same argument concerning whether Ms. Parisi's Complaint adds new plaintiffs—even copying verbatim portions of Andersen's brief—so the Court's discussion here resolves GreenSky's argument as well.

1. "[T]he class is composed of all Oklahoma consumers . . ." Doc. No. 1-3 at 6 ¶ 24.

2. GreenSky "issues consumers a 'shopping pass' number." Doc. No. 1-3 at 11 ¶ 51.

3. "Merchants have misused these Shopping Pass numbers" by, among other things, "appl[ying] for a loan without a consumer's knowledge and enter[ing] their own email addresses as the consumer's own on the loan application." Doc. No. 1-3 at 12 ¶¶ 55–56

4. "Anders[e]n is one of [GreenSky's] Merchants in the State of Oklahoma." Doc. No. 1-3 at 10 ¶ 44.

Because every aspect of her new class definition was present in her original Complaint, Andersen had sufficient notice, and the new definition relates back.[13]

**C. Ms. Parisi's claims back to Andersen.**

Andersen's second relation-back argument is similarly unsuccessful. Andersen says that none of Ms. Parisi's class claims can relate back to it since she brought Andersen into this suit in August of 2023, after the one-year statute of limitations for many of her claims had run. Moreover, it says, Andersen couldn't have been on notice[14] for these claims since

1. Ms. Parisi had sued the wrong defendant, and

2. Ms. Parisi hadn't, at the time, raised any class claims

---

[13] Andersen says instead that amending the class definition in this way is equivalent to adding new class-member plaintiffs, and that claims against them, according to the Tenth Circuit, don't relate back in this context. *See McClelland*, 431 F. App'x at 721. But all the court in *McClelland* held was that new class claims didn't relate back where the amended complaint (1) added class claims where there were previously only individual claims; (2) requested declaratory and injunctive relief in addition to money damages; and (3) expanded significantly the factual basis for the underlying claims. *Id.* at 727–29. Here though, the class claims were already present by the time Ms. Parisi's case landed in federal court and neither her requested relief, nor the factual basis for her claims has changed.

[14] There are several requirements for an amendment to relate back to a party not previously present, but Andersen only challenges whether it received proper "notice of the action that it will not be prejudiced in defending on the merits." *See* FED. R. CIV. P. 15(c)(1)(C)

First, Ms. Parisi initially sued "C Cashion Windows LLC," which until September 2020 did business as "Andersen" but then sold its business to "Oklahoma Windows and Doors LLC," which now does business as "Andersen." [Doc. No. 19-7]. About a year later, Andersen's employee met with Ms. Parisi about financing some new windows. Andersen argues that her initial failure to sue it dooms her claims. But Andersen had sufficient notice that it was the proper party to be sued:

- GreenSky emailed Ms. Parisi to inform her that they'd been in contact with "the merchant," by which they meant Andersen, regarding her concerns. [Doc. No. 27-13].
- Andersen repeatedly corresponded with Ms. Parisi over the course of the year following her initial meeting. [Doc. Nos. 27-19; 27-21; 27-22; 27-25; 27-29].

Based on its repeated attempt to contact her to install the windows she originally signed up for, the Court finds that Andersen had reasonable notice of her concerns, sufficient to avoid prejudice in defending these claims. *See* FED. R. CIV. P. 15(c)(1)(C).[15]

**VII. The Court DECLINES to strike the class definition.**

Andersen and GreenSky make one final argument: Strike Ms. Parisi's class definition because most—maybe all—of the class members are subject to arbitration clauses. But striking the class definition at this stage is "a drastic remedy," the best resolution of which involves some level of discovery by the parties to assist the Court in making a more informed decision. *Francis v. APEX USA, Inc.*, 406 F. Supp. 3d 1206, 1212–13 (W.D. Okla. 2019) ("[C]ourts in this circuit and elsewhere have viewed motions to

---

[15] Andersen also argues that Ms. Parisi's new claims don't relate back to her previous pleadings, but the Court's analysis above addresses that argument. *See above* **VI(A)**.

strike . . . class allegations at the pleading stage with particular disfavor . . . .") (citation modified). So the Court declines to strike the class definition.[16]

Accordingly, the Court DISMISSES Ms. Parisi's individual and class claims under the TILA against Andersen, DENIES Andersen's Motion on all other claims, DENIES GreenSky's Motion, and GRANTS Ms. Parisi's Motion for a Status Conference. [Doc. No. 146]. The case will be added to the Court's December 14th, 2026, status conference docket.

IT IS SO ORDERED this 17th day of November, 2026.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**

[16] GreenSky also seeks to dismiss Ms. Parisi's class claims because, it says, they fail two of FED. R. CIV. P. 23(a)'s requirements. But the Court declines to address these questions because, in addition to the reasons for declining to strike the class definition, Andersen doesn't address these requirements at all, so the Court lacks a complete legal, as well as factual, picture of these arguments—which are in any event better suited to the class-certification stage.